166.   At all times relevant to this complaint, Recruiter Defendants acted as agents for Legal Facilitator Defendants in communicating with Plaintiffs and Class Members.

167.   Recruiter Defendants engaged in a scheme to exploit Plaintiffs and other Class Members by promising them an opportunity to teach in the United States without disclosing the exorbitant fees that would be charged until the Plaintiffs and other Class Members were so far into debt that they had no choice but to continue.

168.   Recruiter Defendants and Legal Facilitator Defendants further manipulated Plaintiffs and other Class Members after they arrived in the United States and began working by isolating Plaintiffs and other Class Members from other Filipinos, threatening lawsuits and deportation if Plaintiffs and other Class Members failed to follow their instructions, and manipulating the visa renewal process in an effort to maintain and exert control over the Plaintiffs and other Class Members.

169.   Legal Facilitator Defendants were fully aware of and involved in the recruitment scheme.   Their roles in this scheme included, at a minimum, the following:

a.   Legal Facilitator Defendants entered into an attorney-client relationship with Plaintiffs and other Class Members.  Specifically, Legal Facilitator Defendants submitted G-28 Notice of Entry of Appearance forms with each H-1B visa petition stating that Legal Facilitator Defendants represented both the Plaintiffs and other Class Members, and the petitioning school districts;

b.      Plaintiffs and other Class Members were the only parties to pay fees to Legal Facilitator Defendants for the purported purpose of the Legal Facilitator Defendants' legal work procuring their H-1B visas;

c.      Legal Facilitator Defendants conspired with Recruiter Defendants, Employer Defendants, and the non-defendant Louisiana School Districts to require Plaintiffs and other Class Members to pay all Visa Processing Fees, even though federal law required the petitioner/school district, not the beneficiary/teacher, to pay such fees;

d.      Legal Facilitator Defendants conspired with Recruiter Defendants, Employer Defendants, and the non-defendant Louisiana School Districts to apply for one-year visas, instead of the more typical three-year visas. This required Plaintiffs and other Class Members to pay additional fees to Recruiter Defendants and Legal Facilitator Defendants to process renewal applications after just one year and allowed the Recruiter Defendants to assert continued control over Plaintiffs and other Class Members through the threat of visa non-renewals;

e.      Legal Facilitator Defendants filed all initial H-1B visa petitions on behalf of EBRPSS and non-defendant Louisiana School Districts and Plaintiffs and other Class Members, resulting in H-1B visas being issued to Plaintiffs and other Class Members;

f.      Legal Facilitator Defendants filed many renewal petitions in subsequent years after the initial visas expired;

g.      Legal Facilitator Defendants drafted and requested a fraudulent statement from EBRPSS in an effort to terminate the visa of a teacher who refused

to pay the exorbitant fees demanded by Recruiter Defendants, as detailed in ¶ 179.b, *infra*;

h.    Legal   Facilitator   Defendants   conspired   with   Recruiter Defendants to file baseless lawsuits against Class Members—their own clients—in retaliation for efforts by teachers to organize and protest Defendants' practices, including a lawsuit against Plaintiff Ingrid Cruz.  Defendant Silverman submitted a verification for the complaint against Ingrid Cruz as legal counsel for Defendant Universal; and

i.    Legal   Facilitator   Defendants   conspired   with   Recruiter Defendants to file baseless lawsuits against Class Members, including, *inter alia*, Plaintiff Ingrid Cruz and Class Members Janet Añober and Melissa Idong, each of whom teaches at EBRPSS, and Plaintiff Tomasa Mari and Class Member Margarett Aguirre who teach at the Recovery School District, to collect on illegal contracts when teachers refused to pay the improper fees demanded.

170.   Plaintiffs and other Class Members never interacted with Legal Facilitator Defendants directly.  Instead, Plaintiffs and other Class Members were required to work strictly with Recruiter Defendants.  Any communications from or to Plaintiffs and other Class Members and Legal Facilitator Defendants were conveyed via Recruiter Defendants.  Plaintiffs and other Class Members also paid purported legal fees to Recruiter Defendants, rather than directly to Legal Facilitator Defendants.

171.   Upon information and belief, Employer Defendants and the non-defendant Louisiana School Districts never paid any fees for legal services to Legal

Facilitator Defendants.   All fees were instead paid by Plaintiffs and other Class Members.

172.   Upon information and belief, Legal Facilitator Defendants were aware of numerous conflicts between Plaintiffs and other Class Members on the one hand, and the Recruiter Defendants, Employer Defendants and non-defendant Louisiana School Districts on the other.

173.   Upon information and belief, Legal Facilitator Defendants never sought nor obtained a waiver of conflicts of interest from any Plaintiff or other Class Member.

**D.   Factual Allegations That Employer Defendants were Beneficiaries of the Illegal Trafficking Scheme**

174.   Employer Defendants participated in a common venture with Recruiter Defendants and Legal Facilitator Defendants to recruit teachers from the Philippines and transport them to the United States.   In furtherance of this venture, EBRPSS and its agents, including Defendant Duran Swinford, participated in the following activities, among others:   (a) they interviewed teachers through teleconferencing technology, and they traveled to the Philippines in 2007 and in 2008 to interview applicants; (b) they selected Plaintiffs and other Class Members from among the applicants they interviewed; (c) they issued job offers to the Plaintiffs and other Class Members, which were executed by both parties; and (d) they worked collectively with Recruiter Defendants and Legal Facilitator Defendants to prepare and submit visa applications and renewal applications.

175.   Employer Defendants knowingly benefited from the illegal human

trafficking scheme perpetrated by Recruiter Defendants. Not only were they able to procure the services of needed teachers from the Philippines; they were also able to avoid all fees and costs typically associated with identifying and recruiting qualified educators—including visa fees that they, as employers, were required to pay under federal law.

**E.      Factual Allegations That Employer Defendants Facilitated the Illegal Trafficking Scheme, or Alternatively Knew or Reasonably Should Have Known of the Illegal Trafficking Scheme**

176.    Employer Defendants had express knowledge of the fees that Recruiter Defendants imposed, and the crippling financial harm this caused Plaintiffs and other Class Members:

a.      Employer Defendants did not pay Recruiter Defendants or Legal Facilitator Defendants for their recruitment efforts.    Indeed, Employer Defendants did not have to pay anything toward the recruitment process; Employer Defendants were reimbursed for all costs related to interviewing applicants in the Philippines.

b.      Upon information and belief, Employer Defendants realized that Recruiter Defendants and Legal Facilitator Defendants were engaged in a for-profit scheme.

c.      Employer Defendants were aware of the costs of filing an H-1B visa. They learned of these fees by, *inter alia*, reviewing the H-1B documents they signed, which disclosed some of the fees, and by reviewing written materials sent to them by Recruiter Defendants, which explained the costs of filing for an H-1B visa petition;

        d.    Employer Defendants were also aware of the various recruitment fees and related fees charged by Recruiter Defendants through their trafficking scheme. Upon information and belief, Employer Defendants were told of the exorbitant fees in or before November 2007, again in April 2008, and many times thereafter.

177.    Employer Defendants were aware by no later than May 2008 that the U.S. Embassy in Manila was investigating the conduct of Recruiter Defendants, when Defendant Duran Swinford was contacted by an agent from the U.S. Embassy in Manila to inquire about Recruiter Defendants.

178.    Employer Defendants were informed by no later than November 2008 that Defendant Lourdes Navarro had been convicted of defrauding the government and of money laundering.

179.    Employer Defendants were aware that Recruiter Defendants were abusing legal process in order to intimidate and control job applicants—indeed, Employer Defendants assisted in the same:

        a.    On at least three occasions, Employer Defendants were contacted directly by applicants who had successfully interviewed with Employer Defendants in the Philippines, and who were seeking to complete the H-1B visa process by a means other than through Recruiter Defendants because of the exorbitant fees Recruiter Defendants were charging. In these instances, Employer Defendants informed Recruiter Defendants of these applicants' attempts to circumvent Recruiter Defendants' scheme, and told the applicants that EBRPSS would not consider hiring them, even though EBRPSS had hired H-1B visa teachers

in the past without using Recruiter Defendants.

b.    In January 2008, an applicant named Genna Balneg refused to pay Recruiter Defendants the exorbitant placement fee they sought to extract after her visa was approved.  Employer Defendants colluded with Recruiter Defendants and Legal Facilitator Defendants to submit a fraudulent statement to the U.S. Government to obtain cancellation of Ms. Balneg's visa.  The fraudulent statement appears in a letter dated January 24, 2008, from Defendant Williams to Defendant Silverman, on EBRPSS letterhead, asking for the cancellation of Balneg's visa because Balneg "has attempted to defraud the East Baton Rouge Parish School System by falsely representing her intention to work for us in order to gain access to the United States."  Employer Defendants knew this statement was false, and that Balneg had simply refused to pay the exorbitant and illegal fee that Recruiter Defendants sought to extract.  Balneg's visa was cancelled as a result of the fraudulent statement

c.    Employer Defendants assisted Recruiter Defendants in attempting to enforce the illegal contracts Plaintiffs and other Class Members were forced to sign in California.  For example, on two occasions in 2008, Principal Sherry Brock of the Westdale Middle School in the EBRPSS called Louisiana Teacher Class member Janet Añober into her office in the middle of the school day. Defendant Lourdes Navarro then spoke to Añober on the telephone, and permitted Lourdes Navarro to tell Ms. Añober that she was obligated to pay the fee charged by Recruiter Defendants.  Principal Sherry Brock further told Ms. Añober that she should pay the money Recruiter Defendants were demanding.

