Jennifer L. Tse SBN 260764
Jennifer.Tse@splcenter.org
IMMIGRANT JUSTICE PROJECT
SOUTHERN POVERTY LAW CENTER
233 Peachtree St. NE, Suite 2150
Atlanta, Georgia  30303
Telephone:   (404) 521-6700
Facsimile:   (404) 221-5857

*Attorney for Plaintiffs*
*Additional Co-Counsel on Subsequent Pages*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| MAIRI NUNAG-TAÑEDO, INGRID CRUZ, DONNABEL ESCUADRA, ROLANDO PASCUAL, and TOMASA MARI, on behalf of themselves and other similarly situated individuals,<br><br>        Plaintiffs,<br><br>v.<br><br>EAST BATON ROUGE PARISH SCHOOL BOARD, CHARLOTTE D. PLACIDE, MILLIE WILLIAMS, ELIZABETH DURAN SWINFORD, UNIVERSAL PLACEMENT INTERNATIONAL, INC., LOURDES "LULU" NAVARRO, HOTHELLO "JACK" NAVARRO, PARS INTERNATIONAL PLACEMENT AGENCY, EMILIO V. VILLARBA, ROBERT B. SILVERMAN, and SILVERMAN & ASSOCIATES,<br><br>        Defendants. | Civ.No. 10-01172-AG-MLG<br><br><br><br>**FIRST AMENDED COMPLAINT**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

1

*(Attorney listing continued from first page)*

Daniel Werner (*pro hac vice motion pending*)
Daniel.Werner@splcenter.org
James M. Knoepp (*pro hac vice motion pending*)
Jim.Knoepp@splcenter.org
IMMIGRANT JUSTICE PROJECT
SOUTHERN POVERTY LAW CENTER
233 Peachtree St. NE, Suite 2150
Atlanta, Georgia  30303
Telephone:   (404) 521-6700
Facsimile:    (404) 221-5857

Mary C. Bauer (*pro hac vice motion pending*)
Mary.Bauer@splcenter.org
Sam Brooke (*pro hac vice motion pending*)
Sam.Brooke@splcenter.org
Morris S. Dees (*pro hac vice motion pending*)
Judy.Bruno@splcenter.org
IMMIGRANT JUSTICE PROJECT
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, Alabama  36104
Telephone:   (334) 956-8200
Facsimile:    (334) 956-8481

Dennis B. Auerbach (*admitted pro hac vice*)
dauerbach@cov.com
Candice N. Plotkin (*admitted pro hac vice*)
cplotkin@cov.com
Jillian Willis (*admitted pro hac vice*)
jwillis@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone:   (202) 662-6000
Facsimile:    (202) 662-6291

Pamela A. Carter (*admitted pro hac vice*)
pcarter@cov.com
COVINGTON & BURLING LLP
The New York Times Building

2

1  620 Eighth Avenue
2  New York, New York  10018
   Telephone:   (212) 841-1000
3  Facsimile:   (212) 841-1010

4
   Daniel J. McNeil (*admitted pro hac vice*)
5  dmcneil@aft.org
6  AMERICAN FEDERATION OF TEACHERS
   LEGAL DEPARTMENT
7  555 New Jersey Ave., N.W.
8  Washington, DC  20001
   Telephone:  (202) 393-6305
9  Facsimile:   (202) 393-6385

10
   Lawrence Rosenzweig (SBN 72443)
11 LRPCorp@aol.com
12 Brent Rosenzweig (SBN 219071)
   Brent.Rosenzweig@gmail.com
13 LAWRENCE ROSENZWEIG, PC
14 2730 Wilshire Boulevard, Suite 425
   Santa Monica, California  90403
15 Telephone:  (310) 453-0348
16 Facsimile:   (310) 453-3358

17 *Attorneys for Plaintiffs*

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    JURISDICTION AND VENUE ................................................................ 7

II.   PRELIMINARY STATEMENT ............................................................. 8

III.  PARTIES ............................................................................................. 13

   A. Plaintiffs ........................................................................................ 13

   B. Defendants ...................................................................................... 14

IV.  CLASS ACTION ALLEGATIONS ....................................................... 20

   A. Louisiana Teacher Class ................................................................. 20

   B. EBR Teacher Subclass .................................................................... 27

V.    STATEMENT OF FACTS .................................................................... 32

   A.    Factual Allegations Related to Laws Regulating the
         Recruitment of Philippine Nationals for Employment
         within Louisiana ............................................................................ 34

