Tañedo that she would need to collect various supporting documents, pay a First Recruitment Fee of $5,515 (involving a Visa Processing Fee of $3,920, a Credentials Evaluation Fee of $595, and an Agency Fee of $1,000) to obtain her job offer and to complete the H-1B visa process. However, Lourdes Navarro willfully, maliciously, and fraudulently failed to inform Nunag-Tañedo that before she would be permitted to leave the Philippines, she would need to pay an Undisclosed Second Recruitment Fee of two months of her expected salary in the United States, as well as the cost of airfare to the United States, with a third month's fee due after she was in the United States for one year. Nunag-Tañedo relied on this fraudulent omission and paid the First Recruitment Fee.

190. On or about July 3, 2007, at the PARS office in Quezon City, Manila, Philippines, an agent for Defendant PARS named Divine, who upon information and belief is the sibling of Defendant Villarba and Defendant Lourdes Navarro, informed Plaintiff Cruz that she would need to collect various supporting documents and pay a First Recruitment Fee of $5,000 (involving a Visa Processing Fee of $3,955, a Credentials Evaluation Fee of $645, and an Agency Fee of $400) in order to obtain her job offer and to complete the H-1B visa process. However, Divine willfully, maliciously, and fraudulently failed to inform Cruz that before she would be permitted to leave the Philippines, she would need to pay an Undisclosed Second Recruitment

Fee of two months of her expected salary in the United States, as well as the cost of airfare to the United States, with a third month's fee due after she was in the United States for one year.  Cruz relied on this fraudulent omission and paid the First Recruitment Fee.

191.  On or about March 28, 2008, at the Waterfront Hotel in Cebu City, Philippines, Defendant Lourdes Navarro informed Plaintiff Escuadra that she would need to collect various supporting documents, pay a First Recruitment Fee of $5,515 (involving a Visa Processing Fee of $3,920, a Credentials Evaluation Fee of $595, and an Agency Fee of $1,000) in order to obtain her job offer and to complete the H-1B visa process.  However, Lourdes Navarro willfully, maliciously, and fraudulently failed to inform Escuadra that before she would be permitted to leave the Philippines, she would need to pay an Undisclosed Second Recruitment Fee of two months of her expected salary in the United States, as well as the cost of airfare to the United States, with a third month's fee due after she was in the United States for one year.  Escuadra relied on this fraudulent omission and paid the First Recruitment Fee.

192.  On or about June 27, 2008 in a restaurant near the PARS office called "Cravings Restaurant" in Quezon City, Manila, Philippines, Defendant Villarba informed Plaintiff Pascual that he would need to collect various supporting documents, pay a First Recruitment Fee of $5,515 (involving a

Visa Processing Fee of $3,920, a Credentials Evaluation Fee of $595, and an Agency Fee of $1,000) in order to obtain his job offer and to complete the H-1B visa process.  However, Villarba willfully, maliciously, and fraudulently failed to inform Pascual that before he would be permitted to leave the Philippines, he would need to pay an Undisclosed Second Recruitment Fee of two months of his expected salary in the United States, as well as the cost of airfare to the United States, with a third month's fee due after he was in the United States for one year.  Pascual relied on this fraudulent omission and paid the First Recruitment Fee.

193.   On or about July 28, 2007, Plaintiff Mari telephoned Defendant PARS to learn if she had passed her job interview, which had occurred on or about July 25, 2007.  Defendant Villarba informed Plaintiff Mari that she would need to collect various supporting documents, pay a First Recruitment Fee of $5,565 (involving a Visa Processing Fee of $3,920, a Credentials Evaluation Fee of $645, and an Agency Fee of $1,000) in order to obtain her job offer and to complete the H-1B visa process.  However, Villarba willfully, maliciously, and fraudulently failed to inform Mari that before she would be permitted to leave the Philippines, she would need to pay an Undisclosed Second Recruitment Fee of two months of her expected salary in the United States, as well as the cost of airfare to the United States, with a third month's fee due after she was in the United States for one year.  Mari relied on this

78

fraudulent omission and paid the First Recruitment Fee.

