James M. Knoepp (admitted *pro hac vice*)
Jim.Knoepp@splcenter.org
Jennifer L. Tse (SBN 260764)
Jennifer.Tse@splcenter.org
Daniel Werner (admitted *pro hac vice*)
Daniel.Werner@splcenter.org
IMMIGRANT JUSTICE PROJECT
SOUTHERN POVERTY LAW CENTER
233 Peachtree Street NE, Suite 2150
Atlanta, GA  30303
Telephone:  (404) 521-6700
Facsimile:  (404) 221-5857

*Attorneys for Plaintiffs*
*Additional Co-Counsel on Subsequent Pages*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| MAIRI NUNAG-TAÑEDO, et al., | Civ. No.: 10-01172-AG-MLG |
| Plaintiffs, | |
| v. | **PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS OF EAST BATON ROUGE PARISH SCHOOL BOARD, CHARLOTTE PLACIDE, MILLIE WILLIAMS, AND ELIZABETH DURAN SWINFORD** |
| EAST BATON ROUGE PARISH SCHOOL BOARD, et al., | |
| Defendants. | **HEARING DATE:  MARCH 7, 2011** |
| | **TIME:           10:00 a.m.** |
| | **COURTROOM:   10D** |
| | **HON. ANDREW J. GUILFORD** |

*(Attorney listing continued from first page)*

Mary C. Bauer (admitted *pro hac vice*)
Mary.Bauer@splcenter.org
Sam Brooke (admitted *pro hac vice*)
Sam.Brooke@splcenter.org
Morris S. Dees (admitted *pro hac vice*)
Judy.Bruno@splcenter.org
IMMIGRANT JUSTICE PROJECT
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, Alabama  36104
Telephone:  (334) 956-8200
Facsimile:   (334) 956-8481

Dennis B. Auerbach (admitted *pro hac vice*)
dauerbach@cov.com
Candice N. Plotkin (admitted *pro hac vice*)
cplotkin@cov.com
Jillian Willis (admitted *pro hac vice*)
jwillis@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone:  (202) 662-6000
Facsimile:   (202) 662-6291

Susan Johnston (admitted *pro hac vice*)
sjohnston@cov.com
Pamela A. Carter (admitted *pro hac vice*)
pcarter@cov.com
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York  10018
Telephone:  (212) 841-1000
Facsimile:   (212) 841-1010

Daniel J. McNeil (admitted *pro hac vice*)
dmcneil@aft.org
AMERICAN FEDERATION OF TEACHERS

LEGAL DEPARTMENT
555 New Jersey Ave., N.W.
Washington, DC  20001
Telephone:  (202) 393-6305
Facsimile:   (202) 393-6385

Lawrence Rosenzweig (SBN 72443)
LRPCorp@aol.com
Brent Rosenzweig (SBN 219071)
Brent.Rosenzweig@gmail.com
LAWRENCE ROSENZWEIG, PC
2730 Wilshire Boulevard, Suite 425
Santa Monica, California  90403
Telephone:  (310) 453-0348
Facsimile:   (310) 453-3358

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................... 1

II.  ARGUMENT ...................................................................... 3

    A.  The Court Has Specific Personal Jurisdiction Over EBR. ..... 3

        1.  Plaintiffs Need Only Make a Prima Facie Showing
            Regarding EBR's California Contacts. ............................ 3

        2.  EBR Had Purposeful Contacts With California. ............. 4

        3.  Plaintiffs' Claims Arise from EBR's California
            Contacts. ........................................................................ 8

        4.  EBR Has Not Shown That the Court's Exercise
            of Jurisdiction Over It Would Be Unreasonable. .............. 8

        5.  Alternatively, the Court Has Jurisdiction Over
            EBR Because EBR Engaged California Residents
            as Its Agents. ............................................................... 11

    B.  The Court Has Personal Jurisdiction Over the Individual
        Louisiana Defendants (ILDs). ......................................... 13

    C.  The Amended Complaint Satisfies Rule 8. ............................ 14

    D.  The Amended Complaint Properly States a Claim for
        Violations of the TVPA. .................................................. 19

        1.  Defendants Are Liable as "Perpetrators" of ....................
            Violations of 18 U.S.C. § 1589. ..................................... 19

        2.  Defendants Are Also Liable as Beneficiaries of the
            Trafficking Scheme. ...................................................... 22

        3.  Plaintiffs Have Properly Stated a Claim For
            Violations of 18 U.S.C. § 1592. ..................................... 24

        4.  Plaintiffs Have Properly Stated a Claim For
            Violations of 18 U.S.C. § 1594. ..................................... 25

        5.  EBR Is Civilly Liable for Its TVPA Violations. ............ 26

    E.  The Amended Complaint Properly States a Claim for
        Negligent Hiring. .......................................................... 30

    F.  The Amended Complaint Properly States a RICO Claim
        Against the ILDs. .......................................................... 32

        1.  Plaintiffs Have Properly Stated a Claim for Racketeering

Under 18 U.S.C. § 1962(c). ........................................... 33

    a.    *The ILDs Were Members of a RICO*
       *"Enterprise."* .......................................................... 33

    b.    *The ILDs "Conducted or Participated in" the*
       *RICO Enterprise.* ................................................... 34

    c.    *The ILDs Engaged in Predicate Acts of*
       *"Racketeering Activity."* ........................................ 35

    d.    *Each ILD Engaged in a "Pattern" of*
       *Racketeering Activity.* ............................................ 38

    e.    *The ILDs' Racketeering Activities Proximately*
       *Caused the Teachers' Injuries.* .............................. 39

   2.    The ILDs Are Liable for RICO Conspiracy. ................. 41

 G.    <u>The ILDs Are Not Entitled to Qualified Immunity.</u>................ 42

# TABLE OF AUTHORITIES

**CASES**

*Al-Kidd v. Ashcroft*, 580 F.3d 949 (9th Cir. 2009), *cert. granted*, __ U.S. __,
131 S. Ct. 415 (2010).............................................................................. 15, 17

*Alvarado v. Universidad Carlos Albizu*, No. 10-22072-CIV-
HUCK/O'SULLIVAN, 2010 U.S. Dist. LEXIS 87662 (S.D. Fla. Aug.
25, 2010) ........................................................................................................ 21

*Anderson v. Creighton*, 483 U.S. 635, 107 S. Ct. 3034, 97 L. Ed. 2d 523
(1987)............................................................................................................... 44

*Arizona Maintenance Co. v. United States*, 864 F.2d 1497 (9th Cir. 1989).... 42, 43

*Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)............ 15

*Bauman v. DaimlerChrysler Corp.*, 603 F.3d 1141 (9th Cir. 2010)..................... 13

*Baytree Capital Associates, LLC v. Quan*, No. CV 08-2822 CAS (AJWx),
2008 U.S. Dist. LEXIS 115634 (C.D. Cal. Sept. 29, 2008) ........................ 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929
(2007)......................................................................................................... 15, 17

*Berkovitz v. United States*, 486 U.S. 531, 108 S. Ct. 1954, 100 L. Ed. 2d 531
(1988)............................................................................................................... 42

*Bilecki v. Mather Investors, LLC*, No. 2:08-CV-1, 2008 U.S. Dist. LEXIS
71673 (W.D. Mich. Sept. 22, 2008) ............................................................. 18

*Bourg v. BT Operating Co.*, Civ. No. H-08-0596, 2009 U.S. Dist. LEXIS
29574 (S.D. Tx. Apr. 8, 2009)....................................................................... 31

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S. Ct. 2131, 170 L.
Ed. 2d 1012 (2008) .................................................................................. 37, 40

*Bryant v. Mattel*, No. CV 04-9049 DOC (RNBx), 2010 U.S. Dist. LEXIS
103851 (C.D. Cal. Aug. 2, 2010)...................................................... 35, 36, 39

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d
528 (1985).............................................................................................. 9, 10

*C.A. v. William S. Hart Union High Sch. Dist.*, 189 Cal. App. 4th 1166, 117
Cal. Rptr. 3d 283 (Cal. App. 2d Dist. 2010)................................................ 32

*Calabretta v. Floyd*, 189 F.3d 808 (9th Cir. 1999).............................................. 44

*Clinton v. Director of Corrections*, No. CV 06-5255-DOC (OP), 2009 U.S.
Dist. LEXIS 106678 (C.D. Cal. Nov. 12, 2009) ......................................... 16

*Core-Vent Corp. v. Nobel Indus.*, 11 F.3d 1482 (9th Cir. 1993) .......................... 11

*Deaton v. McElhaney*, No. EDCV 08-1396-SJO(RC), 2009 U.S. Dist. LEXIS 61061 (C.D. Cal. July 14, 2009)................................................... 16

*DIRECTV, Inc. v. EQ Stuff, Inc.*, 207 F. Supp. 2d 1077 (C.D. Cal. 2002).............. 9

*Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001)...................................... 12

*Dole Food Co., Inc. v. Watts,* 303 F.3d 1104 (9th Cir. 2002) ............................. 8

*Duncan v. United States*, 562 F. Supp. 96 (E.D. La. 1983)................................. 32

*Erikson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)...... 15

*Evans v. Allstate Ins. Co.*, 194 So. 2d 762 (La. Ct. App. 1st Cir. 1967) .............. 32

*Evans v. Tavares*, No. 09 C 2817, *2009 U.S. Dist. LEXIS 91266* (N.D. Ill. Sept. 30, 2009) ................................................................. 18

*F.E. Trotter, Inc. v. Watkins,* 869 F.2d 1312 (9th Cir. 1989) ............................... 42

*Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130 (9th Cir. 2003) ........... 44

*Franks v. Bolden,* 774 F.2d 1552 (11th Cir.1985) ................................................ 43

*Grossman v. City of Portland*, 33 F.3d 1200 (9th Cir. 1994) ............................... 43

*Guerra v. GMAC LLC*, No. 2:08-cv-01297-LDD, 2009 U.S. Dist. LEXIS 13776 *24 (E.D. Pa. Feb. 20, 2009) .......................................................... 18

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)... 44

*Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124 (9th Cir. 2008)............. 15

*Hemi Group, LLC v. City of New York*, __U.S. __, 130 S. Ct. 983, 175 L. Ed. 2d 943 (2010)............................................................... 39, 40, 41

*Hemphill v. State Farm Ins. Co.*, 472 So. 2d 320 (La. Ct. App. 3d Cir. 1985) ..... 32

*Holland America Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) .......................................................................... 5

*Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508; 153 L. Ed. 2d 666 (2002)........... 44

*In re Nat'l Western Life Ins. Deferred Annuities Litig.*, 467 F. Supp. 2d 1071 (S.D. Cal. 2006) .................................................................. 34

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984)....................................................................... 8

*Kiles v. City of N. Las Vegas*, 276 Fed. Appx. 620 (9th Cir. 2008)...................... 44

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397 (9th Cir.

1991) ...................................................................................................... 27

*Lanier v. Clovis Unified School Dist.*, No. CIV F 09 -- 2084 AWI SMS, CIV F 09 --1780 AWI SMS, 2010 U.S. Dist. LEXIS 39149 (E.D. Cal. Apr. 21, 2010) ...................................................................................... 15

*Ledent v. Guaranty Nat'l Ins. Co.*, 723 So. 2d 531 (La. Ct. App. 2d Cir. 1998)... 32

*Mattel, Inc. v. Greiner and Hausser GmbH*, 354 F.3d 857 (9th Cir. 2003) ............ 4

*Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007)................................... passim

*Metropolitan Life Insur. Co. v. Neaves*, 912 F.2d 1062 (9th Cir. 1990) ................ 4

*Migliaccio v. Midland Nat'l Life Ins. Co.*, No. CV 06-1007 CAS (MANx), 2007 U.S. Dist. LEXIS 8159 (C.D. Cal. Jan. 26, 2007)............................. 38

*Minton v. Bernard Parish Sch. Bd.*, 803 F.2d 129 (5th Cir. 1986)....................... 10

*Moore v. Gerstein*, 107 F.3d 16 (9th Cir. 1996) ..................................................... 45

*Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009) ................................... 15

*Myers v. The Bennett Law Offices*, 238 F.3d 1068 (9th Cir. 2001) ..................... 3, 9

*Nardone v. United States*, 302 U.S. 379, 58 S. Ct. 275, 82 L. Ed. 314 (1937) ..... 28

*Ndaiye v. CVS Pharmacy 6081*, 547 F. Supp. 2d 807 (S.D. Ohio 2008) .............. 37

*Newcal Indus. Inc. v. Ikon Office Solutions*, 513 F.3d 1038 (9th Cir. 2008)......... 40

*Ochoa v. J.B. Martin and Sons Farms, Inc.*, 287 F.3d 1182 (9th Cir. 2002) ........ 13

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) ................................. 33, 34

*Owen v. City of Independence, Mo*, 445 U.S. 622, 100 S. Ct. 1398, 63 L. Ed. 2d 673 (1980)....................................................................................... 42

*Palmer v. Board of Educ. of Cmty. Unit School Dist. 201-U,* 46 F.3d 682 (7th Cir. 1995) ......................................................................................... 17

*Reves v. Ernst & Young*, 507 U.S. 170, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993)................................................................................................... 34

*Robinson v. Solano County*, 278 F.3d 1007 (9th Cir. 2002)................................... 44

*Schmuck v. United States*, 489 U.S. 705, 109 S. Ct. 1443, 103 L. Ed. 2d 734 (1989)............................................................................................. 35, 36

*Sconiers v. California Dep't of Soc. Servs.*, No. 07-CV-00972-AWI-DLB, *2008 U.S. Dist. LEXIS 77133* (E.D. Cal. Sept. 11, 2008) .......................... 18

*Sedima, S.P.R.I. v. Imrex Co.*, 473 U.S. 479, 105 S. Ct. 3275, 87 L. Ed. 346 (1985)................................................................................................... 33

v

*Shah v. Wilco Systems, Inc.*, 126 F. Supp. 2d 641 (S.D.N.Y. 2000) ..................... 37

*Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990) ........................................... 11

*Theo H. Davies & Co. v. Republic of Marshall Islands*, 174 F.3d 969 (9th Cir. 1999) ................................................................................. 11

