Don A. Hernandez (SBN 125119)
Agnes Markarian (SBN 240388)
Martin E. Sullivan (SBN 274279)
HERNANDEZ, SCHAEDEL & ASSOCIATES, LLP
2 North Lake Avenue, Suite 930
Pasadena, CA   91101
Telephone: 626.440.0022
Facsimile: 626.628.1725
Email: dhernandez@hernlaw.com

Attorneys for Defendants,
Universal Placement International, Inc.,
Lourdes "Lulu" Navarro, and
Hothello "Jack" Navarro

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| MAIRI NUNAG-TANEDO, INGRID CRUZ, DONNABEL ESCUADRA, ROLANDO PASCUAL, and TOMASA MARI, on behalf of themselves and other similarly situated individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>EAST BATON ROUGE PARISH SCHOOL BOARD, CHARLOTTE D. PLACIDE, MILLIE WILLIAMS, ELIZABETH  DURAN SWINFORD, UNIVERSAL PLACEMENT INTERNATIONAL, INC., LOURDES "LULU" NAVARRO, HOTHELLO "JACK" NAVARRO, PARS INTERNATIONAL PLACEMENT AGENCY, EMILIO V. VILLARBA, ROBERT B. SILVERMAN, and SILVERMAN & ASSOCIATES,<br><br>Defendants. | Case No. SACV 10-01172-AG(MLGx)<br><br>REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLAIMS AGAINST UNIVERSAL PLACEMENT INTERNATIONAL, INC., LOURDES "LULU" NAVARRO, AND HOTHELLO "JACK" NAVARRO<br><br>HEARING DATE:     MARCH 7, 2011<br>TIME:                        10:00 A.M.<br>COURTROOM:          10D<br><br>HONORABLE ANDREW J. GUILFORD |

1

2

**TABLE OF CONTENTS**

3    I.    INTRODUCTORY STATEMENT...........................................................................1

4    II.   PLAINTIFFS FAIL TO STATE A TRAFFICKING CLAIM AGAINST THE

5          MOVING DEFENDANTS .......................................................................2

6    III.  PLAINTIFFS ALSO FAIL TO STATE A CLAIM FOR VIOLATION OF THE

7          RICO STATUTES...................................................................................4

8    IV.   PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUD BY AN

9          EMPLOYMENT AGENCY RELATING TO ITS FEE...........................8

10   V.    PLAINTIFFS FAIL TO PLEAD ESSENTIAL ELEMENTS OF THEIR FRAUD

11         CLAIM AGAINST THE MOVING DEFENDANTS ............................9

12   VI.   CONCLUSION ......................................................................................10

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLAIMS AGAINST DEFENDANTS

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,* __U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)...........10

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d
   929(2007) ................................................................................................................10

*Edwards v. Marin Park Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) .................................6

*Firstmark Capital Corp. v. Hempel Financial Corp.*, 859 F.2d 92, 94 (9th Cir. 1988)...8

*Flatley v. Mauro* 39 Cal. 4th 299, 46 Cal. Rptr. 3d 606 (2006).......................................7

H.R. Conf. Rep. 106-949, 106th Cong., 2d Sess. 102 (2000)............................................3

*Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009) ....................................8

*Pasamba v. HCCA International, Inc.* 2008 WL 2562928 (D. Ariz. June 24, 2008) .....4

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)
   .............................................................................................................................6

*Shroyer v. New Cingular Wireless Services, Inc.* 622 F.3d 1035, 1038-1039, 1043 (9th
   Cir. 2010) .............................................................................................................10

*Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).........................8

*U.S. v. Calimlim*, 538 F.3d 706, 708-9 (7th Cir. 2008) ...................................................2

*U.S. v. Dann*, No. C 08-00390 CW, 2009 U.S. Dist. LEXIS 122774, at *2 (N.D. Cal.
   Dec. 23, 2009); WL 5062345 .......................................................................2

*U.S. v. Garcia*, No. 02-CR-110S-01, 2003 U.S. Dist. LEXIS 22088, at *1 (W.D.N.Y.
   2003) ....................................................................................................................2

*United States v. Bradley*, 390 F. 3d 145, 151 (1st Cir. 2004)...........................................5

*United States v. Kozminski*, 487 U.S. 931, 953, 108 S. Ct. 2751, 101 L. Ed. 2d 788
   (1988) ...............................................................................................................5, 6

*Vess v. Ciba–Geigy Corp., USA,* 317 F.3d 1097, 1103-04 (9th Cir. 2003).....................8

