1

2

3

4

5

6

7

8           UNITED STATES DISTRICT COURT

9      FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11  MAIRI NUÑAG-TANEDO, ET AL.,        )        CASE NO. SACV 10-1172-AG (MLGx)
                                       )
12          Plaintiffs,                )        [TENTATIVE] ORDER GRANTING IN
                                       )        PART AND DENYING IN PART
13      v.                             )        MOTION TO DISMISS OF
                                       )        DEFENDANT EAST BATON ROUGE
14                                     )        PARISH SCHOOL BOARD
    EAST BATON ROUGE PARISH            )
15  SCHOOL BOARD, ET AL.,              )
                                       )
16                                     )
            Defendants.                )
17                                     )
                                       )
18                                     )
    _____)
19

20          This putative class action involves allegations of fraud, human trafficking, and

21  racketeering.  Defendant East Baton Rouge Parish School Board ("Defendant" or "School

22  Board") now brings a Motion to Dismiss ("Motion") the First Amended Complaint ("FAC")

23  filed by Plaintiffs Mairi Nuñag-Tanedo, et al. ("Plaintiffs") for lack of personal jurisdiction and

24  failure to state a claim.  After considering the papers and arguments submitted, Defendant's

25  Motion to Dismiss for lack of personal jurisdiction is DENIED.  Further, Defendant's Motion to

26  Dismiss for failure to state a claim is GRANTED in part and DENIED in part.  Defendant's

27  Motion is GRANTED as to Plaintiffs' TVPA claims but is DENIED as to Plaintiffs' negligent

28  hiring claim.

## **BACKGROUND**

The following factual allegations are taken from Plaintiffs' FAC, and as it must for this Motion, the Court assumes them to be true.

Plaintiffs are teachers and Filipino nationals who came from the Philippines to work in the United States at various times beginning in 2007. (FAC ¶ 72.) Plaintiffs were holders of H-1B visas that permit foreign nationals with special skills to work in the United States for a specified employer for up to six years. (*Id.* ¶ 73.) Three of these Plaintiffs are currently employed as teachers by Defendant. (*Id.* ¶ 14–17.)

Defendant is the governing body of a local government entity in Louisiana charged with the management of the public school system in East Baton Rouge Parish. (*Id.* ¶ 20.) Defendant contracted with Universal Placement International, Inc. ("UPI") to recruit teachers from the Philippines. (*Id.* ¶ 78.)

UPI, its president Lourdes Navarro ("Navarro"), and attorney Robert B. Silverman ("Silverman") are all located in California (collectively the "California Defendants"). (*Id.* ¶¶ 26, 27, 35.) California Defendants allegedly engaged in fraudulent activity related to human trafficking and forced labor. (For a summary of the allegations against California Defendants, see this Court's Order Granting in Part and Denying in Part Motion to Dismiss FAC of Lourdes Navarro and UPI (the "UPI Order").)

Defendant's recruitment contract with UPI obligated Defendant to pay the salary and benefits of any hired teachers, without any additional expenses. (*Id.* ¶¶ 97–98.) Defendant received multiple benefits from the contract: (1) having capable and experienced teachers; (2) having California Defendants navigate the H-1B visa process; and (3) not having to pay for any of the fees and expenses related to the H-1B visa process. (*Id.* ¶¶ 98, 181.)

Before entering into the recruitment contract, Defendant failed to inquire into California Defendants' background. (*Id.* ¶ 398.) California Defendants were under investigation by the U.S. embassy in Manila and Navarro was previously convicted for defrauding the government and money laundering. (*Id.* ¶¶ 183–84.)

1   Plaintiffs further allege that Defendant participated in the trafficking venture by (1)

2   interviewing teachers in person and via teleconference; (2) selecting Plaintiffs from the applicants

3   interviewed; (3) issuing job offers via email; and (4) working collectively with California

4   Defendants to prepare and submit Labor Conditions Applications ("LCAs"), H-1B visa

5   applications, and H-1B visa renewal applications.  (*Id.* ¶ 180.)

6   Lastly, Defendant colluded with California Defendants to (1) only seek one-year visas (*Id.*

7   ¶ 186) and (2) stymie criticisms of the scheme (*Id.* ¶ 187).  Through its employees, Defendant

8   also allegedly submitted fraudulent documents to the federal government.  (*Id.* ¶¶ 205–225.)

9   Based on these factual allegations and others, Plaintiffs bring twelve claims against

10  multiple defendants in this matter.  (*See* the UPI Order.)  Plaintiffs bring two of these claims

11  against Defendant, the eleventh and twelfth claims:  (11) violations of the Trafficking Victims

12  Protection Act ("TVPA"); and (12) negligent hiring.  Defendant now moves to dismiss these two

13  claims based on Rule 12(b)(2) and Rule 12(b)(6).

14

15  **LEGAL STANDARD**

16

17  **1.      RULE 12(b)(2)**

18

19  Under Rule 12(b)(2), a defendant may bring a motion to dismiss for lack of personal

20  jurisdiction.  Although the defendant is the moving party, the plaintiff bears the burden of making

21  a prima facie showing of facts establishing personal jurisdiction by a preponderance of the

22  evidence.  *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

23  "The Due Process Clause protects an individual's liberty interest in not being subject to

24  the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or

25  relations.'"  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (citing *Int'l Shoe Co.

