James M. Knoepp (admitted *pro hac vice*)
Jim.Knoepp@splcenter.org
Jennifer L. Tse (SBN 260764)
Jennifer.Tse@splcenter.org
Daniel Werner (admitted *pro hac vice*)
Daniel.Werner@splcenter.org
IMMIGRANT JUSTICE PROJECT
SOUTHERN POVERTY LAW CENTER
233 Peachtree Street NE, Suite 2150
Atlanta, GA  30303
Telephone:  (404) 521-6700
Facsimile:  (404) 221-5857

*Attorneys for Plaintiffs*
*Additional Co-Counsel on Subsequent Pages*

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION**

| | |
|---|---|
| MAIRI NUNAG-TAÑEDO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> EAST BATON ROUGE PARISH SCHOOL BOARD, et al., <br><br> Defendants. | Civ. No.: 10-01172-AG-MLG <br><br> **MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS OF DEFENDANTS ROBERT B. SILVERMAN AND SILVERMAN & ASSOCIATES** <br><br> HEARING DATE:  APRIL 4, 2011 <br> TIME:  10:00 a.m. <br> COURTROOM:  10D <br><br> **HON. ANDREW J. GUILFORD** |

*(Attorney listing continued from first page)*

Mary C. Bauer (admitted *pro hac vice*)
Mary.Bauer@splcenter.org
Sam Brooke (admitted *pro hac vice*)
Sam.Brooke@splcenter.org
Morris S. Dees (admitted *pro hac vice*)
Judy.Bruno@splcenter.org
IMMIGRANT JUSTICE PROJECT
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, Alabama  36104
Telephone:   (334) 956-8200
Facsimile:    (334) 956-8481

Dennis B. Auerbach (admitted *pro hac vice*)
dauerbach@cov.com
Candice N. Plotkin (admitted *pro hac vice*)
cplotkin@cov.com
Jillian Willis (admitted *pro hac vice*)
jwillis@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone:   (202) 662-6000
Facsimile:    (202) 662-6291

Susan Johnston (admitted *pro hac vice*)
sjohnston@cov.com
Pamela A. Carter (admitted *pro hac vice*)
pcarter@cov.com
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York  10018
Telephone:   (212) 841-1000
Facsimile:    (212) 841-1010

Daniel J. McNeil (admitted *pro hac vice*)
dmcneil@aft.org
AMERICAN FEDERATION OF TEACHERS

1  LEGAL DEPARTMENT
2  555 New Jersey Ave., N.W.
   Washington, DC  20001
3  Telephone:  (202) 393-6305
4  Facsimile:   (202) 393-6385

5  Lawrence Rosenzweig (SBN 72443)
   LRPCorp@aol.com
6  Brent Rosenzweig (SBN 219071)
7  Brent.Rosenzweig@gmail.com
   LAWRENCE ROSENZWEIG, PC
8  2730 Wilshire Boulevard, Suite 425
9  Santa Monica, California  90403
10 Telephone:  (310) 453-0348
   Facsimile:   (310) 453-3358
11

12 *Attorneys for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................ 1

II.  ARGUMENT .............................................................................................................. 2

    A.   Plaintiffs Have Stated a Plausible TVPA Claim Against Silverman. .................... 2

    B.   Plaintiffs Have Stated a Plausible RICO Claim Against Silverman. ..................... 6

    C.   Plaintiffs Have Stated Plausible Malpractice and Breach of Fiduciary Duty Claims Against Silverman. .................................................................................... 8

    D.   Plaintiffs' Claims Arise Under the TVPA, RICO and California State Law — Not Federal Labor Statutes or Regulations. .......................................................... 12

CONCLUSION ................................................................................................................. 13

# TABLE OF AUTHORITIES

**CASES**

*Adams v. Paul*, 11 Cal. 4th 583, 46 Cal. Rptr. 2d 594 (Cal. 1995) .............................. 10

*Bennet v. McCall*, 19 Cal. App. 4th 123, 23 Cal. Rptr. 2d 268 (Cal. Ct. App. 1993) ................. 11

