UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 10-1172-AG(MLGx) | Date | April 4, 2011 |
| Title | MAIRI NUNAG-TANEDO, ET AL v EAST BATON ROUGE PARISH SCHOOL BOARD, ET AL | | |

| Present: The Honorable | ANDREW J. GUILFORD, U.S. District Judge |
|---|---|
| Lisa Bredahl | Denise Paddock |
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Dennis Auerbach | Don Hernandez |
| Janes Knoepp | Robert Silverman, Pro Se |
| | Martin Sullivan |

**Proceedings:**  1. SCHEDULING CONFERENCE
2. MOTION TO DISMISS CLAIMS AGAINST ROBERT B. SILVERMAN AND SILVERMAN & ASSOCIATES [DKT #90]

Cause is called for hearing and counsel make their appearances. Court and counsel confer. The Court sets the following dates:

Discovery Cutoff is April 24, 2012.

A Final Pretrial Conference is set for July 9, 2012, at 8:30 a.m.

A Jury Trial is set for July 24, 2012 at 9:00 a.m. Court sets the length of the trial at 11 days.

Scheduling Order Specifying Procedures is signed and filed this date.

Counsel argue the tentative ruling on the motion to dismiss, a copy of which is attached to this minute order. Matter is taken under submission.                    Mtn: 40 min/SC 10 min

|  | : | 50 |
|---|---|---|
| Initials of Preparer | lmb | |

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAIRI NUÑAG-TANEDO, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>EAST BATON ROUGE PARISH SCHOOL BOARD, ET AL.,<br><br>Defendants. | CASE NO. SACV 10-1172-AG (MLGx)<br><br>[TENTATIVE] ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS OF DEFENDANTS ROBERT B. SILVERMAN AND SILVERMAN & ASSOCIATES |

This putative class action involves allegations of fraud, human trafficking, and racketeering. Defendants Robert B. Silverman and Silverman Associates ("Defendants" or "Silverman") bring a Motion to Dismiss ("Motion") the First Amended Complaint ("FAC") filed by Plaintiffs Mairi Nuñag-Tanedo, et al. ("Plaintiffs") for failure to state a claim. After considering the papers and arguments submitted, the Court GRANTS Defendants' Motion as to the alleged RICO predicate acts of mail fraud, wire fraud, and extortion, and the Court DENIES the Motion as to Plaintiffs' remaining claims against Defendants. Leave to amend is granted as to the dismissed claims.

**BACKGROUND**

The following factual allegations are taken from Plaintiffs' FAC, and as it must for this Motion, the Court assumes them to be true.

Plaintiffs are teachers and Filipino nationals who came from the Philippines to work in the United States. (FAC ¶ 72.) Plaintiffs were holders of H-1B visas that permit foreign nationals with special skills to work in the United States for a specified employer for up to six years. (*Id.* ¶ 73.) Three of these Plaintiffs are currently employed as teachers by Co-Defendant East Baton Rough Parish School Board ("School Board"). (*Id.* ¶ 14–17.)

Defendants are a California attorney and his law firm. (*Id.* ¶¶ 35-36.) Universal Placement International, Inc. ("UPI") hired Defendants "to handle obtaining and, in some case, renewing H-1B visas for Plaintiffs." (*Id.* ¶ 162.) UPI and its president Lourdes Navarro ("Navarro") allegedly engaged in fraudulent activity related to human trafficking and forced labor. (For a summary of the allegations against UPI and Navarro, see this Court's Order Granting in Part and Denying in Part Motion to Dismiss FAC of Lourdes Navarro and UPI (the "UPI Order").)

Plaintiffs allege that Defendants were fully aware of and actively facilitated UPI and Navarro's trafficking scheme. (FAC ¶¶ 171, 173, 175.) Plaintiffs further allege that:
(1) Defendants knew that certain fees were being paid by Plaintiffs and not the School Board (*id.* ¶ 173); (2) Defendants together with UPI and Navarro isolated Plaintiffs from other Filipinos, threatened lawsuits and deportation, and manipulated the visa renewal process (*id.* ¶ 174); (3) Defendants helped the School Board obtain the teacher's labor with recruiting costs, including costs the School Board was required to pay under federal law (*id.* ¶ 175c); (4) Defendants filed fraudulent documents with the government, in which the School Board falsely certified they were in compliance with H-1B visa process (*id.* ¶¶ 175d, e, g, h); (5) Defendants applied for one-year rather than three-year visas to allow for more control over Plaintiffs (*id.* ¶ 175f); (6) Defendants drafted and requested a fraudulent statement from the School Board to terminate the visa of a teacher who refused to pay the fees (*id.* ¶ 175i); and

(7) Defendants filed baseless lawsuits against Plaintiff Ingrid Cruz and other putative class members designed to retaliate against teachers who complained about Navarro (*id.* ¶¶ 166, 175j, k).

