UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MAIRI NUÑAG-TANEDO, ET AL., | ) | CASE NO. SACV 10-1172-AG (MLGx) |
| | ) | |
| **Plaintiffs,** | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART MOTION TO |
| **v.** | ) | DISMISS OF DEFENDANTS |
| | ) | CHARLOTTE PLACIDE, MILLIE |
| | ) | WILLIAMS, AND ELIZABETH |
| EAST BATON ROUGE PARISH | ) | DURAN SWINFORD |
| SCHOOL BOARD, ET AL., | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |
| | ) | |

_____

This putative class action involves allegations of fraud, human trafficking, and racketeering. Defendants Charlotte Placide ("Placide"), Millie Williams ("Williams"), and Elizabeth Duran Swinford ("Swinford") (collectively, the Individual Louisiana Defendants (the "ILDs")) now bring a Motion to Dismiss ("Motion") the First Amended Complaint ("FAC") filed by Plaintiffs Mairi Nuñag-Tanedo, et al. ("Plaintiffs") for lack of personal jurisdiction and for failure to state a claim. After considering the papers and arguments submitted, the Court DENIES the ILDs' Motion for lack of personal jurisdiction as to Defendant Swinford, but the Court GRANTS the ILDs' Motion for lack of personal jurisdiction as to Defendants Williams

and Placide.  Further, the Court GRANTS the ILDs' Motion for failure to state a claim as to the alleged RICO predicate acts of mail fraud, wire fraud, and extortion, against Swinford, and the Court DENIES the Motion to Dismiss for failure to state a claim as to Plaintiffs' remaining claims against Swinford.

**BACKGROUND**

The following factual allegations are taken from Plaintiffs' FAC, and as it must for this Motion, the Court assumes them to be true.

Plaintiffs are teachers and Filipino nationals who came from the Philippines to work in the United States at various times beginning in 2007.  (FAC ¶ 72.)  Plaintiffs were holders of H-1B visas that permit foreign nationals with special skills to work in the United States for a specified employer for up to six years.  (*Id.* ¶ 73.)

The ILDs are Louisiana residents, present or former employees of East Baton Rouge Parish School System (the "School System"), and agents of co-Defendant East Baton Rouge Parish School Board (the "School Board").  (*Id.* ¶¶ 14–23.)  (For a discussion of the allegations against the School Board, see this Court's Order Granting in Part and Denying in Part Motion to Dismiss FAC of Defendant East Baton Rouge Parish School Board (the "School Board Order").)  Placide is the former Superintendent, Williams is the current Director of Personnel Services, and Swinford is the former Associate Superintendent for Human Resources.  (FAC ¶¶ 21–23.)  The School Board is the governing body of a local governmental entity in the State of Louisiana that manages the public school system in East Baton Rouge Parish.  (*Id.* ¶ 20.)

The School Board retained Universal Placement International, Inc. ("UPI") to recruit teachers from the Philippines.  (*Id.* ¶ 78.)  UPI, its president Lourdes Navarro ("Navarro"), and attorney Robert B. Silverman ("Silverman") are all located in California (collectively, the "California Defendants").  (*Id.* ¶¶ 26, 27, 35.)   The California Defendants worked closely with a separate company, PARS International Placement Agency ("PARS"), and PARS's Official Representative, Emilio Villarba ("Villarba") (California Defendants, PARS, and Villarba

collectively, the "Recruiter Defendants") during recruiting operations.  (*Id.* ¶¶ 29–31.)
California Defendants allegedly engaged in fraudulent activity related to human trafficking and
forced labor during these operations.  (For a summary of the allegations against California
Defendants, see this Court's Order Granting in Part and Denying in Part Motion to Dismiss FAC
of Lourdes Navarro and UPI (the "UPI Order").

As to the individual ILDs, Plaintiffs allege that (1) the ILDs knew about exorbitant fees
being charged to Plaintiffs because they were told about the fees multiple times and because the
School Board was not paying any recruitment fees (*id.* ¶ 182a, d); and (2) the ILDs gained
knowledge of the overall scheme through participation (*id.* ¶¶ 170b, 180, 181, 182c, 185b, 186,
187, 208, 212, 219).

Plaintiffs also allege facts as to the ILDs individually.  Concerning Placide, Plaintiffs
allege that she signed I-129 petitions requesting the issuance of H-1B visas.  These petitions were
prepared and signed by California attorney Robert Silverman and his law office, Silverman &
Associates (collectively, the "Legal Facilitator Defendants) and included money orders provided
by California Defendants derived from Plaintiffs' fees (*id.* ¶¶ 198, 207–10, 214–15, 217,
221–24).  Plaintiffs also allege that Placide submitted separate Labor Conditions Applications
("LCAs") promising to comply with the regulations governing the H-1B program, which
Plaintiffs allege were fraudulent (*id.* ¶¶ 9, 114–16, 182, 205–24) and that she requested one-year
instead of three-year visas for prospective teachers (*id.* ¶¶ 159–62, 186.)