Complaint

180.   Employer Defendants colluded with Recruiter Defendants and Legal Facilitator Defendants to ensure that Plaintiffs and other Class Members received one-year instead of three-year visas, even though Employer Defendants were aware three-year visas were available, and Employer Defendants had applied for three-year visas in the past for other H-1B visa teachers who were not recruited by Recruiter Defendants.  In particular, Defendant Placide signed all visa petitions for Plaintiffs and other Class Members, and thus she (as well as other EBRPSS agents) knew that one-year rather than three-year visas were being requested.  Defendant Placide had previously signed H-1B visa petitions on behalf of individuals who are not members of the Louisiana Teacher Class seeking and obtaining three-year visas.

181.   Employer Defendants colluded with Recruiter Defendants to stymie criticisms of the Recruiter Defendants' trafficking scheme, and to aid in the furtherance of that scheme, by taking the following actions, *inter alia*:

a.   On or about August 13, 2008, Defendant Duran Swinford informed Defendant Lourdes Navarro that EBRPSS was receiving public criticism about the housing arrangements made for EBRPSS Teacher Subclass members, and that some EBRPSS Teacher Subclass members were publicly complaining that "recruiters" had taken all of the Subclass members' money.  Duran Swinford told Lourdes Navarro that these "rumors" were problems for EBRPSS.  Duran Swinford volunteered to forward the name(s) of those making public complaints to Lourdes Navarro when they became available.  Duran Swinford asked Lourdes Navarro for advice on how to handle the situation;

b.   On or about November 6, 2008, Defendant Duran Swinford

Complaint

1    informed Defendant Lourdes Navarro about the Pinoy Teachers Hub blog.

2    Defendant Duran Swinford did so after the blog's web address had been submitted

3

4    to EBRPSS through its website.  The only substantive entry on the blog had been

5    posted the previous evening, on November 5, 2008, and this posting was sharply

6    critical of Recruiter Defendants;

7            c.    On or about April 9, 2009, Defendant Lourdes Navarro

8

9    contacted Defendant Duran Swinford to complain that Defendant EBRPSS was

10   starting to obtain three-year renewal visas for a small number of teachers, instead of

11   the one-year visas Legal Facilitator Defendants and Recruiter Defendants were

12   providing.  Navarro complained, "You know I have been having problems with

13

14   those teachers already and this will create a lot of problems with teachers renewing

15   with us."  Duran Swinford responded that EBRPSS would check each renewal

16   petition and make sure that it requested only a one-year rather than a three-year

17   renewal;

18

19          d.    No later than October 2009, Recruiter Defendants began

20   having problems renewing visas for teachers whose original petitions had been

21   signed by agents for Defendant EBRPSS, but who were teaching instead in other

22   school systems.  These teachers had never taught at EBRPSS, and upon information

23

24   and belief, Recruiter Defendants had redirected the teachers to other schools for

25   employment.   At the behest of the Recruiter Defendants, Defendant Duran

26   Swinford, on behalf of Defendant EBRPSS, drafted letters to the USCIS to explain

27   that although EBRPSS had intended to hire these teachers, the teachers arrived too

28   late in the school year, and EBRPSS no longer had openings for these teachers.

1   Upon information and belief, Defendant Duran Swinford knew this reason for the

2   placement of these teachers at other school districts was false but nevertheless made

3   this statement to support the Recruiter Defendants' scheme; and

4

5           e.      No later than November 2009, Defendant PARS came under

6   investigation by the POEA regarding its recruiting practices in response to

7   complaints filed by teachers who alleged that PARS was violating POEA rules.

8   Defendant Lourdes Navarro, acting on behalf of PARS and Defendant Villarba,

9

10  asked Defendant Duran Swinford to supply information about teachers who were

11  working or who had previously worked at EBRPSS and who were complaining to

12  the POEA.  Upon information and belief, Duran Swinford sent Lourdes Navarro

13  information about the teachers, including (a) termination letters; (b) teacher

14  evaluations; and/or (c) statements that the teachers were still employed with

15

16  EBRPSS.  Upon information and belief, the documents transmitted by Duran

17  Swinford to Lourdes Navarro are confidential, and in any event were sent without

18  the consent or knowledge of the individual teachers.

19

20      182.  Employer Defendants were aware that Recruiter Defendants

21  attempted to keep Plaintiffs and other Class Members from associating with local

22  Filipinos in Baton Rouge, and Defendant Duran Swinford witnessed Defendant

23  Lourdes Navarro tell the leader of a local Filipino association to stay away from

24  Plaintiffs and other Class Members.

25

26  **F.      Factual Allegations of Fraudulent Omission of Second
           Recruitment Fee**

27

28      183.  On or about March 28, 2008, at the Waterfront Hotel in Cebu City,

Philippines, Defendant Lourdes Navarro informed Plaintiff Nunag-Tañedo that she would need to collect various supporting documents, pay a First Recruitment Fee of $5,515 (involving a Visa Processing Fee of $3,920, a Credentials Evaluation Fee of $595, and an Agency Fee of $1,000) in order to obtain her job offer and to complete the H-1B visa process.  However, Lourdes Navarro willfully, maliciously, and fraudulently failed to inform Nunag-Tañedo that before she would be permitted to leave the Philippines, she would need to pay an Undisclosed Second Recruitment Fee of three months of her expected salary in the United States, as well as the cost of airfare to the United States.  Nunag-Tañedo relied on this omission and paid the First Recruitment Fee.

184.    On or about July 3, 2007, at the PARS office in Quezon City, Manila, Philippines, an agent for Defendant PARS named Divine, who upon information and belief is the sibling of Defendant Villarba and Defendant Lourdes Navarro, informed Plaintiff Cruz that she would need to collect various supporting documents and pay a First Recruitment Fee of $5,000 (involving a Visa Processing Fee of $3,955, a Credentials Evaluation Fee of $645, and an Agency Fee of $400) in order to obtain her job offer and to complete the H-1B visa process.  However, Divine willfully, maliciously, and fraudulently failed to inform Cruz that before she would be permitted to leave the Philippines, she would need to pay an Undisclosed Second Recruitment Fee of three months of her expected salary in the United States, as well as the cost of airfare to the United States.  Cruz relied on this omission and paid the First Recruitment Fee.

185.    On or about March 28, 2008, at the Waterfront Hotel in Cebu City,

Philippines, Defendant Lourdes Navarro informed Plaintiff Escuadra that she would need to collect various supporting documents, pay a First Recruitment Fee of $5,515 (involving a Visa Processing Fee of $3,920, a Credentials Evaluation Fee of $595, and an Agency Fee of $1,000) in order to obtain her job offer and to complete the H-1B visa process.   However, Lourdes Navarro willfully, maliciously, and fraudulently failed to inform Escuadra that before she would be permitted to leave the Philippines, she would need to pay an Undisclosed Second Recruitment Fee of three months of her expected salary in the United States, as well as the cost of airfare to the United States.   Escuadra relied on this omission and paid the First Recruitment Fee.

186.   On or about June 27, 2008 in a restaurant near the PARS office in Quezon City, Manila, Philippines, Defendant Villarba informed Plaintiff Pascual that he would need to collect various supporting documents, pay a First Recruitment Fee of $5,515 (involving a Visa Processing Fee of $3,920, a Credentials Evaluation Fee of $595, and an Agency Fee of $1,000) in order to obtain her job offer and to complete the H-1B visa process.   However, Villarba willfully, maliciously, and fraudulently failed to inform Pascual that before he would be permitted to leave the Philippines, he would need to pay an Undisclosed Second Recruitment Fee of three months of his expected salary in the United States, as well as the cost of airfare to the United States.   Pascual relied on this omission and paid the First Recruitment Fee.