         1.    Regulations of the Philippine Overseas Employment
               Administration ........................................................................ 34

         2.    Regulations of the United States Government
               regarding H-1B Visa Workers .............................................. 35

         3.    Regulations of the Louisiana Workforce
               Commission ............................................................................. 36

   B.    Factual Allegations Related to the Trafficking Scheme ............. 37

         1.    Trafficking Step 1: Employer Defendants, Recruiter
               Defendants, and Legal Facilitator Defendants Agree
               to a Joint Venture to Recruit Teachers from the
               Philippines to Teach in Louisiana ....................................... 37

         2.    Trafficking Step 2: Employer Defendants Interview
               Plaintiffs and the Class Members ........................................ 39

         3.    Trafficking Step 3: Recruiter Defendants Charge
               First Recruitment Fee, but Hide from Class
               Members an Undisclosed Second Recruitment Fee ........ 40

4

4.   Trafficking Step 4:  Recruiter Defendants Seize and Control Documents ........................................................ 44

5.   Trafficking Step 5:  Recruiter Defendants Announce Previously Undisclosed Second Recruitment Fee (Three Months of Salary to be Earned in United States) and Charge for Airfare ......................................... 46

6.   Trafficking Step 6:  Recruiter Defendants Require Signature of Illegal Contracts in the Philippines ........... 51

7.   Trafficking Step 7:  Recruiter Defendants Direct Plaintiffs and other Class Members to California, Compel Signatures on Illegal Contracts in California, and Control Documents ................................. 53

8.   Trafficking Step 8:  Recruiter Defendants Dictate Housing Arrangements ...................................................... 54

9.   Trafficking Step 9:  Visa Renewal Process .................... 56

10.  Trafficking Step 10:  Ongoing Methods of Intimidation and Manipulation by Recruiter Defendants, Legal Facilitator Defendants, and Employer Defendants ....................................................... 57

C.   Factual Allegations that Legal Facilitator Defendants Facilitated the Illegal Trafficking Scheme ................................ 63

D.   Factual Allegations That Employer Defendants were Beneficiaries of the Illegal Trafficking Scheme ....................... 68

E.   Factual Allegations That Employer Defendants Facilitated the Illegal Trafficking Scheme, or Alternatively Knew or Reasonably Should Have Known of the Illegal Trafficking Scheme ........................................................................................ 69

F.   Factual Allegations of Fraudulent Omission of Second Recruitment Fee ........................................................................ 75

G.   Factual allegations of Fraudulent Omission of Employer's Obligation to Pay Visa Processing Fees .................................... 79

H.    Factual Allegations Regarding the Submission of Fraudulent LCA and Related Documents to U.S. Governmental Agencies. ........................................................... 82

I.    Factual Allegations Regarding the Class Action Fairness Act of 2005 (28 U.S.C. § 1332(d)) ............................................. 91

VI.    CLAIMS FOR RELIEF ........................................................ 92

VII.    PRAYER FOR RELIEF ....................................................... 126

# I.    **JURISDICTION AND VENUE**

1.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 18 U.S.C. § 1595(a) (civil trafficking), 18 U.S.C. § 1964(c) (RICO), and 28 U.S.C. § 1332(d) (class action jurisdiction).   The Court has supplemental jurisdiction over the state law causes of actions asserted in this First Amended Complaint pursuant to 28 U.S.C. § 1367 because the state law claims form part of the same case or controversy as the federal law claims.

2.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

3.    Venue is also proper in this District pursuant to 18 U.S.C. § 1965(a) because some or all defendants reside, are found, have agents, and/or transact his/her/its affairs in the Central District of California.

4.    Venue is also proper in this District pursuant to 18 U.S.C. § 1965(b) because the ends of justice require that other parties residing in other districts be brought before this Court.