194.   Other Class Members also were required to pay the First Recruitment Fee.   Recruiter Defendants willfully, maliciously, and fraudulently failed to inform other Class Members at the times of such payments that, before they would be permitted to leave the Philippines, they would need to pay an Undisclosed Second Recruitment Fee of two months of their expected salaries in the United States, as well as the cost of airfare to the United States, with a third month's fee due after they were in the United States for one year.   Other Class Members paid the First Recruitment Fee based on these fraudulent omissions.

### G.   Factual allegations of Fraudulent Omission of Employer's Obligation to Pay Visa Processing Fees

195.   The Visa Processing Fees described in ¶ 106.a, *supra*, were collected from Plaintiffs and other Class Members by Defendant PARS, which was acting as an agent and/or alter ego for Defendant Universal, Defendant Lourdes Navarro, Defendant Hothello Navarro, and Legal Facilitator Defendants.

196.   Plaintiffs and other Class Members were informed of the Visa Processing Fees by Defendant Lourdes Navarro, Defendant Villarba, or another agent of Defendant PARS.

197.   Defendant PARS, through its agents, issued hand-written receipts from Defendant Universal after collecting the Visa Processing Fees

79

from Plaintiffs and other Class Members.

198.   Recruiter Defendants and Legal Facilitator Defendants were aware that certain parts of the Visa Processing Fees were required to be paid by the petitioner/employer and not the beneficiary/employee.   In particular, the H-1B Filing Fee form states that the $320 filing fee and the $500 anti-fraud fee must be paid by the U.S. employer.   The H-1B Filing Fee form was submitted with each and every I-129 Petition for a Nonimmigrant Worker prepared by Legal Facilitator Defendants and Defendant Universal on behalf of Defendant EBRPSB and the non-defendant Louisiana School Districts.

199.   On or about March 28, 2008, at the Waterfront Hotel in Cebu City, Philippines, Defendant Lourdes Navarro informed Plaintiff Nunag-Tañedo that she would need to pay $3,920 for her visa.   Lourdes Navarro failed to inform Nunag-Tañedo that part or all of this fee was the legal obligation of her petitioner, Defendant EBRPSB.   Nunag-Tañedo reasonably relied on this fraudulent omission, and paid the entire fee.

200.   On or about July 16, 2007, at the PARS office in Quezon City, Manila, Philippines, Defendant Villarba informed Plaintiff Cruz that she would need to pay $3,920 for her visa.   Villarba failed to inform Cruz that part or all of this fee was the legal obligation of her petitioner, Defendant EBRPSB.   Cruz reasonably relied on this fraudulent omission, and paid the entire fee.

80

201.   On or about March 28, 2008, at the Waterfront Hotel in Cebu City, Philippines, Defendant Lourdes Navarro informed Plaintiff Escuadra that she would need to pay $3,920 for her visa.  Lourdes Navarro failed to inform Escuadra that part or all of this fee was the legal obligation of her petitioner, Defendant EBRPSB.  Escuadra reasonably relied on this fraudulent omission, and paid the entire fee.

202.   On or about June 27, 2008, in a restaurant near the PARS office called "Cravings Restaurant" in Quezon City, Manila, Philippines, Defendant Villarba informed Plaintiff Pascual that he would need to pay $3,920 for his visa.  Villarba failed to inform Pascual that part or all of this fee was the legal obligation of his petitioner, non-defendant Caddo Parish School Board.  Pascual reasonably relied on this fraudulent omission, and paid the entire fee.

203.   On or about July 28, 2007, over the telephone, Defendant Villarba informed Plaintiff Mari that she would need to pay $3,920 for her visa.  Villarba failed to inform Mari that part or all of this fee was the legal obligation of her petitioner, non-defendant Recovery School District.  Mari reasonably relied on this fraudulent omission, and paid the entire fee.

204.   Recruiter Defendants required other Class Members to pay amounts of approximately $3,920 for their visas, and failed to inform them that part or all of this fee was the legal obligation of the petitioning employers.   Other Class Members paid the entire fee based on these

81

1  fraudulent omissions.