*Uhuru v. Spagnola*, No. CV 09-05582-JVS (VBK) 2010 U.S. Dist. LEXIS 63912 (C.D. Cal. June 23, 2010) ..................................................... 16

*United States v. Amiel*, 95 F.3d 135 (2d Cir. 1996) ...................................... 25

*United States v. Calimlim*, 538 F.3d 706 (7th Cir. 2008) ......................... 20, 21, 22

*United States v. Croft*, 750 F.2d 1354 (7th Cir. 1984) .................................... 24

*United States v. Dann*, No. C 08-00390 CW, 2009 U.S. Dist. LEXIS 122774 (N.D. Cal. Dec. 23, 2009) ............................................................ 20

*United States v. Fiander*, 547 F.3d at 1036 (9th Cir. 2008) ............................ 41

*United States v. Garcia*, No. 02-CR-110S-01, 2003 U.S. Dist. LEXIS 22088 (W.D.N.Y. 2003) ..................................................................... 22

*United States v. Green*, 592 F.3d 1057 (9th Cir. 2010) ................................. 36

*United States v. Herrera-Gonzalez*, 263 F.3d 1092 (9th Cir. 2001) ................... 26

*United States v. Hubbard*, 96 F.3d 1223 (9th Cir. 1996) ........................... 35, 36

*United States v. Messer*, 197 F.3d 330 (9th Cir. 1999) ................................. 26

*United States v. Schwartz*, 785 F.2d 673 (9th Cir.), *cert. denied*, 479 U.S. 890 (1986) .......................................................................... 24

*United States v. Singleton*, 165 F.3d 1297 (10th Cir. 1999) ........................... 28

*Velez v. Sanchez*, No. 04-CV-4797 (FB) (CLP), 2010 U.S. Dist. LEXIS 126586 (E.D.N.Y. Nov. 30, 2010) .............................................. 21

*Walleri v. Fed. Home Loan Bank of Seattle*, 83 F.3d 1575 (9th Cir. 1996) ......... 16

*Washington v. Baenziger*, 673 F. Supp. 1478 (N.D. Cal. 1987) ...................... 18

Wilder v. Thrower, 337 So.2d. 304 (La. Ct. App. 3d Cir. 1976) ...................... 32

*Willson v. Cagle*, 711 F. Supp. 1521 (N.D. Cal. 1988) ................................. 43

*Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004) ..................................... 18

*Yahoo, Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) .................................................................. 3, 4, 5, 8

vi

## STATUTES

18 U.S.C. § 1589 ...................................................................................... 19

18 U.S.C. § 1589(a) ................................................................................. 19

18 U.S.C. § 1589(c) ................................................................................. 20

18 U.S.C. § 1590(a) ................................................................................. 22

18 U.S.C. § 1592(a) ................................................................................. 25

18 U.S.C. § 1594(b) ................................................................................. 25

18 U.S.C. § 1595(a) ................................................................. 19, 22, 25, 27

18 U.S.C. § 1962(d) ................................................................................. 41

18 U.S.C. §§ 1341, 1343 .......................................................................... 38

18 U.S.C. §§ 1581, *et. seq.* ....................................................................... 1

18 U.S.C. §§ 1589(a), (c) .......................................................................... 27

18 U.S.C. §§ 1961, *et. seq.* ....................................................................... 2

## REGULATIONS

20 C.F.R. § 655.731(c)(10)(ii) (2000) ...................................................... 36

20 C.F.R. § 655.731(c)(9)(iii)(C) (2000) ................................................... 36

8 CFR § 214.1(e) ..................................................................................... 20

## RULES

Cal. Civ. Proc. Code. § 410.10 .................................................................. 3

Fed. R. Civ. P. 12(b)(6) ............................................................................. 2

Fed. R. Civ. P. 8(a)(2) ............................................................................. 15

Fed. R. Civ. P. 9(b) ................................................................................. 26

vii

## OTHER AUTHORITIES

ETA Form 9035, Labor Condition Application at 4,
    http://www.foreignlaborcert.doleta.gov/preh1bform.cfm ........................... 36

Form I-129 H-1B Data Collection Supplement at 18,
    http://www.uscis.gov/portal/site/uscis (follow "Forms" hyperlink; then
    follow "Petition for a Nonimmigrant Worker" hyperlink; then follow
    "Download Form I-129 ................................................................................ 36

H.R. Conf. Rep. No. 106-939, 106th Cong., 2d Sess. 99-101 (2000) ................... 20

Instructions for Form I-129: Where to File?,
    http://www.uscis.gov/portal/site/uscis (follow "Forms" hyperlink; then
    follow "Petition for a Nonimmigrant Worker" hyperlink; then follow
    "Download Instructions for Form I-129" hyperlink) .................................... 7

La. Const. art. XII, § 10 ........................................................................................ 32

PLAINTIFFS' OPPOSITION TO MOTIONS
TO DISMISS OF EBR AND ILDs

# I.   <u>INTRODUCTION</u>[1]

As the Amended Complaint amply pleads, this case is about blatant human trafficking under the Trafficking Victims Protection Reauthorization Act (TVPA)[2], of which Defendant East Baton Rouge Parish School Board (EBR) and the Individual Louisiana Defendants (ILDs) were direct beneficiaries.  EBR retained Defendants Lourdes "Lulu" Navarro and her company, Universal Placement International, Inc. (Universal), to find and recruit the qualified teachers it urgently needed from the Philippines.  Universal, Navarro, and their confederates obtained the labor of more than 200 Filipino teachers for EBR, using a variety of coercive tactics, including extortionate fees (up to $16,000 per teacher), systematic fraud, abuse of legal process, isolation, segregation and deportation threats.  EBR and the ILDs benefited from the scheme by obtaining the teachers' labor without incurring any recruiting costs, and they actively facilitated the scheme.

The Court indubitably has personal jurisdiction over these Defendants.  The claims against EBR and the ILDs arise out of their engagement of a California labor contractor, Universal, to recruit teachers from the Philippines; their retention of California counsel, Defendant Robert Silverman, with whom they colluded to submit fraudulent visa applications for the teachers in furtherance of the trafficking scheme; and their roles in otherwise facilitating the scheme conducted by these California defendants through multiple communications with them in California.  But for these actions directed at California, Plaintiffs' injuries (suffered both within and outside California) would not have occurred.  Moreover, the jurisdictional contacts of Universal and Silverman may and should be imputed to EBR.

---

[1]   A detailed statement of facts is provided in the Plaintiffs' concurrently filed opposition to the motion to dismiss filed by Defendants Universal Placement International, Inc., Lourdes "Lulu" Navarro, and Hothello "Jack" Navarro, and will therefore not be repeated here.

[2]   18 U.S.C. §§ 1581, *et. seq.*

Defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(6) are equally without merit. Universal and Navarro recruited the teachers in the Philippines with promises of rich U.S. salaries. The teachers paid extortionate fees to Universal, and had to sign contracts that were illegal under Philippine, U.S., and Louisiana law. After they paid the first fee, Navarro demanded a second, even higher fee, advised them that neither fee was refundable, and threatened them if they did not pay the second fee they would not get U.S. visas. After the teachers arrived in the United States, Navarro used threats of litigation and deportation as well as isolation to prevent them from seeking relief from the onerous financial burdens imposed on them. Because of the enormous debt the teachers were forced to incur and their visas allowing them to work for just a single employer, they had no real choice but to continue working for EBR.

Liability under the TVPA exists if a victim's labor is procured, as it was here, through threats of serious harm, abuse of legal process or a scheme designed to cause a person to believe he or she would suffer serious harm. EBR and the ILDs are liable as perpetrators of this trafficking scheme because they engaged in affirmative acts to ensure its success, and as knowing beneficiaries based on the benefits they received. Moreover, because the ILDs' facilitation of the scheme did not involve the exercise of policy judgment, they are not entitled to qualified immunity.

Plaintiffs' allegations that the ILDs violated RICO[3] are also more than sufficient to state a claim on which relief can be granted. Each of the ILDs engaged in racketeering activity and knowingly agreed to further the illegal scheme. They are thus liable for direct RICO violations as well as for RICO conspiracy.

Finally, a third party injured through the actions of an independent contractor has a claim for negligent hiring where the employer knew or should have known that the contractor was unfit. EBR knew, or certainly should have known, that Navarro had

---

[3] 18 U.S.C. §§ 1961, *et. seq.*;

PLAINTIFFS' OPPOSITION TO MOTIONS
TO DISMISS OF EBR AND ILDs

been convicted of health care fraud and had pled guilty to money laundering, and was thus utterly unfit to serve as the school district's recruiting agent.

## II.   ARGUMENT

### A.   The Court Has Specific Personal Jurisdiction Over EBR.

This Court has specific personal jurisdiction over EBR because Plaintiffs' claims arise directly from EBR's purposeful contacts with California.  The Court also has personal jurisdiction over EBR based on the undisputed California contacts of its recruiting agent, Universal, and its legal agent, Silverman, which may, and should be, imputed to EBR under Ninth Circuit law.

### 1.   Plaintiffs Need Only Make a Prima Facie Showing Regarding EBR's California Contacts.

In California, a court "may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."  Cal. Civ. Proc. Code. § 410.10.[4] The Ninth Circuit has held that the exercise of specific personal jurisdiction is consistent with the Constitution's Due Process Clause if the following three conditions are met:

(1)   The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2)   the claim must be one which arises out of or relates to the defendant's  forum-related activities; and

(3)   the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007);[5] *see also Yahoo, Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006).  ("In a

---

[4]   Moreover, "[w]hen subject matter jurisdiction is premised on a federal question, a court may exercise specific jurisdiction over a defendant if a rule or statute authorizes it to do so and the exercise of such jurisdiction comports with the constitutional requirement of due process."  *Myers v. The Bennett Law Offices*, 238 F.3d 1068, 1072 (9th Cir. 2001).

[5]   Internal citations and quotation marks are omitted unless otherwise noted.

specific jurisdiction inquiry, we consider the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts.  A strong showing on one axis will permit a lesser showing on the other").  "A single forum state contact can support jurisdiction if the cause of action . . . arises out of that particular purposeful contact of the defendant with the forum state."  *Yahoo, Inc.*, 433 F.3d at 1210.

Absent an evidentiary hearing, a plaintiff need only make a prima facie showing that it meets the Ninth Circuit jurisdiction test in order to survive a motion to dismiss on jurisdiction grounds.  *Mattel, Inc. v. Greiner and Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003).  "Unless directly contravened, [plaintiff's] version of the facts is taken as true, and conflicts between the facts contained in declarations submitted by the two sides must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists."  *Id.*  In resisting a motion to dismiss alleging absence of personal jurisdiction, the plaintiff may rely on affidavits, as well as the allegations of its complaint.  *See, e.g., Metropolitan Life Insur. Co. v. Neaves*, 912 F.2d 1062, 1063-64 (9th Cir. 1990).

Plaintiffs' Amended Complaint and the declaration and exhibits filed with this Opposition more than suffice to make a prima facie showing of jurisdiction over EBR under the Ninth Circuit standard.

### 2. EBR Had Purposeful Contacts With California.

Plaintiffs satisfy the first prong of the personal jurisdiction test because the Amended Complaint alleges that EBR "consummated transactions" with California residents Universal and Silverman.  Plaintiffs allege that EBR hired Universal, a California corporation, to recruit needed teachers from the Philippines.  (Am. Compl. ¶ 33.)  Plaintiffs further allege that EBR engaged Silverman, a California attorney, as its counsel to procure the H-1B visas necessary for Defendants to effectuate their trafficking scheme.  (*Id.* ¶¶ 98, 175g.)  Plaintiffs' claims against EBR are based on its transactions with these California entities and the trafficking venture it formed with

them.  Plaintiffs thus have made a sufficient prima facie showing as to the first element.

EBR contends that the Court should apply the so-called "effects" test in assessing whether Plaintiffs have satisfied the first prong.  But the effects test typically applies only to intentional tort claims.  *See Holland America Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007); *accord* ECF No. 46-1 at 13 n.4.  Plaintiffs' TVPA claim does not sound in intentional tort, and the claim that EBR negligently hired Universal as its teacher recruiter agent (a tort with a critical nexus to California, where Universal is based) is, by its terms, founded on negligence, not intentional misconduct.

In any event, the Court has jurisdiction over EBR under the effects test as well.  Under the effects test, a non-resident defendant is subject to jurisdiction if it committed an intentional act, expressly aimed at the forum state, causing harm that the defendant knows is likely to be suffered in the forum state.  *Menken*, 503 F.3d at 1058.  A court "must evaluate all of a defendant's contacts with the forum state, whether or not those contacts involve wrongful activity by the defendant."  *Yahoo, Inc.*, 433 F.3d at 1207.

EBR engaged in multiple intentional acts aimed at California.  Most significantly, it engaged Universal and Silverman to perform needed services in California, knowing that such services would indeed be performed from their respective California offices.  (Am. Compl. ¶¶ 9, 33, 78, 98, 175g.)  EBR had extensive email, regular mail, and telephone communications with Universal, its president, Lulu Navarro, and Silverman regarding and in furtherance of the trafficking scheme, directing such communications to Universal, Navarro and Silverman in California.  These communications included, *inter alia*:

- A fraudulent letter from EBR agent Millie Williams to Silverman asking Silverman to arrange for cancellation, on false grounds, of the visa of a teacher who refused to pay the exorbitant and illegal fees that Recruiter Defendants demanded (Am. Compl. ¶ 185b);

- An email from EBR agent Elizabeth Duran Swinford to Navarro volunteering to provide Navarro with the names of teachers who made public complaints about her (*id.* ¶ 187a);

5

- An email from Swinford to Navarro informing her of a blog established by teachers, which was sharply critical of Recruiter Defendants (*id.* ¶ 187b);

- An email from Swinford to Navarro advising her that EBR would make sure to request only one-year rather than the standard three-year visa renewals for EBR teachers, in order to help Navarro solidify her control over the teachers (*id.* ¶ 187c);

- A phone call to Navarro placed by an EBR agent, pursuant to which Navarro was enabled to tell a Filipino teacher that she must pay illegal fees to Recruiter Defendants (*id.* ¶ 187d);

- Transmissions from Swinford to Navarro of confidential files concerning teachers who had complained about Recruiter Defendants to the Philippine Overseas Employment Administration (*id.* ¶ 187e);

- Job offer letters signed by Williams, which were in turn transmitted to Universal in California by EBR's recruitment manager (Knoepp Decl. Ex. B);

- A letter from Williams to Navarro in California requesting that Universal continue procuring Filipino teachers for EBR for the 2009-10 school year; the letter was sent in November 2008, when Williams and other EBR agents were well aware of the trafficking scheme (Knoepp Decl. Ex. C);

- Emails from EBR agents to Universal regarding the teachers' transportation and housing (Knoepp Decl Ex. D);

- Emails from EBR agents to Silverman requesting legal advice about the teachers' visas (Knoepp Decl. Ex. E);

- Emails from EBR agents to Universal inquiring about visa programs for additional Filipino teachers (Knoepp Decl. Ex. F);

- Correspondence from EBR agents to Universal regarding travel arrangements for recruitment trips to the Philippines (Knoepp Decl. Ex. G); and

- Emails from EBR agents to Universal concerning the screening of potential EBR teachers (Knoepp Decl. Ex. H).