*Williamson v. General Dynamics Corp.*, 208 F.3d 1144, 1156 fn. 3 (9th Cir. 2000), *cert.
   denied* 531 U.S. 929, 121 S. Ct. 309, 148 L. Ed. 2d 247 (2000)..............................9

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLAIMS AGAINST DEFENDANTS

*Wonderful LLC, v. Ocean Spray Cranberries, Inc.* 642 F. Supp. 2d 1112, 1124 (C.D. Cal 2009)....................................................................................................................8

**Statutes**

Cal. Civ. Code § 1709.......................................................................................................9

Cal. Civ. Code § 1812.508(a) .......................................................................................8, 9

Fed. R. Civ. P. 12(b)(6)....................................................................................................2

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLAIMS AGAINST DEFENDANTS

# I.    INTRODUCTORY STATEMENT

Four years ago, Jane Associate was an unemployed college graduate. Attracted by some timely advertising by Southland Law School, she decides to enroll. She travels across state borders to attend. The tuition is not cheap, so she and her family borrow a fair amount of money to pay for it. Sadly, during the first year, she discovers that she is not really thrilled about the school. But, because she feels that her existing debt has left her no choice but to continue, she incurs borrows directly from Southland and finishes the last two years. She is fortunate, and lands a job with a prestigious law firm, just like Southland told her she would. Southland helps her find housing. But, when Southland seeks payment of the debt that Jane incurred to it, she refuses. Southland threatens to sue. Perhaps it does. Jane feels pressured. Coerced.

Is Southland guilty of trafficking? RICO violations? Extortion? Fraud?

According to Plaintiffs, the answer to all four questions, unbelievably, is "yes." Should we soon expect similar class actions on behalf of all disgruntled Jane Associates? Should Southland be forced to incur the enormous costs of defending scurrilous, general allegations that simply parrot the statutes themselves?

That is precisely what Plaintiffs seek to impose upon Moving Defendants Universal Placement International, Inc. ("UPI") and Lourdes ("Lulu") Navarro. Replete with hyperbole (the verb "ensnared" appears five times) and legal conclusions ("alter ego" appears eight times), Plaintiffs' Opposition Memorandum asks this Court to accept as true their facially-implausible scenario that a group of highly-skilled, educated teachers who voluntarily and successfully completed the difficult and competitive process to enter the United States legally, and who seek to remain in their well-paying, rewarding jobs for all six years of their H-1B visa, can be the victims of a trafficking and RICO scheme simply because they knowingly and voluntarily *twice* signed a contract entitling UPI to fees.

As set forth below, Plaintiffs in their trafficking, racketeering and fraud claims fail to allege facts sufficient to state those claims against these Defendants. This Court

1

1  should dismiss the Plaintiffs' First, Second, Third and Fifth Claims for Relief pursuant
2  to Fed. R. Civ. P. 12(b)(6).

3

4  ## II.   PLAINTIFFS FAIL TO STATE A TRAFFICKING CLAIM AGAINST
5  ## THE MOVING DEFENDANTS

6  What does trafficking look like?  The cases cited by Plaintiffs in their
7  Opposition Memorandum illustrate:

8  In *U.S. v. Calimlim*, 538 F.3d 706, 708-9 (7th Cir. 2008), cited by the Plaintiffs
9  at pages 7-9 of the Opposition Memorandum, a husband and wife secreted away a
10  housekeeper for 19 years, deprived her of all freedom to come and go, paid her
11  nothing, and prevented her from speaking with her family more than a handful of times
12  over the entire 19-year period.  When federal agents stormed the Defendants' house,
13  the victim was found huddling in a bedroom closet.  *Id.*  That she had suffered serious
14  financial harm at the hands of the defendants was unquestioned.

15  In *U.S. v. Dann*, No. C 08-00390 CW, 2009 U.S. Dist. LEXIS 122774, at *2
16  (N.D. Cal. Dec. 23, 2009); WL 5062345, the Court noted that "it is undisputed that the
17  Defendant never paid [the victim] for her work."  The Defendant forced the victim to
18  sign a note stating that she had been paid the minimum wage for the two years she had
19  worked as a live-in nanny, a false representation because she had never been paid.  *Id.*
20  The victim fled the Defendant's home with nothing but the clothes on her back.  *Id.* at
21  *3.  Again, having received no salary whatsoever, there was no question that she had
22  suffered financial harm.