26  v. Washington*, 326 U.S. 310, 319 (1945)).  Lawful exercise of jurisdiction over a nonresident

27  defendant must comport with "traditional notions of fair play and substantial justice." *Int'l Shoe*,

28  326 U.S. at 316.  Concerns of fairness require that a court exercise jurisdiction only if the

3

1  defendant's actions in the forum are such that "he should reasonably anticipate being haled into

2  court there." *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

3

4  **2.  RULE 12(b)(6)**

5

6       A court should dismiss a complaint when its allegations fail to state a claim upon which

7  relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint need only include "a short and plain

8  statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

9  "'[D]etailed factual allegations' are not required." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

10 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). The Court must accept as

11 true all factual allegations in the complaint and must draw all reasonable inferences from those

12 allegations, construing the complaint in the light most favorable to the plaintiff. *Pollard v. Geo

13 Group, Inc.*, 607 F.3d 583, 585 n.3 (9th Cir. 2010); *Westlands Water Dist. v. Firebaugh Canal*,

14 10 F.3d 667, 670 (9th Cir. 1993).

15       But the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim

16 that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A

17 claim has facial plausibility when the pleaded factual content allows the court to draw the

18 reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at

19 1940 (citing *Twombly*, 550 U.S. at 556). A court should not accept "threadbare recitals of a cause

20 of action's elements, supported by mere conclusory statements," *Iqbal*, 129 S. Ct. at 1940, or

21 "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

22 inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The Ninth

23 Circuit recently stated that a complaint must be (1) "sufficiently detailed to give fair notice to the

24 opposing party of the nature of the claim so that the party may effectively defend against it," and

25 (2) "sufficiently plausible that it is not unfair to require the opposing party to be subjected to the

26 expense of discovery." *Starr v. Baca*, No. 09-55233, 2011 WL 477094, at *14 (9th Cir. Feb. 11,

27 2011). Dismissal without leave to amend is appropriate only when the Court is satisfied that the

28

1 deficiencies of the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353
2 F.3d 750, 758 (9th Cir. 2003).

3
4 **ANALYSIS**

5
6      As noted, Defendant moves to dismiss Plaintiffs' claims for lack of personal jurisdiction
7 under Rule 12(b)(2) and for failure to state a claim under Rule 12(b)(6). The Court will first
8 address Defendant's Rule 12(b)(2) argument and then proceed to Defendant's Rule 12(b)(6)
9 argument.

10
11 **1.    DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL**
12 **JURISDICTION**

13
14 **1.1    Personal Jurisdiction Analysis**

15
16      When a court decides a motion to dismiss for lack of personal jurisdiction before
17 conducting a trial or evidentiary hearing, the plaintiff need only make a prima facie showing that
18 personal jurisdiction exists. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). A plaintiff
19 makes a prima facie showing if the plaintiff produces admissible evidence which, if believed,
20 would be sufficient to establish the existence of personal jurisdiction. *Harris Rutsky & Co. Ins.*
21 *Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). For a Rule 12(b)(2)
22 motion brought before trial or an evidentiary hearing, a court accepts as true the complaint's
23 uncontroverted factual allegations and resolves any factual conflicts in the plaintiff's favor. *Id.*
24 Otherwise, defendants could prevent plaintiffs from meeting their burden simply by contradicting
25 plaintiffs' affidavits. *Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911,
26 912 (9th Cir. 1990).
27      A plaintiff can establish a defendant's minimum contacts with a given forum under a
28 theory of general or specific jurisdiction. *Helicopteros*, 466 U.S. at 414–16. General jurisdiction

exists where a defendant has "substantial" or "continuous and systematic" contacts with the

forum state.  *Id.* at 415.  If general jurisdiction exists, the forum state has jurisdiction over the

defendant regardless of where the events giving rise to the litigation occurred.  *Id.* at 415.

If a defendant's contacts with the forum state are not sufficient to establish general

jurisdiction, specific jurisdiction may still be shown.  Specific jurisdiction exists where

defendants have purposefully availed themselves of "the benefits and protections" of the laws of

the forum through specific acts giving rise to the litigation at hand.  *See Burger King Corp.*, 471

U.S. at 472–73 (citing *Helicopteros*, 466 U.S. at 414).  Once it is established that defendants

purposefully availed themselves of the benefits and protections of the forum, or purposefully

directed their actions toward the forum, the forum's exercise of jurisdiction is "presumptively

reasonable."  *Roth v. Garcia Marquez*, 942 F.2d 617, 625 (9th Cir. 1991).

Plaintiffs here do not allege general jurisdiction over Defendant exists.  Instead, Plaintiffs

argue that personal jurisdiction over Defendant exists under either specific jurisdiction or an

agency theory.  The Court addresses these arguments in turn.

### 1.2    Specific Jurisdiction

Specific jurisdiction is determined by a three-part test.  First, plaintiffs must show that the

defendant "purposefully direct[ed] . . . activities or consummate[d] some transaction with the

forum or resident thereof; or perform[ed] some act by which [the defendant] purposefully

avail[ed] himself of the privilege of conducting activities in the forum, thereby invoking the

benefits and protections of its laws."  *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007)

(citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).  Second,

plaintiffs must show that the claim "arises out of or relates to the defendant's forum-related

activities."  *Id.*  Finally, the exercise of jurisdiction must "comport with fair play and substantial

justice, i.e. it must be reasonable."  *Id.*  If plaintiffs show the first two elements by a

preponderance of the evidence, then reasonableness is presumed and the burden shifts to the

1    defendant to "'present a compelling case' that the exercise of jurisdiction would not be

2    reasonable." *Schwarzenegger*, 374 F.3d at 802; *see also Roth*, 942 F.2d at 625.