*Favila v. Katten Muchin Rosenman LLP*, 188 Cal. App. 4th 189, 115 Cal. Rptr. 3d 274 (Cal. Ct. App. 2010) .......................................................................... 10

*Flatt v. Superior Court*, 9 Cal. 4th 275, 38 Cal. Rptr. 2d 537 (Cal. 1994) .................................. 9

*ITT Small Business Financial Corp. v. Niles*, 9 Cal. 4th 245, 36 Cal. Rptr. 2d 552 (Cal. 1994) ........................................................................ 12

*Kovacevich v. McKinney & Wainwright*, 16 Cal. App. 4th 337, 19 Cal. Rptr. 2d 692 (Cal. Ct. App. 1993) ........................................................................ 12

*Neel v. Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal. 3d 176, 98 Cal. Rptr. 837 (Cal. 1971) ........................................................................ 11

*Samuels v. Mix*, 22 Cal. 4th 1, 91 Cal. Rptr. 2d 273 (Cal. 1999) .................................. 10

*Schmuck v. United States*, 489 U.S. 705, 109 S Ct. 1443, 103 L. Ed. 2d 734 (1989) .................. 8

*Starr v. Baca*, No. 09-55233, 2011 U.S. App. LEXIS 2798 (9th Cir. Feb. 11, 2011) .................. 3

*United States v. Garcia*, Case No. 02-CR-110S-01, 2003 U.S. Dist. LEXIS 22088 (W.D.N.Y. Dec. 2, 2003) ........................................................................ 4

*United States v. Green*, 592 F.3d 1057 (9th Cir. 2010) .................................. 13

*United States v. Hubbard*, 96 F.3d 1223 (9th Cir. 1996) .................................. 13

*United States v. Manion*, 339 F.3d 1153 (9th Cir.), *cert. denied*, 540 U.S. 1096, 124 S. Ct. 978, 157 L. Ed. 2d 807 (2003) ........................................................................ 8

**STATUTES**

18 U.S.C. §§ 1581, *et. seq.* ........................................................................ 1

18 U.S.C. § 1589 ........................................................................ 4, 5

18 U.S.C. § 1590 ........................................................................ 5

18 U.S.C. § 1594 ........................................................................ 6

18 U.S.C. § 1595 ........................................................................ 5, 6, 12

18 U.S.C. §§ 1961, *et. seq.* ........................................................................ 1

Cal. Civ. Proc. Code § 340.6 ........................................................................ 10, 11

**REGULATIONS**

20 C.F.R. § 655.731(c)(9)(iii)(C) (2000) ........................................................................ 7, 8, 9

**RULES**

Local Rule 7-3 .................................................................................................................. 2

## I. INTRODUCTION

Contrary to Defendant Silverman's assertion, Plaintiffs' First Amended Complaint ("Am. Compl.") states plausible claims that Silverman participated in and benefited from the teacher trafficking scheme devised by Universal Placement International, Inc. ("Universal") and its owner Lourdes "Lulu" Navarro ("Navarro"). Specifically, the Amended Complaint alleges that Silverman facilitated the scheme by (a) helping the employer school districts obtain the teachers' labor free of any recruiting costs — including costs that the districts were required to bear under federal law (Am. Compl. ¶¶ 175c); (b) applying for one-year rather than the typical three-year visas for the teachers, thereby allowing Defendants to exercise heightened control over them (*id.* ¶¶ 162-163, 175f); (c) signing a verification of the "facts" asserted in a baseless lawsuit designed to retaliate against teachers who criticized Navarro in a blog (*id.* ¶¶ 166, 175j); (d) filing fraudulent documents with the United States Customs and Immigration Service ("USCIS"), in which the employer school districts falsely certified that they were in compliance with applicable U.S. Department of Labor ("DOL") regulations regarding the issuance of H-1B visas (*id.* ¶¶ 175d, 208-245); and (e) drafting and requesting a fraudulent statement from Defendant East Baton Rouge Parish School Board ("EBR") in an effort to terminate the visa and thus retaliate against a teacher who refused to pay the exorbitant and illegal fees that Universal and Navarro sought to extort. (*Id.* ¶¶ 175i, 185b.) Silverman received substantial compensation for his efforts. (*Id.* ¶¶ 106a, 175b.)