Plaintiffs further allege that Defendants (1) entered into attorney-client relationship with Plaintiffs by submitting "G-28 Notice of Entry of Appearance forms with each H-1B visa petition stating that [Defendants] represented both the Plaintiffs and other Class Members, and the petitioning school districts" (*id.* ¶ 175a); and (2) received legal fees from Plaintiffs for procuring the H-1B visas (*id.* ¶¶ 106a, 175b).

Based on these factual allegations and others, Plaintiffs bring twelve claims against multiple defendants in this matter. (*See* the UPI Order.) Plaintiffs bring four of these claims against Defendants, the first, second, ninth and tenth claims: (1) Violations of the Victims of Trafficking and Violence Protection Act of 2000 ("TVPA"); (2) RICO violations; (9) breach of fiduciary duty; and (10) legal malpractice. Defendants now move to dismiss these four claims.

## LEGAL STANDARD

**RULE 8 PLEADING STANDARDS**

A court should dismiss a complaint when its allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations' are not required." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (stating that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations")). The Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. *Pollard v. Geo Group, Inc.*, 607 F.3d 583, 585 n.3 (9th Cir. 2010); *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993).

1      But the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim
2  to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at
3  570). "A claim has facial plausibility when the pleaded factual content allows the court to draw
4  the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct
5  at 1940 (citing *Twombly*, 550 U.S. at 556). A court should not accept "threadbare recitals of a
6  cause of action's elements, supported by mere conclusory statements," *id.*, or "allegations that are
7  merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v.*
8  *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The Ninth Circuit recently stated that
9  a complaint must be (1) "sufficiently detailed to give fair notice to the opposing party of the
10 nature of the claim so that the party may effectively defend against it," and (2) "sufficiently
11 plausible that it is not unfair to require the opposing party to be subjected to the expense of
12 discovery." *Starr v. Baca*, No. 09-55233, 2011 WL 477094, at *14 (9th Cir. Feb. 11, 2011).
13 Dismissal without leave to amend is appropriate only when the Court is satisfied that the
14 deficiencies of the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353
15 F.3d 750, 758 (9th Cir. 2003).

17 **2.    RULE 9 PLEADING STANDARDS**

19      Fraud claims include "a false representation, knowledge of its falsity, intent to defraud,
20 justifiable reliance, and damages." *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996)
21 (superceded by statute on other grounds). These claims must meet the heightened pleading
22 standard of Federal Rule of Civil Procedure 9(b), which requires enough specificity to give a
23 defendant notice of the particular misconduct to be able to defend against the charge. *Bly-Magee*
24 *v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted). To satisfy this specificity
25 requirement, "the who, what, when, where, and how" of the misconduct must be alleged. *Cooper*
26 *v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997) (internal quotation marks omitted). Thus, factual
27 allegations must include "the time, place, and specific content of the false representations as well

as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

Rule 9(b) serves many purposes. One is to "furnish the defendant with certain definite charges which can be intelligently met." *Kincade v. Trojan Express, LLC*, No. SACV 08-1362 AG (ANx), 2009 WL 799390, at *2 (C.D. Cal. Mar. 23, 2009). Other purposes include "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties, and society enormous social and economic costs absent some factual basis." *Anderson v. Clow* (*In re Stac Elecs. Sec. Litig.*), 89 F.3d 1399, 1405 (9th Cir. 1996) (internal quotations omitted); *see Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

To comply with Rule 9(b), a plaintiff must plead "with particularity" the time and place of the fraud, the statements made and by whom made, an explanation of why or how such statements were false or misleading when made, and the role of each defendant in the alleged fraud. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-49 & n.7 (9th Cir. 1994) (en banc) (reversed concerning securities fraud claims); *Lancaster Community Hospital v. Antelope Valley Hospital District*, 940 F.2d 397, 405 (9th Cir. 1991); *see also Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (holding that Rule 9(b) requires a plaintiff to "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation"). Where the allegations in support of a claim fail to satisfy the heightened pleading requirements of Rule 9(b), the claim is subject to dismissal. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). Dismissal for failure to comply with Rule 9(b) "should ordinarily be without prejudice . . . if it appears at all possible that the plaintiff can correct the defect." *Id.* at 1108 (internal quotation marks and citation omitted).