Concerning Williams, Plaintiffs allege that she authored a letter requesting the cancellation
of a visa issued to a non-party named Genna Balneg, and Plaintiffs allege that the letter made
fraudulent representations.  (*Id.* ¶ 185(b); Opp'n Ex. A.)  Plaintiffs also provide offers of
employment signed by Williams that were given to prospective teachers in the Philippines (Opp'n
Ex. B) and a letter signed by Williams offering Navarro and UPI a recruiting contract with the
School Board (Opp'n Ex. C).

And concerning Swinford, Plaintiffs allege that she interviewed prospective applicants in
the Philippines (*id.* ¶ 102; 104, 180), and Plaintiffs also allege that any recruiting costs incurred
for trips to the Philippines were covered by the Recruiter Defendants (*id.* ¶ 104).  Plaintiffs

1 | further allege that (1) Swinford was contacted by the U.S. Embassy in Manila inquiring about
2 | California Defendants (*id.* ¶ 183); (2) she was present when Navarro told a non-party not to
3 | associate with Plaintiffs (*id.* ¶¶ 170(b), 188); and (3) she worked directly with Navarro to stymie
4 | criticism of California Defendants and aid the trafficking scheme (*id.* ¶ 187a–e).

5 |      Based on these factual allegations and others, Plaintiffs bring twelve claims against
6 | multiple defendants in this matter. (*See* the UPI Order.) Plaintiffs raise two claims against the
7 | ILDs, the second and eleventh claims: (2) violations of the Racketeer Influenced and Corrupt
8 | Organizations ("RICO") statute, 18 U.S.C. §§ 1962 *et seq.*; and (11) violations of the Trafficking
9 | Victims Protection Act ("TVPA"). The ILDs now move to dismiss these two claims under Rule
10 | 12(b)(2) and Rule 12(b)(6).

11 |

12 | **LEGAL STANDARD**

13 |

14 |      This Motion raises jurisdictional questions. Under Federal Rule of Civil Procedure
15 | 12(b)(2), a defendant may bring a motion to dismiss for lack of personal jurisdiction. Although
16 | the defendant is the moving party, the plaintiff bears the burden of establishing personal
17 | jurisdiction. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).
18 | When a court decides a motion to dismiss for lack of personal jurisdiction before conducting a
19 | trial or evidentiary hearing, the plaintiff need only make a prima facie showing that personal
20 | jurisdiction exists. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "Although the
21 | plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in
22 | the complaint must be taken as true." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797,
23 | 800 (9th Cir. 2004) (citations omitted). For a Rule 12(b)(2) motion brought before trial or an
24 | evidentiary hearing, a court resolves any "[c]onflicts between parties over statements contained in
25 | affidavits" in a plaintiff's favor. *Id.* Otherwise, defendants could prevent plaintiffs from
26 | meeting their burden simply by contradicting plaintiffs' affidavits. *Farmers Ins. Exchange v.*
27 | *Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990).

28 |

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).  Lawful exercise of jurisdiction over a nonresident defendant must comport with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.  Concerns for fairness require that a court exercise jurisdiction only if the defendant's actions in the forum are such that "he should reasonably anticipate being haled into court there." *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

A plaintiff can establish a defendant's minimum contacts with a given forum under a theory of general or specific jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984).  General jurisdiction exists where a defendant has "substantial" or "continuous and systematic" contacts with the forum state. *Id.* at 415.  If general jurisdiction exists, the forum state has jurisdiction over the defendant regardless of where the events giving rise to the litigation occurred. *Id.* at 415.

If a defendant's contacts with the forum state are not sufficient to establish general jurisdiction, specific jurisdiction may still be shown.  Specific jurisdiction exists where defendants have purposefully availed themselves of "the benefits and protections" of the laws of the forum through specific acts giving rise to the litigation at hand. *See Burger King Corp.*, 471 U.S. at 472–73 (citing *Helicopteros*, 466 U.S. at 414).  Once it is established that defendants purposefully availed themselves of the benefits and protections of the forum, or purposefully directed their actions toward the forum, the forum's exercise of jurisdiction is "presumptively reasonable." *Roth v. Garcia Marquez*, 942 F.2d 617, 625 (9th Cir. 1991).