187.   On or about July 28, 2007, Plaintiff Mari telephoned Defendant PARS to learn if she had passed her job interview, which had occurred on or about July 25,

62

2007.  Defendant Villarba informed Plaintiff Mari that she would need to collect various supporting documents, pay a First Recruitment Fee of $5,565 (involving a Visa Processing Fee of $3,920, a Credentials Evaluation Fee of $645, and an Agency Fee of $1,000) in order to obtain her job offer and to complete the H-1B visa process.  However, Villarba willfully, maliciously, and fraudulently failed to inform Mari that before she would be permitted to leave the Philippines, she would need to pay an Undisclosed Second Recruitment Fee of three months of her expected salary in the United States, as well as the cost of airfare to the United States.  Mari relied on this omission and paid the First Recruitment Fee.

### G.   Factual allegations of Fraudulent Omission of Employer's Obligation to Pay Visa Processing Fees

188.   The Visa Processing Fees described in ¶ 103.a, *supra*, were collected from Plaintiffs and other Class Members by Defendant PARS, which was acting as an agent and/or alter ego for Defendant Universal, Defendant Lourdes Navarro, Defendant Hothello Navarro, and Legal Facilitator Defendants.

189.   Plaintiffs and other Class Members were informed of the Visa Processing Fees by Defendant Lourdes Navarro, Defendant Villarba, or another agent of Defendant PARS.

190.   Defendant PARS, through its agents, issued hand-written receipts from Defendant Universal after collecting the Visa Processing Fees from Plaintiffs and other Class Members.

191.   Upon information and belief, Recruiter Defendants and Legal Facilitator Defendants were aware that certain parts of the Visa Processing Fees

were required to be paid by the employer and not the employee. In particular, the H-1B Filing Fee form states that the $320 filing fee and the $500 anti-fraud fee must be paid by the U.S. employer. Upon information and belief, an H-1B Filing Fee form was submitted with each and every I-129 Petition for a Nonimmigrant Worker prepared by Legal Facilitator Defendants and Defendant Universal on behalf of Defendant EBRPSS and the non-defendant Louisiana School Districts.

192. On or about March 28, 2008, at the Waterfront Hotel in Cebu City, Philippines, Defendant Lourdes Navarro informed Plaintiff Nunag-Tañedo that she would need to pay $3,920 for her visa. Lourdes Navarro failed to inform Nunag-Tañedo that part of this fee was the obligation of her petitioner, Defendant EBRPSS. Nunag-Tañedo reasonably relied on this omission, and paid the entire fee to Defendant PARS.

193. On or about July 16, 2007, at the PARS office in Quezon City, Manila, Philippines, Defendant Villarba informed Plaintiff Cruz that she would need to pay $3,920 for her visa. Villarba failed to inform Cruz that part of this fee was the obligation of her petitioner, Defendant EBRPSS. Cruz reasonably relied on this omission, and paid the entire fee to Defendant PARS.

194. On or about March 28, 2008, at the Waterfront Hotel in Cebu City, Philippines, Defendant Lourdes Navarro informed Plaintiff Escuadra that she would need to pay $3,920 for her visa. Lourdes Navarro failed to inform Escuadra that part of this fee was the obligation of her petitioner, Defendant EBRPSS. Escuadra reasonably relied on this omission, and paid the entire fee to Defendant PARS.

195. On or about June 27, 2008, in a restaurant near the PARS office in

1    Quezon City, Manila, Philippines, Defendant Villarba informed Plaintiff Pascual
2    that he would need to pay $3,920 for his visa.  Villarba failed to inform Pascual that
3
     part of this fee was the obligation of his petitioner, non-defendant Caddo Public
4
5    School System.  Pascual reasonably relied on this omission, and paid the entire fee
6    to Defendant PARS.
7        196.   On or about July 28, 2007, over the telephone, Defendant Villarba
8
     informed Plaintiff Mari that she would need to pay $3,920 for her visa.  Villarba
9
10   failed to inform Mari that part of this fee was the obligation of her petitioner, non-
11   defendant Recovery School District.  Mari reasonably relied on this omission, and
12
     paid the entire fee to Defendant PARS.
13
       **H.    Factual Allegations Regarding the Class Action Fairness Act of**
14         **2005 (28 U.S.C. § 1332(d))**
15       197.   The  amount  in  controversy  in  this  action  exceeds  $5,000,000,
16
17   exclusive of interest and costs.
18       198.   This is a class action in which member of a class of Plaintiffs are
19   citizens or subjects of a foreign state and some of the Defendants are citizens of a
20
     State in the United States.
21
22          **VI.    CLAIMS FOR RELIEF**
23          **FIRST CLAIM FOR RELIEF**
     THE WILLIAM WILBERFORCE TRAFFICKING VICTIMS PROTECTION
24      REAUTHORIZATION ACT OF 2008 (18 U.S.C. § 1595)
25         *Louisiana Teacher Class versus*
        *Recruiter Defendants and Legal Facilitator Defendants*
26
27       199.   Plaintiffs  and  other  Class  Members  re-allege  and  incorporate  by
28   reference each and every allegation contained in the preceding paragraphs as if fully

                                      65

set forth herein.

### A.   Authority for a Civil Action

200.   Plaintiffs and other Class Members are victims of the following violations of Title 18, Chapter 77 of the United States Code:  18 U.S.C. §§ 1589, 1590, 1592, and 1594(a) and (b).

201.   As set forth in 18 U.S.C. § 1595(a), Plaintiffs and other Class Members may bring a civil action against the perpetrators of these violations and "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in a violation" of these provisions.

202.   Recruiter Defendants were perpetrators of the violations of 18 U.S.C. §§ 1589, 1590, 1592, 1594(a), and 1594(b).

203.   Legal Facilitator Defendants were perpetrators of the violations of 18 U.S.C. §§ 1589, 1590, 1594(a), and 1594(b).

204.   Recruiter Defendants and Legal Facilitator Defendants knowingly benefited, financially or by receiving anything of value from participation in a venture which each Defendant knew or should have known engaged in violations of 18 U.S.C. §§ 1589, 1590, 1592, 1594(a), and/or 1594(b).

205.   Plaintiffs bring this claim on behalf of themselves and the Louisiana Teacher Class against Recruiter Defendants and Legal Facilitator Defendants.

### B.   Forced Labor (18 U.S.C. § 1589)

206.   As set forth in ¶¶ 91–164.d, *supra*, Recruiter Defendants knowingly provided the labor of Plaintiffs and other Class Members by means of abuse and

threatened abuse of law or legal process and by means of a scheme, pattern, or plan intended to cause the Plaintiffs and other Class Members to believe that, if he or she did not perform the labor, he or she would suffer serious harm.

207.    As set forth ¶¶ 165–173, *supra*, Legal Facilitator Defendants knowingly provided the labor of Plaintiffs and other Class Members by means of abuse and threatened abuse of law or legal process and by means of a scheme, pattern, or plan intended to cause the Plaintiffs and other Class Members to believe that, if he or she did not perform the labor, he or she would suffer serious harm.

208.    Recruiter Defendants and Legal Facilitator Defendants knowingly benefited financially from participation in a venture which they knew or should have known was engaged in the acts set forth in ¶¶ 206–207, *supra*.

**C.    Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor (18 U.S.C. § 1590)**

209.    As set forth in ¶¶ 91–164.d, *supra*, Recruiter Defendants recruited and transported Plaintiffs and other Class Members for labor and services in violation of 18 U.S.C. §§ 1589, 1592, 1594(a), and 1594(b).

210.    As set forth ¶¶ 165–173, *supra*, Legal Facilitator Defendants knowingly aided and abetted Recruiter Defendants' scheme to recruit and transport Plaintiffs and other Class Members in violation of 18 U.S.C. §§ 1589, 1592, 1594(a), and 1594(b).

211.    Recruiter Defendants and Legal Facilitator Defendants knowingly benefited financially from participation in a venture which they knew or should have known was engaged in the acts set forth in ¶¶ 209–210, *supra*.

Complaint

**D.** **Unlawful Conduct with Respect to Documents in Furtherance of Trafficking, Peonage, Slavery, Involuntary Servitude, or Forced Labor (18 U.S.C. § 1592)**

212.   As set forth in ¶¶ 111–117 and 141, *supra*, Recruiter Defendants knowingly removed, confiscated, and possessed the Plaintiffs' and other Class Members' passports and visa papers in the course of a violation, and/or with the intent to violate 18 U.S.C. §§ 1589, and 1594(a).

213.   Recruiter Defendants and Legal Facilitator Defendants knowingly benefited financially from participation in a venture which they knew or should have known was engaged in the acts set forth in ¶ 212, *supra*.

**E.** **Attempt to Violate 18 U.S.C. §§ 1589, and 1590 (18 U.S.C. § 1594(a))**

214.   As set forth in ¶¶ 91–164.d, *supra*, Recruiter Defendants attempted to violate 18 U.S.C. §§ 1589 and 1590 in violation of 18 U.S.C. § 1594(a).