5.    In addition, venue is proper in this District because one of the two principal standardized contracts at issue in this matter specifies that "this agreement shall be enforced within any competent court within the County of Los Angeles, State of California, United States of America."

## II.    <u>PRELIMINARY STATEMENT</u>

6.    Over the past three school years, more than 350 highly-skilled Filipino teachers have been trafficked into Louisiana through the federal government's H-1B "specialty occupation" visa program to serve as teachers in public schools.  The teachers were systematically defrauded and exploited in the recruitment and hiring process in the Philippines by Defendants, who utilized the promise of a unique opportunity to teach in Louisiana to ensnare teachers in a psychologically coercive and financially ruinous trafficking scheme that subjected the teachers to exorbitant debt and forced labor.  Once in the United States, the teachers were further abused and exploited by Defendants, who used a variety of coercive tactics, including abuse of legal process, isolation and segregation, and threats of deportation, to attempt to control the teachers' actions.  When the teachers organized collectively for better conditions, they were victims of severe retaliation.

7.    The Plaintiffs and class members in this action are victims of human trafficking and were brought to the United States to work in the East Baton Rouge Parish School District, Recovery School District, Jefferson Parish Public School System, Caddo Public School District, East Carroll Parish School System, Avoyelles Parish School District, Advance Baton Rouge Charter School Association, Madison Parish School District, and

Lafourche Parish Public Schools (hereinafter referred to as the "Louisiana School Districts").

8.    Plaintiffs bring this action on behalf of themselves and similarly situated teachers to recover damages and to seek declaratory and injunctive relief based on the fraudulent and malicious practices of the recruiters (referred to collectively as "Recruiter Defendants") and legal facilitators (referred to collectively as "Legal Facilitator Defendants") whom the Louisiana School Districts hired, as well as from one of their employers, the East Baton Rouge Parish School Board ("EBRPSB"), and agents of EBRPSB (referred to collectively as "Employer Defendants"), who were aware, or reasonably should have known of the Recruiter Defendants' and Legal Facilitator Defendants' egregious conduct, and who took steps to ensure the trafficking scheme was viable.

9.    The Louisiana School Districts chose and retained Universal Placement International, Inc. and Lourdes "Lulu" Navarro to recruit teachers from the Philippines.  The School Districts selected Ms. Navarro despite her prior conviction and imprisonment for defrauding the California Medi-Cal system of more than $1,000,000, and despite the fact that she had also pled guilty to money laundering in New Jersey.  In her role as teacher-recruiter, Lourdes Navarro was given enormous responsibility to recruit and hire teachers for the School Districts.    In concert with the other Recruiter

Defendants involved in this scheme, Ms. Navarro arranged for the teachers to be interviewed by Louisiana School District representatives, either in person in the Philippines or by videoconference and teleconference. The Recruiter Defendants told the teachers who were selected that they must quickly pay a recruitment fee in cash, which varied from $5,000 to $5,500 per teacher. This was an enormous financial investment, representing more than one-and-a-half times the average annual household income in the Philippines. The Recruiter Defendants willfully, maliciously, and fraudulently tricked the teachers into reasonably believing that this fee constituted all or nearly all of their obligations to the Recruiter Defendants, inducing the teachers to liquidate assets, take out loans from family, friends, and/or public and private lending institutions, and mortgage properties to cover the expense. The Employer Defendants and the non-defendant Louisiana School Districts, with the full knowledge and assistance of the Recruiter Defendants and Legal Facilitator Defendants, also willfully and fraudulently represented to United States federal governmental agencies that they would comply with the regulations governing the H-1B visa program, knowing full-well that part of the $5,000 to $5,500 initial payment collected from each teacher was to be used for fees and expenses the federal regulations required the petitioning employers to pay.