2  **H.   Factual Allegations Regarding the Submission of Fraudulent LCA and Related Documents to U.S. Governmental Agencies**

3

4  205.   On or about May 1, 2008, Defendant Placide, with the assistance

5  of Legal Facilitator Defendants, prepared, signed, and electronically

6

7  submitted to the USDOL an LCA related to Plaintiff Nunag-Tañedo.  The

8  LCA fraudulently stated and represented to the USDOL that Defendant

9

10  Placide and EBRPSS would comply with the regulations governing the H-1B

11  program while they knew at the time that Plaintiff Nunag-Tañedo would be

12  required to pay for fees and expenses that were the legal obligation of the

13

14  petitioning employer pursuant to the applicable regulations.

15  206.   The USDOL reasonably relied on the fraudulent statements and

16  representations contained in the LCA related to Plaintiff Nunag-Tañedo and

17

18  approved the LCA.

19  207.   On or about May 20, 2008, Legal Facilitator Defendants used

20  funds fraudulently obtained from Plaintiff Nunag-Tañedo by Recruiter

21

22  Defendants for an official check made payable to the USCIS in the amount of

23  $820 to pay for H-1B petition fees that were the legal obligation of the

24

25  petitioning employer pursuant to the H-1B regulations, and not Plaintiff

26  Nunag-Tañedo.

27  208.   On or about May 21, 2008, Legal Facilitator Defendants caused

28  to be mailed to the USCIS an I-129 Petition prepared by Legal Facilitator

Defendants and signed by Defendant Placide and Defendant Silverman, and an I-129 Supplement prepared by Legal Facilitator Defendants and signed by Defendant Placide for beneficiary Nunag-Tañedo. The I-129 Supplement specifically referred to fees that were the legal obligation of the petitioning employer, which Defendant Placide and Legal Facilitator Defendants knew were instead being paid by Plaintiff Nunag-Tañedo.

209. On or about June 21, 2008, as part of the petition for an H-1B visa for Plaintiff Nunag-Tañedo, Legal Facilitator Defendants caused to be mailed to the USCIS the fraudulent LCA previously submitted to the USDOL.

210. The USCIS reasonably relied upon the fraudulent LCA and I-129 Supplement submitted in connection with the I-129 Petition for beneficiary Nunag-Tañedo in approving and granting the petition.

211. Plaintiff Nunag-Tañedo was directly injured by the actions described above in ¶¶ 204-210, *supra*. But for such actions, Defendants would not have been able to effectuate their unlawful scheme.

212. On or about July 19, 2007, Defendant Placide, with the assistance of Legal Facilitator Defendants, prepared and electronically submitted to the USDOL an LCA related to Plaintiff Cruz. The LCA fraudulently stated and represented to the USDOL that Defendant Placide and EBRPSS would comply with the regulations governing the H-1B program

83

while they knew at the time that Plaintiff Cruz would be required to pay for fees and expenses that were the legal obligation of the petitioning employer pursuant to the applicable regulations.

213. The USDOL reasonably relied on the fraudulent statements and representations contained in the LCA related to Plaintiff Cruz and approved the LCA.

214. On or about August 1, 2007, Legal Facilitator Defendants used funds fraudulently obtained from Plaintiff Cruz by Recruiter Defendants for money orders made payable to the USCIS in the amount of $820 to pay for H-1B petition fees that were the legal obligation of the petitioning employer pursuant to the H-1B regulations, and not Plaintiff Cruz.

215. On or about August 1, 2007, Legal Facilitator Defendants caused to be mailed to the USCIS an I-129 Petition and an I-129 Supplement prepared by Legal Facilitator Defendants and signed by Defendant Placide for beneficiary Cruz. The I-129 Supplement specifically referred to fees that were the legal obligation of the petitioning employer, which Defendant Placide and Legal Facilitator Defendants knew were instead being paid by Plaintiff Cruz.

216. On or about August 1, 2007, as part of the petition for an H-1B visa for Plaintiff Cruz, Legal Facilitator Defendants caused to be mailed to the USCIS the fraudulent LCA previously submitted to the USDOL.