In addition to these numerous communications directed to Universal, Navarro and

Silverman in California,[6] EBR agents also submitted hundreds of fraudulent visa forms to the California office of the United States Immigration and Customs Service (USCIS) seeking H-1B visas for the teachers.  (*See, e.g.* Am. Compl. ¶¶ 205-225; Knoepp Decl. Ex. J (forms submitted for three named Plaintiffs employed by EBR).)  Many of these forms were processed at the USCIS California Service Center.[7]  (*See, e.g.*, Knoepp Decl. Ex. I (approval notices issued by California Service Center related to two of three named Plaintiffs employed by EBR).)

These intentional acts directed at California resulted in foreseeable harm to the teachers, which occurred, in significant part, in California.  For example, teachers were subjected to lawsuits abusing legal process in California courts based on information provided to Navarro by EBR agents (Am. Compl. ¶¶ 166-168, 187); teachers were compelled to pay exorbitant and illegal fees to Universal, a California corporation, as a result of EBR's participation in the trafficking scheme (*e.g.*, *id.* ¶¶ 9-10, 149, 169, 182d, 185c, 295-296); teachers were subjected to legal malpractice and breaches of fiduciary duty by Silverman, a California attorney, based in substantial part on conflicts EBR created (*see id.* ¶¶ 175-179); and the teachers were compelled to sign illegal contracts of adhesion with Universal in California as a further consequence of EBR's participation in the scheme—contracts governed by California law.  (*Id.* ¶¶ 5, 147-151.)

EBR argues that Plaintiffs allegedly suffered even more harm in Louisiana.  (ECF No. 46-1 at 13.)  But "[i]f a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another

---

[6]  The documents identified above and attached to the Knoepp Declaration are only a small sample of the hundreds of pages of communications between EBR and its agents, and the Defendants who were located in California that were obtained pre-filing pursuant to Louisiana Open Records Act requests.  (Knoepp Decl. ¶ 14.)

[7]  Because EBR sought an exemption from the H-1B statutory visa cap (Knoepp Decl. Ex. J, Form I-129 H-1B Data Collection Supplement), the documents were required to be filed with the California Service Center of USCIS.  *See* Instructions for Form I-129: Where to File?, http://www.uscis.gov/portal/site/uscis (follow "Forms" hyperlink; then follow "Petition for a Nonimmigrant Worker" hyperlink; then follow "Download Instructions for Form I-129" hyperlink) (last visited Feb. 14, 2011).

7

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS OF EBR AND ILDs

state." *Yahoo, Inc.*, 433 F.3d at 1207.  Nor is it relevant that the teachers currently reside outside California: "the plaintiff's residence in the forum State is not a separate requirement, and lack of residence will not defeat jurisdiction established on the basis of defendant's contacts." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780, 104 S. Ct. 1473, 1481, 79 L. Ed. 2d 790, 801 (1984).

Plaintiffs thus satisfy the first prong of the jurisdiction test based either on EBR's consummation of transactions with California residents, or pursuant to the effects test.

### 3.  Plaintiffs' Claims Arise from EBR's California Contacts.

Plaintiffs likewise satisfy the second prong of the jurisdictional inquiry:  their claims against EBR directly arise from EBR's forum-related contacts.

In determining whether a plaintiff's claims arise out of defendant's contacts with the forum state "the Ninth Circuit follows the 'but for' test." *Menken*, 503 F.3d at 1058. Plaintiff "must show that he would not have suffered an injury 'but for' [defendant's] forum-related conduct." *Id.*

Here, the teachers would not have suffered their injuries but for EBR's purposeful contacts with California.  They were harmed because EBR engaged Universal to act as its recruiter and Silverman to act as its counsel, and by EBR's various other acts directed at California described above, which facilitated the trafficking scheme.  Absent these acts by EBR, the teachers could not have been trafficked to work in the East Baton Rouge Parish Public School System, and the scheme could not have succeeded. Accordingly, the second prong of the jurisdiction test is satisfied.

### 4.  EBR Has Not Shown That the Court's Exercise of Jurisdiction Over It Would Be Unreasonable.

Where, as here, plaintiff has satisfied the first two prongs of the jurisdiction test, the burden shifts to defendant to "present[] a compelling case that the exercise of juris-diction would be unreasonable." *Menken*, 503 F.3d at 1061; *accord Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1117 (9th Cir. 2002).  EBR makes no such "compelling case."

Courts in the Ninth Circuit evaluate seven factors in assessing whether it would

be unreasonable to exercise jurisdiction over a defendant:  (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.  *Menken*, 503 F.3d at 1060.

EBR has not made a compelling case that the exercise of jurisdiction over it by a California court would be unreasonable pursuant to these factors. It principally argues under the final factor that Plaintiffs could have brought this action in Louisiana.  (ECF No. 46-1 at 15; ECF No. 45-2 at 25, 28-29.)  But "[t]he mere existence of an alternative forum . . . cannot possibly satisfy [Defendant's] burden to present a compelling case that jurisdiction is unreasonable." *Myers*, 238 F.3d at 1075.  Moreover, filing suit in Louisiana might well have been met with a motion to transfer venue by the California defendants.

EBR also cannot viably resist the exercise of jurisdiction under the other reasonableness factors.  First, as explained above, EBR purposefully interjected its actions into California by retaining Universal as its recruiter and Silverman as its counsel, and by engaging in repeated contacts with these California defendants in California to effectuate the trafficking scheme.  These California contacts generated significant benefits for EBR—principally, the benefit of procuring over 200 much-needed teachers without incurring any costs for recruiting or obtaining visas.  (*See* Am. Compl. ¶¶ 98, 181.)  "[W]here individuals purposefully derive benefit [from out of state contacts] . . . it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities . . . ." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-74, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528, 541 (1985); *see also DIRECTV, Inc. v. EQ Stuff, Inc*., 207 F. Supp. 2d 1077, 1081 (C.D. Cal. 2002) (purposeful interjection weighed in favor of exercising jurisdiction where, *inter*

9

1  *alia*, defendant had "established significant business relations with multiple California

2  entities").

3      Second, EBR's contention that litigating in California would be burdensome is

4  utterly unsupported.  Indeed, "because modern transportation and communications have

5  made it much less burdensome for a party sued to defend himself in a State where he

6  engages in economic activity, it usually will not be unfair to subject him to the burdens

7  of litigating in another forum for disputes relating to such activity."  *Burger King*, 471

8  U.S. at 474; *accord Menken*, 503 F.3d at 1060 ("with the advances in transportation and

9  telecommunications and the increasing interstate practice of law, any burden [of

10  defending a suit in another state] is substantially less than in days past").  EBR's

11  unsupported "burden" claim is also flatly inconsistent with the fact that EBR agents

12  were obviously able to travel across the Pacific to the Philippines to interview teachers,

13  in furtherance of the trafficking scheme.  (*See* Am. Compl. ¶ 102.)

14      Third, EBR also completely fails to support its bald assertion that litigating this

15  case in California would impinge on Louisiana's sovereignty.  Indeed, the Fifth Circuit

16  has specifically rejected a comparable claim that the exercise of jurisdiction over a

17  Louisiana school district would impinge on Louisiana sovereignty, explaining that "a

18  suit against a parish school board is not a suit against the state and poses no immediate

19  threat to the state fisc or state regulation of public property."  *Minton v. Bernard Parish*

20  *Sch. Bd.*, 803 F.2d 129, 132 (5th Cir. 1986).

21      Fourth, contrary to EBR's contention, California has a significant interest in

22  adjudicating this dispute.  EBR engaged a California labor contractor as its recruiter and

23  a California lawyer as its attorney, and the trafficking scheme was based in substantial

24  part in California, where Universal and Silverman are located.  Moreover, the case

25  involves the legality of contracts governed by California law and fraud by a California

26  employment agency, as well as legal malpractice committed in California by a member

27  of the California State Bar.  It also involves several other important claims under

28  California state law, in addition to the federal claims.  (*See, e.g.,* Am. Compl. ¶¶ 306-27.

10

Fifth, the disputes here can be efficiently resolved in this forum.  By contrast, litigating against the California defendants in California and against the Louisiana defendants in Louisiana would be highly duplicative, inefficient and expensive, and could risk inconsistent verdicts.  Moreover, Defendants Universal, Navarro and Robert Silverman are located in California, as are their books and records.  *See Core-Vent Corp. v. Nobel Indus.*, 11 F.3d 1482, 1489 (9th Cir. 1993) (emphasizing primacy of location of witnesses and evidence).  Although the teachers and EBR defendants are located in Louisiana, the bulk of the relevant documents are likely located in the files of Universal and Silverman.  EBR has not sustained its burden of showing otherwise.

Finally, although the "importance/convenience" factor is afforded little weight in the Ninth Circuit, *see Menken*, 503 F.3d at 1061, litigating this case in California is important given the central role California defendants played in the trafficking scheme.

In sum, EBR fails to make the required "compelling case" that the exercise of jurisdiction would be unreasonable, and the Court accordingly should find that it has specific personal jurisdiction over EBR.

### 5.   Alternatively, the Court Has Jurisdiction Over EBR Because EBR Engaged California Residents as Its Agents.

This Court has personal jurisdiction over EBR for a separate, independent reason: because EBR engaged a California corporation as its recruiting agent and a California lawyer as its legal agent (each to perform services essential to the trafficking scheme), EBR is charged with those agents' forum contacts.

"For purposes of personal jurisdiction, the actions of an agent are attributable to the principal."  *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990); *accord Theo H. Davies & Co. v. Republic of Marshall Islands*, 174 F.3d 969, 974 (9th Cir. 1999) ("In determining the sufficiency of a defendant's contacts, it is not only defendant's activities in the forum, but also actions relevant to the transaction by an agent on defendant's behalf, which support personal jurisdiction.").  As Defendants acknowledge, agency exists for jurisdictional purposes if the putative agent "performs services that are

Fifth, the disputes here can be efficiently resolved in this forum.  By contrast, litigating against the California defendants in California and against the Louisiana defendants in Louisiana would be highly duplicative, inefficient and expensive, and could risk inconsistent verdicts.  Moreover, Defendants Universal, Navarro and Robert Silverman are located in California, as are their books and records.  *See Core-Vent Corp. v. Nobel Indus.*, 11 F.3d 1482, 1489 (9th Cir. 1993) (emphasizing primacy of location of witnesses and evidence).  Although the teachers and EBR defendants are located in Louisiana, the bulk of the relevant documents are likely located in the files of Universal and Silverman.  EBR has not sustained its burden of showing otherwise.

Finally, although the "importance/convenience" factor is afforded little weight in the Ninth Circuit, *see Menken*, 503 F.3d at 1061, litigating this case in California is important given the central role California defendants played in the trafficking scheme.

In sum, EBR fails to make the required "compelling case" that the exercise of jurisdiction would be unreasonable, and the Court accordingly should find that it has specific personal jurisdiction over EBR.

### 5. Alternatively, the Court Has Jurisdiction Over EBR Because EBR Engaged California Residents as Its Agents.

This Court has personal jurisdiction over EBR for a separate, independent reason: because EBR engaged a California corporation as its recruiting agent and a California lawyer as its legal agent (each to perform services essential to the trafficking scheme), EBR is charged with those agents' forum contacts.

"For purposes of personal jurisdiction, the actions of an agent are attributable to the principal."  *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990); *accord Theo H. Davies & Co. v. Republic of Marshall Islands*, 174 F.3d 969, 974 (9th Cir. 1999) ("In determining the sufficiency of a defendant's contacts, it is not only defendant's activities in the forum, but also actions relevant to the transaction by an agent on defendant's behalf, which support personal jurisdiction.").  As Defendants acknowledge, agency exists for jurisdictional purposes if the putative agent "performs services that are

sufficiently important to the [principal] that if it did not have a representative to perform them, the [principal's] own officials would undertake to perform substantially similar services."  *Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001); *see* ECF No. 46-1 at 16 n.5.

Plaintiffs specifically allege that EBR engaged Universal as its recruiting agent. (Am. Compl. ¶ 33.)  Plaintiffs further allege that EBR faced a teacher shortage and that recruiting qualified teachers was thus extremely important to EBR.  (*Id.* ¶ 181; *see also* Knoepp Decl. Ex. L.)  If EBR had not engaged Universal or another third party as its recruiting agent, EBR officials would have had to recruit qualified teachers themselves. Plaintiffs also allege that EBR engaged Silverman as its legal agent to procure needed visas for the teachers.  (Am. Compl. ¶¶ 175g, 178-179; Knoepp Decl. ¶ Ex. J (containing Notice of Appearance Forms listing Silverman as counsel for EBR).)  But for Silverman's engagement, EBR would have needed its own legal personnel to do this work.  In contrast to the case relied on by EBR,[8] the wrongful acts of Universal and Silverman were directly within the scope of their duties as EBR's labor recruiter and counsel.  The forum contacts of EBR's agents are thus properly imputed to EBR.