23  In *U.S. v. Garcia*, No. 02-CR-110S-01, 2003 U.S. Dist. LEXIS 22088, at *1
24  (W.D.N.Y. 2003), the Defendants illegally smuggled men and boys from Mexico to
25  New York State, threatened them with violence if they did not work in the fields of
26  local growers, and forced them to remain in "isolated, overcrowded and unsanitary
27  conditions."  Then, to silence their victims, the Defendants threatened to report them to
28  the authorities for deportation.  *Id.*  Being illegal, the victims' apprehension was

2

1  understandable.

2          To equate Plaintiffs' alleged plight to these victims is an affront.[1]

3          Among other things, Plaintiffs are highly-skilled teachers who voluntarily

4  embarked on the process to teach in the United States. FAC, ¶¶ 107-108. With

5  Defendants' help, Plaintiffs not only completed the difficult and complex H-1B visa

6  application process, but received job offers.[2] FAC, ¶¶ 110, 114-119. They were not

7  coerced to sign any contracts with respect to the so-called "Second Recruitment Fee,"

8  but did so voluntarily after being apprised of the amount, in contrast to another who

9  refused. FAC, ¶¶ 124-125, 185(b). They entered into this country with the permission

10 of the United States government. FAC, ¶ 73. They are employed and paid directly by

11 the school districts. FAC, ¶ 20, 180. They do not live secluded in "isolated,

12 overcrowded and unsanitary conditions," but openly in housing procured for them by

13 UPI. FAC, ¶¶ 152-158. They have been able to get their visa documents when

14 demanded. FAC, ¶ 169. When they complain about their UPI contract in a public

15 forum, and are sued for complaining, the Courts have protected them. FAC, ¶ 166(a).

16         Where then is the coercion? Lulu Navarro's alleged threats (even accepting

17 them as true for purposes of this motion only) come nowhere near the coercion

18 exercised by the Defendants in the three cases cited above, especially since the

19 teachers have permission to be here, are paid directly and live publicly and openly.

20         The truth of the matter is that the Moving Defendants have not forced Plaintiffs

21 to work or provide their labor to anybody. *Nowhere in their 400 paragraphs do*

22 *Plaintiffs in fact make this allegation, even with respect to the alleged withholding of*

23 _____

24 [1]     In the introductory "Conference Report" accompanying the TVPA bill, the
   intent of the Act is described as an effort "to combat trafficking of persons, especially
25 into the sex trade, slavery, and slavery-like conditions." H.R. Conf. Rep. 106-949,
   106th Cong., 2d Sess. 102 (2000). Teaching high school math and science hardly
26 qualifies as the type of activity targeted by Congress.

27 2      Plaintiffs in their Opposition assert that Defendants "manipulated the visa
   process." Opp at 4. But this assertion is facially-implausible in light of the complexity
28

3

1   *documents.*[3]  The Plaintiffs have provided their labor to the Louisiana school districts
2   knowingly and voluntarily, not because they were "ensnared" in any scheme.

3   Recognizing that their FAC is fatally flawed in this material respect, Plaintiffs
4   vaguely hint, for the first time, that they feel compelled to remain with their school
5   districts to pay off their debt. Opp. Memo, at 7:8-11.  The two paragraphs Plaintiffs
6   cite for that allegation, however, actually say something entirely different.  FAC, ¶¶
7   127, 151.  Even if the FAC did contain that allegation, it would not square with
8   Plaintiffs' other allegations that they want to remain here for three years rather than a
9   single year, or that, at their request, their direct employers have assisted them in
10  obtaining their visa documents.  FAC, ¶¶ 159-161, 169, 175(f).

11  Even accepting as true all of the factual allegations of Plaintiffs' First Claim for
12  Relief, they do not describe trafficking, forced labor or document servitude under any
13  of the pertinent statutes.  The Court therefore should dismiss the claim.

14

15  **III.   PLAINTIFFS ALSO FAIL TO STATE A CLAIM FOR VIOLATION OF**
16  **THE RICO STATUTES**

17  Plaintiffs in the Second Claim for Relief allege that the Moving Defendants
18  were part of a broader "enterprise-in-fact" that violated the RICO statutes.  As the
19  predicate acts necessary to establish the required "pattern of racketeering activity,"
20  Plaintiffs identify violations of six different statutes.  FAC, ¶ 286.