3

4              1.2.1   The First Prong of the Specific Jurisdiction Test: Purposeful Direction of

5                      Activity towards California

6

7              As noted, the first element of whether specific jurisdiction exists concerns whether

8    Defendant "purposefully directed" its activities towards California. (Motion at 8:3–4; Opp'n at

9    4:2; Reply at 10:5–8.) The parties agree on this point, but they disagree on what test should be

10   used to determine whether Defendant purposefully directed activity toward California. (Motion

11   at 8:13–17; Opp'n at 5:2–8; Reply at 10:12–3.)

12             Defendant argues that the "effects" test, stated in *Yahoo! Inc. v. La Lique Contre Le

13   Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) and *Menken*, 503

14   F.3d at 1057 (9th Cir. 2007), should apply. In *Yahoo!*, the Ninth Circuit stated that in tort cases,

15   the courts typically apply "an 'effects' test that focuses on the forum in which the defendant's

16   actions were felt, whether or not the actions themselves occurred with the forum." *Id.* The

17   "effects" test requires that for purposeful direction of activity, the defendant allegedly must have

18   (1) committed an intentional act (2) expressly aimed at California (3) that caused harm that is

19   suffered in the forum state and that the defendant knows is likely to be suffered in the forum

20   state. *See Yahoo!*, 433 F.3d at 1206. Under the effects test the Court "must evaluate all of a

21   defendant's contacts with the forum state, whether or not those contacts involve wrongful activity

22   by the defendant." *Id.* at 1207.

23             Plaintiffs argue that the effects test should not apply because their claims against

24   Defendant are not intentional tort claims. (Opp'n at 5:2–8 (citing *Holland Am. Line, Inc. v.

25   Wartsilla N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007).) Plaintiffs argument fails. First,

26   Plaintiffs' claims actually do include a possible intentional tort, violations of the TVPA. But

27   regardless, the Ninth Circuit has expanded the applicability of the effects test to encompass all

28   tortious actions, stating that "[i]n tort cases, [the courts] typically inquire whether a defendant

'purposefully directs his activities' at the forum state, applying an 'effects' test that focuses on the forum in which defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Yahoo!*, 433 F.3d at 1206 (9th Cir. 2006) (en banc); *see also Menken,* 503 F.3d at 1059 (holding the effects test applicable to claims including negligence, wrongful interference with contractual relations, and civil extortion because they primarily arose in tort). The Ninth Circuit makes clear that the distinction is between tort and contract claims, not between intentional and unintentional torts. *See Yahoo!*, 433 F.3d at 1206; *Menken*, 503 F.3d at 1057.

Here, as noted, Plaintiffs bring two tort claims against Defendant. Thus, under *Yahoo* and *Menken*, the effects test applies. As noted, to show purposeful direction of activity toward California the effects test requires that the defendant must have (1) committed an intentional act (2) expressly aimed at California (3) which caused harm that is suffered in the forum state and that the defendant knows is likely to be suffered in the forum state. *Yahoo!*, 433 F.3d at 1206. The Court now reviews whether Plaintiffs have satisfied these elements.

1.2.1.1    *The First Prong of the Effects Test: Committing an Intentional Act*

For the first prong of the effects test, the Ninth Circuit states that intent refers "to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Brayten Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)

Plaintiffs argue that Defendant committed multiple intentional acts by (1) hiring UPI to recruit teachers in the Philippines and (2) engaging Silverman to procure the necessary H-1B visas. (Opp'n at 4:15–18; 5:15–18; FAC ¶¶ 9, 33, 78, 98, 175g.) Further, Plaintiffs cite a long list of communications between Defendant and California-based UPI, Navarro, and Silverman. (Opp'n at 5:18–6:24; FAC ¶¶ 185b, 187a–e; Declaration of James Knoepp ("Knoepp Decl."),

8

Exs. B–H.)  They also cite visa forms submitted to a United States Citizenship and Immigration Services ("USCIS") California office.  (Opp'n at 7:1–7; FAC ¶¶ 205–225; Knoepp Decl., Ex. J.)

Defendant argues that the Court should not consider most of the conduct cited by Plaintiffs during the jurisdictional inquiry.  (Reply at 6–9.)  To support this contention, Defendant argues that most of the documents and allegations do not concern the named Plaintiffs.  (*Id.* at 6:11–12, n.6.)  Defendant also argues that Plaintiffs cannot rely on the H-1B visa filings in California, since those are covered by the government exception.  (*Id.* at 7:10–8:4.)

After subtracting the conduct covered by Defendant's proposed limitations, Defendant states that Plaintiffs are left with only the following contacts concerning the named Plaintiffs: (1) Swinford's email about a blog critical of California Defendants (FAC ¶ 187b); (2) a letter confirming Defendant's acceptance of UPI's recruitment offer (Knoepp Decl., Ex. C); and (3) a FedEx package transmitting checks to Navarro for hotel and airfare (*id.*, Ex. G).  Defendant argues that this fails to establish jurisdiction.

Defendant's argument is unpersuasive.  Even if the Court were to disregard all the contacts to which Defendant objects, Defendant itself concedes that three contacts remain.  And as the Ninth Circuit stated in *Yahoo!*, "[a] single forum state contact can support jurisdiction if the cause of action . . . arises out of that particular purposeful contact of the defendant with the forum state."  *Yahoo!*, 433 F.3d at 1210.  And although Defendant glosses over its most significant intentional act, entering into a recruitment contract with UPI, this recruitment contract alone is a sufficient intentional act.

Plaintiffs therefore have sufficiently shown that Defendant committed intentional acts when they hired UPI and Silverman and when they sent the alleged communications.  Thus, Plaintiffs meet the first prong of the effects test.