These allegations in the Amended Complaint are more than sufficient to state claims against Silverman as a perpetrator and beneficiary under the Trafficking Victims Protection Reauthorization Act ("TVPA), 18 U.S.C. §§ 1581, *et. seq.* Based on his multiple predicate TVPA violations (and related acts of mail fraud), Silverman is likewise liable for damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et. seq.*

Plaintiffs also state plausible claims against Silverman for legal malpractice and breach of fiduciary duty. The Amended Complaint alleges that Silverman entered appearances as counsel for the teachers on G-28 forms filed with USCIS in connection with their visa petitions, and received substantial legal fees which were paid exclusively by the teachers. (Am. Compl. ¶¶ 175a, 175b.) Silverman simultaneously represented both Universal and the school districts regarding the same subject matter, giving rise to serious conflicts of interest. (*Id.* ¶¶ 175a, 175j.) As a result of these conflicts, Silverman did not advise his teacher clients that, under federal law, the school district employers and not the teachers were responsible for fees associated with procuring H-1B visas — and, indeed, conspired with Universal, Navarro and the school districts to require the teachers to pay those fees. (*Id.* ¶ 175c.) The teachers thus paid thousands of dollars of visa-related fees, while the employer school districts paid *nothing*. These alleged facts state plausible malpractice and breach of duty claims against Silverman under California law. Silverman contends that the malpractice and breach of duty claims are barred by the statute of limitations, but he improperly relies on purported facts outside the Amended Complaint to support that unfounded assertion.

For these various reasons, Silverman's motion to dismiss should be denied.[1]

## II. ARGUMENT

### A. Plaintiffs Have Stated a Plausible TVPA Claim Against Silverman.

The facts regarding Defendants' trafficking scheme are summarized in Plaintiffs' Opposition to the motion to dismiss filed by Defendants Universal and Navarro, and will not be repeated here. (*See* ECF No. 69.) We focus instead on the sufficiency of the allegations regarding Silverman's role in the scheme. As demonstrated below,

---

[1] Silverman also failed to comply with the Local Rule 7-3 requirement that he confer with opposing counsel at least five days before filing his motion to dismiss. *See* ECF No. 92 at 2 (representing that Silverman conferred with Plaintiffs' counsel regarding his motion only on February 28, two days before the motion was filed).

those allegations both provide Silverman with sufficient notice of what he must defend against, and state plausible TVPA claims against him. *See Starr v. Baca*, No. 09-55233, 2011 U.S. App. LEXIS 2798, at *35-*36 (9th Cir. Feb. 11, 2011).

Silverman is a California attorney who worked closely with Universal, Navarro, and several Louisiana school districts to bring over 350 Filipino teachers to the United States to work in Louisiana public schools pursuant to H-1B visas. (Am. Compl. ¶¶ 9, 35-37, 162, 166a, 166c, 171-179.) Silverman's role was to act as legal facilitator for this venture. In such capacity, he provided essential services that enabled Universal and Navarro to successfully carry out their unlawful scheme. *Id.*

Contrary to Silverman's contention, the Amended Complaint does not merely make the conclusory allegation that Silverman "actively facilitated Recruiter Defendants' trafficking scheme." (ECF No. 90 at 9.) Rather, the Amended Complaint provides extensive detail regarding the *specific* acts by Silverman that constitute such facilitation. (*See* Am. Compl. ¶¶ 162, 166a, 166c, 171-179.) As noted, these acts include:

- Helping the employer school districts obtain the teachers' labor free of any recruiting costs, including costs that the districts were required to bear under federal law (*id.* ¶ 175c);

- applying for one-year rather than the typical three-year visas for the teachers, thereby allowing defendants to exercise heightened control over them (*id.* ¶¶ 162-163, 175f);

- signing the verification of a lawsuit against plaintiff Ingrid Cruz, which was designed to retaliate against teachers who criticized Navarro on the so-called Pinoy Teachers Hub — a lawsuit dismissed pursuant to California's anti-SLAPP statute (*id.* ¶¶ 166, 175j);[2]

- filing fraudulent documents with the government, in which the employer school districts falsely certified that they were in compliance with applicable DOL regulations regarding the issuance of H-1B visas (*id.* ¶¶ 175d, 208-245); and

---

[2] This lawsuit against Plaintiff Cruz also sought to recover a fee equal to one month's worth of Cruz's U.S. salary, which was over and above the enormous fees previously extracted from Cruz in the Philippines through extortion and fraud. Plaintiffs do not rely on separate lawsuits filed by Universal against other teachers.