**ANALYSIS**

As noted, Defendant moves to dismiss Plaintiffs' claims numbered as follows: (1) TVPA violations; (2) RICO violations; (9) breach of fiduciary duty; and (10) legal malpractice. The Court now proceeds to the merits of Defendants' Motion.

**1.     PLAINTIFFS' FIRST CLAIM: VIOLATIONS OF THE TVPA**

The TVPA is "an Act to combat trafficking of persons, especially into the sex trade, slavery, and slavery-like conditions, in the United States and countries around the world through prevention, through prosecution and enforcement against traffickers, and through protection and assistance to victims of trafficking." H.R. Rep. No. 106-939, at 1 (2000). The purpose of the act is to "combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." *Id.* at 3. Many of the victims "are trafficked into the international sex trade, often by force, fraud, or coercion. *Id.* But "trafficking also involves violations of other laws, including labor and immigration codes and laws against kidnapping, slavery, false imprisonment, assault, battery, pandering, fraud, and extortion." *Id.* at 4.

A civil action may be brought under the TVPA against "the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in [violation of the TVPA]) . . . ." 18 U.S.C. § 1595. Defendants argue that Plaintiffs have failed to state a TVPA claim. The Court disagrees.

As the Court discussed in the UPI Order, Plaintiffs have sufficiently stated TVPA claims against UPI and Navarro. And § 1595 allows civil liability against the perpetrator or "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act" in violation of the TVPA. § 1595. Thus, Defendants can be liable under the TVPA as either perpetrators or a beneficiaries

of the alleged TVPA violations. The Court first turns to whether Plaintiffs have sufficiently alleged beneficiary liability against Defendants.

The beneficiary-liability provision of § 1595 requires that the defendant (1) knowingly benefitted financially or by receiving anything of value; (2) from participation in a venture; (3) that the defendant knew or should have known was engaged in violations of the TVPA. § 1595(a). Plaintiffs sufficiently allege each of these elements.

As discussed in the School Board Order and the UPI Order, Plaintiffs sufficiently allege that the School Board, UPI, and Navarro participated together in the venture of recruiting Plaintiffs. Likewise, Plaintiffs sufficiently allege that Defendants were hired to obtain and renew H-1B visas for the teachers, thereby joining the venture. (FAC ¶ 162.) Further, Plaintiffs allege that the Defendants benefitted from this venture by collecting substantial legal fees. (*Id.* ¶¶ 106a 175b.) Finally, Plaintiffs allege that Defendants knew or should have known of various alleged wrongs committed by Navarro and UPI, including that Navarro was allegedly charging illegal fees and threatening Plaintiffs with the abuse of legal process. (*Id.* ¶¶ 9, 254, 258.)

Defendants contend that Plaintiffs insufficiently allege that Defendants knew or should have known of Navarro and UPI's wrongdoing. (Motion at 6:19-7:3.) The Court disagrees. As previously stated, Plaintiffs allege that "Defendants were fully aware of and involved in the recruitment scheme" and sufficiently support the allegation that Defendants knew or should have known. (FAC ¶ 175.) For example, Plaintiffs allege that Defendants drafted and requested a fraudulent statement from the School Board to terminate the visa of a teacher who refused to pay exorbitant fees (*id.* ¶ 175i) and that Defendants filed baseless lawsuits against certain teachers to retaliate against those who complained about Navarro (*id.* ¶¶ 166, 175j, k). These facctual allegations show that Plaintiffs' claims are plausible and that Defendants knew or should have known of Navarro and UPI's wrongdoing. Thus, Plaintiffs have stated plausible claims against Defendants, and Defendants have clear notice of the claims against them.

Accordingly, based on Plaintiffs' claims against UPI and Navarro for fraud and TVPA violations, (*see* UPI Order), and because Plaintiffs have sufficiently alleged beneficiary liability against Defendants under the TVPA, Plaintiffs have sufficiently stated claims for TVPA

violations against Defendants. Further, because Plaintiffs have sufficiently alleged beneficiary liability against Defendants under the TVPA, the Court need not address the parties' arguments concerning Defendants' potential perpetrator liability.

Defendants' Motion as to Plaintiffs' claims for violations of the TVPA is DENIED.