Specific jurisdiction is determined by a three-part test.  First, plaintiffs must show that the defendant "purposefully direct[ed] . . . activities or consummate[d] some transaction with the forum or resident thereof; or perform[ed] some act by which [the defendant] purposefully avail[ed] himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).  Second,

plaintiffs must show that the claim "arises out of or relates to the defendant's forum-related activities." *Id.* Finally, the exercise of jurisdiction must "comport with fair play and substantial justice, i.e. it must be reasonable." *Id.* If plaintiffs show the first two elements by a preponderance of the evidence, then reasonableness is presumed and the burden shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802; *see also Roth*, 942 F.2d at 625.

This Motion also raises issues concerning pleading standards. A court should dismiss a complaint when its allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations' are not required." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). The Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. *Pollard v. Geo Group, Inc.*, 607 F.3d 583, 585 n.3 (9th Cir. 2010); *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993).

But the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1940 (citing *Twombly*, 550 U.S. at 556). A court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," *Iqbal*, 129 S. Ct. at 1940, or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The Ninth Circuit recently stated that a complaint must be (1) "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it," and (2) "sufficiently plausible that it is not unfair to require the opposing party to be subjected to the expense of discovery." *Starr v. Baca*, 633 F.3d 1191, 1204 (9th Cir. 2011). Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies of the

complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

Fraud claims include "a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996) (superceded by statute on other grounds). These claims must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires enough specificity to give a defendant notice of the particular misconduct to be able to defend against the charge. *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted). To satisfy this specificity requirement, "the who, what, when, where, and how" of the misconduct must be alleged. *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997) (quotations omitted). Thus, factual allegations must include "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

Rule 9(b) serves many purposes. One is to "furnish the defendant with certain definite charges which can be intelligently met." *Kincade v. Trojan Express, LLC*, No. SACV 08-1362 AG (ANx), 2009 WL 799390, at *2 (C.D. Cal. Mar. 23, 2009). Other purposes include "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties, and society enormous social and economic costs absent some factual basis." *Anderson v. Clow* (*In re Stac Elecs. Sec. Litig.*), 89 F.3d 1399, 1405 (9th Cir. 1996) (internal quotations omitted); *see Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

## ANALYSIS

As noted, the ILDs move to dismiss Plaintiffs' claims for lack of personal jurisdiction and for failure to state a claim. The Court will first address the ILDs' Rule 12(b)(2) argument and then proceed to their Rule 12(b)(6) argument.

**1.      THE ILDS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

In the School Board Order, this Court held that it may properly exercise personal jurisdiction over the School Board in this matter.  (*See* the School Board Order.)  As is discussed in greater detail in the School Board Order, Plaintiffs have sufficiently shown that the School Board purposefully directed its activities toward California, that their claims arise out of the School Board's California-related activities, and that the School Board did not show that the exercise of jurisdiction would be unreasonable.  The Court made this ruling largely due to the School Board's contractual relationship with UPI and Navarro and the alleged harm that took place in California due to this relationship.  (*See generally* the School Board Order.)

Largely based on the same rationale, which is discussed at length in the School Board Order, Plaintiffs argue that this Court may also properly exercise specific personal jurisdiction over the ILDs.  As noted, Plaintiffs allege that the ILDs are the former Superintendent, the current Director of Personnel Services, and the former Associate Superintendent for the School System and agents of the School Board, respectively.  (FAC ¶ 21–23.)  The Court now reviews this argument.

"Each defendant's contacts with the forum State must be assessed individually."  *Calder v. Jones*, 465 U.S. 783, 790 (1984).  Employees are not judged according to their employer's activity, but their employee status also does not insulate them from jurisdiction.  *Id.*  Even if all of defendants' contacts occurred in their official capacity, defendants are subject to personal jurisdiction if defendants were the "guiding spirits" or the "central figures" of the alleged wrongdoing.  *See Wolf Designs, Inc. v. DHR Co.*, 322 F.Supp.2d 1065, 1072 (C.D. Cal.  May 20, 2004) (citing *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 524 (9th Cir. 1985)); *see also Allstar Marketing Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1120 (C.D. Cal. Aug. 10, 2009) ("[A] corporate officer's contacts on behalf of a corporation [can be] sufficient to subject the officer to personal jurisdiction where the officer is a primary participant in the alleged wrongdoing or had control of, and direct participation in the alleged activities." (citations omitted) ).

Here, although the ILDs are School Board officers rather than corporate officers, applying the *Calder* analysis to the ILDs will show whether exercising personal jurisdiction over them is proper. *See generally Calder* 465 U.S. 783. Thus, the Court now applies this test as to Swinford, Williams, and Placide.