215.   As set forth in ¶¶ 165–173, *supra*, Legal Facilitator Defendants attempted to violate 18 U.S.C. § 1589 in violation of 18 U.S.C. § 1594(a).

216.   Recruiter Defendants and Legal Facilitator Defendants knowingly benefited financially from participation in a venture which the Defendants knew or should have known was engaged in the acts set forth in ¶¶ 214 and 215, *supra*.

**F.** **Conspiracy to Violate 18 U.S.C. §§ 1589, 1590, and 1592 (18 U.S.C. § 1594(b))**

217.   Recruiter Defendants and Legal Facilitator Defendants conspired with each other to violate 18 U.S.C. §§ 1589, 1590, and 1592 in violation of 18 U.S.C. § 1594(b).

218.   Recruiter Defendants, Legal Facilitator Defendants, and Employer

Defendants conspired with each other to violate 18 U.S.C. §§ 1589 and 1590 in violation of 18 U.S.C. § 1594(b).

219.    Recruiter Defendants and Legal Facilitator Defendants knowingly benefited financially from participation in a venture which they knew or should have known was engaged in the acts set forth in ¶¶ 217–218, *supra*.

### G.   Alternatively, Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor by violating 18 U.S.C. §§ 1589 (2003), 1592 (2003), and 1594(a) (2003 (18 U.S.C. § 1590 (2003))

220.    Alternatively, in violation of 18 U.S.C. § 1590 (2003), and in addition to the violations of 18 U.S.C. § 1589 (2003) as set forth above, Recruiter Defendants knowingly recruited, transported, harbored and/or obtained Plaintiffs and other Class Members for labor or services in furtherance of the following violations of Title 18, Chapter 77 of the U.S. Code:

a.    Removing, confiscating, or possessing Plaintiffs' and other Class Members' passports and other immigration documents in the course of, or with the intent to violate 18 U.S.C. §§ 1589 (2003) and 1590 (2003), in violation of 18 U.S.C. § 1592(a) (2003); and

b.    Attempting to violate 18 U.S.C. §§ 1589 (2003) and 1590 (2003), in violation of 18 U.S.C. § 1594(a) (2003).

221.    Alternatively, in violation of 18 U.S.C. § 1590 (2003), and in addition to the violations of 18 U.S.C. § 1589 (2003) as set forth above, Legal Facilitator Defendants knowingly recruited, transported, harbored and/or obtained Plaintiffs and other Class Members for labor or services in furtherance of Recruiter

Complaint

Defendants' and Legal Facilitator Defendants' violations of the following provisions of Title 18, Chapter 77 of the U.S. Code:   18 U.S.C. §§ 1589 (2003); 1590 (2003), 1594(a) (2003).

### H.   **Damages**

222.   As a proximate result of the conduct of Recruiter Defendants and Legal Facilitator Defendants, Plaintiffs and other Class Members have suffered injuries to their persons, businesses, and property, and other damages.

223.   Plaintiffs and other Class Members are entitled to recover compensatory and punitive damages in an amount to be proven at trial, including attorneys' fees.

### SECOND CLAIM FOR RELIEF
RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
18 U.S.C. § 1962(c) and 18 U.S.C.§ 1962(d)
*Louisiana Teacher Class versus Recruiter Defendants and Legal Facilitator Defendants;*
*EBRPSS Teacher Subclass versus all RICO Defendants*

224.   Plaintiffs re–allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

225.   Plaintiffs' and other Class Members' claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 ("RICO"), are brought against the Recruiter Defendants and the Legal Facilitator Defendants. EBRPSS Teacher Plaintiffs' and other EBRPSS Teacher Subclass Members' claims under RICO are brought against all RICO Defendants.

226.   Plaintiffs and other Class Members are "persons" with standing to sue within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).   EBRPSS Teacher

70

Plaintiffs and other EBRPSS Subclass Members are likewise "persons" with standing to sue within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

227.   Each Recruiter Defendant is a "RICO person" within the meaning of 18 U.S.C. § 1963(1) because each such defendant is an individual or entity capable of holding a legal or beneficial interest in property.

228.   Each Individual Employer Defendant is a "RICO person" within the meaning of 18 U.S.C. § 1963(1) because each such defendant is an individual capable of holding a legal or beneficial interest in property.

229.   Each Legal Facilitator Defendant is a "RICO person" within the meaning of § 1963(1) because each such defendant is an individual or entity capable of holding a legal or beneficial interest in property.

**A.    The RICO Enterprise**

230.   RICO Defendants, together with Defendant EBRPSS, constitute an association-in-fact, and therefore an enterprise within the meaning of 18 U.S.C. § 1961(4).   Such RICO Enterprise is an ongoing business relationship with the common purposes of:

        a.    Recruiting, transporting, providing, processing, and obtaining Filipino teachers to work at schools in Louisiana;

        b.    Providing and maintaining a consistent and acquiescent labor force for Employer Defendants and the non-defendant Louisiana School Districts; and

        c.    Soliciting and collecting funds from Filipino nationals in connection with procuring H-1B visas and opportunities for employment with

Employer Defendants and the non-Defendant Louisiana School Districts.

231.   The RICO Enterprise is engaged in interstate commerce in that its activities and transactions relating to the international and interstate movement of workers through the procuring of H-1B visas affect interstate commerce, and frequently require travel and communications across state and international lines.

232.   The members of the RICO Enterprise function as a continuing unit.

233.   RICO Defendants have violated 18 U.S.C. § 1962(c) because they are associated with an enterprise (the association-in-fact of all the Defendants) engaged in, or the activities which affect, interstate commerce and have, directly or indirectly, conducted or participated in the conduct of an enterprise's affairs through a pattern of racketeering activity.

234.   RICO Defendants have violated 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c).

235.   Specifically, RICO Defendants conducted or participated in and/or conspired to conduct the affairs of the RICO Enterprise by engaging in the following predicate acts of racketeering activity under 18 U.S.C. § 1961(1):

    a.    Forced labor in violation of 18 U.S.C. § 1589;

    b.    Trafficking persons with respect to forced labor in violation of 18 U.S.C § 1590;

    c.    Unlawful document-related practices in furtherance of trafficking in violation of 18 U.S.C § 1592(a);

    d.    Mail fraud to further their unlawful scheme in violation of 18 U.S.C. § 1341;

e.      Wire fraud to further their unlawful scheme in violation of 18 U.S.C. § 1343; and/or

f.      Extortion as defined in Cal. Penal. Code § 518.

236.   Upon information and belief, RICO Defendants utilized the telephone, facsimile, postal system, and/or e-mail of the United States to organize, plan, and coordinate the RICO Enterprise.

**B.      Predicate Acts**

Forced Labor: 18 U.S.C. § 1589

237.   All RICO Defendants conducted or participated in the affairs of the RICO Enterprise through a pattern of willfully, knowingly, and intentionally committing and/or conspiring to commit multiple predicate acts of forced labor in violation of 18 U.S.C. § 1589, and as set forth the First Claim for Relief, ¶¶ 206–208, *supra*.

Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor: 18 U.S.C. § 1590

238.   All RICO Defendants conducted or participated in the affairs of the RICO Enterprise through a pattern of willfully, knowingly, and intentionally committing and/or conspiring to commit multiple predicate acts of trafficking with respect to peonage, slavery, involuntary servitude, or forced labor in violation of 18 U.S.C. § 1590, and as set forth in the First Claim for Relief, ¶¶ 209–211, *supra*.

Document Servitude: 18 U.S.C. § 1592

239.   Recruiter Defendants conducted or participated in the affairs of the RICO Enterprise through a pattern of willfully, knowingly, and intentionally

73

Complaint

committing and/or conspiring to commit multiple predicate acts of document servitude in violation of 18 U.S.C. § 1592, and as set forth in the First Claim for Relief, ¶¶ 212–213, *supra*.

<u>Mail and Wire Fraud: 18 U.S.C. §§ 1341 and 1343</u>

240.    As set forth in the preceding paragraphs, Recruiter Defendants conducted or participated in the affairs of the RICO Enterprise through a pattern of omitting and concealing, and/or conspiring to omit or conceal material information about the extent of recruitment fees as part of a scheme to defraud Plaintiffs and other Class Members.   Recruiter Defendants intended to induce the false belief about the limited extent of the recruitment fees to Recruiter Defendants' advantage and to the severe prejudice of Plaintiffs and other Class Members.

241.    As set forth in the preceding paragraphs, Recruiter Defendants conducted or participated in the affairs of the RICO Enterprise through a pattern of using the U.S. mails and wire communications, including communications via telephone, fax, internet and/or email, on numerous occasions to further this fraudulent scheme.