10

10.     Later, after teachers had paid the first fee in cash, the Recruiter Defendants informed the teachers there would be a second, much larger fee representing thirty percent of their expected annual income in the United States, plus the cost of airfare to the United States.  In an act of claimed "generosity," the Recruiter Defendants required teachers to pay only twenty percent before they left the Philippines; the remaining ten percent was to be collected during the teachers' second year of teaching in the United States. The teachers were surprised by these new costs, which required a financial commitment of $16,000—five times the average annual household income in the Philippines.  But the teachers could not afford to back out, given the first massive fee they had already paid, which the Recruiter Defendants would not refund.   The Recruiter Defendants additionally pressured and coerced the teachers into signing contracts providing for payment of this new fee, and confiscated the teachers' passports and visas to ensure the teachers would pay the fee.  The Recruiter Defendants also referred teachers to private lending businesses to borrow the money at usurious and exploitative interest rates of between 3 percent and 5 percent per month (which compounded equates to an annual interest rate of 43 percent to 80 percent) because they realized the teachers would not otherwise be able to pay the additional fee.

11.     After the teachers arrived in the United States, the Recruiter Defendants orchestrated a system of psychological coercion and intimidation

First Amended Complaint

to exert continued control over the teachers, including:  filing lawsuits against teachers who complained publicly; isolating teachers from other Filipinos; and threatening deportation or non-renewal of teacher visas.

12.     Employer Defendants were knowing beneficiaries of the illegal human trafficking scheme perpetrated by Recruiter Defendants, knew or should have known of the scheme, and aided and abetted the scheme by taking steps to ensure its success.  Employer Defendants became aware early on of the illegal and unconscionable fees being charged, and took steps to ensure the success of Recruiter Defendants' scheme, including submitting false letters to federal immigration officials at the request of the Recruiter Defendants, and reporting to Recruiter Defendants those teachers who voiced complaints about the process or who attempted to circumvent the Recruiter Defendants by applying directly to EBRPSB for employment.   Employer Defendants were also aware that the teachers, rather than the petitioning employer, were paying fees and expenses that federal regulations governing the H-1B visa program required the petitioning employer to pay.

13.     Plaintiffs assert class action claims for damages under the Trafficking Victims Protection Act, 18 U.S.C. § 1589, *et seq*.; the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*.; and various provisions of applicable state law.   Plaintiffs also assert class action claims for damages against the Legal Facilitator Defendants, who

facilitated the Recruiter Defendants' actions, for breach of fiduciary duty and attorney malpractice committed in furtherance of the trafficking scheme. Plaintiffs seek compensatory, declaratory and injunctive relief against the Recruiter Defendants, and a declaration that the illegal contracts coerced by the Recruiter Defendants are null and void.   Finally, Plaintiffs assert class action claims against the Employer Defendants for their involvement in this trafficking scheme, and for negligently hiring the Recruiter Defendants in the first instance.

## III.   PARTIES

### A.   Plaintiffs

#### EBR Teacher Plaintiffs

14.   Plaintiff Mairi Nunag-Tañedo is a national of the Republic of the Philippines and resides in Louisiana.  Ms. Nunag-Tañedo works as a teacher in the East Baton Rouge Parish School System ("EBRPSS").

15.   Plaintiff Ingrid Cruz is a national of the Republic of the Philippines and resides in Louisiana.   Ms. Cruz works as a teacher in EBRPSS.

16.   Plaintiff Donnabel Escuadra is a national of the Republic of the Philippines and resides in Louisiana.   Ms. Escuadra works as a teacher in EBRPSS.

17.   Throughout this First Amended Complaint, Plaintiffs Nunag-

Tañedo, Cruz, and Escuadra are referred to collectively as "EBR Teacher Plaintiffs."

### Non-EBR Teacher Plaintiffs

18.     Plaintiff Rolando Pascual is a national of the Republic of the Philippines and resides in Louisiana.  Mr. Pascual works as a teacher in the Caddo Public School District, located in the Caddo Parish in Louisiana.

19.     Plaintiff Tomasa Mari is a national of the Republic of the Philippines and resides in Louisiana.  Ms. Mari works as a teacher in the Recovery School District, which is a school district administered by the State of Louisiana Department of Education.

### B.     **Defendants**

### Employer Defendants

20.     Defendant East Baton Rouge Parish School Board ("EBRPSB") is responsible for the oversight of the EBRPSS.  EBRPSB oversees the operations of EBRPSS, including, *inter alia*, determining the number and location of schools and the number and selection of teachers to work in these schools, as well as promulgating and enforcing local policies and supervising the Superintendent of EBRPSS.  EBRPSB is the body corporate for EBRPSS, and has the authority to sue and be sued on behalf of EBRPSS.  EBRPSB's principal place of business is at 1050 South Foster Drive, Baton Rouge, Louisiana  70806.