217.   The USCIS reasonably relied upon the fraudulent LCA and I-129 Supplement submitted in connection with the I-129 Petition for beneficiary Cruz in approving and granting the petition.

218.   Plaintiff Cruz was directly injured by the actions described above in ¶¶ 212-217, *supra*.  But for such actions, Defendants would not have been able to effectuate their unlawful scheme.

219.   On or about April 8, 2008, Defendant Placide, with the assistance of Legal Facilitator Defendants, prepared and electronically submitted to the USDOL an LCA related to Plaintiff Escuadra.  The LCA fraudulently stated and represented to the USDOL that Defendant Placide and EBRPSS would comply with the regulations governing the H-1B program while they knew at the time that Plaintiff Escuadra would be required to pay for fees and expenses that were the legal obligation of the petitioning employer pursuant to the applicable regulations.

220.   The USDOL reasonably relied on the fraudulent statements and representations contained in the LCA related to Plaintiff Escuadra and approved the LCA.

221.   On or about June 13, 2008, Legal Facilitator Defendants used funds fraudulently obtained from Plaintiff Escuadra by Recruiter Defendants for a money order made payable to the USCIS in the amount of $820 to pay for H-1B petition fees that were the legal obligation of the petitioning

85

employer pursuant to the H-1B regulations, and not Plaintiff Escuadra.

222.   On or about June 13, 2008, Legal Facilitator Defendants caused to be mailed to the USCIS an I-129 Petition prepared by Legal Facilitator Defendants and signed by Defendant Placide and Defendant Silverman, and an I-129 Supplement prepared by Legal Facilitator Defendants and signed by Defendant Placide for beneficiary Escuadra.  The I-129 Supplement specifically referred to fees that were the legal obligation of the petitioning employer, which Defendant Placide and Legal Facilitator Defendants knew were instead being paid by Plaintiff Escuadra.

223.   On or about June 13, 2008, as part of the petition for an H-1B visa for Plaintiff Escuadra, Legal Facilitator Defendants caused to be mailed to the USCIS the fraudulent LCA previously submitted to the USDOL.

224.   The USCIS reasonably relied upon the fraudulent LCA and I-129 Supplement submitted in connection with the I-129 Petition for beneficiary Escuadra in approving and granting the petition.

225.   Plaintiff Escuadra was directly injured by the actions described above in ¶¶ 219-224, *supra*.  But for such actions, Defendants would not have been able to effectuate their unlawful scheme.

226.   On or about July 1, 2008, Jan Holliday of the non-defendant Caddo Parish School Board, with the assistance of Legal Facilitator Defendants, prepared and electronically submitted to the USDOL an LCA

86

related to Plaintiff Pascual.  The LCA fraudulently stated and represented to

the USDOL that Holliday and the Caddo Parish School Board would comply

with the regulations governing the H-1B program while they knew at the time

that Plaintiff Pascual would be required to pay for fees and expenses that were

the legal obligation of the petitioning employer pursuant to the applicable

regulations.

227.   The USDOL reasonably relied on the fraudulent statements and

representations contained in the LCA related to Plaintiff Pascual and

approved the LCA.

228.   Upon information and belief, in or about July, 2008, Legal

Facilitator Defendants used funds fraudulently obtained from Plaintiff Pascual

by Recruiter Defendants for a money order or official bank check made

payable to the USCIS in the amount of $820 to pay for H-1B petition fees that

were the legal obligation of the petitioning employer pursuant to the H-1B

regulations, and not Plaintiff Pascual.

229.   In or about July, 2008, Legal Facilitator Defendants caused to be

mailed to the USCIS an I-129 Petition prepared by Legal Facilitator

Defendants and signed by a representative of the Caddo Parish School Board

and Defendant Silverman, and an I-129 Supplement prepared by Legal

Facilitator Defendants and signed by a representative of the Caddo Parish

School Board for beneficiary Pascual.  The I-129 Supplement specifically

referred to fees that were the legal obligation of the petitioning employer, which non-Defendant Caddo Parish School Board and Legal Facilitator Defendants knew were instead being paid by Plaintiff Pascual.