Unquestionably the Court has personal jurisdiction over Universal and Silverman: Universal is a California corporation and engaged in the wrongful conduct alleged in the Amended Complaint from its office in Los Angeles.  Similarly, Silverman is a California resident licensed to practice law by California, and his wrongful conduct occurred in California.  Because this Court has personal jurisdiction over Universal and Silverman (both general and specific), and their forum contacts are properly imputed to EBR on principal-agent grounds, EBR is likewise subject to the Court's jurisdiction.

EBR argues that the principal must have authorized the agent's actions for there to be imputation (ECF No. 46-1 at 16), but the Ninth Circuit recently vacated a decision

---

[8]  *See* ECF No. 46-1 at 16 (citing *Boston Telecommunications Group v. Deloitte Touche Tohmatsu*, 249 Fed. Appx. 534, 538 (9th Cir. 2007)).

**PLAINTIFFS' OPPOSITION TO MOTIONS
TO DISMISS OF EBR AND ILDs**

to that effect and ordered rehearing on the issue. *Bauman v. DaimlerChrysler Corp.*, 603 F.3d 1141 (9th Cir. 2010). In any event, the Amended Complaint *does* allege that EBR authorized the actions of Universal, in that EBR knew of Universal's misconduct, yet continued to engage Universal as its recruiting agent and took affirmative steps to further the trafficking scheme. (Am. Compl. ¶¶ 182-188.) EBR need not have exercised day-to-day control over Universal's recruitment activities for the Court to find that Universal's actions were authorized. *See Ochoa v. J.B. Martin and Sons Farms, Inc.*, 287 F.3d 1182, 1190 (9th Cir. 2002) (labor contractor charged with recruiting migrant workers was agricultural grower's "agent" for jurisdiction purposes, notwithstanding that grower "exercised very little day-to-day control over [contractor's] recruitment and management of the Arizona migrant workers"). EBR also specifically authorized and directed actions of Silverman, its legal counsel. (*See, e.g.,* Am. Compl. ¶ 185b; Knoepp Decl. Ex. A (letter from EBR agent Millie Williams to Silverman directing Silverman to seek revocation, on fraudulent grounds, of visa issued to teacher who refused to pay extortionate fees demanded by Recruiter Defendants); Am. Compl. ¶ 175g (alleging that Silverman filed teacher visa petitions on EBR's behalf), Knoepp Decl. Ex. J (containing Notice of Appearance Forms).) Accordingly, even if authorization of the agent's actions were required, the Amended Complaint alleges such authorization and imputation is thus appropriate.

### B.   The Court Has Personal Jurisdiction Over the Individual Louisiana Defendants (ILDs).

As demonstrated, the Court has specific personal jurisdiction over EBR because Plaintiffs' claims arise out of its purposeful contacts with California, and EBR has not made the required "compelling case" that the exercise of jurisdiction would be unreasonable. *See* Section II.A. The Court has jurisdiction over the ILDs for the same reasons: Plaintiffs' claims against the ILDs likewise arise out of their forum contacts, and the ILDs likewise fail to show that the exercise of jurisdiction over them would be unreasonable.

Contrary to the ILDs' assertion, the Amended Complaint contains factual allegations of purposeful contacts with California by each ILD.  Additional such contacts are demonstrated by the attached declaration and exhibits.  Most importantly, each ILD was involved in retaining Universal, a California corporation, as EBR's agent to recruit needed teachers from the Philippines.  (Am. Compl. ¶¶ 21-23, 98; Knoepp Decl. Exs. B, C, F, G, H, K, L.)  Each ILD also played a central role in facilitating the trafficking scheme Universal spearheaded from its Los Angeles office.  (Am. Compl. ¶¶ 12, 182-188.)  In addition, Defendant Placide worked closely with Defendant Silverman, EBR's California legal counsel, to obtain needed visas for the teachers whose labor was procured pursuant to the trafficking scheme.  (*Id.* ¶¶ 205-225.)  The ILDs directed numerous communications to Universal, Navarro, Silverman, and other California parties in furtherance of the scheme as set forth in Section II.A.2., *supra*.  Additional evidence regarding the ILDs' California contacts will doubtless be uncovered in discovery.

The ILDs' intentional acts directed at California resulted in foreseeable harm to the teachers.  Such harm occurred, in significant part, in California, as set forth in Section II.A.2.  The ILDs' purposeful contacts with California were the "but for" cause of the injuries the teachers suffered:  but for the ILDs' retention of Universal as EBR's recruiting agent and their acts to further the trafficking scheme, the teachers could not have been trafficked to work at EBR and the scheme could not have succeeded.  *See Menken*, 503 F.3d at 1058.

Finally, like EBR, the ILDs have made no showing that the exercise of jurisdiction over them would be unreasonable—much less the "compelling case" that is required in the Ninth Circuit.  Accordingly, the ILDs' motion to dismiss for lack of personal jurisdiction should also be denied.

## C.    The Amended Complaint Satisfies Rule 8.

The ILDs' contention that Plaintiffs' 127-page, 400-paragraph Amended Complaint is not sufficiently detailed to satisfy Rule 8 is baseless.  Rule 8(a)(2) requires

14

PLAINTIFFS' OPPOSITION TO MOTIONS
TO DISMISS OF EBR AND ILDs

only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Its purpose is to give a defendant "fair notice of the claim against it." *Lanier v. Clovis Unified School Dist.*, No. CIV F 09 -- 2084 AWI SMS, CIV F 09 --1780 AWI SMS, 2010 U.S. Dist. LEXIS 39149, at *7 (E.D. Cal. Apr. 21, 2010). The Supreme Court's rulings in *Twombly* and *Iqbal*[9] "do not require that the complaint include all facts necessary to carry the plaintiff's burden." *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), *cert. granted*, __ U.S. __, 131 S. Ct. 415 (2010). A complaint must simply allege "enough fact to raise a reasonable expectation that discovery will reveal evidence" to prove plaintiff's claims. *Twombly*, 550 U.S. at 556; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 968 (9th Cir. 2009) ("'Specific facts are not necessary' for pleadings to satisfy Rule 8(a)(2).") (quoting *Erikson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081, 1085 (2007)).

The Amended Complaint satisfies this standard. First, without a doubt it gives the ILDs fair notice of the claims against them. The ILDs are named in only two of the twelve causes of action Plaintiffs assert: the Second and Eleventh, alleging violations of RICO and the TVPA, respectively. Plaintiffs' negligent hiring claim (Twelfth Cause of Action) is asserted against EBR only, and Plaintiffs' other state law claims are asserted only against the Recruiter Defendants or the Legal Facilitator Defendants. *See Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1132 (9th Cir. 2008) (complaints were sufficient under Rule 8 because they "clearly delineate the claims and the Defendants against whom the claims are made"). There is no ambiguity or lack of clarity about which causes of action are alleged against which Defendants.

Second, contrary to the ILDs' assertion, the Amended Complaint does not make mere conclusory allegations and threadbare recitals of Plaintiffs' causes of action. On

---

[9] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS OF EBR AND ILDs**

the contrary, it contains detailed allegations that the ILDs knew about, facilitated and benefited from the trafficking scheme.  The ILDs contend, for example, that the allegation that they knew about the exorbitant fees being charged to the teachers is purely "conclusory".  (ECF No. 45-2 at 14.)  But there is nothing "conclusory" about the allegation:  the Amended Complaint states that the ILDs knew because they "were *told* of the exorbitant fees in or before November 2007, again in April 2008, and many times thereafter."  (Am. Compl. ¶ 182d (emphasis added).)  Rule 8 does not require Plaintiffs to provide further specifics, at even greater length, regarding these communications.

Plaintiffs also allege that the ILDs knew of fees being charged to the teachers because EBR itself was not paying *any* recruitment fees and was being reimbursed for all its expenses.  (Am. Compl. ¶ 182a.)  This allegation quite plausibly gives rise to the inference that all three ILDs knew very well that the teachers paid the recruitment fees, given the ILDs' supervisory roles and participation in the recruitment process.  *See Walleri v. Fed. Home Loan Bank of Seattle*, 83 F.3d 1575, 1580 (9th Cir. 1996) (court is bound to give plaintiff "the benefit of every reasonable inference to be drawn from well-pleaded facts").

Third, the Amended Complaint provides examples of *each* ILD's individual knowledge of and/or participation in defendants' scheme.  Unlike the cases the ILDs cite, the Amended Complaint does not treat Defendants as an undifferentiated mass.[10]

---

[10]  In both *Uhuru v. Spagnola*, No. CV 09-05582-JVS (VBK) 2010 U.S. Dist. LEXIS 63912 (C.D. Cal. June 23, 2010), and *Clinton v. Director of Corrections*, No. CV 06-5255-DOC (OP), 2009 U.S. Dist. LEXIS 106678, at *15 (C.D. Cal. Nov. 12, 2009), *pro se* plaintiffs recited the same conclusory allegations as to all defendants without distinction.  In *Deaton v. McElhaney*, No. EDCV 08-1396-SJO(RC), 2009 U.S. Dist. LEXIS 61061 (C.D. Cal. July 14, 2009), a *pro se* defendant grouped all of his purported constitutional violations into one cause of action and broadly claimed that all defendants violated his rights, without distinguishing their actions in any respect.  In *Baytree Capital Associates, LLC v. Quan*, No. CV 08-2822 CAS (AJWx), 2008 U.S. Dist. LEXIS 115634 (C.D. Cal. Sept. 29, 2008), plaintiff did not detail any aspects of an alleged fraud by multiple defendants and only described the general nature of the scheme.  By contrast, the Amended Complaint here clearly distinguishes between the conduct of Recruiter Defendants, Legal Facilitator Defendants and Employer Defendants, and provides examples of each ILD's participation in Defendants' scheme.

For instance, the Amended Complaint alleges that Placide submitted fraudulent visa materials to the United States government and applied for one-year rather than three-year visas for the teachers, thus facilitating Defendants' ability to control the teachers through threats of deportation.  (Am. Compl. ¶¶ 186, 205-225.)  The Amended Complaint alleges that Williams colluded with Recruiter Defendants and Legal Facilitator Defendants to abuse legal process by sending a fraudulent letter to the U.S. government regarding a teacher who refused to pay the Recruiter Defendants' exorbitant and illegal fees.  (*Id.* ¶¶ 185.)  The Amended Complaint alleges that Swinford had an extensive role in helping Recruiter Defendants extract fees from the teachers and intimidate and control the teacher class.  (*Id.* ¶¶ 102, 180, 182, 185-187.)  And the Amended Complaint alleges that all three ILDs gained knowledge of the overall scheme through such participation.  (Am. Compl. ¶¶ 170b, 180, 181, 182c, 185b, 186, 187, 208, 212, 219.)  The personal jurisdiction, TVPA, and RICO sections of this Opposition describe additional conduct by each ILD to advance the trafficking scheme.  These various examples "raise a reasonable expectation that discovery will reveal evidence" to prove Plaintiffs' claims.  *Twombly*, 550 U.S. at 556.  Again, Plaintiffs are not required to allege every fact that could support their causes of action against each ILD.  *See Al-Kidd*, 580 F.3d at 977.

Finally, Rule 8 permits treatment of the Employer Defendants as a group in some instances.  In *Palmer v. Board of Educ. of Cmty. Unit Sch. Dist. 201-U*, 46 F.3d 682 (7th Cir. 1995), plaintiffs sued several board of education members and defendants moved to dismiss on the ground that the complaint did not adequately specify the alleged misconduct of each board member.  The Seventh Circuit denied the motion to dismiss because:

> [w]hen a collective body such as a school district takes a complex series of actions over a span of years, it may be difficult to pin down individual responsibility without discovery.  If the complaint cannot survive a motion under Rule 12(b)(6) until each person's role is known, however, it may be impossible as a practical matter to obtain complete relief."

*Id.* at 688.  As in *Palmer*, the Amended Complaint here alleges a complex series of

17

1   actions by a number of people over a number of years, and Plaintiffs thus are entitled to

2   discovery to establish with greater precision the specific role and responsibility of each

3   ILD in Defendants' scheme.  Courts in the Ninth Circuit and elsewhere have continued

4   to hold after *Twombly* that allegations pertaining to a specific group of defendants (as

5   distinct from each defendant individually) satisfy Rule 8.  *See, e.g.*, *Evans v. Tavares*,

6   No. 09 C 2817, 2009 U.S. Dist. LEXIS 91266, at *6 (N.D. Ill. Sept. 30, 2009) (rejecting

7   defendant's argument that allegations against "defendant officers" were insufficient

8   because "in this case, where only three individual defendants are named, Plaintiff's

9   allegations are not so sketchy that the complaint does not provide the type of notice of

10   the claim to which the defendant is entitled under Rule 8."); *Sconiers v. California Dep't*

11   *of Soc. Servs.*, No. 07-CV-00972-AWI-DLB, 2008 U.S. Dist. LEXIS 77133, at *24 n.1

12   (E.D. Cal. Sept. 11, 2008) (when complaint "refers to all defendants or certain groups of

13   defendants, Plaintiff may avoid listing each party individually by defining and using

14   phrases such as 'Defendants,' 'Public Defendants,' or 'Private Defendants.'").[11]

15      In sum, Plaintiffs have distinguished between the EBR Defendants and the other

16   two defendant groups, and have offered examples of each ILDs misconduct. This is

17   more than sufficient to satisfy Plaintiffs' notice-pleading burden.  If the ILDs seek a

18   summary before trial of the full evidence supporting the claims against them, they may

19   propound contention interrogatories at an appropriate point in the discovery process.

20   There is no basis for dismissing this case at the pleadings stage.

21

22

_____

23   [11]  *Accord Guerra v. GMAC LLC*, No. 2:08-cv-01297-LDD, 2009 U.S. Dist. LEXIS
13776, at *24 (E.D. Pa. Feb. 20, 2009) ("Despite Plaintiffs' failure to distinguish between

24   each of the Defendant GMAC entities in the First Amended Complaint, it is clear that
Plaintiffs have alleged participation by each of the Defendants in the challenged

25   discriminatory practices."); *see also Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004);
*Bilecki v. Mather Investors, LLC*, No. 2:08-CV-1, 2008 U.S. Dist. LEXIS 71673, at *5

26   (W.D. Mich. Sept. 22, 2008); *Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D.
Cal. 1987) (holding pre-*Twombly* that complaint satisfied Rule 8 because "plaintiff has

27   divided the defendants into relevant groups and specified the causes of action against
each group…These allegations are particular enough to put the defendants on notice of

28   the allegations of fraud against them.").