21  The United States District Court for the District of Arizona recently encountered
22  a nearly identical RICO claim.  In *Pasamba v. HCCA International, Inc.* 2008 WL
23  2562928 (D. Ariz. June 24, 2008), the plaintiff, a citizen of the Philippines, alleged
24  that she had been told by defendant HCCA International that it would pay for her to be

25

---

26  of the process described by the Plaintiffs themselves, as well as the unquestioned
27  independence of the United States government.  FAC, ¶¶ 85-88.
    [3]  That Plaintiffs must work in order to maintain their H-1B status becomes
28  coercive only if one assumes that the United States of America is an unnamed
    "confederate" in the trafficking scheme.

4

licensed as a Registered Nurse in the United States, obtain a work visa for her to enter and work in the country, and employ her as a nurse in a hospital here. She signed an employment contract with HCCA and a promissory note stating that if she was terminated in less than 2 years, she would be required to reimburse HCCA for its expenses and costs directly attributable to her training, file preparation and maintenance, travel and other expenses and fees, as well as HCCA's overhead and operating costs. *Id.* at *1. According to her, HCCA later forced her to sign an amendment to the promissory note that increased the amount payable from $10,000 to $60,000, under the threat that she would get neither the job nor the work visa unless she did so. Like Plaintiffs here, she claimed she had signed the amendment under duress. *Id.* at *5.

HCCA subsequently terminated her and sent her a letter demanding payment in the sum of $60,000. She filed suit against HCCA alleging violation of RICO based on trafficking and extortion. Like the Plaintiffs here, Pasamba attempted to plead "coercion" by alleging that she had been threatened with deportation and legal action to collect what she claimed was an unreasonable debt. *Id.* at *5-6.

The Arizona District Court rejected Pasamba's claim that the threats of legal action to enforce the contract constituted an abuse of process. *Id.* at *6 (citing *United States v. Bradley*, 390 F. 3d 145, 151 (1st Cir. 2004)). The Court then found that, even assuming as true the complaint's allegations, they failed to establish that she had been forced to come to the United States, forced to work in a hospital here, or prevented from quitting once she began work here. *Id.* Even the alleged threats of deportation or legal action, it found, had not been invoked to force her to work. *Id.* In short, she had failed to allege facts that, if taken as true, would establish "compulsion of services by the use or threatened use of physical or legal coercion," hence, involuntary servitude, peonage, forced labor, trafficking or extortion under Arizona law. *Id.* at **6** (citing *United States v. Kozminski*, 487 U.S. 931, 953, 108 S. Ct. 2751, 101 L. Ed. 2d 788

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLAIMS AGAINST DEFENDANTS

1  (1988)).[4]  It therefore dismissed her RICO claim on the grounds that she had failed to

2  plead the necessary predicate acts.

3        Like Pasamba, Plaintiffs in this action fail to allege either that the Moving

4  Defendants forced them to come to this country or to continue working here under

5  threats of deportation or legal action.  They also fail to allege that Lulu Navarro's

6  alleged withholding of their visa documents forced them to continue to work for their

7  Louisiana school districts.  *See* FAC, ¶¶ 117-123, 147, 169.  In short, like Pasamba,

8  they fail to plead facts that, if proven, would constitute forced labor, trafficking,

9  slavery, involuntary servitude or document servitude sufficient to serve as the

10  necessary predicate acts for a RICO claim.  FAC, ¶ 286(a)-(c).

11        Plaintiffs also base their RICO claim on alleged acts of mail or wire fraud.

12  FAC, ¶ 286(d), (e).  Where a party identifies mail or wire fraud as the predicate acts of

13  a RICO claim, Rule 9(b) requires the pleader to state the time, place, and specific

14  content of the false representations, as well as the identities of the relevant parties.

15  *Edwards v. Marin Park Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (citing *Schreiber*

16  *Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)).  The

17  entire 127-page FAC does not identify a single false mail or wire communication by

18  the Moving Defendants.  *Every single one of the mail and wire communications*

19  *identified by Plaintiffs in paragraphs 205 through 244 supposedly was sent by*

20  *someone else, even assuming that any of them were false.*  The failure to identify a

21  single false mail or wire communication from the Moving Defendants is manifest.

22  Plaintiffs simply do not allege any predicate acts of mail or wire fraud by these

23  Moving Defendants.

24  _____

25  [4]      The United States Supreme Court in *United States v. Kozminski* stated that the
     term "involuntary servitude" necessarily means a condition of servitude in which the

26  victim is forced to work for the defendant by the use or threat of physical restraint or
     physical injury, or by the use or threat of coercion through law or the legal process.