1.2.1.2      *The Second Prong of the Effects Test: Expressly Aimed at California*

The second element of the effects test "requires that the defendant's conduct be expressly aimed at the forum." *Brayton*, 606 F.3d at 1129. The Court looks at "all of a defendant's contacts with the forum state, whether or not those contacts involve wrongful activity by the defendant." *Yahoo!*, 433 F.3d at 1207.

Plaintiffs argue that Defendant's acts were aimed at California because UPI is a California corporation and Silverman is a California attorney. And Plaintiffs allege that Defendant knew these services would be performed in California. (Opp'n at 5:15–18; FAC ¶¶ 9, 33, 78, 98, 175g.) Plaintiffs also cite the same list of communication as above to support their argument that Defendant's actions were aimed at California. (Opp'n at 5:18–7:7; FAC ¶¶ 185b, 187a–e, 205–225;"Knoepp Decl.", Exs. B–H, J.)

Defendant argues that even if all of the conduct is considered, there is no personal jurisdiction. Defendant argues that all of its "contacts with California were incidental to the recruiting contract with . . . [UPI], a contract which called for services to be rendered in the Philippines." (*Id.* at 11:11–13.) Defendant further argues that Plaintiffs "cannot show that [Defendant's] contacts with California were made for the purpose of furthering any interest of [Defendant] in California." (*Id.* at 11: 23–25.)

Defendant's argument that all of its contacts with California were incidental to its recruiting contract fails. Here, Defendant intentionally retained the California Defendants' recruiting services with the express purpose of recruiting teachers from the Philippines. This contract is an intentional contact with California. And as noted, even "[a] single forum state contact can support jurisdiction if the cause of action . . . arises out of that particular purposeful contact of the defendant with the forum state." *Yahoo!*, 433 F.3d at 1210.

Even if the other contacts are incidental to the recruiting contract, the contract and hiring UPI directly give rise to the negligent hiring claim and also forms the basis for Plaintiffs' TVPA

1  claim.  Thus, Plaintiffs have shown that Defendant aimed its acts at California, and they meet the

2  second prong of the effects test.

3

4         1.2.1.3        *The Third Prong of the Effects Test: Harm Suffered in the*

5                        *Forum State*

6

7         The final element of the effects test requires that a defendant's act caused harm that is

8  suffered in the forum state that the defendant knows is likely to be suffered there.  *See Yahoo!*,

9  433 F.3d at 1206.   The Ninth Circuit has held that this element "is satisfied when defendant's

10  intentional act has 'foreseeable effects' in the forum."  *Brayton*, 606 F.3d at 1131.

11         Defendant argues that Plaintiffs have not shown foreseeable harm that took place in

12  California.  First, it argues that Plaintiffs cannot show that any activity by Defendant caused harm

13  to Plaintiffs in California.  Second, it argues that none of the alleged harm in California was

14  foreseeable by Defendant.  (*Id.* at 11:27–12:1.)  Defendant argues that Plaintiffs cite "no

15  communication which might have put [Defendant] on notice that any of the named Plaintiffs

16  would ever be present in California, much less that they would suffer harm in that forum."  (*Id.* at

17  12:10–13.)  Both arguments fail.

18         Plaintiffs have sufficiently alleged harm suffered in California due to the recruitment

19  contract.  This harm includes allegedly forcing Plaintiffs to pay exorbitant fees to California

20  corporation UPI, subjecting Plaintiffs to legal malpractice by California attorney Silverman, and

21  compelling Plaintiffs to sign illegal contracts of adhesion with UPI while in California.  (Opp'n at

22  7:8–18; FAC ¶ 5, 9–10, 147–151, 166–169, 175–179, 182d, 185c, 187, 295–296.)

23         The crucial issue is whether Defendant could have foreseen that Plaintiffs would suffer

24  this harm in California.  Looking specifically at Plaintiffs' negligent hiring claim, Plaintiffs allege

25  that (1) Defendant had reason to know that California Defendants were unfit to be employment

26  recruiters; (2) Defendant had duty to inquire into fitness and failed to do so; and (3) Defendant's

27  failure caused the alleged harm to Plaintiffs.  (FAC ¶¶ 395–99.)

28

1    Thus, Plaintiffs sufficiently allege that Defendant could have reasonably foreseen that

2    Plaintiffs would suffer harm in California.  Defendant apparently chose not to investigate the

3    Navarro's criminal history and thus did not gain sufficient information about her business

4    practices.  The Court further discusses the negligent hiring claim and its foreseeable effect in

5    Section 2.2.2.  Thus, Plaintiffs satisfy the third prong of the effects test as well showing that

6    foreseeable harm was suffered in California.

7

8                    1.2.1.4          *Effects Test Conclusion*

9

10    Plaintiffs have met all three elements of the effects test, and therefore have sufficiently

11    shown that Defendant purposefully directed its activities towards California.  Plaintiffs have

12    therefore established the first element of specific jurisdiction, and the Court now turns to the

13    remaining two elements.

14

15            1.2.2   The Second Prong of the Specific Jurisdiction Test: Claims Arising out of

16                    California-related Activities

17

18    For the second prong of the specific jurisdiction test, the Ninth Circuit applies a "but-for"

19    test in determining whether claims arise out of forum-related activities.  *Menken*, 503 F.3d at

20    1058.  A plaintiff "must show that he would not have suffered an injury 'but for' [defendant's]

21    forum-related conduct."  *Id.*

22    Plaintiffs argue that they "would not have suffered their injuries but for [Defendant's]

23    purposeful contacts with California."  (Opp'n at 8:15–16.)  Plaintiffs argue that had Defendant

24    not hired UPI and Silverman, "the teachers could not have been trafficked to work in the East

25    Baton Rouge Parish Public School System, and the [trafficking] scheme could not have

26    succeeded."  (*Id.* at 8:18–20.)