- drafting and requesting a fraudulent statement to USCIS by Defendant EBR in an effort to terminate the visa of (and thus retaliate against) a teacher who refused to pay the exorbitant and illegal fees that Universal and Navarro demanded (*id.* ¶¶ 175i, 185b).

These detailed allegations reflect that Silverman was deeply complicit in the trafficking scheme.

Silverman asserts that the facts alleged in the Amended Complaint do not state violations of the TVPA on his part (ECF No. 90 at 9, 11), but that argument also fails. Pursuant to 18 U.S.C. § 1589(a)(3), a defendant violates the TVPA if he knowingly provides the labor or services of a person "by means of the abuse or threatened abuse of legal process." Silverman's drafting of a fraudulent letter to USCIS seeking the revocation of a teacher's visa in retaliation for her refusal to pay the fees demanded by Universal and Navarro (and to intimidate other teachers to pay such fees) constitutes an abuse of legal process. Silverman's participation (through signing a verification) in the baseless lawsuit retaliating against Plaintiff Cruz for her alleged role in the Pinoy Teachers Hub constitutes an abuse of legal process. Silverman's filing of documents with USCIS containing false certifications about the school districts' compliance with federal regulations in order to disguise the fact that the teachers were paying fees that should have been paid by their employers constitute abuses of legal process. And, while a somewhat closer question, Silverman's applications for one-year rather than the standard three-year visas for the teachers constitute abuses of legal process in the circumstances here, where (a) the shorter visas were procured to allow Universal and Navarro to continually threaten the teachers with non-renewal of their visas in order to extract additional fees and otherwise control the teachers (*see* Am. Compl. ¶ 175f), and (b) Silverman was acting as the teachers' counsel in the visa process (*id.* ¶ 175a). *Cf. United States v. Garcia*, Case No. 02-CR-110S-01, 2003 U.S. Dist. LEXIS 22088, at *23 (W.D.N.Y. Dec. 2, 2003) (threatening victims with deportation "clearly fall[s] within the concept and definition of 'abuse of legal process.'") (internal quotes omitted).

Each of these abuses was effected to help Universal and Navarro provide and continue providing the teachers' labor to the school districts on the terms imposed. As explained at length in Plaintiffs' oppositions to the motions to dismiss of the other Defendants, the teachers needed to continue working for their visa sponsors because of the crushing debt imposed upon them in the Philippines, through systematic fraud and extortion. (*See, e.g.,* ECF No. 69 at 8-15.) In this context, threats of visa non-renewal and related retaliation for resisting Defendants' demands was an extremely effective means of controlling the teachers, ensuring their continued labor, and stifling dissent. Accordingly, Plaintiffs have properly alleged that Silverman violated section 1589(a)(3). Because Silverman's abuses of legal process facilitated the provision of the teachers' labor in violation of the TVPA, Plaintiffs have likewise properly alleged that he violated 18 U.S.C. § 1590.

Silverman's conduct also violated other provisions of the TVPA. Section 1589(b) provides that a defendant perpetrates a TVPA violation if he knowingly benefits from participation in a venture that has engaged in TVPA violations described in section 1589(a), knowing or in reckless disregard of the fact that the venture was engaged in such misconduct. 18 U.S.C. § 1589(b). Similarly, section 1595 provides that a defendant is civilly liable as a TVPA beneficiary (though not as a perpetrator) if he knowingly benefits from participation in a venture which he knew *or should have known* was engaged in TVPA violations. 18 U.S.C. § 1595. The Amended Complaint properly alleges that Silverman is liable under these provisions. It alleges that Silverman participated in a venture with Universal/Navarro and the school districts to procure teachers from the Philippines pursuant to H-1B visas (*e.g.*, Am. Compl. ¶ 180); that Silverman benefited from such participation by collecting substantial legal fees (*id.*

¶¶ 106a, 175b)[3]; and that Silverman knew or should have known that the venture was engaged in TVPA violations (*id.* ¶ 258).