**2.    PLAINTIFFS' SECOND CLAIM: RICO VIOLATIONS**

To state a civil claim under RICO, a plaintiff must plead that the defendant violated the Act, and that the plaintiff was injured as a result of the violation. "The elements of a civil RICO claim are simple enough: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's business or property." *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C. §§ 1964(c), 1962(c); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). "Racketeering activity . . . is defined to include a number of generically specified criminal acts as well as the commission of one of a number of listed predicate offenses." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 939 (9th Cir. 2006) (citing § 1961(1)). "A 'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5).

Plaintiffs allege RICO violations based on the following alleged acts: "Forced labor in violation of 18 U.S.C. § 1589"; "[t]rafficking persons with respect to forced labor in violation of 18 U.S.C. § 1592(a)"; "[u]nlawful document-related practices in furtherance of trafficking in violation of 18 U.S.C. § 1592(a)"; "[m]ail fraud to further their unlawful scheme in violation of 18 U.S.C. § 1341"; "[w]ire fraud to further their unlawful scheme in violation of 18 U.S.C. § 1343"; and "[e]xtortion as defined in Cal. Penal Code § 518." (FAC ¶ 286.)

The Court has already held that Plaintiffs have sufficiently stated separate TVPA claims against Defendants for forced labor, human trafficking, and unlawful document-related practices, and therefore these claims may also serve as underlying predicate acts for Plaintiffs' RICO claim. Thus, the Court now reviews the remaining potential predicate acts to determine whether Plaintiffs have stated a valid RICO claim.

**2.1 Mail Fraud and Wire Fraud**

For mail fraud as a RICO predicate act, "it is necessary to show that (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004) (internal citations and quotations omitted). Meanwhile, for wire fraud as a RICO predicate act, it is necessary to show "(1) a scheme to defraud; (2) use of the wires in furtherance of the scheme; and (3) a specific intent to deceive or defraud." *United States v. Green*, 592 F.3d 1057, 1064 (9th Cir. 2010) (internal citations and quotations omitted).

As noted, "Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010). Specifically, "the complaint must specify such facts as the times, dates, places and benefits received, and other details of the alleged fraudulent activity." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993). Thus, when mail fraud and wire fraud are the alleged RICO predicate acts, a plaintiff must meet these heightened pleading standards. *Id.*

Here, Plaintiffs fail to sufficiently plead mail and wire fraud against Defendants. Although Plaintiffs have sufficiently alleged that Defendants were beneficiaries of alleged TVPA violations by UPI and Navarro, Plaintiffs fail to sufficiently allege that Defendants formed an artifice to scheme or defraud. Plaintiffs also fail to sufficiently allege facts against Defendants that show who made representations, when and where the representations were made, how they were made, and the specific fraudulent content of the representations. Thus, Plaintiffs have failed to meet Rule 9(b) pleading requirements, and their mail and wire fraud claims as to Defendants must fail.

Accordingly, Defendants' Motion as to the predicate acts of mail and wire fraud against Defendants is GRANTED.

**2.2 Extortion**

Neither party addresses the extortion claim in the papers submitted, thus the Court will only briefly discuss this RICO predicate act.

While Plaintiffs have sufficiently alleged beneficiary liability under the TVPA and alleged fraudulent acts of UPI and Navarro, Plaintiffs have not sufficiently alleged that Defendants committed acts of extortion. Thus, Plaintiffs' claim for extortion against Defendants fails.

Accordingly, Defendants' Motion as to the predicate act of extortion is GRANTED.

**2.3 Conclusion**

While Plaintiffs have failed to sufficiently allege the RICO predicate acts of mail fraud, wire fraud, and extortion against the Defendants, Plaintiffs have sufficiently alleged the predicate acts of forced labor, human trafficking, and unlawful document-related practices. Thus, Plaintiffs' have sufficiently alleged multiple RICO predicate acts, as required by 18 U.S.C. § 1961(5). Further, it appears that the parties agree that Plaintiffs' have met the remaining requirements to state a valid RICO claim. Accordingly, Defendants' Motion as to Plaintiffs' RICO claim is DENIED.

**3. PLAINTIFFS' NINTH AND TENTH CLAIMS: BREACH OF FIDUCIARY DUTY AND LEGAL MALPRACTICE**

Defendants attack Plaintiffs' ninth and tenth claims for relief with the same two arguments. Thus, the Court will consider the breach of fiduciary duty claim and the legal malpractice claim together.