## 1.1    Swinford

Plaintiffs state various allegations against Swinford.  They first allege that she interviewed prospective applicants in the Philippines (FAC ¶¶ 102, 104, 180), and they allege that any recruiting costs incurred for trips to the Philippines were covered by the Recruiter Defendants (*id.* ¶ 104).  Plaintiffs further allege that Swinford was contacted by the U.S. Embassy in Manila inquiring about California Defendants (*id.* ¶ 183) and that she was present when Navarro told a non-party not to associate with Plaintiffs (*id.* ¶¶ 170(b), 188).

And perhaps most significantly, Plaintiffs repeatedly allege that Swinford worked directly with Navarro to stymie criticism of California Defendants and aid Navarro's trafficking scheme. (*Id.* ¶ 187a–e.)  For example, Plaintiffs allege that Swinford voluntarily forwarded the names of teachers making public complaints about the recruiting program to California Defendants Navarro and UPI (*id.* ¶ 187a), informed Navarro of a blog critical of the Recruiter Defendants (*id.* ¶ 187b), and forwarded other confidential information to Navarro (*id.* ¶ 187d).  Plaintiffs also make other allegations that Swinford performed various acts to further California Defendant Navarro's alleged scheme.  (*Id.* ¶ 187d.)  Taking these contacts with the alleged contacts of the School Board (*see* the School Board Order), Plaintiffs argue that this Court has personal jurisdiction over Swinford.  The Court agrees.

First, Plaintiffs have clearly shown that Swinford "purposefully direct[ed] . . . activities or consummate[d] some transaction" with California Defendant Navarro.  *Menken* 503 F.3d at 1057.  As noted, these activities include frequent communications with Navarro.  (*See, e.g.*, Declaration of James Knoepp Supporting Plaintiffs' Opp'n, Ex. D, G, H.)  They also include work performed by Swinford related to the recruiting contract between the School Board and the California

9

Defendants.  (*See id.*)  These actions are directly related to the California Defendants' recruiting
operations, and they are clearly intentional acts expressly aimed at California.  (*See also* the
School Board Order.)

Further, as is discussed in greater detail in the School Board Order, Plaintiffs have
sufficiently alleged resulting harm in California due to Swinford's California contacts.  This harm
includes the California Defendants allegedly forcing Plaintiffs to pay exorbitant fees to California
corporation UPI, subjecting Plaintiffs to legal malpractice by California attorney Silverman, and
compelling Plaintiffs to sign illegal contracts of adhesion with UPI while in California.  (Opp'n at
7:8–18; FAC ¶ 5, 9–10, 147–151, 166–169, 175–179, 182d, 185c, 187, 295–2.)  And given
Plaintiffs allegations concerning Swinford's work performed with the California Defendants,
including silencing criticism of the California Defendants' allegedly fraudulent business
operations, it was clearly foreseeable to Swinford that the alleged harm to Plaintiffs could result
in California.  (*See also* the School Board Order.)  This foreseeable harm, with Swinford's
intentional acts directed at California, show that Swinford has "purposefully directed activities or
consummate[d] some transaction" with California.  *Menken* 503 F.3d at 1057.

Plaintiffs' claims against Swinford also clearly "arise[] out of or relate[] to the defendant's
forum-related activities."  *Id.*  Plaintiffs bring claims for TVPA and RICO violations against
Swinford, and these claims directly arise out of the California Defendants' recruiting operations.
As noted, these operations were the basis for frequent communications, work, and alleged
wrongdoing by Swinford connected with the California Defendants.  (*See* the School Board
Order.)

Finally, for many of the same reasons discussed in the School Board Order, Swinford has
not shown that the exercise of jurisdiction would be unreasonable, particularly due to her
willingness to directly work with California residents during recruiting operations and the
teaching program, and also due to Swinford's alleged wrongdoings.  These direct contacts are
such that Swinford "should reasonably anticipate being haled into court" in California.  *World
Wide Volkswagen*, 444 U.S. at 297; *see also* the School Board Order.

Accordingly, Plaintiffs have sufficiently established that exercising personal jurisdiction over Swinford is proper.  Plaintiffs have shown that Swinford purposefully directed her activity at California and that their claims arise out of Swinford's California-related conduct.  Further, Swinford has not shown that exercising personal jurisdiction over her would be unreasonable here.  When Swinford and the School Board directly worked with Navarro and UPI under the recruiting contract, Swinford should have "reasonably anticipate[d] being haled into court" in California.  *See Calder*, 465 U.S. at 790; *World-Wide Volkswagen*, 444 U.S. at 297.  This is especially so based on Plaintiffs' allegations that Swinford actively worked with Navarro to silence criticism about illegal fees and other recruiting program issues, therefore showing that Swinford "is a primary participant in the alleged wrongdoing or had control of, and direct participation in the alleged activities."  *Allstar*, 666 F. Supp. 2d at 1120.