242.    These willful, knowing, and intentional acts constitute mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

<u>Extortion in violation of Cal. Pen. Code § 518</u>

243.    Upon information and belief, Recruiter Defendants conducted or participated in the affairs of the RICO Enterprise through a pattern of threatening Plaintiffs and other Class Members with deportation and financial ruin in violation of Cal. Penal Code §§ 518–19 if they did not pay the fees required under the illegal

Complaint

PARS Contract, Universal Philippine Contract, and Universal California Contract.

244.   Plaintiffs and other Class Members feared financial harm to themselves and their families and feared deportation if they did not pay the fees required under the illegal PARS Contract, Universal Philippine Contract, and Universal California Contract.

245.   Recruiter Defendants' deployment of threats to instill fear in Plaintiffs and other Class Members and to secure payment of illegal fees violates Cal. Pen. Code § 518.

### C.   Pattern of Related Racketeering Acts

246.   RICO Defendants have engaged in the racketeering activity described in this Claim repeatedly starting in 2007 and continuing through the present with respect to more than 350 Filipino teachers.

247.   Upon information and belief, RICO Defendants' racketeering activity conducted through the RICO Enterprise, continues to the present day.

248.   RICO Defendants, through the RICO Enterprise, rely on the racketeering acts described in this Complaint to conduct the regular business activities of the RICO Enterprise.

249.   RICO Defendants' racketeering acts have similar purposes:  to profit from the fraudulent recruitment and forced labor of Plaintiffs and other Class Members, and to recruit, obtain, provide and maintain a consistent, submissive, and compliant Filipino H-1B labor force at the EBRPSS and the non-defendant Louisiana School Districts.

250.   RICO Defendants' acts have yielded similar results and caused similar

injuries to Plaintiffs and other Class Members: Plaintiffs and other Class Members have, *inter alia*, all been subjected to exorbitant and illegal fees; and have been forced to take on debt at usurious interest rates as a result of RICO Defendants' unlawful conduct.

251. As set forth in the preceding paragraphs, the racketeering acts have similar participants: all RICO Defendants.

252. As set forth in the preceding paragraphs, RICO Defendants, through the RICO Enterprise, directed their racketeering activities at similar victims: Filipino teachers recruited by Recruiter Defendants to work as teachers in Louisiana public schools.

253. RICO Defendants' acts have similar methods of commission, such as common recruitment tactics, relatively consistent practices with respect to collecting payments from Plaintiffs and other Class Members, and use of similar employment practices and policies with respect to Plaintiffs and other Class Members.

**D.    Injury**

254. As a direct and proximate result of Recruiter Defendants' and Legal Facilitator Defendants' willful, knowing, and intentional acts discussed in this section, Plaintiffs and other Class Members have suffered injuries to their property and/or business: Plaintiffs and other Class Members have, *inter alia*, all been subjected to exorbitant and illegal fees; and have been forced to take on debt at usurious interest rates as a result of Recruiter Defendants' and Legal Facilitator Defendants' unlawful conduct. Additionally, as a direct and proximate result of all

RICO Defendants' willful, knowing, and intentional acts discussed in this section, EBRPSS Teacher Plaintiffs and other EBRPSS Teacher Subclass Members have suffered injuries to their property and/or business as specified above.

255.   Plaintiffs and other Class Members are entitled to an award of damages in an amount to be determined at trial, including treble damages and attorneys' fees and costs associated with this action.

## THIRD CLAIM FOR RELIEF
EMPLOYMENT AGENCY, EMPLOYMENT COUNSELING, AND JOB LISTING SERVICES ACT
Cal. Civ. Code § 1812.508
*Louisiana Teacher Class versus*
*Recruiter Defendants*

256.   Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

257.   Recruiter Defendants offered, for a fee, to secure employment for Plaintiffs and other Class Members.

258.   Because Recruiter Defendants offered to procure employment for a fee for Plaintiffs and other Class Members, Recruiter Defendants are "employment agencies" under Cal. Civ. Code § 1812.501.

259.   Plaintiffs and other Class Members are "jobseekers" under Cal. Civ. Code § 1812.501, as they were seeking employment through the use of Recruiter Defendants' services.

260.   Recruiter Defendants willfully misrepresented the amount that Plaintiffs and other Class Members would have to pay to secure jobs in the United States.

261.   Upon information and belief, Recruiter Defendants willfully misrepresented the amount of pay that certain Plaintiffs and other Class Members would receive for the teaching jobs for which they were recruited.

262.   Upon information and belief, Recruiter Defendants willfully misrepresented that Plaintiffs and other Class Members would be guaranteed jobs in the United States.

263.   Recruiter Defendants violated Cal. Civ. Code § 1812.508(a) by willfully making, or causing to be made, false, misleading, and deceptive representations concerning the services that the agencies would provide to Plaintiffs and other Class Members as they sought jobs.

264.   Pursuant to Cal. Civ. Code §§ 1812.523(c) and (d), the Court should (a) declare that all contracts between Plaintiffs and other Class Members on the one hand and Universal and/or PARS on the other are null and void; (b) require that the Recruiter Defendants refund all sums paid pursuant to those contracts; (c) award treble and punitive damages; and (d) award attorney's fees and costs.

## FOURTH CLAIM FOR RELIEF
UNFAIR BUSINESS PRACTICES
Cal. Business and Professional Code § 17200, *et seq.*
*Louisiana Teacher Class versus Recruiter Defendants*

265.   Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set for herein.

266.   Plaintiffs and other Class Members paid Recruiter Defendants fees in respect of securing employment as teachers in the United States.

267.   Recruiter Defendants misrepresented the amount of fees required for

Complaint

1   the services provided.

2   268.   The Recruiter Defendants' practice was to misrepresent the cost of

3   procuring the employment opportunities they provided.

4

5   269.   The Recruiter Defendants' practice was to threaten Plaintiffs and

6   other Class Members with financial harm to extract fees from Plaintiffs and other

7   Class Members.

8   270.   Recruiter Defendants profited from Plaintiffs' and other Class

9   Members' reliance on the Recruiter Defendants' misrepresentations.

10

11   271.   Recruiter Defendants made, or caused to be made, false, misleading,

12   and deceptive representations concerning the services that the agencies would

13   provide to jobseeker Plaintiffs and other Class Members.

14

15   272.   Recruiter Defendants threatened Plaintiffs and other Class Members

16   with deportation and financial ruin if they did not pay the fees required under the

17   illegal PARS Contract, the illegal Universal Philippine Contract, and the illegal

18   Universal California Contract.

19

20   273.   Recruiter Defendants' practice of recruiting teachers though fraud and

21   misrepresentation for profit directly caused financial harm to Plaintiffs and other

22   Class Members.

23

24   274.   Recruiter Defendants violated Cal. Business and Professions Code

25   § 17200 by requiring Plaintiffs and other Class Members to enter into contracts by

26   means of the unlawful business practices described above.

27   275.   The Court should enjoin Recruiter Defendants from enforcing

28   contracts entered into as a result of the unlawful business practices described herein.

# FIFTH CLAIM FOR RELIEF
## FRAUD
### Cal. Civ. Code § 1709
*Louisiana Teacher Class versus*
*Recruiter Defendants*

276.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

277.    Recruiter Defendants falsely misrepresented to Plaintiffs and other Class Members that they could secure teaching positions in the United States by paying the First Recruitment Fee.   Recruiter Defendants purposefully withheld information regarding the Undisclosed Second Recruitment Fee from Plaintiffs and other Class Members before securing the non-refundable First Recruitment Fee as described above.   The time, place and content of Recruiter Defendants' misrepresentations is set forth in ¶¶ 183–187, *supra*.

278.    The representations made by the Recruiter Defendants were false. Once the Recruiter Defendants received the First Recruitment Fee, they charged significant additional fees before providing Plaintiffs and other Class Members any opportunity to teach in the United States.   Recruiter Defendants also did not secure job opportunities for all Class Members prior to their arrival in the United States.

279.    Recruiter Defendants made these false material representations with knowledge of their falsity and with intent to defraud Plaintiffs and other Class Members.   Recruiter Defendants were aware that they would charge Plaintiffs and other Class Members additional fees, but withheld such information until Plaintiffs and other Class Members were already burdened with substantial debt to pay the First Recruitment Fee.   Upon information and belief, Recruiter Defendants also

80

knew that a number of Class Members would have to attend job fairs upon arrival in Louisiana and would not have secure offers of employment, even after paying enormous fees to the Recruiter Defendants.

280.   Plaintiffs and other Class Members were unaware of the falsity of Recruiter Defendants' representations.   In reliance on these representations, Plaintiffs and other Class Members paid the First Recruitment Fee.  Once Plaintiffs and other Class Members learned of the additional fees, they had already incurred substantial debt and could not afford to lose the money they had already invested in the venture.  Had Recruiter Defendants properly disclosed the enormous additional fees they intended to charge, Plaintiffs and other Class Members would not have participated in the recruitment process on those terms.