21.     Defendant Charlotte D. Placide is the former Superintendent for EBRPSS.  Placide was Superintendent for EBRPSS from 2004 until June 30, 2009.  Placide resides in Louisiana.  Placide is sued in her individual capacity, and in her capacity as an agent for EBRPSB.

22.     Defendant Millie Williams is the Director of Personnel Services for EBRPSS, and held this position throughout the period covered in this First Amended Complaint.  Williams resides in Louisiana.  Williams is sued in her individual capacity, and in her capacity as an agent for EBRPSB.

23.     Defendant Dr. Elizabeth Duran Swinford is the former Associate Superintendent for Human Resources for EBRPSS, and held this position until August, 2010.  Duran Swinford resided in Louisiana when this action was filed, but on information and belief currently resides in Mississippi. Duran Swinford is sued in her individual capacity, and in her capacity as an agent for EBRPSB.

24.     Throughout this First Amended Complaint, Defendants EBRPSB, Placide, Williams, and Duran Swinford are referred to collectively as "Employer Defendants."

25.     Throughout this First Amended Complaint, Defendants Placide, Williams, and Duran Swinford are referred to collectively as "Individual Employer Defendants."

First Amended Complaint

Recruiter Defendants

26.     Defendant Universal Placement International, Inc., ("Universal") is a corporation organized under the laws of California that maintains its principal place of business in Los Angeles, California, within the Central District of California.   Universal is engaged in the business of recruiting teachers from the Philippines for employment in the United States.

27.     Defendant Lourdes "Lulu" Navarro is the owner and President of Universal.   Lourdes Navarro resides in Glendale, California, within the Central District of California.

28.     Defendant Hothello "Jack" Navarro is a director of Universal. Hothello Navarro resides in Glendale, California, within the Central District of California.   He is the former husband of Defendant Lourdes Navarro, although he continues to hold himself out as her current husband.

29.     Defendant PARS International Placement Agency ("PARS") is a corporation organized under the laws of the Philippines that maintains its principal place of business in Quezon City, which is located in the metropolitan area of Manila, Philippines.   PARS is engaged in the business of recruiting teachers from the Philippines for employment in the United States.

30.     Defendant Emilio V. Villarba is registered as the Official Representative of PARS with the Philippines Overseas Employment Administration.   Villarba is the owner of PARS.   Villarba resides in Quezon

16

City, Philippines.  He is the brother of Defendant Lourdes Navarro.

31.    At all relevant times, Universal and PARS failed to conduct themselves as separate legal entities and acted without regard to their separate corporate forms, such that it is appropriate to treat Universal and PARS as interchangeable and alter egos for purposes of liability.   Specifically, their disregard of their separate legal identities is evidenced by the following:

a.    Universal and PARS did not operate at arm's length in their dealings with each other;

b.    Lourdes Navarro and Universal represented to third parties, including Employer Defendants, that they had an "office" in the Philippines, which was the office of Defendant PARS;

c.    Villarba and PARS represented to third parties, including Plaintiffs and other Class Members, that PARS had an "office" in the United States, which was the office of Universal;

d.    Lourdes Navarro distributed business cards which listed contact information for the Universal office in California and the PARS office in Manila;

e.    PARS maintained a website which listed its contact information as the Universal office in California and the PARS office in Manila;

f.    Villarba and PARS permitted Lourdes Navarro to

17

determine how much applicants would pay and when the payments would be due, even for fees that ostensibly were being paid to PARS only;

g.    PARS entered into contracts with Plaintiffs and other Class Members that stated that Plaintiffs and Class Members would pay fees for certain items to PARS, but when those fees were paid, PARS issued receipts showing payment was made to Universal; and

h.    PARS collected money from Plaintiffs and other Class Members in the Philippines and issued receipts on behalf of both PARS and Universal.

32.    Alternatively, at some or all relevant times, Defendant Lourdes Navarro and Hothello Navarro were agents of Defendant PARS.