230. In or about July, 2008, as part of the petition for an H-1B visa for Plaintiff Pascual, Legal Facilitator Defendants caused to be mailed to the USCIS the fraudulent LCA previously submitted to the USDOL.

231. The USCIS reasonably relied upon the fraudulent LCA and I-129 Supplement submitted in connection with the I-129 Petition for beneficiary Pascual in approving and granting the petition.

232. Plaintiff Pascual was directly injured by the actions described above in ¶¶ 226-231, *supra*. But for such actions, Defendants would not have been able to effectuate their unlawful scheme.

233. On or about July 24, 2007, Betty Jean Wolfe of the non-defendant Recovery School District, with the assistance of Legal Facilitator Defendants, prepared and electronically submitted to the USDOL an LCA related to Plaintiff Mari. The LCA fraudulently stated and represented to the USDOL that Wolfe and the Recovery School District would comply with the regulations governing the H-1B program while they knew at the time that Plaintiff Mari would be required to pay for fees and expenses that were the legal obligation of the petitioning employer pursuant to the applicable regulations.

234. The USDOL reasonably relied on the fraudulent statements and representations contained in the LCA related to Plaintiff Mari and approved the LCA.

235. Upon information and belief, on or about July 31, 2007, Legal Facilitator Defendants used funds fraudulently obtained from Plaintiff Mari by Recruiter Defendants for a money order or official bank check made payable to the USCIS in the amount of $820 to pay for H-1B petition fees that were the legal obligation of the petitioning employer pursuant to the H-1B regulations, and not Plaintiff Mari.

236. On or about July 31, 2007, Legal Facilitator Defendants caused to be mailed to the USCIS an I-129 Petition prepared by Legal Facilitator Defendants and signed by a representative of the Recovery School District and Defendant Silverman, and an I-129 Supplement prepared by Legal Facilitator Defendants and signed by a representative of the Recovery School District for beneficiary Mari. The I-129 Supplement specifically referred to fees that were the legal obligation of the petitioning employer, which non-Defendant Recovery School District and Legal Facilitator Defendants knew were instead being paid by Plaintiff Mari.

237. On or about July 31, 2007, as part of the petition for an H-1B visa for Plaintiff Mari, Legal Facilitator Defendants caused to be mailed to the USCIS the fraudulent LCA previously submitted to the USDOL.

238.   The USCIS reasonably relied upon the fraudulent LCA and I-129 Supplement submitted in connection with the I-129 Petition for beneficiary Mari in approving and granting the petition.

239.   Plaintiff Mari was directly injured by the actions described above in ¶¶ 233-238, *supra*.  But for such actions, Defendants would not have been able to effectuate their unlawful scheme.

240.   Fraudulent LCAs related to the other Class Members were prepared and submitted electronically to the USDOL with the assistance of Legal Facilitator Defendants in the same manner as described above in ¶¶ 205, 212, 219, 226, and 233.

241.   The USDOL reasonably relied on the fraudulent statements and representations contained in the LCAs related to the other Class Members and approved the LCAs.

242.   Legal Facilitator Defendants used funds fraudulently obtained from the other Class Members by Recruiter Defendants to pay for H-1B petition fees that were the legal obligation of their petitioning employers pursuant to the H-1B regulations, and not the other Class Members, in the same manner as described above in ¶¶ 207, 214, 221, 228, and 235.

243.   Legal Facilitator Defendants caused to be mailed to the USCIS I-129 Petitions and I-129 Supplements prepared by Legal Facilitator Defendants and signed by agents of Employer Defendants and the non-

90

defendant Louisiana School Districts for other Class Member beneficiaries, in the same manner as described above in ¶¶ 208, 215, 222, 229, and 236. The I-129 Supplements specifically referred to fees that were the legal obligation of the petitioning employers, which Employer Defendants, the non-defendant Louisiana School Districts, and Legal Facilitator Defendants knew were instead being paid by the Class Members.