D.   **The Amended Complaint Properly States a Claim for Violations of the TVPA.**

Plaintiffs' allegations that EBR and the ILDs violated the TVPA are more than sufficient to state a claim under the statute's civil remedy provision, 18 U.S.C. § 1595. That provision imposes liability both on perpetrators of TVPA violations and on "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known was engaged in an act in violation of [Chapter 77 of Title 18 (18 U.S.C. §§ 1581-1596)]." 18 U.S.C. § 1595(a). As demonstrated below, EBR and the ILDs are liable both as perpetrators and as beneficiaries of the trafficking scheme here because they directly perpetrated violations of 18 U.S.C. § 1589 and knowingly benefited from such violations—as well as violations of other sections of the TVPA—through their participation in a joint venture with the Recruiter Defendants and Legal Facilitator Defendants.

1.   **Defendants Are Liable as "Perpetrators" of Violations of    18 U.S.C. § 1589.**

A defendant violates 18 U.S.C. § 1589 if it knowingly obtains a person's labor or services by any one of four prohibited means. Such prohibited means include "serious harm or threats of serious harm"; "abuse or threatened abuse of law or legal process"; and "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a).

Plaintiffs have provided detailed allegations that EBR and the ILDs knowingly obtained labor procured by such prohibited means here. The Amended Complaint alleges that Plaintiffs were ensnared in a psychologically coercive and financially ruinous trafficking scheme in which they were forced to incur debts to pay fraudulent and otherwise illegal fees that far exceeded their ability to pay absent continuing employment by EBR. (Am. Compl. ¶¶ 6, 9-12, 108-109, 124, 126-130, 133, 145, 151.) It further alleges that EBR and the ILDs were aware of the scheme and not only acquiesced to it, but also took affirmative steps to ensure its success. (*Id.* ¶¶ 182-183,

185-187, 208, 215, 222.)  EBR's and the ILD's participation in a scheme that illegally shifted the financial burden of obtaining H-1B visas from EBR to the teachers in fact *caused* the teachers serious harm, not merely the *threat* of serious harm or the *belief* that serious harm would be suffered, which are all that is required by the TVPA.

Defendants' contention that the teachers were not technically "required" to work for EBR misses the point and reflects a fundamental misunderstanding of the TVPA. TVPA liability does not depend on physical coercion.  In enacting the statute, Congress intended section 1589 to be read broadly to "address the increasingly *subtle methods* of traffickers" including those who "restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence."  H.R. Conf. Rep. No. 106-939, 106th Cong., 2d Sess. 99-101 (2000) (emphasis added).

Consistent with that clear Congressional intent, section 1589 provides for liability in situations like here, where a Plaintiff's labor is procured by means other than physical force.  *See* 18 U.S.C. § 1589(c) (defining "serious harm" as including "physical or nonphysical, including psychological, financial, or reputational harm").  It is sufficient that Defendants' misconduct has created a situation where ceasing to labor would cause Plaintiff serious financial harm. *See United States v. Calimlim*, 538 F.3d 706, 711-12, 714 (7th Cir. 2008) (finding that "serious harm" includes financial harm and noting that violations of section 1589 are not limited to overt physical coercion); *United States v. Dann*, No. C 08-00390 CW, 2009 U.S. Dist. LEXIS 122774, at *5-*7 (N.D. Cal. Dec. 23, 2009) (threat of serious financial harm sufficient to establish forced labor).

Here, Defendants' misconduct forced Plaintiffs to take on crushing debt, which they could not possibly repay absent continued employment by EBR.  Given that debt, ceasing to work for EBR would have resulted in their financial ruin.  Because their H-1B visas were tied to EBR as their petitioning employer,[12] Plaintiffs could not readily

---

[12] *See* 8 CFR § 214.1(e) (H-1B nonimmigrant may engage only in authorized employment and "[a]ny unauthorized employment by a nonimmigrant constitutes a failure to maintain status").

quit EBR and work somewhere else.  *See Calimlim*, 538 F.3d at 712 ("[The trafficking victim] did not have an exit option:  because the threats in her case involved her immigration status, she could not freely work for another employer in order to escape the threatened harm.").

Defendants' attempt to analogize this case to *Velez v. Sanchez* and *Alvarado v. Universidad Carlos Albizu* lacks merit.  (ECF No. 45-2 at 36-37.)  In *Velez*, plaintiff testified that she did not feel forced to work because of defendant's actions.  *See Velez v. Sanchez*, No. 04-CV-4797 (FB) (CLP), 2010 U.S. Dist. LEXIS 126586, at *24 (E.D.N.Y. Nov. 30, 2010).  Here, by contrast, Plaintiffs allege that they had no realistic choice but to continue working for EBR because of the crushing debt they had incurred pursuant to the fraudulent trafficking scheme.  In *Alvarado*, plaintiff claimed that defendant engaged in trafficking by asking him to perform additional job duties without a corresponding increase in pay.  *See Alvarado v. Universidad Carlos Albizu*, No. 10-22072-CIV-HUCK/O'SULLIVAN, 2010 U.S. Dist. LEXIS 87662, at *2 (S.D. Fla. Aug. 25, 2010).  That is categorically different from the claim Plaintiffs assert here.

Plaintiffs' labor was also obtained through the abuse and threatened abuse of the legal process—another prohibited means under section 1589(a).  (Am. Compl. ¶¶ 162-163, 165-169, 185-187.)  Plaintiffs were subjected to repeated threats of deportation and non-renewal of their visas as well as frivolous lawsuits and threats of additional lawsuits for speaking out.  (*Id.*)  As explained more fully in Plaintiffs' opposition to the motion to dismiss of defendants Universal and Navarro, these abuses were part and parcel of the overall trafficking scheme because their purpose was to intimidate the teachers and ensure their continued labor under the conditions imposed.

EBR and the ILDs actively assisted in this abuse and threatened abuse of the legal process.  For example, Swinford alerted Navarro about the blog started by teachers, which provided a forum for complaints about Navarro's illegal recruitment practices.  (*Id.* ¶ 187.)  Swinford's action resulted in Navarro's filing of a frivolous lawsuit against Plaintiff Cruz in an effort to stifle such criticism.  (*Id.* ¶ 166.)  EBR and Williams also

21

submitted fraudulent statements to government officials to cancel an H-1B visa for a teacher who refused to pay exorbitant and illegal fees. (*Id.* ¶ 185.)

In addition, EBR and the ILDs actively participated in a scheme to seek one-year H-1B visas instead of the normal three-year visas for teachers—even though EBR and Defendant Placide had applied for and obtained three-year visas for teachers who were not supplied through the Recruiter Defendants. (*Id.* ¶ 186.) Indeed, Defendant Swinford ensured the issuance of one-year visas after Navarro complained to her of problems with teachers seeking three-year visa renewals. (*Id.* ¶¶ 186-187.) The one-year visas allowed Defendants to better control the teachers through threats of non-renewal and deportation. (*Id.* ¶¶ 162-163, 168, 186.) *See Calimlim*, 538 F.3d at 710-11, 713 (implicit threats of deportation were "threatened abuse of the legal process" under Section 1589); *United States v. Garcia*, No. 02-CR-110S-01, 2003 U.S. Dist. LEXIS 22088, at *23 (W.D.N.Y. 2003) (threatening victims with deportation "clearly fall[s] within the concept and definition of 'abuse of legal process'").

Because the Amended Complaint adequately alleges that EBR and the ILDs knowingly obtained Plaintiffs' labor through one or more prohibited means, they are liable as TVPA "perpetrators" under 18 U.S.C. § 1595(a).[13]

## 2. Defendants Are Also Liable as Beneficiaries of the Trafficking Scheme.

Plaintiffs have also properly pled a claim against EBR and the ILDs as beneficiaries of the trafficking scheme. The beneficiary-liability provision of section 1595(a) requires that the defendant (a) knowingly benefited; (b) financially or by receiving anything of value; (c) from participation in a venture; (d) which the defendant knew or should have known was engaged in an act prohibited by the TVPA. 18 U.S.C. § 1595(a). Contrary to Defendants' contention (*see* ECF No. 45-2 at 37), a defendant

---

[13]  Because Plaintiffs have stated a violation of 18 U.S.C. § 1589(a) by both EBR and the ILDs based on their knowingly obtaining the Plaintiffs' labor in violation of Chapter 77 of Title 18, they have also stated a violation of 18 U.S.C. § 1590(a).

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS OF EBR AND ILDs

need not have committed a direct TVPA violation to be liable under the beneficiary provision; under the plain words of the statute, it is only necessary that the *venture* engaged in violations and that a benefiting defendant knew or should have known about them.

The Amended Complaint pleads each element of a TVPA beneficiary claim. First, it pleads that EBR and the ILDs participated in a joint venture with the Recruiter Defendants and Legal Facilitator Defendants to procure the labor of Filipino teachers to teach at East Baton Rouge Parish public schools.  (Am. Compl. ¶¶ 9, 12, 78-79, 102-104, 114-116, 162, 164, 175-176, 180-183, 205-225, 380.)  Defendants do not dispute this point.

Second, the Amended Complaint is replete with allegations that the venture consisting of EBR, the ILDs, the Recruiter Defendants, and the Legal Facilitator Defendants provided or obtained labor or services by means of serious harm, threats of serious harm, abuse and threatened abuse of legal process, and a scheme or plan to cause Plaintiffs to believe that if they did not perform the labor they would suffer serious harm.  (*Id.* ¶¶ 6-12, 74, 78-79, 94, 97-98, 102-105, 107-130, 132-136, 139-140, 142-147, 150-158, 160-718, 182-188, 380.)  While EBR and the ILDs took affirmative steps to advance the venture's misconduct, such affirmative acts are not necessary for beneficiary liability.

Third, EBR and the ILDs "knew or should have known" that the venture was engaged in TVPA violations.  The Amended Complaint alleges that EBR and the ILDs were well aware of the exorbitant and illegal fees Plaintiffs were charged, the crushing debt they had incurred to pay such fees, and their otherwise desperate plights.  (*Id.* ¶¶ 9, 12, 97, 115, 158, 160-163, 175, 177, 182, 186-188, 198, 205-225.)  It also alleges that EBR and the ILDs knew of Recruiter Defendants' repeated abuses and threatened abuses of legal process, and, indeed, took affirmative steps to aid and abet those abuses. (*Id.* ¶¶ 160-163, 166, 185, 380.)  These allegations go well beyond what is necessary to satisfy the "knew or should have known" prong.

PLAINTIFFS' OPPOSITION TO MOTIONS
TO DISMISS OF EBR AND ILDs

Finally, EBR and the ILDs knowingly benefited financially or by receiving anything of value from their participation in the venture with Recruiter Defendants and Legal Facilitator Defendants.  Those benefits included (a) having capable and experienced teachers recruited for them in the Philippines; (b) receiving recruitment and related legal services free of any charge; (c) being reimbursed in full for the costs of trips to the Philippines to interview teacher applicants;[14] (d) having the Recruiter Defendants and Legal Facilitator Defendants navigate the H-1B visa process for them so that the teachers could be legally authorized to work; and (e) not having to pay expenses related to the H-1B visa process that they were legally obligated to pay under federal law.  (Am. Compl. ¶¶ 97-98, 102, 104, 181, 381, 383-384, 386, 388, 390.)  The ILDs received benefits to the same extent as EBR:  their participation in the venture allowed the ILDs to fulfill their job responsibilities by delivering pre-screened, highly qualified, and experienced teaching candidates to EBR at no cost to the district.  (*See* Am. Compl. ¶¶ 21-23 (showing that each of the ILDs held high-ranking positions at EBR responsible for fulfilling the district's labor needs).)  The fees saved by, and expenses reimbursed to, the EBR Defendants through participation in the venture plainly constitute a financial benefit, while the services they obtained through such participation plainly constitute "anything of value."  *See, e.g.*, *United States v. Schwartz*, 785 F.2d 673, 679-80 (9th Cir.) ("thing of value" includes intangible benefits and is "not limited to commercial or monetary worth."), *cert. denied*, 479 U.S. 890 (1986); *United States v. Croft*, 750 F.2d 1354, 1362 (7th Cir. 1984) (labor of government employee is a "thing of value").

### 3. Plaintiffs Have Properly Stated a Claim For Violations of 18 U.S.C. § 1592.

In addition to the violations of 18 U.S.C. §§ 1589(a) and (b) outlined above, Plaintiffs have adequately alleged that Recruiter Defendants violated 18 U.S.C. § 1592

---

[14]   EBR contends that reimbursement of its expenses is not a benefit (ECF No. 46-1 at 23), but EBR would have had to incur recruitment expenses *on its own* absent such reimbursement.  This fundamentally distinguishes the situation here from the cases EBR cites in its motion.

by illegally confiscating and possessing Plaintiffs' passports and restricting their travel until they paid the illegal fees demanded by Recruiter Defendants.  (Am. Compl. ¶¶ 10, 120-124.)  Plaintiffs have also alleged that, upon their arrival in the United States, the Recruiter Defendants again confiscated and possessed their passports until they signed illegal contracts requiring payment of additional fees.  (*Id.* ¶ 147.)  Because this misconduct occurred in the course of the section 1589 and 1590 violations described above, Plaintiffs have adequately pled a violation of 18 U.S.C. § 1592(a).

The fact that EBR and the ILDs did not themselves confiscate the teachers' documents is irrelevant to their liability as trafficking beneficiaries.  Plaintiffs have properly pled that the EBR defendants engaged in a venture with Recruiter Defendants and knowingly benefited from such participation.  *See* Section II.D.2, *supra*. Accordingly, the EBR Defendants are liable as beneficiaries if they knew or should have known that the *venture* was engaged in the misconduct.  18 U.S.C. § 1595(a).  The Amended Complaint pleads that they did.  (Am. Compl. ¶¶ 183-184.)  Accordingly, Plaintiffs have properly stated a beneficiary claim based on the section 1592 violations.