27  *United States v. Kozminski*, 487 U.S. 931, 952, 108 S. Ct. 2751, 101 L. Ed. 2d 788
     (1988). In every case in which the Court found involuntary service under thirteenth

28

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLAIMS AGAINST DEFENDANTS

1    With respect to the claimed extortion, Plaintiffs cite *Flatley v. Mauro,* 39 Cal. 4th

2    299, 46 Cal. Rptr. 3d 606 (2006), for the premise that even a threat of a legal action

3    can constitute extortion in California if it is part of a broader scheme to intimidate and

4    defraud.  What the Court in *Flatley,* quoting *Philippine Export & Foreign Loan*

5    *Guarantee Corp. v. Chuidian*, 218 Cal. App. 3d 1058, 1079, 267 Cal. Rptr. 457 (1990),

6    actually said was that, "in many blackmail cases the threat is to do something in itself

7    perfectly legal, but that threat nevertheless becomes illegal when coupled with a

8    demand for money."  *Id.* at 332.  The *Flatley* court in fact expressly limited its holding

9    to "the specific and extreme circumstances" of that case, which involved an attorney

10   who had attempted to extort money from the famous Irish dancer using the threat of a

11   sordid lawsuit.  *Id* at 332 n.16.

12   Though they purport to characterize them as "baseless," nowhere in the FAC do

13   Plaintiffs allege that they have prevailed in any of the breach of contract claims

14   brought by Lulu Navarro and UPI.  FAC, ¶ 167(a), (c).  To the contrary, they have

15   prevailed only in a single defamation action brought against the suspected authors of

16   an Internet blog.  FAC, ¶ 166.  Again, the contrast to *Flatley* is stark; until a Court

17   rules that UPI's contracts are unenforceable, or that the breach of contract claims are in

18   fact baseless, which no Court has, UPI's filing of breach of contract suits to enforce its

19   written contracts cannot qualify as extortion sufficient to serve as the RICO predicate

20   acts.

21   Plaintiffs thus also fail to state a claim for RICO violations.  The Court should

22   dismiss that claim as well.

23

24

25

26

27
_____

28   amendment "the victim had no available choice but to work or be subject to legal
     action").  *Id* at *943*.

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLAIMS AGAINST DEFENDANTS

## IV.   PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUD BY AN EMPLOYMENT AGENCY RELATING TO ITS SERVICES

In their Third Claim for Relief, Plaintiffs claim that the Moving Defendants violated Cal. Civ. Code § 1812.508(a), which prohibits an employment agency from making, or causing to be made, "any false, misleading, or deceptive advertisements or representations concerning the services that the agency will provide to jobseekers." FAC, ¶ 314.  Whether or not the claim sounds in false advertising or directly in fraud, it must be pleaded with specificity.  *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp., USA,* 317 F.3d 1097, 1103-04 (9th Cir. 2003); *Wonderful LLC, v. Ocean Spray Cranberries, Inc.* 642 F. Supp. 2d 1112, 1124 (C.D. Cal 2009).

The FAC contains only a single factual representation by Lulu Navarro or UPI, the purported representation made by Lulu Navarro on March 28, 2008 about the amount of the initial processing fee.  FAC, ¶¶ 189, 191.  Plaintiffs rely heavily on this same representation in their Opposition.  Opp. Memo., at 2:19-22; 12:13-20.  This is the *only* representation attributed to these Moving Defendants.  Not a single representation is attributed to Jack Navarro.[5]

But that representation, even taken as true, did not falsely represent the services that UPI actually provided.  UPI did in fact provide visa processing services and assisted the Plaintiffs in obtaining job offers, as it had promised.  *See, e.g.,* FAC, ¶¶

---

[5]   In an effort to mask this deficiency, Plaintiffs rely heavily upon representations allegedly made by two other unserved Defendants: Emilio Villarba, a Philippine resident, and PARS International Placement Agency, a Philippine corporation. Plaintiffs in their Opposition call them, variously, "alter egos" (eight times) and "confederates" (seven times) of the Moving Defendants. *See, e.g.,* Opp. Memo., at 13 fn. 5. But, both terms are legal conclusions that this Court is not bound to accept on this motion. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001). In any event, Plaintiffs' alter ego allegations, even if accepted as true, do not establish that Lulu Navarro and PARS were "alter egos" of one another because Plaintiffs fail to allege any ownership interest by her in the company. *Compare* FAC, ¶ 31 with *Firstmark Capital Corp. v. Hempel Financial Corp.,* 859 F.2d 92, 94 (9th Cir. 1988) ("Ownership of an interest in the corporation is an essential part of the element of unity of ownership and interest").