27    Defendant argues that Plaintiffs cannot show that the claim arises out of Defendant's

28    California-related activities because the claims depend on conduct in the Philippines and

1  Louisiana. (Reply at 13:14–14:1.)  Further, Defendant also contests Plaintiffs' argument that the
2  trafficking scheme could not have succeeded without Defendant's participation, since other
3  school districts in Louisiana and across the country were allegedly involved. (*Id.* at 13, n.9.)
4        Plaintiffs satisfy the required "but-for" test for the forum-related activities.  The recruiting
5  contract between Defendant and UPI is the starting point for the harm that Plaintiffs allege.  Later
6  events in the Philippines and Louisiana that also contributed to the harm do not change this fact.
7  If Defendant had not hired UPI and Silverman, Plaintiffs would not have been harmed by this
8  allegedly fraudulent conduct.  Thus, Plaintiffs have established the second element of specific
9  jurisdiction.
10
11        1.2.3   The Third Prong of the Specific Jurisdiction Test: Reasonableness of
12                Jurisdiction
13
14        For the third prong of the specific jurisdiction test, the Ninth Circuit looks at seven factors
15  to determine the reasonableness of exercising personal jurisdiction over a defendant:
16        (1) the extent of the defendants' purposeful interjection into the
            forum state's affairs; (2) the burden on the defendant of defending in
17          the forum; (3) the extent of conflict with the sovereignty of the
            defendants' state; (4) the forum state's interest in adjudicating the
18          dispute; (5) the most efficient judicial resolution of the controversy;
            (6) the importance of the forum to the plaintiff's interest in
19          convenient and effective relief; and (7) the existence of an
            alternative forum.
20
21  *Menken*, 503 F.3d at 1058.  As noted, if plaintiffs show the first two elements of specific
22  jurisdiction by a preponderance of the evidence, then reasonableness is presumed and the burden
23  shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would not
24  be reasonable." *Schwarzenegger*, 374 F.3d at  802;  *see also Roth*, 942 F.2d at 625.  Here,
25  Plaintiffs have shown that they have met the first two prongs by a preponderance of the evidence,
26  and therefore Defendant must present a compelling case that the exercise of jurisdiction is
27  unreasonable.  Defendant fails to do so.
28        The Court now addresses that parties' arguments concerning the seven factors.

1      1.2.3.1       *Reasonableness: Purposeful Interjection*

2

3      Plaintiffs argue that Defendant purposefully interjected itself into California by retaining

4   UPI and Silverman and derived significant benefits from this relationship.  (Opp'n at 9:17–22.)

5   Defendant argues that UPI and Silverman solicited Defendant's business in Louisiana.  Thus,

6   Defendant argues, it did not purposefully interject itself in California.  (Reply at 14:9–17.)  As

7   discussed above, Defendant intentionally entered into the California recruitment contract.

8   Through this contract, Defendant was able to hire a number of qualified teachers.  The fact that

9   the California Defendants solicited Defendant's business does not greatly change the analysis.

10  Defendant could have chosen from numerous recruiters, but it chose one located in California.

11  This factor weighs in favor of exercising jurisdiction.

12

13     1.2.3.2       *Reasonableness: Burden on Defendant*

14

15     Plaintiffs argue that modern transportation has significantly lessened Defendant's burden

16  of litigating in California, especially in light of Defendant's ability to travel to the Philippines to

17  recruit teachers.  (Opp'n at 10:3–13.)  Defendant argues that since Plaintiffs and Defendant are

18  both from Louisiana, they share the same burden of litigating in California, this should weigh

19  against the exercise of personal jurisdiction.  (Reply at 14:22–28.)  Although at least a significant

20  portion of a large amount of the discovery will likely occur in California, since a greater number

21  of wrongful acts are alleged against the California Defendants than the School Board, Defendant

22  is correct that it will bear some burden if it must litigate in California.  Thus, this factors weighs

23  slightly against exercising jurisdiction.

24

25     1.2.3.3       *Reasonableness: Louisiana's Sovereignty*

26

27     Plaintiffs argue that Louisiana's sovereignty is not implicated in this case, since Defendant

28  does not enjoy Eleventh Amendment immunity according to *Minton v. Pernard Parish Sch. Bd.*,

1  803 F.2d 129, 132 (5th Cir. 1986).  (Opp'n at 10:14–20.)  Defendant counters that Louisiana's

2  sovereign interests extend beyond the Eleventh Amendment, that education is one of the basic

3  functions of the state, and that the Louisiana Workforce Commission has already made UPI and

4  Silverman's actions the object of regulatory scrutiny.  (Reply at 15:1–13.)  While the Louisiana

5  Workforce Commission might also have an interest in this case, this does not mean that

6  Louisiana's sovereignty is implicated to the point where the exercise of jurisdiction is

7  unreasonable.  Thus, this factor does not weigh strongly against exercising jurisdiction.