The Amended Complaint also properly alleges that Silverman violated 18 U.S.C. § 1594(b) by conspiring with Universal, Navarro, and the school districts to, *inter alia* (a) provide the teachers' labor to the districts free of any of the visa-related fees and costs mandated by federal law (Am. Compl. § 175c), and (b) abuse legal process for the purpose of ensuring the teachers' continued labor on the terms imposed. Silverman argues that section 1595 does not provide a private right of action for violations of sections 1594(a) and (b). But he cites no authority for that contention, and it is contradicted by the TVPA's plain words. Section 1595 states that a victim of "a violation of this chapter" has a civil remedy against the perpetrators or knowing beneficiaries of such violation. 18 U.S.C. § 1595. Sections 1594(a) and (b), governing attempted violations and conspiracy, are plainly part of the trafficking "chapter." Plaintiffs thus have a civil remedy against a defendant who perpetrates or knowingly benefits from a violation of that provision, as a matter of simple textual analysis. Accordingly, Silverman's motion to dismiss Plaintiffs' TVPA claim should be denied.

### B. Plaintiffs Have Stated a Plausible RICO Claim Against Silverman.

Silverman's sole argument against Plaintiffs' RICO claim is that he did not engage in predicate violations of the TVPA. For the reasons stated above, that argument fails and the Court should thus determine that Plaintiffs have properly stated a cause of action under the RICO statute.

In addition to his predicate TVPA violations, Silverman also engaged in predicate acts of mail fraud, which are alleged with particularity in the Amended

---

[3] Each of the more than 350 teachers recruited from the Philippines paid a legal services fee of $2,000. (Am. Compl. ¶ 106(a).) Plaintiffs do not know how much of this Silverman received, but if it was just half that amount, it would still total several hundred thousand dollars.

Complaint. (*See* Am. Compl. ¶¶ 208-245.)  Specifically, the Amended Complaint alleges that Silverman used the mails to submit I-129 Petitions and I-129 Supplements and fraudulent Labor Conditions Applications ("LCAs") to USCIS for each of the teachers.  The date, content, and recipient of each such fraudulent mailing is alleged with particularity in the Amended Complaint.  (*See, e.g., id.* ¶ 205 (describing fraudulent LCA certifications prepared with Silverman's assistance and submitted to DOL regarding Plaintiff Nunag-Tanedo); *id.* ¶ 209 ("On or about June 21, 2008, as part of the petition for an H-1B visa for Plaintiff Nunag-Tanedo, Legal Facilitator Defendants caused to be mailed to USCIS the fraudulent LCA previously submitted to the USDOL.").)

The LCAs at issue were fraudulent because they certified that the school districts would comply with federal regulations governing the H-1B program, when both the school districts and Silverman knew otherwise. (*See, e.g., id.* ¶ 205.)  Most significantly, 20 C.F.R. § 655.731(c)(9)(iii)(C) (2000) provides that a sponsoring H-1B employer may not recoup its business expenses from the visa beneficiary, specifically barring recoupment of "attorney fees and other costs connected to the performance of H-1B program functions which are required to be performed by the employer (e.g., preparation and filing of LCA and H-1B petition)."

Here, the school districts (with the exception of the Recovery School District) paid *nothing* — they incurred no business expenses whatsoever in connection with the visa process and passed *all* such expenses on to the teachers.  The $2,000 attorney fee was passed on to teachers.  The $500 anti-fraud fee was passed on to teachers.  The $320 visa filing fee was passed on to the teachers.  And the $1,000 premium processing fee for visas was passed on to teachers.  (*See* Am. Compl. ¶¶ 106a, 175c.)  The school districts' certifications of compliance with federal regulations were thus blatantly false, as Silverman well knew based on his involvement in the process.  (*See, e.g., id.* ¶ 173.)