Plaintiffs allege that

> Silverman committed legal malpractice and breached his fiduciary duties to Plaintiffs by (a) simultaneously representing the teachers, Universal/Navarro, and the school districts on the same subject

>matter (FAC ¶¶ 175a, 175j); (b) failing to disclose his conflict of interest to the teachers or obtain waivers (*id.* ¶¶ 178-79); (c) failing to advise his teacher clients that federal law requires the employer school districts to bear the cost of procuring H-1B visa, and precludes the district from recouping their business expenses from the teachers (*id.* ¶¶ 173, 370a, [citation omitted]); and (d) actively conspiring with Universal, Navarro and the employer school districts to require the teachers to pay such fees (*id.* ¶ 175c).

(Opp'n at 8:19-9:5.)

Defendants first argue that Plaintiffs have not sufficiently pleaded any attorney-client relationship between Plaintiffs' and Defendants because Plaintiffs never consented to Defendant's appearance and the parties never had any contact. (Motion 12:19-14:19.) The Court disagrees.

As noted, Plaintiffs' FAC alleges that Defendants entered into attorney-client relationships with Plaintiffs by submitting "G-28 Notice of Entry of Appearance forms with each H-1B visa petition stating that [Defendants] represented both the Plaintiffs and other Class Members, and the petitioning school districts." (FAC ¶ 175a.) Plaintiffs further allege that Defendants received legal fees from Plaintiffs for procuring the H-1B visas. (*Id.* ¶¶ 106a, 175b.) These allegations sufficiently establish an attorney-client relationship.

Defendants' appearance as attorney of record for Plaintiffs during the H-1B visa process also undermines Defendants' argument that no attorney-client relationship existed. California has a rule "that the act of making a court appearance on behalf of a party creates a presumption that the attorney is authorized to do, and hence is strongly presumptive of an attorney-client relationship." *Streit v. Covington & Crowe*, 98 Cal. App. 4th 441, 446 (2000) (discussing whether making a special appearance creates an attorney-client relationship); *see also Blue Water Sunset, LLC v. Markowitz*, 192 Cal. App. 4th 477, 487-88 ("[an attorney's] preparation of the demurrer and a special appearance on behalf of the limited liability companies at the demurrer hearing created an attorney-client relationship and he owed them a fiduciary duty"). These situations are analogous to Defendants submitting G-28 Notice of Entry of Appearance forms to a government entity, which stated that Defendants represented Plaintiffs. Defendants' arguments fail to overcome the presumption created by Defendants' appearance.

11

Defendants' second argument is that Plaintiffs' claims are barred by the statute of limitations. California's statute of limitations for legal malpractice and breach of fiduciary duty stemming from an attorney-client relationship is one year. *Stoll v. Superior Court*, 9 Cal. App. 4th 1362, 1363 (1992) (holding that both fall "within the statutory term 'wrongful act or omission'"); *see* Cal. Code Civ. Pro. § 340.6(a) ("An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first."). Defendants bear the burden to prove Plaintiffs' actual or constructive discovery of Defendant's wrongdoing. *Favilla v. Katten Muchin Rosenman LLP*, 188 Cal. App. 4th 189, 224 (2010). Defendants fail to do so.

Defendants argue that the statute of limitation bars Plaintiffs' claims because the attorney-client relationship with Plaintiffs ended in 2008 and this case was filed more than two years later. (Motion 16:25-17:2.) But Defendants do not definitively show at what point Plaintiffs actually or constructively discovered the facts constituting the wrongful act. Nor would they easily be able to at the pleading stage.

Defendants also argue that the statute of limitation began to run at the time Plaintiffs' hired new attorneys in 2009. (Motion 17:3-9.) But in making this argument, Defendants improperly rely on facts outside the FAC. Plaintiffs never allege that they hired new counsel and Defendants have not sufficiently justified why the Court may consider this information now. Thus, the Court will not consider this argument on a motion to dismiss.

Defendants' two arguments fail to undermine the viability of Plaintiff's legal malpractice and breach of fiduciary duty claims. And Defendants make no additional arguments as to why Plaintiffs' pleadings are deficient. Accordingly, Defendants' Motion as to Plaintiffs' legal malpractice and breach of fiduciary claims is DENIED.

**DISPOSITION**

1 | The Motion is GRANTED in part and DENIED in part, with leave to amend.  Plaintiffs may file
2 | an amended complaint within 21 days of this order, in red-line format, if they so choose.

4 | IT IS SO ORDERED.
5 | DATED: April 4, 2011

_____
Andrew J. Guilford
United States District Judge