Accordingly, the exercise of personal jurisdiction over Swinford is appropriate, and the ILDs' Motion to Dismiss for lack of personal jurisdiction is DENIED as to Defendant Williams.

### 1.2    Williams

The case for personal jurisdiction over Williams is much less convincing.  As noted, Plaintiffs allege that Williams authored a letter requesting the cancellation of a visa of a non-party, Genna Balneg, and Plaintiffs also allege that this letter made fraudulent representations.  (FAC ¶ 185(b); Opp'n Ex. A.)  Plaintiffs also submit offers of employment signed by Williams that were given to prospective Filipino teachers.  (Opp'n, Ex. B.)  Finally, Plaintiffs submit an offer letter signed by Williams and sent to Navarro in which the School System offered to retain the recruiting services of Navarro.  (Opp'n, Ex. C.)

But these submissions are not enough to allow specific personal jurisdiction over Williams.  As noted, the first contact noted by Plaintiffs relates to a non-party, and Plaintiffs have not sufficiently alleged that this contact relates to the claims made by Plaintiffs here.  Meanwhile, the second contact relates to offers of employment made by the School Board to prospective teachers in the Philippines.  But Plaintiffs fail to sufficiently show any relevant connection

between Williams and California concerning these offers, which apparently were made directly to prospective teachers in the Philippines.

Finally, Plaintiffs provide an offer letter from the School System and signed by Williams to obtain the services of Navarro and UPI.  But despite this letter, Plaintiffs have not sufficiently shown Williams's role in retaining Navarro's services or how this role connects Williams to California.  Specifically, although the School Board offered to retain Navarro's recruiting services, the mere fact that Williams signed an offer letter that was eventually sent to Navarro does not show that Williams expressly aimed activities toward California.  And perhaps more importantly, simply signing the letter certainly does not show Williams that harm could have foreseen that Plaintiffs would eventually suffer any harm in California.

Notions of substantial justice and fair play would not be served if personal jurisdiction was exercised over Williams simply because she signed an offer letter from the School System.  Such a ruling would unreasonably allow this Court to exercise personal jurisdiction over individuals that had other than fleeting and trivial contacts concerning the School System's decision to make a services offer to Navarro.  Plaintiffs must show more significant involvement by Williams in this matter to properly establish this Court's personal jurisdiction over her.

Further, regardless of personal jurisdiction issues, Plaintiffs' bare-boned pleadings concerning Williams and her alleged wrongdoings are certainly insufficient to meet Rule 8 pleading standards under *Iqbal*, *Twombly*, and *Starr*.  Thus, even if Plaintiffs had shown that exercising specific personal jurisdiction over Williams was proper here, this Court would dismiss Plaintiffs' claims against Williams for failure to state a claim.

Accordingly, the exercise of personal jurisdiction over Williams is not appropriate, and the ILDs' Motion to Dismiss for lack of personal jurisdiction is GRANTED as to Defendant Williams.

### 1.3   Placide

Finally, Plaintiffs also contend that this Court may properly exercise personal jurisdiction over Defendant Placide.  To support this contention, Plaintiffs allege that Placide signed I-129 petitions requesting the issuance of H-1B visas for Plaintiffs.   (FAC ¶¶ 198, 207–10, 214–15, 217, 221–24.)  Plaintiffs state that these petitions were prepared and signed by California attorney Robert Silverman and his law office, Silverman & Associates (collectively, the "Legal Facilitator Defendants) and included money orders provided by California Defendants derived from Plaintiffs' fees (*Id.*)  Plaintiffs also allege that Placide submitted separate Labor Conditions Applications ("LCAs") promising to comply with the regulations governing the H-1B program, and Plaintiffs allege that these LCAs were fraudulent. (*Id.* ¶¶ 9, 114–16, 182, 205–24.)  Finally, Plaintiffs allege that Placide signed all LCAs and visa applications.  (*Id.* ¶¶ 159–62, 186.)

As with Williams, Plaintiffs have not shown that exercising specific personal jurisdiction over Placide is proper.  The mere fact that Placide allegedly signed immigration-related petitions that were prepared by a California attorney is not sufficient to show that Placide expressly aimed her activities toward California.  And although Plaintiffs allege that Placide "worked closely with Defendant Silverman" (Opp'n at 14:8), Plaintiffs do not sufficiently allege facts showing that the parties worked together at all.