281.   As a proximate result of Recruiter Defendants' fraud, Plaintiffs and other Class Members suffered severe financial loss and other damages in an amount to be determined at trial.

282.   Recruiter Defendants' conduct was willful and malicious.  Plaintiffs and other Class Members are therefore entitled to punitive damages in an amount sufficient to deter similar conduct in the future.

## SIXTH CLAIM FOR RELIEF
### DECLARATORY AND EQUITABLE RELIEF
### VOIDING PARS AND UNIVERSAL CONTRACTS
### BECAUSE CONTRACTS WERE A RESULT OF UNDUE INFLUENCE
*Louisiana Teacher Class versus*
*Defendant PARS and Defendant Universal*

283.   Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

284.   The fees mandated by the contracts entered into between Class Members and Defendant Universal and Class Members and Defendant PARS are void and unenforceable because Class Members executed the contracts as a result of undue influence and coercion, including, *inter alia*:

      a.   The contracts were presented to Plaintiffs and other Class Members without prior notice;

      b.   Plaintiffs and other Class Members were forced to sign the contracts immediately, without an opportunity to deliberate or reflect on the terms of the contract, or to consult third parties about the terms of the contracts;

      c.   Plaintiffs and other Class Members were threatened that if they refused to sign the contracts, they would not be allowed to go to the United States; and

      d.   Plaintiffs and other Class Members were under severe threat of serious financial loss because of the substantial debt they had incurred to pay the First Recruitment Fee, described in ¶¶ 102–110, *supra*, which they had incurred before they were made aware of the terms of the contracts.

285.   The fees mandated by the contracts entered into between Class Members and Defendant Universal and Class Members and Defendant PARS are void and unenforceable because they were the result of undue influence and coercion.

286.   Defendant Universal and Defendant PARS were unjustly enriched at the expense of Plaintiffs and other Class Members' when Defendant Universal and Defendant PARS collected invalid fees on their contracts with Plaintiffs and other

1    Class Members.

2        287.   Defendant Universal continues to attempt to collect invalid fees on its

3    contracts with Class Members.

4
5        288.   Plaintiffs and other Class Members are entitled to a declaration that

6    the fee provisions of the contracts entered into between Class Members and

7    Defendant Universal and Class Members and Defendant PARS are void and

8    unenforceable.
9
10       289.   Plaintiffs and other Class Members are entitled to restitution of the

11   amounts unjustly obtained and retained by Defendant Universal and Defendant

12   PARS, in an amount to be proven at trial.

13
14       290.   Plaintiffs and other Class Members are entitled to permanent

15   injunctive relief prohibiting Defendant Universal from seeking to collect any further

16   fees from Class Members.

17                        **SEVENTH CLAIM FOR RELIEF**
18                    DECLARATORY AND EQUITABLE RELIEF
                     VOIDING PARS AND UNIVERSAL CONTRACTS
19                       BECAUSE CONTRACTS ARE ILLEGAL
                          *Louisiana Teacher Class versus*
20                     *Defendant PARS and Defendant Universal*
21
22       291.   Plaintiffs re-allege and incorporate by reference each and every

23   allegation contained in the preceding paragraphs as if fully set forth herein.

24       292.   The contracts entered into between Class Members and Defendant

25   PARS and Class Members and Defendant Universal are contrary to the laws
26
27   regulating recruitment of Philippine workers for overseas employment, as described

28   in ¶¶ 78–82, *supra*, because the contracts:

                                      83

a.     Seek collection of more than one month's expected U.S. salary; and

b.     Seek collection of fees that are not authorized under the POEA rules and regulations.

293.   The contracts entered into between Class Members and Defendant PARS is contrary to the laws regulating H-1B visas, as described in ¶¶ 83–85, *supra*, because the contracts required Class Member to pay fees that are the obligation of the employer, not the employee.

294.   The contracts entered into between Class Members and Defendant PARS and Class Members and Defendant Universal are contrary to the laws regulating employment services providers in Louisiana, as described in ¶¶ 86–90, *supra*, because the contracts:

a.     Seek collection of fees on behalf of an employment service that was not licensed with the Louisiana Workforce Commission;

b.     Seek collection of fees on contracts that were not pre-approved by the Louisiana Workforce Commission;

c.     Seek collection of fees outside of the Class Member's first year of employment; and

d.     Seek collection of fees prior to the applicant's actual commencement of work.

295.   The fees mandated by the contracts entered into between Class Members and Defendant Universal and Class Members and Defendant PARS are void and unenforceable because they are contrary to law, as described above.

84

296.   Defendant Universal and Defendant PARS were unjustly enriched at the expense of Plaintiffs and other Class Members' when Defendant Universal and Defendant PARS collected invalid fees pursuant to the contracts with Plaintiffs and other Class Members.

297.   Defendant Universal continues to attempt to collect invalid fees on its contracts with Class Members.

298.   Plaintiffs and other Class Members are entitled to a declaration that the fee provisions of the contracts entered into between Class Members and Defendant Universal and Class Members and Defendant PARS are void and unenforceable.

299.   Plaintiffs and other Class Members are entitled to restitution of the fees unjustly obtained and retained by Defendant Universal and Defendant PARS, in an amount to be proven at trial.

300.   Plaintiffs and other Class Members are entitled to permanent injunctive relief prohibiting Defendant Universal from seeking to collect any further fees from Class Members.

**EIGHTH CLAIM FOR RELIEF**
DECLARATORY AND EQUITABLE RELIEF
REGARDING ILLEGAL FEES COLLECTED WITHOUT A CONTRACT
*Louisiana Teacher Class versus*
*Defendant PARS and Defendant Universal*

301.   Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

302.   Plaintiffs and other Class Members were charged certain fees by Recruiter Defendants that do not appear in either the contract entered into with

85

1    PARS or the contract entered into with Universal.  These fees include:

2              a.      The First Recruitment Fee, described in ¶¶ 102–110, *supra,*

3    and

4

5              b.      Cost of one-way airfare to the United States.

6        303.   Collection of both the First Recruitment Fee and the cost of airfare is

7    prohibited under the laws regulating recruitment of Philippine workers for overseas

8    employment, as described in ¶¶ 78–82, *supra.*

9

10       304.   Collection of the First Recruitment Fee is prohibited under the laws

11   regulating employment services providers in Louisiana, as described in ¶¶ 86–90,

12   *supra.*

13

14       305.   Defendant Universal and Defendant PARS have been unjustly

15   enriched by collection of these illegal fees.

16       306.   Plaintiffs and other Class Members are entitled to a declaration that

17   the First Recruitment Fee and airfare charge were illegal.

18

19       307.   Plaintiffs and other Class Members are entitled to restitution of the

20   fees unjustly obtained and retained by Defendant Universal and Defendant PARS,

21   in an amount to be proven at trial.

22                          **NINTH CLAIM FOR RELIEF**
                            BREACH OF FIDUCIARY DUTY
23               State Common Law and Cal. Civ. Code § 3294
24                       *Louisiana Teacher Class versus*
                         *Legal Facilitator Defendants*
25

26       308.   Plaintiffs re-allege and incorporate by reference each and every

27   allegation contained in the preceding paragraphs as if fully set forth herein.

28

         309.   Legal Facilitator Defendants owed a fiduciary duty to Plaintiffs and

                                     86

other Class Members, based upon the attorney-client relationship Legal Facilitator Defendants established with Plaintiffs and other Class Members.

310.    Legal Facilitator Defendants breached the fiduciary duty owed to each and every Plaintiffs and other Class Members, to their substantial detriment, by:

a.    Extracting and/or assisting Recruiter Defendants to extract fees from Plaintiffs and other Class Members, which they knew or should have known were the responsibility of EBRPSS and the non-defendant Louisiana School Districts;

b.    Procuring one-year rather than three-year visas for Plaintiffs and other Class Members; and

c.    Otherwise participating in and/or facilitating the trafficking scheme as described in ¶¶ 165 to 173, *supra*.

311.    Legal Facilitator Defendants' conduct was willful and malicious. As detailed in ¶ 310, *supra*, Legal Facilitator Defendants' participation in the trafficking scheme was willful and done in conscious disregard of the legal rights of Plaintiffs and other Class Members, and was intended to cause injury to Plaintiffs and other Class Members.

312.    Legal Facilitator Defendants' conduct proximately caused financial harm to Plaintiffs and other Class Members.

313.    Plaintiffs and other Class Members are entitled to an award of compensatory damages, and an award of punitive damages, in an amount to be determined at trial.

**TENTH CLAIM FOR RELIEF**
LEGAL MALPRACTICE
State Common Law and Cal. Civ. Code § 3294
*Louisiana Teacher Class versus*
*Legal Facilitator Defendants*

314.   Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

315.   Legal Facilitator Defendants were attorneys for Plaintiffs and other Class Members, as Legal Facilitator Defendants acknowledged in G-28 forms filed with the U.S. government.