33.    At some or all relevant times, the Recruiter Defendants were agents of Employer Defendants and the non-Defendant Louisiana School Districts in that they were charged with recruiting Filipino teachers on behalf of the Employer Defendants and the non-Defendant Louisiana School Districts.

34.    Throughout this First Amended Complaint, Defendants Universal, Lourdes Navarro, Hothello Navarro, PARS, and Villarba are referred to collectively as "Recruiter Defendants."

Legal Facilitator Defendants

35.    Defendant Robert B. Silverman is an attorney who maintains his

18

principal office in Westminster, California, within the Central District of California. Silverman resides in the Central District of California.

36. Defendant Silverman & Associates is a law office located in Westminster, California, within the Central District of California.

37. Throughout this First Amended Complaint, Defendants Silverman and Silverman & Associates are referred to collectively as "Legal Facilitator Defendants."

RICO Defendants

38. Throughout this First Amended Complaint, Recruiter Defendants, Individual Employer Defendants, and Legal Facilitator Defendants are referred to collectively as "RICO Defendants."

All Defendants

39. Individually and through their agents, associates, attorneys, and/or employees, all Defendants have significant contacts with the Central District of California, and the claims in this case arise in significant part from conduct by the Recruiter Defendants and the Legal Facilitator Defendants that occurred in the Central District of California.

40. Defendants have been engaged in and continue to engage in ongoing contacts with Plaintiffs and other Class Members, including recruiting, obtaining labor, contracting, seeking to collect on contracts, providing immigration-related services to, transporting, harboring, providing

and/or employing Plaintiffs and/or other Class Members.

## IV.   CLASS ACTION ALLEGATIONS

41.    The Class Representative Plaintiffs bring claims for damages, injunctive, and declaratory relief on behalf of themselves and all similarly situated persons pursuant to Rule 23.   The Class Representative Plaintiffs bring class claims for actual, punitive, and treble damages pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), and class claims for injunctive and declaratory relief pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2).

42.    This action involves a class represented by all Plaintiffs, referred to herein as the "Louisiana Teacher Class," and a subclass represented by EBR Teacher Plaintiffs, referred to herein as the "EBR Teacher Subclass."

### A.    Louisiana Teacher Class

43.    The Louisiana Teacher Class asserts claims for compensatory, treble, and/or punitive damages pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.   For the purpose of claims for compensatory, treble, and/or punitive damages, the Louisiana Teacher Class is defined as all Filipino nationals who obtained their initial H-1B visas through Recruiter Defendants and Legal Facilitator Defendants during the period January 1, 2007 through the present, where a Louisiana school district or Louisiana school system was the petitioner.

44.    The Louisiana Teacher Class asserts claims for injunctive and

First Amended Complaint

declaratory relief pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure.   For the purpose of claims for injunctive and declaratory relief, the Louisiana Teacher Class is defined as all Filipino nationals who obtained or will obtain H-1B visas through any of the Recruiter Defendants and/or Legal Facilitator Defendants for employment at school districts or school systems in Louisiana.

45.   The Louisiana Teacher Class (as distinct from the EBR Teacher Subclass) seeks relief from Recruiter Defendants and Legal Facilitator Defendants only.

### Rule 23(a)

46.   Only the Recruiter Defendants and Legal Facilitator Defendants know the precise number of individuals in the Louisiana Teacher Class, but upon information and belief the class includes over 350 individuals.   The Louisiana Teacher Class is so numerous that joinder of all members of the Louisiana Teacher Class is impracticable.

47.   This action involves questions of law common to the Louisiana Teacher Class, including:

a.   Whether Recruiter Defendants' and Legal Facilitator Defendants' conduct as set forth in the First Claim for Relief violated the forced labor and trafficking provisions of the TVPA (18 U.S.C. §§ 1589, 1590, 1592, 1594(a), and/or 1594(b));

    b.    Whether Recruiter Defendants' and Legal Facilitator Defendants' conduct as set forth in the Second Claim for Relief violated RICO Sections 1962(c) and 1962(d);

    c.    Whether Recruiter Defendants' conduct as set forth in the Third Claim for Relief violated the Employment Agency and Job Services Act (Cal. Civ. Code § 1812.508);