244. As part of the H-1B visa petitions for the Class Members, Legal Facilitator Defendants caused to be mailed to the USCIS the fraudulent LCAs previously submitted to the USDOL, in the same manner as described above in ¶¶ 209, 216, 223, 230, and 237.

245. The USCIS reasonably relied upon the fraudulent LCAs and I-129 Supplements submitted in connection with the I-129 Petitions for beneficiary Class Members in approving and granting their petitions.

246. The Class Members were directly injured by the actions described above in ¶¶ 240-245, *supra*. But for such actions, Defendants would not have been able to effectuate their unlawful scheme.

**I.    Factual Allegations Regarding the Class Action Fairness Act of 2005 (28 U.S.C. § 1332(d))**

247. The amount in controversy in this action exceeds $5,000,000, exclusive of interest and costs.

248. This is a class action in which members of a class of Plaintiffs are citizens or subjects of a foreign state and some of the Defendants are

91

citizens of a State in the United States.

# VI.    CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
THE WILLIAM WILBERFORCE TRAFFICKING VICTIMS
PROTECTION REAUTHORIZATION ACT OF 2008 (18 U.S.C. § 1595)
*Louisiana Teacher Class versus*
*Recruiter Defendants and Legal Facilitator Defendants*

249.   Plaintiffs and other Class Members re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

## A.    Authority for a Civil Action

250.   Plaintiffs and other Class Members are victims of violations of the following sections of Title 18, Chapter 77 of the United States Code:  18 U.S.C. §§ 1589, 1590, 1592, and 1594(a) and (b).

251.   As set forth in 18 U.S.C. § 1595(a), Plaintiffs and other Class Members may bring a civil action against the perpetrators of these violations and "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in a violation" of these provisions.

252.   Recruiter Defendants were perpetrators of the violations of 18 U.S.C. §§ 1589, 1590, 1592, 1594(a), and 1594(b).

253.   Legal Facilitator Defendants were perpetrators of the violations of 18 U.S.C. §§ 1589, 1590, 1594(a), and 1594(b).

254. Recruiter Defendants and Legal Facilitator Defendants knowingly benefited, financially or by receiving anything of value from participation in a venture which each Defendant knew or should have known engaged in violations of 18 U.S.C. §§ 1589, 1590, 1592, 1594(a), and/or 1594(b).

255. Plaintiffs bring this claim on behalf of themselves and the Louisiana Teacher Class against Recruiter Defendants and Legal Facilitator Defendants.

**B.    Forced Labor (18 U.S.C. § 1589)**

256. As set forth in ¶¶ 94–170.d, *supra*, Recruiter Defendants knowingly provided the labor of Plaintiffs and other Class Members by means of abuse and threatened abuse of law or legal process and by means of a scheme, pattern, or plan intended to cause the Plaintiffs and other Class Members to believe that, if he or she did not perform the labor, he or she would suffer serious harm.

257. As set forth ¶¶ 171–179, *supra*, Legal Facilitator Defendants knowingly provided the labor of Plaintiffs and other Class Members by means of abuse and threatened abuse of law or legal process and by means of a scheme, pattern, or plan intended to cause the Plaintiffs and other Class Members to believe that, if he or she did not perform the labor, he or she would suffer serious harm.

93

258.   Recruiter   Defendants   and   Legal   Facilitator   Defendants knowingly benefited financially from participation in a venture which they knew or should have known was engaged in the acts set forth in ¶¶ 256–257, *supra*.

### C.   Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor (18 U.S.C. § 1590)

259.   As set forth in ¶¶ 94–170.d, *supra*, Recruiter Defendants recruited and transported Plaintiffs and other Class Members for labor and services in violation of 18 U.S.C. §§ 1589, 1592, 1594(a), and 1594(b).

260.   As set forth ¶¶ 171–179, *supra*, Legal Facilitator Defendants knowingly aided and abetted Recruiter Defendants' scheme to recruit and transport Plaintiffs and other Class Members in violation of 18 U.S.C. §§ 1589, 1592, 1594(a), and 1594(b).