### 4. Plaintiffs Have Properly Stated a Claim For Violations of 18 U.S.C. § 1594.

Plaintiffs' allegations also establish that EBR and the ILDs conspired with others to violate sections 1589 and 1590, in violation of 18 U.S.C. § 1594(b).[15]  Defendants argue they cannot be liable for conspiracy because there is no allegation of a specific meeting in which all agreed to the scheme.  (ECF No. 45-2 at 40.)  However, "[a] tacit understanding will suffice to show agreement for purposes of a conspiracy . . . . There need not be any written statement or even a speaking of words which expressly communicates agreement."  *United States v. Amiel*, 95 F.3d 135, 144 (2d Cir. 1996). Once the existence of a conspiracy is found, Defendants are liable so long as Plaintiffs

---

[15]   The Amended Complaint also alleges that EBR and the ILDs engaged in attempted violations of the TVPA under 18 U.S.C. § 1594(a).  Because Plaintiffs have properly pleaded that violations were actually completed, it follows that plaintiffs have also properly pleaded attempt.

"establish even a slight connection with the conspiracy." *United States v. Messer*, 197 F.3d 330, 341-43 (9th Cir. 1999). Furthermore, "the term 'slight connection' means that a defendant need not have known all the conspirators, participated in the conspiracy from its beginning, participated in all its enterprises, or known all its details," and the "connection to the conspiracy may be inferred from circumstantial evidence." *United States v. Herrera-Gonzalez*, 263 F.3d 1092, 1095 (9th Cir. 2001).

This standard is easily satisfied here. The Amended Complaint alleges that EBR and the ILDs entered into an agreement with the Recruiter Defendants to procure the teachers' labor without any recruiting cost to EBR. It further alleges that EBR and the ILDs were well aware of Recruiter Defendants' misconduct, yet agreed with Recruiter Defendants to continue their arrangement year after year for three full school years, while taking affirmative steps to advance the scheme. (*See* Am. Compl. ¶¶ 9, 12, 78-79, 94, 97-98, 102, 104, 114-116, 161-164, 175-176, 180-182, 185, 205, 208, 212, 215, 219, 222, 380.) This constitutes at least a tacit agreement to engage in trafficking. No more is needed to allege a TVPA conspiracy.[16]

### 5. EBR Is Civilly Liable for Its TVPA Violations.

EBR next argues that it cannot be liable for civil damages under the TVPA because it cannot form the "specific intent" that it claims is required, and because it purportedly does not fall within the terms "whoever" and "person" used in the TVPA. (ECF No. 46-1 at 17-18.) Both arguments fail.

EBR's argument regarding an intent requirement does not square with the TVPA's plain language. Contrary to EBR's assertion, 18 U.S.C. § 1589 does not require a malicious intent on the part of the perpetrator. It merely requires that a perpetrator, like EBR, *know* that it is obtaining the labor of a person through one of the

---

[16] Unlike the case the ILDs cite at page 8 of their brief (ECF No. 45-2 at 15), the Amended Complaint alleges a TVPA conspiracy, not a conspiracy to commit fraud. Accordingly, the conspiracy need not be pled with particularity under Fed. R. Civ. P. 9(b).

prohibited means, such as subjecting the person to serious harm, which includes serious financial harm.  18 U.S.C. §§ 1589(a), (c).  This is very different from the situation in *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir. 1991), where the court held that a government entity could not be liable under RICO because it could not form a malicious intent.  The alleged RICO predicate acts in *Lancaster* required a specific intent to deceive.  *Id.*  Section 1589, by contrast, only requires knowledge that labor is being obtained through a prohibited means, several of which require no specific intent.[17]  Accordingly, EBR can be civilly liable as a TVPA perpetrator.

It is all the more clear that EBR can be civilly liable as a *beneficiary* of the trafficking scheme.  The beneficiary-liability provision of section 1595(a) has no intent requirement whatsoever, malicious or otherwise.  It is necessary only that the defendant participated in a venture that the defendant knew or should have known was engaged in TVPA violations, and knowingly benefited from such participation.  18 U.S.C. § 1595(a).  There is plainly no requirement that the defendant have a specific intent to injure, or even that the defendant have actual knowledge of the venture's violations.

EBR's argument that the terms "whoever" and "person" as used in the TVPA do not include governmental entities should also be rejected.[18]  The Supreme Court has applied a functional test in determining if a statute should be construed to apply to the government:  whether doing so would "deprive the sovereign of a recognized or established prerogative title or interest" or "where a reading which would include [the

---

[17]  It is arguable whether section 1589(a)(4), which prohibits obtaining labor by means of a scheme, plan, or pattern intended to cause a person to believe they would suffer serious harm, requires a specific intent that limits its applicability to governmental entities.  But Plaintiffs need not rely on this subsection because they have properly stated claims that EBR obtained labor by means of serious harm, threats of serious harm, and the abuse or threatened abuse of the legal process.  18 U.S.C. §§ 1589(a)(2), (a)(3).

[18]  *See, e.g.*, 18 U.S.C. § 1595(a) (providing a civil remedy against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which the person knew or should have known has engaged in an act in violation of [Chapter 77 of Title 18]").

PLAINTIFFS' OPPOSITION TO MOTIONS
                                                                            TO DISMISS OF EBR AND ILDs

government] would work obvious absurdity." *Nardone v. United States*, 302 U.S. 379, 383-84, 58 S. Ct. 275, 277, 82 L. Ed. 314, 317 (1937) (finding the term "person" to include governmental actors).  Applying the TVPA to EBR here would not deprive EBR of any such prerogative, title or interest.  EBR has no "prerogative" to engage in activities that amount to trafficking, or to participate in ventures that engage in violations of federal trafficking statutes.  Nor would it work an "obvious absurdity" to prohibit EBR from engaging in or benefiting from human trafficking.

Defendants' reliance on *United States v. Singleton*, 165 F.3d 1297 (10th Cir. 1999), is misplaced.  *Singleton* itself invoked the *Nardone* functional test in analyzing whether the term "whoever" in a statute prohibiting giving anything of value in exchange for testimony applies to the United States attorneys' office.  *See id.* at 1301. The court held that applying such a statute to the United States would deprive the sovereign of its longstanding prerogative to offer leniency to an accomplice in exchange for his or her testimony.  Accordingly, the court determined that the term "whoever" as used in the statute at issue could not properly be construed to include the U.S. government.  *Id.* at 1301-02.  By contrast, as noted, there obviously is no longstanding, well recognized, or deeply established governmental prerogative allowing a municipal entity like EBR to engage in or benefit from human trafficking.  *See United States v. Medina*, 41 F. Supp. 2d 38, 51 (D. Mass. 1999) (term "whoever" should be construed to include governmental entity where doing so would not interfere with deeply established governmental prerogative).[19]

The TVPA should also be construed to apply to EBR pursuant to the general rule that a statute applies to governmental entities "where the statute is passed . . . to prevent fraud, injury and wrong."  *See, e.g., United States v. Herron*, 87 U.S. 251, 255 (1873); *accord Medina*, 41 F. Supp. 2d at 48.  The TVPA plainly is such a statute.  Similarly, as

---

[19]   The court in *Medina* also noted that "the plain meaning of 'whoever' includes the government."  *Medina*, 41 F. Supp. 2d at 46.

a humanitarian statute, the TVPA should be read broadly to effectuate its remedial purposes.  *See, e.g.*, *Fegley v. Higgins*, 19 F.3d 1126, 1132 (6th Cir. 1994) (construing definitions in Fair Labor Standards Act broadly to effectuate its humanitarian purposes); 22 U.S.C. § 7101(b)(23) (Congressional findings related to the humanitarian purpose of TVPA noting that "trafficking in persons involves grave violations of human rights and is a matter of pressing international concern").

The legislative history of the TVPA is fully consistent with the conclusion that the statute applies to governmental entities.  In enacting the TVPA, Congress found that trafficking in persons is "often aided by *official* corruption in countries of origin, transit, *and destination*, thereby threatening the rule of law."  22 U.S.C. § 7101(b)(8) (emphasis added).  Given Congress's explicit recognition that official actors are often part of the problem to be addressed through the TVPA, it makes no sense to construe the statute to exclude such actors from its purview.

EBR next argues that it is not a "person" under the TVPA because the statute's civil remedies provision purportedly applies only to criminal acts for which a school district cannot be liable.  That contention, however, is flatly wrong on two fronts.  First, as previously explained, a criminal violation by the defendant is just *not* a necessary prerequisite for civil liability under the TVPA.  Pursuant to section 1595(a), a defendant may be civilly liable if it knowingly benefited from participation in a venture that it knew or should have known engaged in trafficking.  Such conduct is not a criminal violation under section 1589, but it is a basis for civil damages under section 1595(a).  Second, even if a criminal act by EBR *were* necessary, that would not be a basis for limiting the scope of the term "person," pursuant to established Supreme Court authority.  *See Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 400, 98 S. Ct. 1123, 1130, 55 L. Ed. 2d 364, 375 (1978) ("[I]t has not been regarded as anomalous to require compliance by municipalities with the substantive standards of . . . federal laws which impose [both civil and criminal] sanctions upon 'persons.'")

Finally, EBR seeks to extricate itself from TVPA liability by arguing that, if it is a

PLAINTIFFS' OPPOSITION TO MOTIONS
                                                                                       TO DISMISS OF EBR AND ILDs

"person" under the statute, it still can be liable only if it acted pursuant to an official policy, analogizing the TVPA to 42 U.S.C. § 1983.  (ECF No. 45-2 at 20-22); *see Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2035, 56 L. Ed. 2d 611, 635 (1978).  This argument, however, assumes that the TVPA is somehow equivalent to section 1983.  It is not.  The TVPA contains its own private right of action for civil damages:  18 U.S.C. § 1595.  Unlike section 1983, section 1595 does not require a defendant to act "under color of state law" to be liable for damages.  *See Monell*, 436 U.S. at 691.  Because there is no acting "under color of state law" requirement, there is likewise no need for a municipal defendant to have acted pursuant to some official policy.  *See Nardone*, 302 U.S. at 383-84 ("person" included government under Federal Communications Act; government need not have acted pursuant to "official policy" to be liable under that statute).  EBR's effort to graft the section 1983 "official policy" requirement onto the TVPA thus fails.[20]

For all these reasons, EBR may be liable for civil damages under 18 U.S.C. § 1595.

### E.   The Amended Complaint Properly States a Claim for Negligent Hiring.

Plaintiffs have adequately alleged that EBR was negligent in hiring Universal and Lourdes Navarro, a serial fraudster, to recruit its teachers from the Philippines.

EBR gave Universal and Ms. Navarro enormous responsibility in relation to recruitment and hiring.  Yet, EBR either knew and did not care that Navarro was previously convicted of a felony for defrauding California's Medi-Cal system, and had a prior money laundering conviction, or EBR breached its duty to make reasonable inquiry into her fitness.  (Am. Comp. ¶¶ 9, 76-77, 184, 395-397.)  EBR made Navarro's operation the exclusive avenue by which a prospective teacher from the Philippines

---

[20]  Even if an official policy were required, it is difficult to imagine how applying for and obtaining more than 200 H-1B visas for Filipino teachers in the identical fashion (failure to pay required fees and submission of fraudulent forms to the government falsely stating compliance with applicable laws) does not constitute an official policy.

could be hired to work at EBR, even though it knew she was operating a for-profit venture and was not charging *EBR* any fees for recruiting and processing hundreds of teachers.  (Am. Cmplt. ¶ 97, 182, 185, 394.)  Individuals who attempted to circumvent Navarro's operation and gain employment directly through EBR were rejected and told they must go through Navarro.  (*Id.* ¶ 185.)  EBR officials even colluded with Navarro and Universal to cancel the visa of an applicant who refused to comply with Navarro's exorbitant fee demands.  (*Id.*)  Moreover, EBR continued to use the services of Navarro and her company year after year, despite knowing that they charged the teachers fraudulent and otherwise illegal fees.  (*Id.* ¶¶ 182-185; *see also* Knoepp Decl. Ex. C.)  Thus, contrary to EBR's assertions (ECF No. 46-1 at 26), the Plaintiffs do allege that EBR provided the Recruiter Defendants a "unique opportunity" to harm them.  Through its negligent hiring of an experienced fraudster as its exclusive recruiting agent in the Philippines, EBR placed the Plaintiffs directly in harm's way.

Plaintiffs have adequately stated a claim for negligent hiring based on these facts.[21]  EBR's argument that in Louisiana a principal is generally not liable for the actions of its independent contractors is entirely beside the point here.  (ECF No. 45-1 at 26.)  Plaintiffs' negligent hiring claim is not that EBR is vicariously liable for the tortious conduct of the Recruiter Defendants.  Rather, EBR is responsible for its *own* tortious conduct in selecting a patently unfit contractor, and making it the school district's exclusive recruiting agent.  A number of courts have held that a claim for the negligent hiring of an independent contractor—i.e., a claim based on the hiring party's own negligence in selecting the contractor—is cognizable under Louisiana law.  *See, e.g., Bourg v. BT Operating Co.*, Civ. No. H-08-0596, 2009 U.S. Dist. LEXIS 29574, at *30 (S.D. Tex. Apr. 8, 2009) ("Louisiana law imposes a separate duty on principals to exercise reasonable care in selecting or hiring an independent contractor."); *Duncan v.*

---

[21]  Because EBR argues that Louisiana law should apply to the Plaintiffs' negligent hiring claim, Plaintiffs analyze the issue under Louisiana law.  However, the same result would obtain under California law.

*United States*, 562 F. Supp. 96, 100 (E.D. La. 1983); *Hemphill v. State Farm Ins. Co.*, 472 So. 2d 320, 324 (La. Ct. App. 3d Cir. 1985) ("One who hires an irresponsible independent contractor may be independently liable."); *Evans v. Allstate Ins. Co.*, 194 So. 2d 762, 767 (La. Ct. App. 1st Cir. 1967) ("It is well established that there may be independent negligence on the part of the person hiring an irresponsible independent contractor.")[22]  The allegations in Plaintiffs' Amended Complaint are more than sufficient to state a claim against EBR for its own negligence.