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLAIMS AGAINST DEFENDANTS

1    114-116.  The representation simply does not give rise to a claim for fraud by an
2    employment agency in the provision of its services.

3         Plaintiffs fail to state a claim for violation of Cal. Civ. Code § 1812.508(a).

4

5    **V.    PLAINTIFFS FAIL TO PLEAD ESSENTIAL ELEMENTS OF THEIR**
6            **FRAUD CLAIM AGAINST THE MOVING DEFENDANTS**

7         In their Fifth Claim for Relief, Plaintiffs assert that the Moving Defendants
8    committed fraud in violation of Cal. Civ. Code § 1709.  Where, as here, a plaintiff
9    asserts that the defendants committed fraud by concealment, it must prove, among
10   other things, that the defendants failed to disclose a material fact, and that the plaintiff
11   reasonably relied upon the omission in acting to its detriment.  *Williamson v. General*
12   *Dynamics Corp.*, 208 F.3d 1144, 1156 fn. 3 (9th Cir. 2000), *cert. denied* 531 U.S. 929,
13   121 S. Ct. 309, 148 L. Ed. 2d 247 (2000).  *See also* CACI 1901.

14        With respect to the issue of the materiality of the alleged omission, Plaintiffs fail
15   to allege that, had they known about the so-called Second Recruitment Fee, they never
16   would have embarked on the process.  Rather, they allege only that they "would not
17   have participated in the recruitment process on those terms."  FAC, ¶ 332.  This hardly
18   qualifies as the materiality necessary for a concealment claim.  *See* CACI 1905 ("A
19   fact/promise is important if it would influence a reasonable person's judgment or
20   conduct").  Implicitly recognizing this fatal deficiency, Plaintiffs in their Opposition
21   argue desperately that, "Defendants' intention to charge the Second Recruitment Fee
22   was obviously a material fact."  Opp., at 13:21-22.

23        Can the Plaintiffs honestly allege that they would have walked away had they
24   known about the so-called Second Recruitment Fee?  They cannot say that because,
25   quite frankly, it is not true.  In fact, all of them continued with the process even after
26   learning of the additional fees.  FAC, ¶ 127.  They didn't have to; one teacher in fact
27   walked away from the process.  FAC, ¶ 185(b).

28

9

1    The inconvenient fact that all of Plaintiffs proceeded with the process even after

2   learning of the additional fees also defeats the notion that they reasonably relied upon

3   the initial March 28, 2008 sales pitch by Lulu Navarro in deciding to come to the

4   United States. *See, e.g., Shroyer v. New Cingular Wireless Services, Inc.* 622 F.3d

5   1035, 1038-1039, 1043 (9th Cir. 2010) (affirming dismissal of claim where plaintiff

6   failed to allege that he would have acted differently if defendant wireless service

7   provider had included omitted information).

8    Plaintiffs thus fail to state a claim against the Moving Defendants for fraud.

9

10               **VI.   CONCLUSION**

11    The United States Supreme Court recently ruled that pleadings that offer no

12   more than conclusory allegations and which track the language of the statute itself are

13   insufficient to survive Rule 12(b)(6). *Ashcroft v. Iqbal,* __U.S. __, 129 S. Ct. 1937,

14   1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544,

15   555, 127 S. Ct. 1955, 167 L.Ed.2d 929(2007)). That is precisely what Plaintiffs have

16   done in their FAC: merely tracked the statutes, added conclusory allegations of fact

17   and omitted any of the specific allegations of misconduct by these Moving Defendants.

18   Therefore, for the reasons set forth above, this Court should dismiss Plaintiffs' First,

19   Second, Third and Fifth Claims for Relief against the Moving Defendants pursuant to

20   Fed. R. Civ. P. 12(b)(6).

21

22   Dated: February 18, 2011        Respectfully submitted,

23                        HERNANDEZ, SCHAEDEL & ASSOCIATES, LLP

24

25                        /s/ Don A. Hernandez                  .
                         Don A. Hernandez
26                        Attorneys for Defendants Universal Placement
                         International, Inc., Lourdes "LuLu" Navarro, and
27                        Hothello "Jack" Navarro.

28

10

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLAIMS AGAINST DEFENDANTS

1   CERTIFICATE OF SERVICE

2   I hereby certify that a copy of the foregoing was served on all counsel of record

3   herein via the Court's electronic notification system on February 4, 2011.

4

5   /s/ Don A. Hernandez   .

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLAIMS AGAINST DEFENDANTS