8

9                        1.2.3.4        *Reasonableness: California's Interest*

10

11       Plaintiffs argue that California has significant interests in this dispute due to the

12  involvement of UPI and Silverman.  (Opp'n at 10:21–28.)  Defendant's reply is that California's

13  interest ends with the relationship between Plaintiffs and UPI and Silverman.  (Reply at

14  15:14–19.)  The Court agrees with Plaintiffs.  The actions by UPI and Silverman are of interest to

15  California and so are the actions of other entities aiding them in the alleged trafficking scheme.

16  California has a clear interest in monitoring the business practices of companies in its state.

17  Thus, this factor weighs in favor of exercising jurisdiction.

18

19                        1.2.3.5        *Reasonableness: Efficiency*

20

21       Plaintiffs argue that if claims against Defendant are litigated in California, this will greatly

22  reduce inefficiency.  (Opp'n at 11:1–9.)  Specifically, Plaintiffs argue that its claims against

23  Navarro and UPI will be litigated in California since at least one contract in this matter states

24  "this agreement shall be enforced within any competent court within the County of Los

25  Angeles . . . ."  (FAC ¶ 5.)  Therefore, Plaintiffs argue, allowing claims against Defendant to

26  proceed in Louisiana would needlessly duplicate litigation.  (*Id.*)  Further, Plaintiffs argue that

27  most of the relevant documents in this case are located in California.  (Opp'n at 11:1–9.)

28

1  Defendant argues that Plaintiffs minimize the fact that both Plaintiffs and Defendant are

2  located in Louisiana, that other Louisiana school districts would be involved if class certification

3  was granted, and that the bulk of discovery would take place in Louisiana.  (Reply at

4  15:20–16:8.)

5  Based on these considerations, inefficiencies will result regardless of the forum chosen,

6  and efficiency does not weigh strongly in either direction.

7

8  1.2.3.6          *Reasonableness: Convenience*

9

10  Plaintiffs argue that "litigating this case in California is important given the central role

11  California defendants played in the trafficking scheme."  (Opp'n at 11:10–12.)  Defendant argues

12  that "relief would in fact be more convenient and just as effective in the alternate forum of

13  Louisiana," since the majority of the parties are located there.  (Motion at 10:10–15.)  Like with

14  efficiency, convenience does not weigh strongly in either direction at this time.

15

16  1.2.3.7          *Reasonableness: Alternate Forum*

17

18  Plaintiffs argue that the mere existence of Louisiana as an alternate forum is insufficient to

19  establish reasonableness.  (Opp'n at 9:8–15.)  Since none of the factors weigh strongly against

20  exercising jurisdiction, the existence of an alternate forum does not change the analysis.

21

22  1.2.3.8          *Reasonableness: Conclusion*

23

24  Defendant failed to present a compelling case that exercising jurisdiction over it would be

25  unreasonable.  Thus, Plaintiffs have also established the third element of specific jurisdiction.

26

27

28

16

1.2.4   Specific Jurisdiction Conclusion

Plaintiffs have sufficiently established the first two elements of personal jurisdiction. Plaintiffs showed that Defendant purposefully directed its activity at California and that their claims arise out of Defendant's California-related conduct.  Further, Defendant was unable to show that exercising jurisdiction would be unreasonable in this case.  When Defendant entered into a recruitment contract with the California Defendants, Defendant should have "reasonably anticipate[d] being haled into court" in California, at the very least for Defendant's actions related to the recruiting activities.  *See Calder v. Jones*, 465 U.S. 783, 790 (1984); *World-Wide Volkswagen*, 444 U.S. at 297.   Thus, the Court has personal jurisdiction to hear Plaintiffs' claims against Defendant.

**1.3    Plaintiffs' Agency Argument**

Since the Court has found that personal jurisdiction exists over Defendant due to specific jurisdiction, the Court need not address Plaintiffs' alternative agency argument.

**2.    DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

As noted, Defendant also brings this Motion to Dismsis for failure to state a claim as to two of Plaintiffs' claims: violations of the TVPA and negligent hiring.  The Court turns now turns to the merits of Defendant's Motion as to these claims.

**2.1    Plaintiffs' TVPA Claims**

The TVPA is "an Act to combat trafficking of persons, especially into the sex trade, slavery, and slavery-like conditions, in the United States and countries around the world through

prevention, through prosecution and enforcement against traffickers, and through protection and assistance to victims of trafficking." H.R. Rep. No. 106-939, at 1 (2000). The purpose of the act is to "combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." *Id.* at 3. Many of the victims "are trafficked into the international sex trade, often by force, fraud, or coercion. *Id.* But "trafficking also involves violations of other laws, including labor and immigration codes and laws against kidnaping, slavery, false imprisonment, assault, battery, pandering, fraud, and extortion." *Id.* at 4.

An individual who is a victim of a violation may bring a civil action for violations of the TVPA. 18 U.S.C. § 1595. Plaintiffs bring TVPA claims against Defendant for human trafficking and forced labor under 18 U.S.C. §§ 1589, 1590, 1592, and 1594(a),(b). The Court now reviews whether Plaintiffs have stated valid claims against Defendant under these statutes. The Court begins with whether Defendant, a governmental entity, is a proper defendant under § 1595.

A civil action may be brought under the TVPA against "the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in [violation of the TVPA]) . . . ." 18 U.S.C. § 1595. Defendant argues that as a matter of law it can neither be "the perpetrator" or a person that "knowingly benefits" from violations of the TVPA. The Court agrees.

"[I]t is evident that Congress drafted the TVPA in such a manner as to limit liability to natural persons." *Bowoto v. Chevron Corp.*, 621 F.3d 1116, 1127 (9th Cir. 2010). "The TVPA consistently uses 'individual' throughout the statute to refer both to the torturer and the victim of torture." *Id.*

> [T]he legislative history demonstrates that Congress rejected the notion of corporate liability. When first introduced in 1987, the TVPA imposed liability on any "person" who subjected another to torture. *See* The Torture Victim Protection Act: Hearing and Markup before the H. Comm. on Foreign Affairs on H.R. 1417, 100th Cong. 82, 85 (1988). The House Foreign Affairs Committee amended the bill to substitute "individual" for "person" in order to "make it clear [they were] applying [the Act] to individuals and not to corporations." *Id.* When introduced five years later, the TVPA still spoke of liability

for individuals. . . . We thus conclude that both the text and legislative history indicate Congress did not intend to allow suits against corporations under the TVPA.