By mailing such certifications to USCIS, Silverman engaged in mail fraud.  That

7

fraud directly and proximately harmed the teachers because, absent the fraudulent certifications, DOL and USCIS would have required the fees to be borne by the school districts and not by the teachers, as mandated by 20 C.F.R. § 655.731(c)(9)(iii)(C).[4] Although the scheme to defraud the teachers of such fees likely originated with Universal and Navarro, Silverman participated in the execution of the scheme and is thus likewise liable. *See United States v. Manion*, 339 F.3d 1153, 1156 (9th Cir.) ("the intentional *devising* of a scheme to defraud is not an essential element of mail or wire fraud . . . [i]t has long been settled . . . that anyone who knowingly and intentionally participates in the execution of the fraudulent scheme comes within the prohibition of the [mail and wire fraud] statute[s] regardless of whether the defendant devised the scheme"), *cert. denied*, 540 U.S. 1096, 124 S. Ct. 978, 157 L. Ed. 2d 807 (2003).

In sum, the Amended Complaint adequately pleads that Silverman engaged in predicate acts of trafficking and mail fraud, as well as the other requisite elements of a RICO claim (which Silverman does not dispute). His motion to dismiss the RICO count should thus be denied.

### C. Plaintiffs Have Stated Plausible Malpractice and Breach of Fiduciary Duty Claims Against Silverman.

Silverman's motion to dismiss Plaintiffs' supplemental state-law malpractice and breach of fiduciary duty claims also cannot withstand scrutiny. Silverman committed legal malpractice and breached his fiduciary duties to Plaintiffs by (a) simultaneously representing the teachers, Universal/Navarro, and the school districts on the same subject matter (Am. Compl. ¶¶ 175a, 175j); (b) failing to disclose his conflict of interest to the teachers or obtain appropriate waivers (*id.* ¶¶ 178-179); (c) failing to advise his

---

[4] Silverman's mailings also constituted mail fraud because they were "incident to an essential part of the scheme" to defraud the teachers into paying visa-related fees that the employer school districts were obligated to pay under federal law. *Schmuck v. United States*, 489 U.S. 705, 711, 109 S Ct. 1443, 1448, 103 L. Ed. 2d 734, 743 (1989). The mailings need not themselves have been fraudulent to constitute predicate acts of mail fraud. *Id.*, 489 U.S. at 715.

teacher clients that federal law requires the employer school districts to bear the cost of procuring H-1B visas, and precludes the districts from recouping their business expenses from the teachers (*id.* ¶¶ 173, 370a; *see also* 20 C.F.R. § 655.731(c)(9)(iii)(C); section II.B, *supra*); and (d) actively conspiring with Universal, Navarro and the employer school districts to require the teachers to pay such fees (Am. Compl. ¶ 175c).[5]

Silverman contends that he never acted as attorney for the teachers and thus cannot be liable for malpractice (ECF No. 90 at 17-19).  That, however, is a factual issue that cannot be determined on a motion to dismiss.  Moreover, Silverman's contention is flatly at odds with G-28 notice-of-appearance forms he submitted to USCIS, which expressly stated that he represented both the school district visa applicant *and* the teacher beneficiary of the visa application.  (*See* Am. Compl. ¶ 175a.) The Amended Complaint also alleges that the teachers paid all of Silverman's legal fees concerning the visa process.  (*Id.* ¶ 175b.)  That Silverman never bothered to meet with or talk to his teacher clients (*id.* ¶ 176) does not relieve him of attorney-client obligations, but rather underscores that he acted solely to benefit Universal and the school districts, at the expense of the teachers whom he simultaneously represented. *See Flatt v. Superior Court*, 9 Cal. 4th 275, 289, 38 Cal. Rptr. 2d 537, 545 (Cal. 1994) ("It is … an attorney's duty to protect his client in every possible way, and it is a violation of that duty for him to assume a position adverse or antagonistic to his client without the latter's free and intelligent consent given after full knowledge of all the facts and circumstances.  By virtue of this rule an attorney is precluded from assuming any relation which would prevent him from devoting his entire energies to his client's interests.") (citation and internal quotation marks omitted.).