Even with Plaintiffs' additional allegations, including that Placide handled other immigration-related documents, Plaintiffs certainly do not show that Placide purposefully directed any activity toward California.  Plaintiffs have not sufficiently shown a relationship between any of Placide's actions and California, let alone a relationship to the California Defendants' alleged fraudulent scheme.  And even if Placide included fraudulent information in the immigration-related documents, as Plaintiffs appear to allege, Plaintiffs have still not shown any connection between this information and California, nor have they shown that Placide could have foreseen that Plaintiffs would eventually suffer any harm in California.

Further, like with Williams, regardless of personal jurisdiction issues, such bare-boned pleadings concerning Placide and her alleged wrongdoings certainly show deficiencies

concerning whether Plaintiffs have stated valid claims against her under *Iqbal*, *Twombly*, and *Starr*. Thus, even if Plaintiffs had shown that exercising specific personal jurisdiction over Placide was proper here, this Court would dismiss Plaintiffs' claims against Placide for failure to state a claim.

Accordingly, the exercise of personal jurisdiction over Placide is not appropriate, and the ILDs' Motion to Dismiss for lack of personal jurisdiction is GRANTED as to Defendant Placide.

### 1.4     Conclusion

Plaintiffs have shown that exercising personal jurisdiction over Defendant Swinford is proper, but have not sufficiently shown the same for Defendants Williams and Placide. Accordingly, the ILDs' Motion to Dismiss for lack of personal jurisdiction is DENIED as to Swinford but GRANTED as to Williams and Placide.

Because the Motion to Dismiss for lack of personal jurisdiction is denied as to Swinford, the Court now turns to the merits of the ILDs' Motion to Dismiss for failure to state a claim as to Swinford.

## 2.     ILDS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

As noted, the ILDs also move to dismiss Plaintiffs' TVPA and RICO claims under Rule 12(b)(6). The Court now turns to the merits of the ILDs' Motion as to these claims against Swinford. For clarity the Court reviews Plaintiffs' TVPA claims first.

### 2.1     Plaintiffs' TVPA Claims

The TVPA is "an Act to combat trafficking of persons, especially into the sex trade, slavery, and slavery-like conditions, in the United States and countries around the world through prevention, through prosecution and enforcement against traffickers, and through protection and

1  assistance to victims of trafficking." H.R. Rep. No. 106-939, at 1 (2000).  The purpose of the act

2  is to "combat trafficking in persons, a contemporary manifestation of slavery whose victims are

3  predominantly women and children, to ensure just and effective punishment of traffickers, and to

4  protect their victims." *Id.* at 3.  Many of the victims "are trafficked into the international sex

5  trade, often by force, fraud, or coercion. *Id.*  But "trafficking also involves violations of other

6  laws, including labor and immigration codes and laws against kidnaping, slavery, false

7  imprisonment, assault, battery, pandering, fraud, and extortion." *Id.* at 4.

8       A civil action may be brought under the TVPA against "the perpetrator (or whoever

9  knowingly benefits, financially or by receiving anything of value from participation in a venture

10  which that person knew or should have known has engaged in an act in [violation of the

11  TVPA]) . . . ." 18 U.S.C. § 1595.  Defendants argue that Plaintiffs have failed to state a TVPA

12  claim.  The Court disagrees.

13       As the Court discussed in the UPI Order, Plaintiffs have sufficiently stated TVPA claims

14  against UPI and Navarro.  And § 1595 allows civil liability against the perpetrator or "whoever

15  knowingly benefits, financially or by receiving anything of value from participation in a venture

16  which that person knew or should have known has engaged in an act" in violation of the TVPA.

17  § 1595.  Thus, Swinford can be liable under the TVPA as either a perpetrator or a beneficiary of

18  the alleged TVPA violations.  The Court first turns to whether Plaintiffs have sufficiently alleged

19  beneficiary liability against Swinford.

20       The beneficiary-liability provision of § 1595 requires that the defendant (1) knowingly

21  benefitted financially or by receiving anything of value; (2) from participation in a venture; (3)

22  that the defendant knew or should have known was engaged in violations of the TVPA.

23  § 1595(a).  Plaintiffs sufficiently allege each of these elements as to Swinford.

24       As discussed in the School Board Order and the UPI Order, Plaintiffs sufficiently allege

25  that the School Board, UPI, and Navarro participated together in the venture of recruiting

26  Plaintiffs.  Further, Plaintiffs allege that the School Board received multiple benefits from this

27  venture.  These benefits include receiving highly qualified teachers, free recruitment and legal

28  services, and reimbursement for costs related to interviewing teacher applicants that the School

Board would have otherwise had to pay.  (FAC ¶¶ 97–104, 181, 381–390.)  Finally, Plaintiffs allege that the ILDs knew or should have known of various alleged wrongs committed by Navarro and UPI, including that Defendant Navarro was allegedly charging illegal fees and threatening Plaintiffs with the abuse of legal process.  (*Id.* ¶¶ 9, 12, 182, 187.)