316.   As counsel for Plaintiffs and other Class Members, Legal Facilitator Defendants owed a duty to Plaintiffs and other Class Members to use such skill, prudence, and diligence as members of their profession commonly possess and exercise.

317.   Legal Facilitator Defendants breached this duty, to the substantial detriment of Plaintiffs and other Class Members, by

a.   Extracting and/or assisting Recruiter Defendants to extract fees from Plaintiffs and other Class Members, which they knew or should have known were the responsibility of EBRPSS and the non-defendant Louisiana School Districts;

b.   Procuring one-year rather than three-year visas for Plaintiffs and other Class Members; and

c.   Otherwise participating in and/or facilitating the trafficking scheme described in ¶¶ 165 to 173, *supra*, to the severe prejudice of Plaintiffs and other Class Members.

318.   Legal Facilitator Defendants' conduct was willful and malicious. As detailed in ¶ 317, *supra*, Legal Facilitator Defendants' participation in the trafficking scheme was willful and done in conscious disregard of the legal rights of Plaintiffs and other Class Members, and was intended to cause injury to Plaintiffs and other Class Members.

319.   Legal Facilitator Defendants' conduct proximately caused financial harm to Plaintiffs and other Class Members.

320.   Plaintiffs and other Class Members are entitled to an award of damages, and an award of punitive damages, in an amount to be determined at trial.

### ELEVENTH CLAIM FOR RELIEF
THE WILLIAM WILBERFORCE TRAFFICKING VICTIMS PROTECTION
REAUTHORIZATION ACT OF 2008 (18 U.S.C. § 1595)
*EBRPSS Teacher Subclass versus*
*Employer Defendants*

321.   Plaintiffs and other Class Members re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

### A.    Authority for a Civil Action

322.   Plaintiffs and other Class Members are victims of the following violations of Title 18, Chapter 77 of the United States Code:   18 U.S.C. §§ 1589, 1590, 1592, and 1594(a) and (b), as set forth in the First Claim for Relief.

323.   As set forth in 18 U.S.C. § 1595(a), Plaintiffs and other Class Members may bring a civil action against the perpetrators of these violations and "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has

1   engaged in a violation" of these provisions.

2       324.   Employer Defendants were perpetrators of the violations of 18 U.S.C.

3   §§ 1589, 1590, 1592, 1594(a), and 1594(b).

4

5       325.   Employer Defendants have knowingly benefited, and continue to

6   knowingly benefit financially or by receiving something of value from participation

7   in a venture which Employer Defendants knew or should have known engaged in

8   violations of 18 U.S.C. §§ 1589, 1590, 1592, 1594(a), and/or 1594(b).

9

10      326.   EBRPSS Teacher Plaintiffs bring this claim on behalf of themselves

11  and the EBRPSS Teacher Subclass against Employer Defendants.

12  **B.   Forced Labor (18 U.S.C. § 1589)**

13      327.   As set forth in ¶¶ 176–187, *supra*, Employer Defendants knowingly

14  aided and abetted Recruiter Defendants' and Legal Facilitator Defendants' efforts to

15  provide and obtain the labor of Plaintiffs and other Class Members by means of

16  abuse and threatened abuse of law or legal process and by means of a scheme,

17  pattern, or plan intended to cause the Plaintiffs and other Class Members to believe

18  that, if he or she did not perform the labor, he or she would suffer serious harm.

19

20      328.   Employer Defendants have knowingly benefited and continue to

21  knowingly benefit financially and by receiving the value of EBRPSS Teacher

22  Plaintiffs' and other EBRPSS Teacher Subclass members' labor from participation

23  in a venture which Employer Defendants knew or should have known was engaged

24  in the acts set forth in ¶ 327, *supra*, and in the First Claim for Relief, ¶¶ 206–207,

25  *supra*.

26

27

28

**C.     Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor (18 U.S.C. § 1590)**

329.    As set forth in ¶¶ 176–187, *supra*, Employer Defendants knowingly aided and abetted Recruiter Defendants' efforts to recruit and transport Plaintiffs and other Class Members for labor and services in violation of 18 U.S.C. §§ 1589, 1592, 1594(a), and 1594(b).

330.    Employer Defendants have knowingly benefited and continue to knowingly benefit financially and/or by receiving the value of EBRPSS Teacher Plaintiffs' and other EBRPSS Teacher Subclass members' labor from participation in a venture which the Employer Defendants knew or should have known was engaged in the acts set forth in ¶ 329, *supra*, and the First Claim for Relief, ¶¶ 209–210, *supra*.

**D.     Unlawful Conduct with Respect to Documents in Furtherance of Trafficking, Peonage, Slavery, Involuntary Servitude, or Forced Labor (18 U.S.C. § 1592)**

331.    Employer Defendants have knowingly benefited and continue to knowingly benefit financially and/or by receiving the value of EBRPSS Teacher Plaintiffs' and other EBRPSS Teacher Subclass members' labor from participation in a venture which Employer Defendants knew or should have known was engaged in the acts set forth in the First Claim for Relief, ¶ 212, *supra*.

**E.     Attempt to Violate 18 U.S.C. §§ 1589, and 1590 (18 U.S.C. § 1594(a))**

332.    As set forth in ¶¶ 176–187, *supra*, Employer Defendants attempted to violate 18 U.S.C. §§ 1589 and 1590 in violation of 18 U.S.C. § 1594(a).

333.    Employer Defendants have knowingly benefited and continue to

knowingly benefit financially and/or by receiving the value of EBRPSS Teacher Plaintiffs' and other EBRPSS Teacher Subclass members' labor from participation in a venture which the Employer Defendants knew or should have known was engaged in the acts set forth in ¶ 332, *supra*, and the First Claim for Relief, ¶¶ 214–215, *supra*.

**F.**   **Conspiracy to Violate 18 U.S.C. §§ 1589, 1590, and 1592 (18 U.S.C. § 1594(b))**

334.   As set forth in ¶¶ 176–187, *supra*, Employer Defendants conspired with Recruiter Defendants and Legal Facilitator Defendants to violate 18 U.S.C. §§ 1589 and 1590 in violation of  18 U.S.C. § 1594(b).

335.   Employer Defendants have knowingly benefited and continue to knowingly benefit financially and/or by receiving the value of EBRPSS Teacher Plaintiffs' and other EBRPSS Teacher Subclass members' labor from participation in a venture which Employer Defendants knew or should have known was engaged in the acts set forth in ¶ 334, *supra*, and in the First Claim for Relief, ¶¶ 217–218, *supra*.

**G.**   **Alternatively, Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor by violating 18 U.S.C. §§ 1589 (2003) and 1594(a) (2003 (18 U.S.C. § 1590 (2003))**

336.   Alternatively, in violation of 18 U.S.C. § 1590 (2003), and in addition to the violations of 18 U.S.C. § 1589 (2003) as set forth above, Employer Defendants knowingly aided and abetted the efforts of Recruiter Defendants and Legal Facilitator Defendants to recruit, transport, harbor, and/or obtain Plaintiffs and other Class Members for labor or services in furtherance of Recruiter

1   Defendants' violations of the following provisions of Title 18, Chapter 77 of the

2   U.S. Code:  18 U.S.C. §§ 1589 (2003); 1590 (2003), 1594(a) (2003).

3       **H.**     **Damages**

4

5       337.   As a proximate result of the conduct of Employer Defendants,

6   EBRPSS Teacher Plaintiffs and other EBRPSS Teacher Subclass members have

7   suffered injuries to their persons, businesses, and property, and other damages.

8
        338.   EBRPSS Teacher Plaintiffs and other EBRPSS Teacher Subclass
9
10  members are entitled to recover compensatory and punitive damages in an amount

11  to be proven at trial, including attorneys' fees.

12              **TWELFTH CLAIM FOR RELIEF**
                        NEGLIGENT HIRING
13                       State Common Law
14      *EBRPSS Teacher Subclass versus Defendant EBRPSS*

15      339.   Plaintiffs re-allege and incorporate by reference each and every
16
17  allegation contained in the preceding paragraphs as if fully set forth herein.

18      340.   Defendant EBRPSS hired Recruiter Defendants to recruit teachers

19  from the Philippines.

20
        341.   During the relevant time period, Defendant EBRPSS required that any
21
22  job applicant from the Philippines who wished to apply to work for EBRPSS must

23  do so by utilizing the services of Recruiter Defendants.

24      342.   Defendant EBRPSS knew or had reason to believe that Recruiter
25
    Defendants, and particularly Defendant Lourdes Navarro and Defendant Universal,
26
27  were unfit for the tasks for which they were hired.

28      343.   Alternatively, Defendant EBRPSS had a reasonable duty of care to

                                    93

inquire into the fitness of Recruiter Defendants to perform their function.