    d.    Whether Recruiter Defendants' conduct as set forth in the Fourth Claim for Relief violated the California Unfair Business Practices Act (Cal. Business and Professional Code § 17200);

    e.    Whether Recruiter Defendants' conduct as set forth in the Fifth Claim for Relief constituted fraud;

    f.    Whether contracts entered into between Louisiana Teacher Class members and Defendant Universal and Defendant PARS are void because they were the result of undue influence, as set forth in the Sixth Claim for Relief;

    g.    Whether contracts entered into between Louisiana Teacher Class members and Defendant Universal and Defendant PARS are void because they are illegal, as set forth in the Seventh Claim for Relief;

    h.    Whether fees collected by Defendant Universal and Defendant PARS that were not pursuant to any written contract were illegal, as set forth in the Eighth Claim for Relief;

i.      Whether Legal Facilitator Defendants' conduct as set forth in the Ninth Claim for Relief constituted a breach of a fiduciary duty;

j.      Whether Legal Facilitator Defendants' conduct as set forth in the Tenth Claim for Relief constituted legal malpractice;

k.      The nature of damages available to Plaintiffs and other Class Members, including the applicability of compensatory, treble, and/or punitive damages; and

l.      Whether and what kinds of injunctive relief are appropriate.

48.      This action involves questions of fact common to the class, including:

a.      Whether Recruiter Defendants and Legal Facilitator Defendants threatened Plaintiffs and other Louisiana Teachers Class members with serious financial harm and/or abuse of legal process to obtain Plaintiffs' and other Louisiana Teachers Class members' labor or services;

b.      Whether Recruiter Defendants and Legal Facilitator Defendants recruited, harbored, transported, obtained and/or provided Plaintiffs and other Louisiana Teachers Class members for the purpose of subjecting them to forced labor;

c.      Whether Recruiter Defendants and Legal Facilitator Defendants conducted one or more enterprises through a pattern of

23

racketeering activity;

        d.    Whether Recruiter Defendants and Legal Facilitator Defendants committed or agreed to commit the predicate racketeering acts identified in the Second Claim for Relief; and

        e.    The source and amount of Plaintiffs' and other Class Members' damages.

49.    The claims of the Plaintiffs asserted in the First through Tenth Claims for Relief are typical of the claims of the Louisiana Teacher Class.

50.    The Plaintiffs will fairly and adequately protect the interests of the Louisiana Teacher Class.

51.    Plaintiffs have retained counsel who are experienced in handling class action litigation on behalf of immigrant workers like Plaintiffs and the other class members, and are prepared to advance costs necessary to litigate this action.

52.    If certified, Plaintiffs will send individual notices containing the information required by Rule 23(c)(2)(B) to all members of the class by U.S. mail and electronic mail, which is the best notice that is practicable.

        <u>Rule 23(b)(2)</u>

53.    Recruiter Defendants and Legal Facilitator Defendants have acted or refused to act on grounds that apply generally to the Louisiana Teacher Class, so that declaratory relief and final injunctive relief are

appropriate with respect to the Louisiana Teacher Class as a whole. Recruiter Defendants' and Legal Facilitator Defendants' actions and inactions include, *inter alia*:

a.   Illegally enforcing contracts that are the result of undue influence and coercion, as set forth in the Sixth Claim for Relief;

b.   Illegally enforcing contractual terms that are illegal, as set forth in the Seventh Claim for Relief;

c.   Illegally collecting fees prohibited under the law, as set forth in the Eighth Claim for Relief; and

d.   Illegally forcing Louisiana Teacher Class members to pay for fees in the H-1B visa process that are the sole obligation of the petitioner, as set forth in the Ninth and Tenth Claims for Relief.

54.   The Louisiana Teacher Class seeks to enjoin enforcement of the contracts and the collection of further fees as set forth in the Seventh through Ninth Claims for Relief.

55.   The Louisiana Teacher Class also seeks to enjoin each Recruiter Defendant and each Legal Facilitator Defendant from continuing to engage in the unlawful acts described in this First Amended Complaint.

### Rule 23(b)(3)

56.   Common questions of law and fact relevant to the First through Tenth Claims for Relief, as identified above, predominate over any pertinent