261.   Recruiter   Defendants   and   Legal   Facilitator   Defendants knowingly benefited financially from participation in a venture which they knew or should have known was engaged in the acts set forth in ¶¶ 259–260, *supra*.

### D.   Unlawful Conduct with Respect to Documents in Furtherance of Trafficking, Peonage, Slavery, Involuntary Servitude, or Forced Labor (18 U.S.C. § 1592)

262.   As set forth in ¶¶ 117–123 and 147, *supra*, Recruiter Defendants knowingly removed, confiscated, and possessed the Plaintiffs' and other Class Members' passports and visa papers in the course of a violation, and/or with

94

the intent to violate 18 U.S.C. §§ 1589 and 1594(a).

263. Recruiter Defendants and Legal Facilitator Defendants knowingly benefited financially from participation in a venture which they knew or should have known was engaged in the acts set forth in ¶ 262, *supra*.

**E.  Attempt to Violate 18 U.S.C. §§ 1589, and 1590 (18 U.S.C. § 1594(a))**

264. As set forth in ¶¶ 94–170.d, *supra*, Recruiter Defendants attempted to violate 18 U.S.C. §§ 1589 and 1590, in violation of 18 U.S.C. § 1594(a).

265. As set forth in ¶¶ 171–179, *supra*, Legal Facilitator Defendants attempted to violate 18 U.S.C. § 1589, in violation of 18 U.S.C. § 1594(a).

266. Recruiter Defendants and Legal Facilitator Defendants knowingly benefited financially from participation in a venture which the Defendants knew or should have known was engaged in the acts set forth in ¶¶ 264 and 265, *supra*.

**F.  Conspiracy to Violate 18 U.S.C. §§ 1589, 1590, and 1592 (18 U.S.C. § 1594(b))**

267. Recruiter Defendants and Legal Facilitator Defendants conspired with each other to violate 18 U.S.C. §§ 1589, 1590, and 1592, in violation of 18 U.S.C. § 1594(b).

268. Recruiter Defendants, Legal Facilitator Defendants, and Employer Defendants conspired with each other to violate 18 U.S.C. §§ 1589

95

and 1590, in violation of 18 U.S.C. § 1594(b).

269.   Recruiter   Defendants   and   Legal   Facilitator   Defendants knowingly benefited financially from participation in a venture which they knew or should have known was engaged in the acts set forth in ¶¶ 267–268, *supra*.

**G.     Alternatively, Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor by violating 18 U.S.C. §§ 1589 (2003), 1592 (2003), and 1594(a) (2003) (18 U.S.C. § 1590 (2003))**

270.   Alternatively, in violation of 18 U.S.C. § 1590 (2003), and in addition to the violations of 18 U.S.C. § 1589 (2003) as set forth above, Recruiter Defendants knowingly recruited, transported, harbored and/or obtained Plaintiffs and other Class Members for labor or services in furtherance of the following violations of Title 18, Chapter 77 of the U.S. Code:

a.     Removing, confiscating, or possessing Plaintiffs' and other Class Members' passports and other immigration documents in the course of, or with the intent to violate 18 U.S.C. §§ 1589 (2003) and 1590 (2003), in violation of 18 U.S.C. § 1592(a) (2003); and

b.     Attempting to violate 18 U.S.C. §§ 1589 (2003) and 1590 (2003), in violation of 18 U.S.C. § 1594(a) (2003).

271.   Alternatively, in violation of 18 U.S.C. § 1590 (2003), and in addition to the violations of 18 U.S.C. § 1589 (2003) as set forth above, Legal

96

Facilitator Defendants knowingly recruited, transported, harbored and/or obtained Plaintiffs and other Class Members for labor or services in furtherance of Recruiter Defendants' and Legal Facilitator Defendants' violations of the following provisions of Title 18, Chapter 77 of the U.S. Code: 18 U.S.C. §§ 1589 (2003), 1590 (2003), and 1594(a) (2003).

**H.**   **Damages**

272.   As a proximate result of the conduct of Recruiter Defendants and Legal Facilitator Defendants, Plaintiffs and other Class Members have suffered injuries to their persons and property, and other damages.