Citing *C.A. v. William S. Hart Union High Sch. Dist.*, 189 Cal. App. 4th 1166, 117 Cal. Rptr. 3d 283 (Cal. App. 2d Dist. 2010), EBR appears to argue that a school district cannot be held liable for negligence.  But a case concerning the statutory immunity of *California* school districts has no possible relevance to the negligence liability of EBR—a school district in Louisiana.  Indeed, Louisiana law makes quite clear that school districts and school boards are liable for negligence to the same extent as private parties.  *See* La. Const. art. XII, § 10 ("Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property."); *Wilder v. Thrower*, 337 So.2d. 304, 305 (La. Ct. App. 3d Cir. 1976) (holding that school board is not immune from negligence suit).  EBR is thus liable for its negligent hiring of Universal and Navarro here.

### F.     The Amended Complaint Properly States a RICO Claim Against the ILDs.

Plaintiffs' allegations that the ILDs violated RICO are likewise more than sufficient to state a claim on which relief can be granted.  Although the ILDs try to obscure their roles, each engaged in racketeering activity and knowingly agreed to

---

[22]  The case cited by EBR, *Ledent v. Guaranty Nat'l Ins. Co.*, 723 So. 2d 531 (La. Ct. App. 2d Cir. 1998), also involved a claim related to negligent hiring of an independent contractor.  *See id.* at 537 (noting that plaintiffs claimed the principal was liable for "negligent hiring of irresponsible independent contractors").  Rather than hold that a negligent hiring claim involving the selection of a contractor was improper, the court found simply that the facts did not support the claim.  *See id.* at 539 ("Nor does [the evidence] suggest any independent negligence on [defendant's] part.").

further defendants' illegal scheme.  They are thus liable under both 18 U.S.C. § 1962(c) for direct RICO violations, and under 18 U.S.C. § 1962(d) for RICO conspiracy.

### 1. Plaintiffs Have Properly Stated a Claim for Racketeering Under 18 U.S.C. § 1962(c).

To state a section 1962(c) claim, the plaintiff "must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (quoting *Sedima, S.P.R.I. v. Imrex Co.*, 473 U.S. 479, 496, 105 S. Ct. 3275, 3284-85, 87 L. Ed. 346, 358-59 (1985)).  "As the Congress admonished and the Supreme Court repeated in *Sedima*, RICO should be liberally construed to effectuate its remedial purposes."  *Odom*, 486 F.3d at 547.

As demonstrated below, the Amended Complaint sufficiently alleges each of the elements of a section 1962(c) claim.

### a. The ILDs Were Members of a RICO "Enterprise."

First, Plaintiffs adequately allege a RICO "enterprise" involving an "association in fact" among the RICO Defendants.  As the Ninth Circuit has explained, the definition of an associated-in-fact enterprise under RICO "is not very demanding."  *Odom*, 486 F.3d at 548.  A plaintiff must allege only "evidence of an ongoing organization, formal or informal," and "evidence that the various associates function as a continuing unit."  *Id.* at 552.  Plaintiffs have done that here.  (*See* Am. Compl. ¶¶ 97-104, 114-116, 134-135, 157-163, 174-175, 180-188, 222, 226, 280-287.)

The ILDs' contention that Plaintiffs have not adequately alleged an enterprise because its members purportedly did not share a common purpose (ECF No. 45-2 at 46) is baseless.  The Amended Complaint clearly alleges that all RICO Defendants engaged in a common course of conduct aimed, *inter alia*, at bringing over 200 Filipino teachers to work at EBR beginning in 2007, with all recruitment costs to be borne by the teachers.  (Am. Compl. ¶¶ 6, 9, 12, 40, 94, 97-98, 104, 112, 114, 115, 180-188.)  It is irrelevant that different enterprise members played different roles in advancing this common objective: section 1962(c) does not require that "every member be involved in

each of the underlying acts of racketeering, or that the predicate acts be interrelated in any way." *Odom*, 486 F.3d at 552-53. Nor is it relevant that members of the enterprise benefited in different ways from the scheme. *Id.* at 552.

### b. The ILDs "Conducted or Participated in" the RICO Enterprise.

Contrary to the ILDs' claim, each ILD also "conducted or participated in" the RICO enterprise. The Amended Complaint alleges that the ILDs engaged Recruiter Defendants as EBR's recruiting agent and oversaw their recruiting activities. (Am. Compl. ¶¶ 97-98.) It further alleges that the ILDs were aware of and acquiesced to Recruiter Defendants' scheme to extract fraudulent and illegal fees from the teachers and their actions to intimidate and control the teacher class. (*Id.* ¶¶ 9, 12, 97-98, 114-115, 160-163, 170, 180-188.)

Given their supervisory roles at EBR, the ILDs had the power to cause EBR to cease employing the Recruiter Defendants as its recruiting agents, or require that Recruiter Defendants cease their illegal conduct as a condition to their continued engagement by the district. The ILDs not only failed to do this, but they also used their supervisory positions to affirmatively facilitate Recruiter Defendants' scheme in a number of crucial respects. (*Id.* ¶¶ 180-188, 205, 208, 212, 215, 219, 222.) The ILDs played other essential roles for the enterprise, having responsibility for, *inter alia*, interviewing teacher applicants, making employment offers, and procuring needed visas. These acts go far beyond mere low level "performance of tasks" for the RICO enterprise (*see* ECF No. 45-2 at 47), and are more than sufficient to constitute conduct or participation. *In re Nat'l Western Life Ins. Deferred Annuities Litig.*, 467 F. Supp. 2d 1071, 1085 (S.D. Cal. 2006); *see also Reves v. Ernst & Young*, 507 U.S. 170, 179 & n.4, 113 S. Ct. 1163, 1170 & n.4, 122 L. Ed. 2d 525, 537 & n.4 (1993) (each defendant need only have "*some* part in directing" the enterprise, not exclusive or even "significant control" over it).

### c. The ILDs Engaged in Predicate Acts of "Racketeering Activity."

Plaintiffs have also sufficiently alleged that the ILDs engaged in predicate acts of racketeering activity. We have already shown in section II.D., *supra*, that the Amended Complaint properly alleges the ILDs engaged in predicate acts of trafficking in violation of the TVPA. It properly alleges predicate acts of mail and wire fraud by the ILDs as well.

"A claim for mail fraud or wire fraud must allege that the defendant: (1) devised or intended to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) used the mail or wires for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts)." *Bryant v. Mattel*, No. CV 04-9049 DOC (RNBx), 2010 U.S. Dist. LEXIS 103851, at *20-*21 (C.D. Cal. Aug. 2, 2010). It is only necessary that there was a scheme to defraud, and that the mail or wires were used in furtherance of the scheme. *United States v. Hubbard*, 96 F.3d 1223, 1228 (9th Cir. 1996). The communications by mail or wire need only be "incident to an essential part of the scheme" or "a step in the plot" to constitute mail fraud. *Schmuck v. United States*, 489 U.S. 705, 711, 109 S. Ct. 1443, 1448, 103 L. Ed. 2d 734, 743 (1989) (mailing of registration forms was essential to passage of title, and thus essential to a fraudulent scheme to sell cars). The communication itself need not be fraudulent. *See id.*, 489 U.S. at 715; *Hubbard*, 96 F.3d at 1228; *Bryant*, 2010 U.S. Dist. LEXIS 103851, at *29.

Each ILD engaged in acts of mail or wire fraud here. Defendant Placide argues that the I-129 supplements she sent by mail to the U.S. Citizenship and Immigration Service (USCIS) and the Labor Condition Applications (LCAs) she sent by wire to the U.S. Department of Labor (USDOL) were not acts of mail or wire fraud. (ECF No. 45-2 at 42-43.) But these transmissions aimed at securing U.S. visas for the teachers were an essential part of Defendants' fraudulent trafficking scheme: absent the visas, the teachers could not have been trafficked into the United States to work at EBR public schools. (*See* Am. Compl. ¶¶ 205-225.) Because Placide's mail and wire transmissions

35

were in furtherance of the scheme to defraud the teachers, they constitute mail and wire fraud, even if Placide had not made a single false statement in the documents. *See Schmuck*, 489 U.S. at 715; *see also Bryant*, 2010 U.S. Dist. LEXIS 103851, at *29 ("the scheme, *not* the communications in furtherance of the scheme, must be fraudulent").

That Placide's transmissions *were* themselves fraudulent (as Plaintiffs plead with particularity in paragraphs 205-225 of the Amended Complaint) renders her mail and wire fraud even more apparent. On form after form, Placide certified to the United States that EBR complied with federal immigration regulations. In fact, EBR was not in compliance, as Placide well knew. The forms specifically identified the fees that *employers* must pay under the regulations; Placide knew such fees were in fact being paid by the teachers, not by EBR. (*See, e.g.*, Am. Compl. ¶¶ 97, 205, 208.) Contrary to Placide's contention, federal regulations and the forms themselves mandate that the employer, not the employee, is responsible to pay visa processing and other fees.[23]

Placide asserts that the mail fraud allegations against her are inadequate because she claims that only USDOL may enforce regulations requiring the employer to pay visa fees. (ECF No. 45-2 at 42.) However, a defendant need not violate another underlying statute or regulation to be liable for mail and wire fraud. *See United States v. Green*, 592 F.3d 1057, 1064 (9th Cir. 2010) ("it is settled that wire fraud does not require proof that the defendant's conduct violated a separate law or regulation"); *accord Hubbard*, 96 F.3d at 1228. The cases Placide cites do not hold otherwise. The litigants in those cases sought to pursue private rights of action under 8 U.S.C. § 1182(n); they did not allege

---

[23] *See, e.g.*, 20 C.F.R. § 655.731(c)(10)(ii) (2000) (improper to pass on filing fees to visa beneficiary); 20 C.F.R. § 655.731(c)(9)(iii)(C) (2000) (improper to pass on attorney's fees to visa beneficiary); ETA Form 9035, Labor Condition Application at 4, http://www.foreignlaborcert.doleta.gov/preh1bform.cfm (last visited Feb. 14, 2011) (requiring attestation that employer will comply with regulations at 20 C.F.R. part 655, Subparts H and I); Form I-129 H-1B Data Collection Supplement at 18, http://www.uscis.gov/portal/site/uscis (follow "Forms" hyperlink; then follow "Petition for a Nonimmigrant Worker" hyperlink; then follow "Download Form I-129" hyperlink) (last visited Feb. 14, 2011) (requiring "employer seeking initial approval of H-1B nonimmigrant status for a beneficiary" to pay $500 anti-fraud fee).

36

mail fraud, wire fraud, or RICO conspiracy.  *See Ndaiye v. CVS Pharmacy 6081*, 547 F. Supp. 2d 807 (S.D. Ohio 2008); *Shah v. Wilco Systems, Inc.*, 126 F. Supp. 2d 641 (S.D.N.Y. 2000).  Here, by contrast, Placide's communications *were* acts of mail and wire fraud because they furthered Defendants' fraudulent scheme, in addition to violating USDOL regulations.  Accordingly, the possible existence of USDOL administrative remedies based on Placide's fraudulent filings is irrelevant.

Placide finally argues that she did not engage in mail or wire fraud because her transmissions were directed only at obtaining H-1B visas from the U.S. government— not at depriving the teachers of any "business or property."  (ECF No. 45-2 at 44-45.)  It is irrelevant, however, that the forms Placide filed were visa-related and that the fraud here was directed, in part, at the government.  *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 649-50, 128 S. Ct. 2131, 2139, 170 L. Ed. 2d 1012, 1022 (2008).  As indicated, obtaining visas for the teachers was just an essential step in a broader scheme, whose object was to procure Plaintiffs' labor by fraudulent and illegal means, and to extort illegal fees from the teacher class.  (*See* Am. Compl. ¶¶ 98, 299.)  The Plaintiffs' labor and money—the ultimate objects of Defendants' scheme—unquestionably constitute "business or property."  *See Bridge*, 553 U.S. at 649 (plaintiffs suffered loss of property as result of fraud on government "even though they did not rely on petitioners' false attestations of compliance with the county's rules").

Williams and Swinford also contend they did not engage in mail or wire fraud because their communications were not transmitted by mail or wire (ECF No. 45-2 at 43), but those claims may be quickly dismissed.  The Amended Complaint specifically alleges that Williams sent "a letter dated January 24, 2008 . . . to Defendant Silverman, on EBRPSS letterhead," (Am. Compl. ¶ 185b), and that the RICO defendants used "the U.S. Mails" as well as other means to communicate (*Id.* ¶ 292; *see also* Knoepp Decl. Ex. C (additional example of correspondence from Williams to Navarro).)  It further alleges that Williams was located in Louisiana (Am. Compl. ¶ 22), while Silverman was located in California.  (*Id.* ¶ 35).  Although the letter might have been delivered by a

37

carrier other than the United States Postal Service, the mail fraud statute proscribes mailings by the United States Postal Service or "any private or commercial interstate carrier."  18 U.S.C. §§ 1341, 1343.  Similarly, although the methods of communication used by Swinford in Louisiana to Navarro in California are not specified in every subpart of Paragraph 187 of the Amended Complaint, Plaintiffs generally allege that mail and wire communications were employed.  (Am. Compl. ¶ 292.)  Plaintiffs also allege that Swinford sent letters in furtherance of the fraudulent trafficking scheme to USCIS.  (*Id.* ¶ 187.)  And the Amended Complaint alleges generally that Employer Defendants, including Williams and Swinford, sent employment offer letters and other documents through the wires, which were essential to Defendants' fraudulent scheme.[24] (Am. Compl. ¶ 114.)  In sum, the Amended Complaint properly pleads predicate acts of mail or wire fraud by each ILD.

### d. Each ILD Engaged in a "Pattern" of Racketeering Activity.

The Amended Complaint further alleges a "pattern" of racketeering activity by each ILD.  Defendant Williams contests this, arguing that the Amended Complaint alleges only that she sent a single fraudulent letter regarding teacher Genna Balneg.  (ECF No. 45-2 at 43.)  But that is yet another distortion of Plaintiffs' pleading.