*Id.*

Just as Congress "did not intend to allow suits against corporations under the TVPA," Congress also did not intend to allow suits against governmental entities. As the Ninth Circuit stated, Congress made it clear it was applying the TVPA only to individuals. And nothing in the statute or legislative history shows that liability should be extended beyond this limit. Accordingly, Plaintiffs' claims against Defendant for violations of the TVPA must fail.

Defendant's Motion is GRANTED as to Plaintiffs' claims under the TVPA.

### 2.2 Plaintiffs' Negligent Hiring Claim

Plaintiffs also bring a negligent hiring claim against Defendant. Plaintiffs allege that Defendant "knew or had reason to believe that Recruiter Defendants, and particularly Defendant Lourdes Navarro and Defendant [UPI], were unfit for the tasks for which they were hired." (FAC ¶ 395.) To support their negligent hiring claim Plaintiffs primarily cite Navarro's previous convictions for "defrauding the California Medi-Cal system of more than $1,000,000" and money laundering. (FAC ¶ 9.)

Plaintiffs' negligent hiring claim is a state common-law claim. To determine whether Plaintiffs' have sufficiently stated a claim for negligent hiring, the Court must first decide which state's laws govern this claim.

#### 2.2.1 Choice of Law

"In a federal question action that involves supplemental jurisdiction over state law claims, we apply the choice of law rules of the forum state—here, California." *Paulsen v. CNF Inc.*,

19

559 F.3d 1061, 1080 (9th Cir. 2009) (citations omitted).  "Under California's choice of law rules, California will apply its own rule of decision unless a party invokes the law of a foreign state that 'will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply . . . .'"  *Id.* (citations omitted).  California courts employ a "governmental interest analysis" to assess whether California law or non-forum law should apply:

> To determine the correct choice of law, we apply a three-step analysis.  First, we determine whether the two concerned states have different laws.  Second, we consider whether each state has an interest in having its law applied to this case.  Finally, if the laws are different and each state has an interest in having its own law applied, we apply the law of the state whose interests would be more impaired if its policy were subordinated to the policy of the other state.

*Id.*  The parties do not dispute that California and Louisiana have different laws concerning negligent hiring, and therefore the Court turns to the remaining two steps in the analysis.

Here, despite this Court having personal jurisdiction over Defendant for Plaintiffs' negligent hiring claim, and both states having an interest in having their laws applied, Louisiana's interest for the negligent hiring claim is slightly greater.  All parties involved with this claim are located in Louisiana.  Further, Louisiana, not California, has a strong interest in determining when its own public entities may be liable.  Finally, both parties appear to agree that applying Louisiana law for Plaintiffs' negligent hiring claim is appropriate.  Accordingly, the Court applies Louisiana law to determine whether Plaintiffs have stated a claim against Defendant for negligent hiring.

### 2.2.2   The Negligent Hiring Claim

Under Louisiana law, "[a] principal generally is not liable for the offenses committed by an independent contractor while performing its contractual duties."  *Ledent v. Guaranty Nat. Ins. Co.*, 723 So.2d 531, 537 (La. App. 2d Cir. 1998).  "Two exceptions to this general rule exist: (1) where the work is ultra hazardous; and (2) if the principal reserves the right to supervise or control the work of the independent contractor."  *Id.*  But despite this general rule against vicarious liability, "Louisiana law imposes a separate duty on principals to exercise reasonable

1   care in selecting or hiring an independent contractor." *Bourg v. BT Operating Co.*, Case No. 09-

2   0596, 2009 U.S. Dist. LEXIS 29574 at *30 (citing *Hemphill v. State Farm Ins. Co.*, 472 So.2d

3   320, 324 (La. Ct. App. 3d Cir. 1985) ("One who hires an irresponsible independent contractor

4   may be independently liable.")).

5          In other words, a plaintiff may have difficulty establishing vicarious liability against a

6   principal if the principal took due care in hiring an independent contractor that commits a tort.

7   But if a principal negligently hired the contractor, a principal may be liable for the contractor's

8   torts due to the principal's negligence in hiring the contractor. The court must therefore analyze

9   whether Plaintiffs have sufficiently alleged that Defendant breached this duty of care in hiring

10  Navarro and UPI.

11         Here, Plaintiffs have sufficiently alleged that Navarro and UPI were at the very least the

12  independent contractors of Defendant. Therefore Defendant had a duty to exercise reasonable

13  care to ensure that UPI and Navarro were responsible, and Defendant breached this duty if it

14  knew or should have known that UPI and Navarro were irresponsible. *Cf. Bourg*, 2009 U.S. Dist

15  LEXIS 29574 at *30.

16         As noted, Plaintiffs allege that "the School Districts selected Ms. Navarro despite her prior

17  conviction and imprisonment for defrauding that California Medi-Cal system of more than

18  $1,000,000, and despite the fact that she had also pled guilty to money laundering in New

19  Jersey." (FAC ¶ 9.) These allegations sufficiently allege that UPI and Navarro were

20  irresponsible and that Defendant should have known that they were irresponsible after a

21  reasonable background check. Further, Plaintiffs have also sufficiently alleged causation and

22  damages given their allegations concerning Navarro's scheme to defraud Plaintiffs, including the

23  large amounts of fees paid to Navarro and UPI. (*E.g*, *id.* ¶ 105; *see also* the UPI Order.) Thus,

24  Plaintiffs have sufficiently stated a claim for negligent hiring against Defendant.

25         Defendant argues that "Plaintiffs do not allege that there existed an employment

26  relationship between the School Board and the California Defendants." (Motion at 21:25–22:1.)