---

[5] While Plaintiffs' malpractice and breach of fiduciary duty claims are principally based on Plaintiffs' payment of visa-related fees that are the legal obligation of the employer school districts, Silverman also committed malpractice and breached his duties to Plaintiffs by working with Universal/Navarro and the school districts to obtain one-year rather than the standard three-year visas for the teachers.  (Am. Compl. ¶¶ 363b, 370b.)

9

Civ. No. 10-01172-AG-MLG

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS
OF DEFENDANTS ROBERT B. SILVERMAN AND
SILVERMAN & ASSOCIATES

Silverman next argues that the malpractice and breach of duty claims are barred by the statute of limitations.  However, this, too, raises factual issues that cannot be resolved on a motion to dismiss.  *See Adams v. Paul*, 11 Cal. 4th 583, 588, 46 Cal. Rptr. 2d 594, 597 (Cal. 1995) ("in legal malpractice actions statute of limitations issues, including injury, are at base factual inquiries.")

Under the California Code of Civil Procedure, except in cases of actual fraud, a plaintiff is required to file a claim for legal malpractice within one year of the date it discovered (or should have discovered) the facts underlying its claim.  Cal. Civ. Proc. Code § 340.6(a)[6]; *accord Samuels v. Mix*, 22 Cal. 4th 1, 6-7, 91 Cal. Rptr. 2d 273, 276 (Cal. 1999) ("a cause of action for legal malpractice accrues when the client discovers or should discover the facts essential to the malpractice claim, and suffers appreciable and actual harm from the malpractice") (citation and internal quotation marks omitted). It is Silverman's burden to prove that such actual or constructive discovery occurred more than a year before this action was filed in August 2010.  *See Favila v. Katten Muchin Rosenman LLP*, 188 Cal. App. 4th 189, 224, 115 Cal. Rptr. 3d 274, 302 (Cal. Ct. App. 2010) ("the burden of pleading and proving plaintiff's actual or constructive discovery of defendant's wrongdoing falls on the defendant"); *accord Samuels*, 22 Cal. 4th at 6.  Silverman may or may not be able to meet that burden on summary judgment or at trial, but he plainly cannot do so based on the pleadings.

Silverman suggests that the statute of limitations began to run no later than the last date on which he acted as counsel for the Plaintiffs (ECF No. 90 at 21-22), but that assertion fails as a matter of law.  While the statute of limitations is certainly tolled during an attorney's continuous representation (*see* Cal. Civ. Proc. Code §

---

[6] "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first."

340.6(a)(2)),[7] that does not mean that a plaintiff's malpractice claim accrues when such representation ends. Rather, as discussed above, a claim accrues only when the plaintiff discovers or should have discovered the facts underlying his or her cause of action. Termination of the attorney-client relationship "is relevant only to the extent that the client, aided by disclosures from the former attorney or the investigations of new counsel, acquires the essential information." *Neel v. Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal. 3d 176, 190, 98 Cal. Rptr. 837, 846 (Cal. 1971).

Nothing in the Amended Complaint supports Silverman's assertion that Plaintiffs knew all the facts underlying their malpractice claim more than a year before this action was filed. Indeed, discovery will show that Plaintiffs learned the most critical such fact — that federal law precludes the employer school districts from recouping their business expenses from the visa beneficiaries — well within the one-year period. Silverman's malpractice consisted precisely in failing to advise his teacher clients of this essential point. Accordingly, the malpractice claim is not time-barred.

Citing *Bennet v. McCall*, 19 Cal. App. 4th 123, 23 Cal. Rptr. 2d 268 (Cal. Ct. App. 1993), Silverman argues — relying on purported facts outside the four corners of the Amended Complaint — that the statute of limitations began to run when the teachers hired different lawyers to renew their H-1B visas. (ECF 90 at 22.) That case is inapposite. The appellant in *Bennet* argued that, despite his knowledge of the facts of his former attorney's negligence in 1986 and his hiring of a new lawyer at that time to rectify such negligence, the running of the statute of limitations should be tolled until a later date. 23 Cal Rptr. 2d at 270. The court disagreed, holding that the statute of limitations was triggered by the hiring of the new attorney because such counsel was

---

[7] "In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist:…(2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred:" Cal. Civ. Proc. Code § 340.6(a)(2).