The ILDs argue that Plaintiffs have not met Rule 8 pleading requirements concerning the claims brought against them.  The ILDs particularly note that Plaintiffs often allege claims against the ILDs as a group, rather than specifying acts that each individual has taken to further the alleged TVPA scheme.  Therefore, the ILDs argue, Plaintiffs' claim must fail.  Concerning the claims against Swinford, the Court disagrees.

Plaintiffs have stated allegations as to Swinford that are "sufficiently detailed" and "sufficiently plausible" to state a valid claim.  *Starr*, 2011 WL 477094 at *14.  Plaintiffs have alleged that the School Board, and Swinford acting as a high-ranking School Board official, received multiple benefits for the School System due to TVPA violations by UPI and Navarro. And Plaintiffs also sufficiently allege that these benefits are a direct result of the recruiting contract between the School Board and UPI.

Further, Plaintiffs allege sufficient conduct by Swinford to show that Swinford should have known about the alleged TVPA violations.  As previously stated, Plaintiffs allege that Swinford worked directly with Navarro to stymie criticism of California Defendants and aid Navarro's trafficking scheme.  (FAC ¶ 187a–e.)  For example, Plaintiffs allege that Swinford voluntarily forwarded the names of teachers making public complaints about the recruiting program to California residents Navarro and UPI (*id.* ¶ 187a), informed California resident Navarro of a blog critical of the Recruiter Defendants (*id.* ¶ 187b), and forwarded other confidential information to California resident Navarro (*id.* ¶ 187d).  Plaintiffs also make other allegations that Swinford performed various acts to further California Defendant Navarro's alleged scheme.  (*Id.* ¶ 187d.)  Given these allegations, along with Plaintiffs' additional detailed claims against the School Board that are discussed in greater detail in the School Board Order, Plaintiffs have stated plausible claims against Swinford, and Swinford has clear notice of the claims against her.

16

Accordingly, based on Plaintiffs' claims against the California Defendants for fraud and TVPA violations, (*see* UPI Order), and because Plaintiffs have sufficiently alleged beneficiary liability against the Swinford under the TVPA, Plaintiffs have sufficiently stated claims for TVPA violations against Swinford.  Further, because Plaintiffs have sufficiently alleged beneficiary liability against Swinford under the TVPA, the Court need not address the parties' arguments concerning the Swinford's potential perpetrator liability.

Plaintiffs have sufficiently stated factual allegations to support their TVPA claims and survive at this initial pleading stage.  The ILDs' Motion as to Plaintiffs' claims for violations of the TVPA against Swinford is DENIED.

### 2.2    Plaintiffs' RICO Claim

To state a civil claim under RICO, a plaintiff must plead that the defendant violated the Act, and that the plaintiff was injured as a result of the violation.  "The elements of a civil RICO claim are simple enough: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's business or property."  *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C. §§ 1964(c), 1962(c); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  "Racketeering activity . . . is defined to include a number of generically specified criminal acts as well as the commission of one of a number of listed predicate offenses."  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 939 (9th Cir. 2006) (citing § 1961(1)).  "A 'pattern of racketeering activity' requires at least two acts of racketeering activity."  18 U.S.C. § 1961(5).

Plaintiffs allege RICO violations based on the following alleged acts: "Forced labor in violation of 18 U.S.C. § 1589"; "[t]rafficking persons with respect to forced labor in violation of 18 U.S.C. § 1592(a)"; "[u]nlawful document-related practices in furtherance of trafficking in violation of 18 U.S.C. § 1592(a)"; "[m]ail fraud to further their unlawful scheme in violation of 18 U.S.C. § 1341"; "[w]ire fraud to further their unlawful scheme in violation of 18 U.S.C. § 1343"; and "[e]xtortion as defined in Cal. Penal Code § 518."  (FAC ¶ 286.)

The Court has already held that Plaintiffs have sufficiently stated separate TVPA claims against Swinford for forced labor, human trafficking, and unlawful document-related practices, and therefore these claims may also serve as underlying predicate acts for Plaintiffs' RICO claim. Thus, Plaintiffs have sufficiently alleged multiple RICO predicate acts, as required by 18 U.S.C. § 1961(5). Further, it appears that the parties do not dispute that Plaintiffs' have met the remaining elements of their RICO claim. Accordingly, Plaintiffs have sufficiently stated a claim for RICO violations, and Defendants' Motion as to Plaintiffs' RICO claim is DENIED.