344.   Defendant EBRPSS breached the duty to inquire into the fitness of Recruiter Defendants.

345.   Defendant EBRPSS's negligence, combined with its insistence that any applicant from the Philippines must utilize Recruiter Defendants' services, caused harm to the EBRPSS Teacher Plaintiffs and other EBRPSS Teacher Subclass members by subjecting them to exorbitant fees and resulting monetary loss as a part of Recruiter Defendants' trafficking scheme.

346.   Defendant EBRPSS's negligence proximately caused the harm suffered by the EBRPSS Teacher Plaintiffs and other EBRPSS Subclass members.

347.   The EBRPSS Teacher Plaintiffs and other EBRPSS Subclass members are entitled to an award of damages in an amount to be determined at trial.

## VII.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the following relief:

a.     Certifying the First through Tenth Claims for Relief in this action as class claims pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Louisiana Teacher Class;

b.     Designating Plaintiffs as class representatives of the Louisiana Teacher Class pursuant to Federal Rule of Civil Procedure 23, and designating Plaintiffs' counsel as counsel for the Louisiana Teacher Class;

c.     Certifying the Second, Eleventh and Twelfth Claims for Relief in this action as subclass claims pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the EBRPSS Teacher Subclass;

1    d.    Designating EBRPSS Teacher Plaintiffs as representatives of the

2   EBRPSS Teacher Subclass pursuant to Federal Rule of Civil Procedure 23, and

3   designating EBRPSS Teacher Plaintiffs' counsel as counsel for the EBRPSS

4

5   Teacher Subclass;

6    e.    Declaratory and injunctive relief;

7    f.    Compensatory damages;

8
     g.    Punitive damages;
9

10    h.    Treble damages as authorized by RICO, 18 U.S.C. § 1964(c) and Cal.

11   Civ. Code § 1812.523(d);

12    i.    An award of prevailing party costs, including attorney fees; and

13
     j.    Such other relief as the Court deems just and appropriate.
14

15

16   Respectfully submitted this 5th day of August, 2010

17

18

19   Lawrence Rosenzweig
20   LAWRENCE ROSENZWEIG, PC
     2730 Wilshire Boulevard, Suite 425
21   Santa Monica, California  90403
22   *On behalf of Attorneys for Plaintiffs*

23

24

25

26

27

28

95

Complaint

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>NUNAG-TAÑEDO, Mairi, et al. on behalf of themselves and other similarly situated individuals,<br>[SEE ATTACHMENT FOR ADDITIONAL NAMED PLAINTIFFS]<br><br>East Baton Rouge Parish, Louisiana | DEFENDANTS<br>EAST BATON ROUGE PARISH SCHOOL BOARD, et al.<br><br>[SEE ATTACHMENT FOR ADDITIONAL DEFENDANTS]<br><br>East Baton Rouge Parish, Louisiana |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>Lawrence Rosenzweig & Brent Rosenzweig, LAWRENCE ROSENZWEIG, PC<br>2730 Wilshire Blvd., Suite 425, Santa Monica, CA 90403 -- T: (310) 453-0348<br>[SEE ATTACHMENT FOR ADDITIONAL ATTORNEYS] | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes   ☐ No   ☒ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
18 U.S.C. § 1595(a) (civil trafficking), 18 U.S.C. § 1964(c) (RICO), and 28 U.S.C. § 1332(d) (Class Action)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☒ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number:   SACV10-1172

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑ No   ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
   ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
   ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
   ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | East Baton Rouge Parish, Louisiana |
|  | Caddo Parish, Louisiana |
|  | St. Bernard Parish, Louisiana |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County, California | East Baton Rouge Parish, Louisiana |
| Orange County, California | Quezon City, Manila, Philippines |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County, California | East Baton Rouge Parish, Louisiana |
|  | Quezon City, Manila, Philippines |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _~signature~_     Date  8/3/10

   Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors insurance benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

## ATTACHMENT

### 1(a):  Additional Named Plaintiffs:

CRUZ, INGRID – East Baton Rouge Parish, Louisiana

ESCUADRA, DONNABEL – East Baton Rouge Parish, Louisiana

PASCUAL, ROLANDO – Caddo Parish, Louisiana

MARI, TOMASA – St. Bernard Parish, Louisiana

### 1(a):  Additional Defendants:

PLACIDE , CHARLOTTE D. – East Baton Rouge Parish, Louisiana

WILLIAMS, MILLIE – East Baton Rouge Parish, Louisiana

DURAN SWINFORD, ELIZABETH – East Baton Rouge Parish, Louisiana

UNIVERSAL PLACEMENT INTERNATIONAL, INC. Los Angeles County, California

NAVARRO, LOURDES "LULU" – Los Angeles County, California

NAVARRO, HOTHELLO "JACK" – Los Angeles County, California

PARS INTERNATIONAL PLACEMENT AGENCY – Quezon City, Manila, Philippines

VILLARBA, EMILIO V. – Quezon City, Manila, Philippines

SILVERMAN, ROBERT B. – Orange County, California

SILVERMAN & ASSOCIATES – Orange County, California

**1(b):  Plaintiffs' Attorneys:  Firm Name, Address and Telephone Number**

Daniel Werner (*pro hac vice admission pending*)
James M. Knoepp (*pro hac vice admission pending*)
Jennifer Tse (SBN 260764, *application for admission pending*)
IMMIGRANT JUSTICE PROJECT
SOUTHERN POVERTY LAW CENTER
233 Peachtree St. NE, Suite 2150
Atlanta, Georgia  30303
Telephone:  (404) 521-6700

Mary C. Bauer (*pro hac vice admission pending*)
Sam Brooke (*pro hac vice admission pending*)
Morris S. Dees (*pro hac vice admission pending*)
IMMIGRANT JUSTICE PROJECT
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, Alabama  36104
Telephone:  (334) 956-8200

Dennis B. Auerbach (*pro hac vice admission pending*)
Candice N. Plotkin (*pro hac vice admission pending*)
Jillian Willis (*pro hac vice admission pending*)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone:  (202) 662-6000

Susan P. Johnston (*pro hac vice admission pending*)
Pamela A. Carter (*pro hac vice admission pending*)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York  10018
Telephone:  (212) 841-1000

Dan McNeil (*pro hac vice admission pending*)
AMERICAN FEDERATION OF TEACHERS – LEGAL DEPARTMENT
555 New Jersey Ave., N.W.
Washington, DC  20001
Telephone:  (202) 393-6305

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Andrew Guilford and the assigned discovery Magistrate Judge is Marc Goldman.

The case number on all documents filed with the Court should read as follows:

## SACV10- 1172 AG (MLGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===============================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[_] **Western Division**
   **312 N. Spring St., Rm. G-8**
   **Los Angeles, CA 90012**

[X] **Southern Division**
   **411 West Fourth St., Rm. 1-053**
   **Santa Ana, CA 92701-4516**

[_] **Eastern Division**
   **3470 Twelfth St., Rm. 134**
   **Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Lawrence Rosenzweig (SBN 72443)
LRPCorp@aol.com
Brent Rosenzweig (SBN 219071)
Brent.Rosenzweig@gmail.com
LAWRENCE ROSENZWEIG, PC
2730 Wilshire Boulevard, Suite 425
Santa Monica, California 90403

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAIRI NUNAG-TAÑEDO, INGRID CRUZ, DONNABEL ESCUADRA, ROLANDO PASCUAL, and TOMASA MARI, on behalf of themselves and other similarly situated individuals, <br><br> PLAINTIFF(S) | CASE NUMBER <br><br> SACV10-1172-AG (MLGx) |
| EAST BATON ROUGE PARISH SCHOOL BOARD, CHARLOTTE D. PLACIDE, MILLIE WILLIAMS, ELIZABETH DURAN SWINFORD, UNIVERSAL PLACEMENT INTERNATIONAL, INC., LOURDES "LULU" NAVARRO, HOTHELLO "JACK" NAVARRO, PARS INTERNATIONAL PLACEMENT AGENCY, EMILIO V. VILLARBA, ROBERT B. SILVERMAN, and SILVERMAN & ASSOCIATES, <br><br> DEFENDANT(S). | SUMMONS |

TO:   DEFENDANT(S): East Baton Rouge Parish School Board, Charlotte D. Placide, Millie Williams, Elizabeth Duran Swinford, Universal Placement International, Inc., Lourdes "Lulu" Navarro, Hothello "Jack" Navarro, PARS International Placement Agency, Emilio V. Villarba, Robert B. Silverman, and Silverman & Associates

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, __Lawrence Rosenzweig_____, whose address is __2730 Wilshire Boulevard, Suite 425, Santa Monica, California 90403_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __ 5 AUG 2010__                     By: __SEANLYN DAVIS__

                                                                Deputy Clerk

                                                                (Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                              SUMMONS