273.   Plaintiffs and other Class Members are entitled to recover compensatory and punitive damages in an amount to be proven at trial, including attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
18 U.S.C. § 1962(c) and 18 U.S.C.§ 1962(d)
*Louisiana Teacher Class versus Recruiter Defendants and Legal Facilitator Defendants;*
*EBR Teacher Subclass versus all RICO Defendants*

274.   Plaintiffs re–allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

275.   Plaintiffs' and other Class Members' claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 ("RICO"), are brought against the Recruiter Defendants and the Legal Facilitator Defendants.   EBR Teacher Plaintiffs' and other EBR Teacher Subclass

97

members' claims under RICO are brought against all RICO Defendants.

276.   Plaintiffs and other Class Members are "persons" with standing to sue within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).   EBR Teacher Plaintiffs and other EBR Teacher Subclass members are likewise "persons" with standing to sue within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

277.   Each Recruiter Defendant is a "RICO person" within the meaning of 18 U.S.C. § 1963(1) because each such defendant is an individual or entity capable of holding a legal or beneficial interest in property.

278.   Each Individual Employer Defendant is a "RICO person" within the meaning of 18 U.S.C. § 1963(1) because each such defendant is an individual capable of holding a legal or beneficial interest in property.

279.   Each Legal Facilitator Defendant is a "RICO person" within the meaning of § 1963(1) because each such defendant is an individual or entity capable of holding a legal or beneficial interest in property.

### A.   The RICO Enterprise

280.   RICO Defendants, together with Defendant EBRPSB, constitute an association-in-fact, and therefore an enterprise within the meaning of 18 U.S.C. § 1961(4).   Such RICO Enterprise is an ongoing business relationship with the common purposes of:

a.   Recruiting,   transporting,   providing,   processing,   and

98

obtaining Filipino teachers with H-1B visas to work at schools in Louisiana;

      b.   Providing and maintaining a consistent and acquiescent labor force for Employer Defendants and the non-defendant Louisiana School Districts; and

      c.   Soliciting and collecting funds from Filipino nationals in connection with procuring H-1B visas and opportunities for employment with Employer Defendants and the non-Defendant Louisiana School Districts.

281.  The RICO Defendants have used the RICO Enterprise as a vehicle for engaging in multiple RICO predicates acts, as set forth below.

282.  The RICO Enterprise is engaged in interstate commerce in that its activities and transactions relating to the international and interstate movement of workers through the procuring of H-1B visas affect interstate commerce, and frequently require travel and communications across state and international lines.

283.  The members of the RICO Enterprise function as a continuing unit: as set forth above, the members of the RICO Enterprise have associated for an extended period, and the Enterprise has engaged in continuing activity to further its purposes throughout such period.

284.  RICO Defendants have violated 18 U.S.C. § 1962(c) because they are associated with an enterprise (the association-in-fact of all the Defendants) engaged in, or the activities which affect, interstate commerce

First Amended Complaint

and have, directly or indirectly, conducted or participated in the conduct of an enterprise's affairs through a pattern of racketeering activity.

285.   RICO Defendants have violated 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c).

286.   Specifically, RICO Defendants conducted or participated in and/or conspired to conduct the affairs of the RICO Enterprise by engaging in the following predicate acts of racketeering activity under 18 U.S.C. § 1961(1):

        a.     Forced labor in violation of 18 U.S.C. § 1589;

        b.     Trafficking persons with respect to forced labor in violation of 18 U.S.C § 1590;

        c.     Unlawful document-related practices in furtherance of trafficking in violation of 18 U.S.C § 1592(a);

        d.     Mail fraud to further their unlawful scheme in violation of 18 U.S.C. § 1341;

        e.     Wire fraud to further their unlawful scheme in violation of 18 U.S.C. § 1343; and/or

        f.     Extortion as defined in Cal. Penal. Code § 518.

287.   RICO Defendants utilized the telephone, facsimile, postal system, and/or e-mail of the United States to organize, plan, and coordinate the RICO Enterprise, some examples of which are outlined above in ¶¶ 205-