In addition to the Balneg letter, the Amended Complaint alleges that Employer Defendants sent documents through the wires for the teachers to execute, including job offer letters.  (Am. Compl. ¶ 114.)  The evidence will show that Williams signed multiple such job offer letters.  (*See, e.g.*, Knoepp Decl. Ex. B.)  Moreover, as explained section II.A.2 on personal jurisdiction, Williams sent a letter to Navarro confirming

---

[24]  Plaintiffs cannot know, and therefore cannot plead, every transaction that was part of the fraudulent scheme.  *See Migliaccio v. Midland Nat'l Life Ins. Co.*, No. CV 06-1007 CAS (MANx), 2007 U.S. Dist. LEXIS 8159, *15-*17 (C.D. Cal. Jan. 26, 2007) (holding in RICO mail and wire fraud case that Rule 9(b) pleading requirement should be relaxed where "many of the precise dates of defendants' fraudulent use of mail and wire communications were hidden and could not be alleged without access to defendants' books and records, over which defendants have exclusive control").

Universal's engagement as EBR's labor recruiter for the 2009-10 school year in furtherance of the fraudulent trafficking scheme—another example of what the evidence will show about Williams' role.  (Knoepp Decl. Ex. C.)  As previously indicated, these various letters need not themselves have been fraudulent to constitute predicate acts of mail or wire fraud because they were transmitted in furtherance of defendants' broader fraudulent scheme.  *See, e.g., Bryant,* 2010 U.S. Dist. LEXIS 103851, at *29.  The Amended Complaint also alleges that all Employer Defendants, Williams included, engaged in trafficking by, *inter alia*, continuing to employ Universal as EBR's recruiter, notwithstanding their express knowledge of the trafficking scheme.  Accordingly, Plaintiffs have alleged at least two predicate acts by Williams as well as the other ILDs.

### e.     The ILDs' Racketeering Activities Proximately Caused the Teachers' Injuries.

The ILDs' final argument contesting section 1962(c) liability—that their actions did not proximately cause the harm alleged—is similarly unfounded.  The Amended Complaint plainly alleges the "'direct relation between the injury asserted and the injurious conduct alleged'" that is necessary to establish proximate causation in RICO cases.  *See Hemi Group, LLC v. City of New York*, __U.S.__, 130 S. Ct. 983, 989, 175 L. Ed. 2d 943, 951 (2010).

In evaluating whether there is a direct relation between the alleged injury and the injurious conduct, the Supreme Court in *Hemi Group* focused on whether the plaintiff was the direct victim of the alleged injurious conduct and "whether better situated plaintiffs would have an incentive to sue."  *Id.* at 990.  In contrast to *Hemi Group*, where causation was too attenuated to allow a RICO claim to proceed, Plaintiffs here have alleged a "direct relation" under this standard.  The teachers are the ones whose labor at EBR was procured by fraudulent and illegal means; from whom fraudulent and illegal fees were extorted, including fees that EBR was required to pay under federal law; and who were subjected to abuse of legal process and other acts of intimidation carried out by the Recruiter Defendants with the ILDs' knowledge and assistance.  There are no

"more direct victims," and, indeed, the teachers are the *only* victims of the scheme by the ILDs' misconduct who suffered pecuniary loss.

While the government was also a victim of visa fraud, it suffered no resultant monetary loss and thus has no incentive whatsoever to sue under civil RICO.  Moreover, the fact that the teachers' injuries were caused in part by Defendants' visa fraud on the government is wholly irrelevant; the Supreme Court expressly held in *Bridge* that fraudulent representations to the government can proximately cause a RICO plaintiff's loss, even if the plaintiff did not rely on such misrepresentations.  *Bridge*, 553 U.S. at 649-50.

The Supreme Court also emphasized in *Hemi Group* that the compensable injury flowing from a RICO violation is, necessarily, the harm caused by the predicate acts. *Hemi Group*, 130 S. Ct. at 991.  Again, contrary to the facts in *Hemi Group*, the teachers' damages here were directly caused by the ILDs' misconduct:  each teacher was damaged to the extent of the illegal fees he or she was compelled to pay through being ensnared in Defendants' fraudulent trafficking scheme.  Certainly, apportioning damages on this basis is uncomplicated, and there is no plausible risk of multiple recoveries.  *See Newcal Indus. Inc. v. Ikon Office Solutions*, 513 F.3d 1038, 1055 (9th Cir. 2008).

The ILDs' attempt to analogize this case to the specific facts of *Hemi Group* is wholly misplaced.  The alleged RICO scheme there involved the defendant's sale of cigarettes to New York City residents and its subsequent failure to report such sales to the State.  Some of defendant's customers did not pay required cigarette-possession tax to New York City and the City contended that defendant's failure to report sales to the State caused its tax loss.  The City's causation theory was:  (a) if defendant had properly reported sales to the State; and (b) if the State had shared such information with the City, then (c) the City would have known the identities of defendant's customers and (d) been able to ascertain and pursue any such individuals who did not pay their taxes. *Hemi Group*, 130 S. Ct. at 989.

40

The Supreme Court held that this was too attenuated a link to support a RICO claim, explaining that "[t]he City's theory of liability rests on the independent actions of third and even fourth parties." *Id.* at 992; *see also id.* at 989 (stating that proximate cause inquiries under RICO should not "go beyond the first step" of causal connection). The conduct directly responsible for the City's harm was the non-payment of taxes by customers—independent parties with whom defendant was not alleged to have agreed or conspired—and the alleged fraud was Hemi Group's failure to file reports from which the City could have identified the non-paying, cigarette-possessing customers. The chain of causation between defendant's failure to report sales to the State and the City's non-collection of taxes was thus highly attenuated. *Id.* at 990.

There is no such attenuation of causation here. The Amended Complaint alleges that the ILDs, Recruiter Defendants and Legal Facilitator Defendants were part of a single RICO enterprise, which carried out a scheme to procure the teachers' labor through fraudulent and illegal means. Each ILD engaged in predicate RICO acts to ensure the scheme's success, which directly harmed the teachers. No act by any independent third party outside the RICO enterprise broke the direct chain of causation between the predicate acts of the ILDs and other RICO Defendants, and the injuries the teachers suffered under the scheme. Plaintiffs have thus successfully alleged the requisite "direct relation between the injury asserted and the injurious conduct alleged."

## 2.   The ILDs Are Liable for RICO Conspiracy.

The Amended Complaint also satisfies the pleading standard for conspiracy to commit a RICO offense under § 1962(d). Each ILD is liable under the conspiracy provision, regardless of whether she personally engaged in a pattern of racketeering activity. *United States v. Fiander*, 547 F.3d at 1036, 1040 (9th Cir. 2008).

Section 1962(d) requires only that a defendant "knew about and agreed to facilitate the scheme." *Id.* at 1041. The Amended Complaint alleges that each ILD knew that EBR would not pay for the Recruiter Defendants' services (Am. Compl. ¶ 97), that EBR did not pay any fees in connection with the H-1B visa applications, (*id.*),

41

and that teachers repeatedly complained about being charged exorbitant fees by the Recruiter Defendants.  (*Id.* ¶¶ 182d, 187.)  It also alleges that, despite this knowledge, the ILDs continued to hire teachers from the Philippines through the Recruiter Defendants, while taking affirmative steps to facilitate Recruiter Defendants' extraction of exorbitant and illegal fees from the teachers, and their intimidation of the teachers through abuse of legal process and otherwise.  (*E.g.*, *id.* ¶¶ 102, 104, 182, 187, 205, 208, 240.)  The ILDs plainly "knew about" and "agreed to facilitate" the scheme, and thus are liable for RICO conspiracy.

For all these reasons, Plaintiffs have stated proper claims for violations of RICO, and the ILDs' motion to dismiss the RICO claim should thus be denied.

### G.     The ILDs Are Not Entitled to Qualified Immunity.

Contrary to the ILDs' claim, they do not have qualified immunity from liability for their TVPA and RICO violations.

Qualified immunity applies only to discretionary functions performed by government employees.  *See, e.g., F.E. Trotter, Inc. v. Watkins,* 869 F.2d 1312, 1314 (9th Cir. 1989).  In determining whether an action is discretionary, "the key issue is not whether the government employee had a choice, but whether that choice is a policy judgment."  *Arizona Maintenance Co. v. United States*, 864 F.2d 1497, 1503 (9th Cir. 1989) (construing discretionary function immunity provision of Federal Tort Claims Act); *accord Berkovitz v. United States*, 486 U.S. 531, 537, 108 S. Ct. 1954, 1959, 100 L. Ed. 2d 531, 541 (1988) (discretionary function immunity available under FTCA only if action was "grounded in social, economic, or political policy"); *Owen v. City of Independence, Mo*, 445 U.S. 622, 655-56, 100 S. Ct. 1398, 1418, 63 L. Ed. 2d 673, 696 (1980) (purpose of qualified immunity is to avoid "paralyzing the governing official's decisiveness and distorting his judgment *on matters of public policy*") (emphasis

**PLAINTIFFS' OPPOSITION TO MOTIONS**
**TO DISMISS OF EBR AND ILDs**

added).[25]  Where government employees' actions "'have no noticeable implications for government policy, those employees are no more entitled to be free from responsibility for their acts than are employees in the private sector.'"  *Willson v. Cagle*, 711 F. Supp. 1521, 1533 (N.D. Cal. 1988), (*quoting Franks v. Bolden,* 774 F.2d 1552, 1555 (11th Cir.1985)).

The ILDs' misconduct here did not involve policy judgments, and thus is not subject to qualified immunity.  The Amended Complaint alleges that the ILDs knew about the Recruiter Defendants' scheme to procure teachers for EBR through threats of serious financial harm, intimidation, and abuse of legal process, and took affirmative steps to advance that scheme.  (Am. Compl. ¶¶ 12, 182-188.)  It alleges that the ILDs knowingly benefited from their participation in a joint venture with Recruiter Defendants to unlawfully procure the teachers' labor.  (*Id.* ¶¶ 12, 180-181.)  It alleges that Defendant Placide filed fraudulent documents with USCIS and USDOL to obtain needed visas for the teachers in furtherance of the trafficking scheme.  (*Id.* ¶¶ 205-225.)  And it alleges that all three ILDs permitted Recruiter Defendants to extract visa-processing fees from the teachers when they knew federal law required those fees to be borne by EBR.  (*Id.* ¶¶ 9, 181-182.)  While each such act of misconduct certainly involved a choice, those choices plainly were not "policy judgments" on the ILDs' part. *See Arizona Maintenance*, 864 F.2d at 1503 ("the key issue is not whether the government employee had a choice, but whether that choice is a policy judgment").

Even if the ILDs' misconduct could somehow qualify as "discretionary" for immunity purposes, the ILDs still are not shielded from liability because they violated the teachers' clearly established statutory rights under the TVPA and RICO.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396, 410

---

[25]  Government officials like police officers, who enforce policy choices reflected in statutes or ordinances, likewise may be deemed to exercise "discretion" for qualified immunity purposes. *See, e.g., Grossman v. City of Portland*, 33 F.3d 1200, 1209-10 (9th Cir. 1994).

(1982) (no qualified immunity where government employee's conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known"). A right is "clearly established" when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523, 531 (1987). A reasonable official would surely understand that aiding and abetting a scheme to procure teachers' labor through extortion, fraud, intimidation and abuse of legal process, or benefiting from such scheme, violates the rights of the teachers ensnared by it. This case does not involve the kind of "hazy border" between permissible and proscribed action by a government official that can justify application of an immunity shield. *See Kiles v. City of N. Las Vegas*, 276 Fed. Appx. 620, 621 (9th Cir. 2008); *see also Robinson v. Solano County*, 278 F.3d 1007, 1015-16 (9th Cir. 2002).

The ILDs' contention that they did not violate clearly established rights because there are no cases directly on point (ECF No. 45-2 at 31) is squarely at odds with Ninth Circuit authority. "Specific binding precedent is not required to show that a right is clearly established for qualified immunity purposes." *Calabretta v. Floyd*, 189 F.3d 808, 813 (9th Cir. 1999); *accord Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1137 (9th Cir. 2003) ("In order to find that the law was clearly established, however, we need not find a prior case with identical, or even 'materially similar,' facts"). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508, 2516; 153 L. Ed. 2d 666, 679 (2002). As explained in sections II.D. and II.F. above, the ILDs engaged in clear violations of the TVPA and RICO, notwithstanding that courts, unsurprisingly, have never previously considered a trafficking and racketeering scheme precisely like the one at issue here.

Finally, the affirmative defense of qualified immunity may be upheld on a motion to dismiss "only when it is established on the face of a complaint." *Moore v. Gerstein*,

107 F.3d 16 (9th Cir. 1996).  Even at trial, the ILDs will be unable to prove that their misconduct was "discretionary" for purposes of the immunity doctrine, and that the rights they violated were not "clearly established."  It is all the more clear that they cannot make these required showings based on the face of the Amended Complaint.  For this additional reason, the ILDs' motion to dismiss on qualified immunity grounds should be denied.

## CONCLUSION

For the foregoing reasons, the motions to dismiss of EBR and the ILDs should be denied.

Respectfully submitted this 14th day of February, 2011.

  /s/ James M. Knoepp
James M. Knoepp
IMMIGRANT JUSTICE PROJECT
SOUTHERN POVERTY LAW CENTER
233 Peachtree Street NE, Suite 2150
Atlanta, Georgia  30303
*On behalf of Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this date electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification to all counsel of record.

I HEREBY CERTIFY that I have this date emailed and caused to be mailed by first-class mail, postage pre-paid, a copy of the foregoing to the email and mailing address on file for Robert B. Silverman with the State Bar of California:

> Robert B. Silverman
> Silverman & Associates
> silveratty@gmail.com
> 25 S. Oak Knoll Ave., Apt. 504
> Pasadena, CA  91101.

/s/ James M. Knoepp

February 14, 2011.

**Civ. No. 10-01172-AG-MLG**

**PLAINTIFFS' OPPOSITION TO  MOTIONS TO DISMISS OF EBR AND ILDs**