27  Therefore, Defendant argues, Plaintiffs have failed to state a claim for negligent hiring. (*Id*. at

28  22:15–17.) But this argument fails. As noted, a principal may be liable for the negligent hiring

of an independent contractor—an employer-employee relationship need not exist. Thus, even if Navarro and UPI were only agents of Defendant, as Plaintiffs have sufficiently alleged, liability is still possible.

Defendant next argues that Plaintiffs negligent hiring claim fails because "there was no contract for hire between the School Board and UPI. The School Board did not hire or compensate UPI in any way for services. No money changed hands." (Reply at 22:15–19.) Not so. Plaintiffs specifically allege that "[t]he Louisiana School Districts chose and retained [UPI] and [Navarro] to recruit teachers from the Philippines." (FAC ¶ 9.) Perhaps if Defendant eventually produces evidence showing a lack of any principal-agent relationship, this will bolster its chances at summary judgment. But for purposes of this motion to dismiss, Plaintiffs have sufficiently alleged that a principal-agent relationship existed between the parties. (*Id.* ¶¶ 9, 114–16.)

Finally, Defendant argues that Louisiana recognizes only a limited claim for negligent hiring, and that it had no duty to protect Plaintiffs from the alleged criminal activities of Navarro and UPI. (Reply at 23:1–5 (citing *Smith v. Orkin Exterminating Co.*, 540 So.2d 363, 366 (La. App. 1st Cir. 1989.))) Therefore, Defendant argues, it had no duty to protect Plaintiffs from Navarro's allegedly fraudulent actions. This argument fails.

"Duty is a question of law. Generally there is no duty to protect others from the criminal activity of third persons. . . . [But] when an employer hires an employee who in the performance of his duties will have a unique opportunity to commit a crime against a third party, he has a duty to exercise reasonable care in the selection of that employee." *Orkin*, 540 So. 2d at 366 (citations omitted).

In *Orkin*, a pest control company employee, while exterminating a home, unlocked a window to ensure that he would later have access to the home. *Id.* at 365. Two days later, the employee returned and sexually assaulted the homeowner. *Id.* The *Orkin* Court held that "[u]nder the unique circumstances of Orkin's business, we [ ] believe that there is a continuing duty to exercise reasonable care in the retention of its employees." *Id.* at 366. And since the court held that the company negligently administered a polygraph examination that would have

1    led to termination of the employee if properly administered, the company could be liable for

2    negligent hiring.  *Id.*

3           Similarly, Plaintiffs here sufficiently allege that UPI and Navarro were presented a unique

4    opportunity to harm Plaintiffs.  They worked directly and exclusively with Plaintiffs during the

5    recruiting process.  Plaintiffs had to rely on UPI and Navarro's representations throughout the

6    recruiting process concerning program terms and costs.  And due to this reliance, UPI and

7    Navarro had a clear opportunity to fraudulently take Plaintiffs' money.

8           Further, this alleged harm was certainly foreseeable.  Plaintiffs allege that Navarro has

9    been convicted of no less than two separate fraudulent financial schemes.  (FAC ¶ 9.)  In one of

10   these schemes, Plaintiffs allege that Navarro defrauded the California Medi-Cal system of more

11   than $1,000,000.  (*Id.*)  Defendant therefore had clear constructive notice of Navarro's alleged

12   dishonesty and possibility of committing acts highly similar to the fraudulent acts alleged here.

13          Defendant cites two cases to support its argument that the alleged harm caused by Navarro

14   was not foreseeable.  In the first case, a court held that even if an employer had discovered a

15   janitor's previous conviction record of stealing welfare checks over five years before the date of

16   employment, it did not follow that arson was reasonably foreseeable.  *Lou-Con, Inc. v. Gulf*

17   *Building Services, Inc.*, 287 So.2d 192 (La. App. 4th Cir. 1973).  In the other case, a court held

18   that it was unforeseeable that a man with a past history of property-related crimes would commit

19   a rape.  *Mays v. Pico Finance Co., Inc.*, 229 So.2d 381, 385 (La. App. 2nd Cir. 1997).  But these

20   cases are easily distinguished.  In both of these cases, crimes related to finances and property

21   were followed crimes of destruction and violence, respectively—a clear difference in the nature

22   of the crimes committed.  By contrast, Navarro's alleged past and present acts all involve

23   financial fraud for her own personal gain.  Unlike in *Lou-Con* and *Mays*, the high degree of

24   similarity between the past and present acts shows the foreseeability of Navarro's alleged fraud

25   and Defendant's duty to prevent it.

26          In sum, given the unique opportunity presented to Navarro and UPI to financially defraud

27   Plaintiffs, and given the high degree of similarity between this opportunity and Navarro's

28   previous fraudulent financial schemes for which Navarro was allegedly convicted, Defendant had

a duty to exercise reasonable care in selecting recruiters.  Plaintiffs have sufficiently alleged that Defendant breached that duty.

2.2.3   Conclusion

Under Louisiana law, Plaintiffs have sufficiently stated a claim for negligent hiring, and therefore Defendant's Motions as to Plaintiffs' negligent hiring claim is DENIED.

**DISPOSITION**

The Motion is GRANTED in part and DENIED in part, with leave to amend.  Plaintiffs may file an amended complaint within 21 days of this order, if they so choose, preferably in red-line format.

IT IS SO ORDERED.

DATED: March 7, 2011

_____

Andrew J. Guilford

United States District Judge