*specifically engaged* to rectify the known negligence of his predecessor. *Id.* at 271. By contrast, the Amended Complaint does not allege or suggest that Plaintiffs hired another attorney to rectify Silverman's malpractice more than a year before this action was filed. There is thus no ground for the Court to conclude based on the Amended Complaint that Plaintiffs' malpractice and breach of duty were filed outside the limitation period.[8]

Because Silverman's statute of limitations argument fails, his motion to dismiss Plaintiffs' malpractice and breach of fiduciary duty claims should be denied.

### D. Plaintiffs' Claims Arise Under the TVPA, RICO and California State Law — Not Federal Labor Statutes or Regulations.

While his brief is unclear, Silverman appears to argue that some or all of Plaintiffs' claims are barred because they purportedly concern the right to equal pay under federal labor laws and because there is no private right of action under applicable labor statutes absent prior exhaustion of administrative remedies. (*See* ECF No. 90 at 13-16.) Silverman's contention is unfounded. Plaintiffs do not purport to assert any private right of action under federal labor statutes or regulations. The claims against Silverman are rather based exclusively on the TVPA, RICO, and California state law.

The TVPA creates a private right of action for trafficking victims, which has no administrative preconditions or thresholds. *See* 18 U.S.C. § 1595. The teachers have no obligation to exhaust administrative remedies under the labor laws before they may bring suit under the TVPA, and Silverman has cited no TVPA provision or case law providing otherwise. Likewise RICO creates a private right of action for victims of

---

[8] Silverman also relies on *Kovacevich v. McKinney & Wainwright*, 16 Cal. App. 4th 337, 344, 19 Cal. Rptr. 2d 692, 697 (Cal. Ct. App. 1993) (ECF No. 90 at 20), but that case was subsequently overruled by the California Supreme Court. *See ITT Small Business Financial Corp. v. Niles*, 9 Cal. 4th 245, 254, 36 Cal. Rptr. 2d 552, 557 (Cal. 1994).

racketeering activity, and does not require any prior exhaustion of administrative remedies.

Although Silverman's predicate acts of mail fraud are related to violations of DOL regulations by the employer school districts, that does not mean Plaintiffs are somehow asserting a private right of action under those regulations. Indeed, a defendant need not violate another underlying statute or regulation to be liable for mail or wire fraud. *See United States v. Green*, 592 F.3d 1057, 1064 (9th Cir. 2010) ("it is settled that wire fraud does not require proof that the defendant's conduct violated a separate law or regulation"); *accord United States v. Hubbard*, 96 F.3d 1223, 1228 (9th Cir. 1996). It is Silverman's predicate acts of mail fraud that create liability here, not the school districts' violations of DOL regulations. *See id.*

Similarly, Plaintiffs' malpractice and breach of fiduciary duty claims against Silverman are based on Silverman's conflicts of interest and his failure to advise his teacher clients that, under federal law, fees and costs associated with procuring H-1B visas must be paid by the employer school districts, not by them. These claims arise under California state law, not federal labor regulations. Silverman's motion to dismiss based on the absence of a private right of action under the labor laws thus lacks merit.

## CONCLUSION

For the foregoing reasons, Silverman's motion to dismiss should be denied.

Respectfully submitted this 14th day of March, 2011.

\_\_/s/ James M. Knoepp_____
James M. Knoepp
IMMIGRANT JUSTICE PROJECT
SOUTHERN POVERTY LAW CENTER
233 Peachtree Street NE, Suite 2150
Atlanta, Georgia  30303
*On behalf of Attorneys for Plaintiffs*

13

Civ. No. 10-01172-AG-MLG

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS
OF DEFENDANTS ROBERT B. SILVERMAN AND
SILVERMAN & ASSOCIATES

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this date electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification to all counsel of record.

/s/ James M. Knoepp_____

March 14, 2011.