Although Plaintiffs' TVPA allegations alone are enough to support their RICO claim, the Court must determine the sufficiency of Plaintiffs' claims for each of their alleged RICO predicate acts. The Court now turns to these acts.

### 2.2.1    Mail Fraud and Wire Fraud

For mail fraud as a RICO predicate act, "it is necessary to show that (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004) (internal citations and quotations omitted). Meanwhile, for wire fraud as a RICO predicate act, it is necessary to show "(1) a scheme to defraud; (2) use of the wires in furtherance of the scheme; and (3) a specific intent to deceive or defraud." *United States v. Green*, 592 F.3d 1057, 1064 (9th Cir. 2010) (internal citations and quotations omitted).

As noted, "Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010). Specifically, "the complaint must specify such facts as the times, dates, places and benefits received, and other details of the alleged fraudulent activity." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993). Thus, when mail fraud and wire fraud are the alleged RICO predicate acts, a plaintiff must meet these heightened pleading standards. *Id.*

1  Here, Plaintiffs fail to sufficiently plead mail and wire fraud against Swinford.  Although

2  Plaintiffs have sufficiently alleged that Swinford *should have known* of various alleged

3  wrongdoings by UPI and Navarro, Plaintiffs fail to sufficiently allege that Swinford *engaged* in

4  or even actually knew of any such fraud.  And Plaintiffs certainly have not done so under

5  heightened Rule 9(b) pleading requirements.  Thus, Plaintiffs' mail and wire fraud claims as to

6  Swinford must fail.

7  Accordingly, the ILDs' Motion as to the predicate acts of mail and wire fraud against

8  Swinford is GRANTED.

9

10  2.2.2   Extortion

11

12  For extortion as a RICO predicate act, it is necessary to show "[1] extortion and [2] a

13  nexus between [the] defendant's acts and interstate commerce."  *United States v. Atcheson*, 94

14  F.3d 1237, 1240–41 (9th Cir. 1997).  "Extortion is the obtaining of property from another, with

15  his consent, or the obtaining of an official act of a public officer, induced by a wrongful use of

16  force or fear, or under color of official right."  Cal. Penal Code § 518.  The obtaining element

17  requires a showing that the extortioner or a third party received something of value from the

18  victim of the alleged extortion.  *See United States v. McFall*, 558 F.3d 951, 956 (9th Cir. 2009)

19  (internal citations and quotations omitted).

20  "Extortion has been characterized as a paradoxical crime in that it criminalizes the

21  making of threats that, in and of themselves, may not be illegal."  *Flatley v. Mauro*, 39 Cal. 4th

22  299, 326 (2006).  "It is the means employed to obtain the property of another which the law

23  denounces . . . ."  *Id.*  With extortion, it is doesn't matter that the money a defendant sought to

24  obtain through threats may have been justly due.  *Id.* at 327 (citing *Gomez v. Garcia*, 81 F.3d 95,

25  97 (9th Cir. 1996) (internal quotations and brackets omitted).  The ILDs argue that Plaintiffs

26  have not sufficiently stated a claim for extortion.  The Court agrees.

27  Although Plaintiffs' extortion claims do not require that Plaintiffs meet Rule 9(b)

28  pleading requirements, Plaintiffs' extortion claims fail largely for the same reason as their mail

and wire fraud claims.  Specifically, while Plaintiffs have sufficiently alleged beneficiary liability under the TVPA and alleged fraudulent acts of UPI and Navarro, Plaintiffs have not sufficiently alleged that Swinford committed acts of fraud or extortion.  Thus, Plaintiffs' claim for extortion against Swinford fails.

Accordingly, the ILDs' Motion as to the predicate act of extortion is GRANTED.


### 2.2.3   Conclusion


While Plaintiffs have failed to sufficiently allege the RICO predicate acts of mail fraud, wire fraud, and extortion against the Swinford, Plaintiffs have sufficiently alleged the predicate acts of forced labor, human trafficking, and unlawful document-related practices.  Thus, Plaintiffs' have sufficiently alleged multiple RICO predicate acts, as required by 18 U.S.C. § 1961(5).  The ILDs' Motion as to Plaintiffs' RICO claim is DENIED.


## DISPOSITION


The Motion is GRANTED in part and DENIED in part, with leave to amend.  Plaintiffs may file an amended complaint within 21 days of this order, if they so choose, preferably in red-line format.


 IT IS SO ORDERED.


DATED: May 12, 2011

_____

Andrew J. Guilford

United States District Judge