1
2
3
4
5
6
7
8
9
10

**UNITED  STATES  DISTRICT  COURT**

**FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA**

| | |
|---|---|
| **MAIRI NUÑAG-TANEDO, ET AL.,** ) | **CASE NO. SACV 10-1172-AG (MLGx)** |
| ) | |
| **Plaintiffs,** ) | **ORDER GRANTING IN PART AND** |
| ) | **DENYING IN PART MOTION TO** |
| **v.** ) | **DISMISS OF DEFENDANT EAST** |
| ) | **BATON ROUGE PARISH SCHOOL** |
| ) | **BOARD** |
| **EAST BATON ROUGE PARISH** ) | |
| **SCHOOL BOARD, ET AL.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |
| _____ ) | |

This putative class action involves allegations of fraud, human trafficking, and racketeering.  Defendant East Baton Rouge Parish School Board ("Defendant" or "School Board") now brings a Motion to Dismiss ("Motion") the First Amended Complaint ("FAC") filed by Plaintiffs Mairi Nuñag-Tanedo, et al. ("Plaintiffs") for lack of personal jurisdiction and for failure to state a claim.  After considering the papers and arguments submitted, Defendant's Motion to Dismiss for lack of personal jurisdiction is DENIED.  Defendant's Motion to Dismiss for failure to state a claim is GRANTED as to Plaintiffs' TVPA claims but is DENIED as to Plaintiffs' negligent hiring claim.

## BACKGROUND

The following factual allegations are taken from Plaintiffs' FAC, and as it must for this Motion, the Court assumes them to be true.

Plaintiffs are teachers and Filipino nationals who came from the Philippines to work in the United States at various times beginning in 2007.  (FAC ¶ 72.)  Plaintiffs were holders of H-1B visas that permit foreign nationals with special skills to work in the United States for a specified employer for up to six years.  (*Id.* ¶ 73.)  Three of these Plaintiffs are currently employed as teachers by Defendant.  (*Id.* ¶ 14–17.)

Defendant is the governing body of a local government entity in Louisiana charged with the management of the public school system in East Baton Rouge Parish.  (*Id.* ¶ 20.)  Defendant contracted with Universal Placement International, Inc. ("UPI") to recruit teachers from the Philippines.  (*Id.* ¶ 78.)

UPI, its president Lourdes Navarro ("Navarro"), and attorney Robert B. Silverman ("Silverman") are all located in California (collectively the "California Defendants").  (*Id.* ¶¶ 26, 27, 35.)  California Defendants allegedly engaged in fraudulent activity related to human trafficking and forced labor.  (For a summary of the allegations against California Defendants, see this Court's Order Granting in Part and Denying in Part Motion to Dismiss FAC of Lourdes Navarro and UPI (the "UPI Order").)

Defendant's recruitment contract with UPI obligated Defendant to pay the salary and benefits of any hired teachers, without any additional expenses.  (*Id.* ¶¶ 97–98.)  Defendant received multiple benefits from the contract: (1) having capable and experienced teachers; (2) having California Defendants navigate the H-1B visa process; and (3) not having to pay for any of the fees and expenses related to the H-1B visa process.  (*Id.* ¶¶ 98, 181.)

Before entering into the recruitment contract, Defendant failed to inquire into California Defendants' background. (*Id.* ¶ 398.)  California Defendants were under investigation by the U.S. embassy in Manila and Navarro was previously convicted for defrauding the government and money laundering.  (*Id.* ¶¶ 183–84.)

1    Plaintiffs further allege that Defendant participated in the trafficking venture by (1)

2    interviewing teachers in person and via teleconference; (2) selecting Plaintiffs from the applicants

3    interviewed; (3) issuing job offers via email; and (4) working collectively with California

4    Defendants to prepare and submit Labor Conditions Applications ("LCAs"), H-1B visa

5    applications, and H-1B visa renewal applications.  (*Id.* ¶ 180.)

6    Lastly, Defendant colluded with California Defendants to (1) only seek one-year visas (*Id.*

7    ¶ 186) and (2) stymie criticisms of the scheme (*Id.* ¶ 187).  Through its employees, Defendant

8    also allegedly submitted fraudulent documents to the federal government.  (*Id.* ¶¶ 205–225.)

9    Based on these factual allegations and others, Plaintiffs bring twelve claims against

10   multiple defendants in this matter.  (*See* the UPI Order.)  Plaintiffs bring two of these claims

11   against Defendant, the eleventh and twelfth claims:  (11) violations of the Trafficking Victims

12   Protection Act ("TVPA"); and (12) negligent hiring.  Defendant now moves to dismiss these two

13   claims based on Rule 12(b)(2) and Rule 12(b)(6).

14

15   **LEGAL STANDARD**

16

17   This Motion raises jurisdictional issues.  Under Rule 12(b)(2), a defendant may bring a

18   motion to dismiss for lack of personal jurisdiction.  Although the defendant is the moving party,

19   the plaintiff bears the burden of establishing personal jurisdiction.  *Rio Properties, Inc. v. Rio*

20   *Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

21   "The Due Process Clause protects an individual's liberty interest in not being subject to

22   the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or

23   relations.'"  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (citing *Int'l Shoe Co.*

24   *v. Washington*, 326 U.S. 310, 319 (1945)).  Lawful exercise of jurisdiction over a nonresident

25   defendant must comport with "traditional notions of fair play and substantial justice."  *Int'l Shoe*,

26   326 U.S. at 316.  Concerns of fairness require that a court exercise jurisdiction only if the

27   defendant's actions in the forum are such that "he should reasonably anticipate being haled into

28   court there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

This Motion also raises issues concerning pleading standards.  A court should dismiss a complaint when its allegations fail to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "'[D]etailed factual allegations' are not required."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).  The Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff.  *Pollard v. Geo Group, Inc.*, 607 F.3d 583, 585 n.3 (9th Cir. 2010); *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993).

But the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1940 (citing *Twombly*, 550 U.S. at 556).  A court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," *Iqbal*, 129 S. Ct. at 1940, or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  The Ninth Circuit recently stated that a complaint must be (1) "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it," and (2) "sufficiently plausible that it is not unfair to require the opposing party to be subjected to the expense of discovery."  *Starr v. Baca*, 633 F.3d 1191, 1204 (9th Cir. 2011).  Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment.  *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

## ANALYSIS

As noted, Defendant moves to dismiss Plaintiffs' claims for lack of personal jurisdiction under Rule 12(b)(2) and for failure to state a claim under Rule 12(b)(6).  The Court will first address Defendant's Rule 12(b)(2) argument and then proceed to Defendant's Rule 12(b)(6) argument.

## 1.   DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### 1.1   Personal Jurisdiction Analysis

When a court decides a motion to dismiss for lack of personal jurisdiction before conducting a trial or evidentiary hearing, the plaintiff need only make a prima facie showing that personal jurisdiction exists. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citations omitted).  For a Rule 12(b)(2) motion brought before trial or an evidentiary hearing, a court resolves any "[c]onflicts between parties over statements contained in affidavits" in plaintiff's favor. *Id.*  Otherwise, defendants could prevent plaintiffs from meeting their burden simply by contradicting plaintiffs' affidavits. *Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990).

A plaintiff can establish a defendant's minimum contacts with a given forum under a theory of general or specific jurisdiction. *Helicopteros*, 466 U.S. at 414–16.  General jurisdiction exists where a defendant has "substantial" or "continuous and systematic" contacts with the forum state. *Id.* at 415.  If general jurisdiction exists, the forum state has jurisdiction over the defendant regardless of where the events giving rise to the litigation occurred. *Id.* at 415.

1     If a defendant's contacts with the forum state are not sufficient to establish general

2 jurisdiction, specific jurisdiction may still be shown.  Specific jurisdiction exists where

3 defendants have purposefully availed themselves of "the benefits and protections" of the laws of

4 the forum through specific acts giving rise to the litigation at hand.  *See Burger King Corp.*, 471

5 U.S. at 472–73 (citing *Helicopteros*, 466 U.S. at 414).  Once it is established that defendants

6 purposefully availed themselves of the benefits and protections of the forum, or purposefully

7 directed their actions toward the forum, the forum's exercise of jurisdiction is "presumptively

8 reasonable." *Roth v. Garcia Marquez*, 942 F.2d 617, 625 (9th Cir. 1991).

9     Plaintiffs here do not allege general jurisdiction over Defendant exists.  Instead, Plaintiffs

10 argue that personal jurisdiction over Defendant exists under either specific jurisdiction or an

11 agency theory.  The Court addresses these arguments in turn.

12

13     **1.2     Specific Jurisdiction**

14

15     Specific jurisdiction is determined by a three-part test.  First, plaintiffs must show that the

16 defendant "purposefully direct[ed] . . . activities or consummate[d] some transaction with the

17 forum or resident thereof; or perform[ed] some act by which [the defendant] purposefully

18 avail[ed] himself of the privilege of conducting activities in the forum, thereby invoking the

19 benefits and protections of its laws." *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007)

20 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).  Second,

21 plaintiffs must show that the claim "arises out of or relates to the defendant's forum-related

22 activities." *Id.*  Finally, the exercise of jurisdiction must "comport with fair play and substantial

23 justice, i.e. it must be reasonable." *Id.*  If plaintiffs show the first two elements, then

24 reasonableness is presumed and the burden shifts to the defendant to "'present a compelling case'

25 that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802; *see*

26 *also Roth*, 942 F.2d at 625.

27

28

### 1.2.1   The First Prong of the Specific Jurisdiction Test: Purposeful Direction of Activity towards California

As noted, the first element of whether specific jurisdiction exists concerns whether Defendant "purposefully directed" its activities towards California.  (Motion at 8:3–4; Opp'n at 4:2; Reply at 10:5–8.)  The parties agree on this point, but they disagree on what test should be used to determine whether Defendant purposefully directed activity toward California.  (Motion at 8:13–17; Opp'n at 5:2–8; Reply at 10:12–3.)

Defendant argues that the "effects" test, stated in *Yahoo! Inc. v. La Lique Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) and *Menken*, 503 F.3d at 1057 (9th Cir. 2007), should apply.  In *Yahoo!*, the Ninth Circuit stated that in tort cases, the courts typically apply "an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred with the forum."  *Id.*  The "effects" test requires that for purposeful direction of activity, the defendant allegedly must have (1) committed an intentional act (2) expressly aimed at the forum state (3) that caused harm that is suffered in the forum state and that the defendant knows is likely to be suffered in the forum state.  *See Yahoo!*, 433 F.3d at 1206.  Under the effects test the Court "must evaluate all of a defendant's contacts with the forum state, whether or not those contacts involve wrongful activity by the defendant."  *Id.* at 1207.

Plaintiffs argue that the effects test should not apply because their claims against Defendant are not intentional tort claims.  (Opp'n at 5:2–8 (citing *Holland Am. Line, Inc. v. Wartsilla N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007).)  Plaintiffs' argument fails.  First, Plaintiffs' claims actually do include a possible intentional tort, violations of the TVPA.  But regardless, the Ninth Circuit has expanded the applicability of the effects test to encompass all tortious actions, stating that "[i]n tort cases, [the courts] typically inquire whether a defendant 'purposefully directs his activities' at the forum state, applying an 'effects' test that focuses on the forum in which defendant's actions were felt, whether or not the actions themselves occurred within the forum."  *Yahoo!*, 433 F.3d at 1206 (9th Cir. 2006) (en banc); *see also Menken,* 503

7

F.3d at 1059 (holding the effects test applicable to claims including negligence, wrongful interference with contractual relations, and civil extortion because they primarily arose in tort). The Ninth Circuit makes clear that the distinction is between tort and contract claims, not between intentional and unintentional torts. *See Yahoo!*, 433 F.3d at 1206; *Menken*, 503 F.3d at 1057.

Here, as noted, Plaintiffs bring two tort claims against Defendant. Thus, under *Yahoo* and *Menken*, the effects test applies. As noted, to show purposeful direction of activity toward California the effects test requires that the defendant must have (1) committed an intentional act (2) expressly aimed at California (3) which caused harm that is suffered in the forum state and that the defendant knows is likely to be suffered in the forum state. *Yahoo!*, 433 F.3d at 1206. The Court now reviews whether Plaintiffs have satisfied these elements.

1.2.1.1    *The First Prong of the Effects Test: Committing an Intentional Act*

For the first prong of the effects test, the Ninth Circuit states that intent refers "to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Brayten Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)

Plaintiffs argue that Defendant committed multiple intentional acts by (1) hiring UPI to recruit teachers in the Philippines and (2) engaging Silverman to procure the necessary H-1B visas. (Opp'n at 4:15–18; 5:15–18; FAC ¶¶ 9, 33, 78, 98, 175g.) Further, Plaintiffs cite a long list of communications between Defendant and three California-based entities: UPI, Navarro, and Silverman. (Opp'n at 5:18–6:24; FAC ¶¶ 185b, 187a–e; Declaration of James Knoepp ("Knoepp Decl."), Exs. B–H.) They also cite visa forms submitted to a United States Citizenship and Immigration Services ("USCIS") California office. (Opp'n at 7:1–7; FAC ¶¶ 205–225; Knoepp Decl., Ex. J.)

Defendant states that the Court should not consider most of the conduct cited by Plaintiffs during the jurisdictional inquiry, arguing that most of the documents and allegations do not concern the named Plaintiffs.  (Reply at 6:11–12, n.6.)  Defendant also argues that Plaintiffs cannot rely on the H-1B visa filings in California, since those are covered by the government exception.  (*Id.* at 7:10–8:4.)

After subtracting the conduct covered by Defendant's proposed limitations, Defendant states that Plaintiffs are left with only the following contacts concerning the named Plaintiffs: (1) Swinford's email about a blog critical of California Defendants (FAC ¶ 187b); (2) a letter confirming Defendant's acceptance of UPI's recruitment offer (Knoepp Decl., Ex. C); and (3) a FedEx package transmitting checks to Navarro for hotel and airfare (*id.*, Ex. G).  Defendant argues that this fails to establish jurisdiction.

Defendant's argument is unpersuasive.  Even if the Court were to disregard all the contacts rejected by Defendant, Defendant itself concedes that three contacts remain.  And as the Ninth Circuit stated in *Yahoo!*, "[a] single forum state contact can support jurisdiction if the cause of action . . . arises out of that particular purposeful contact of the defendant with the forum state." *Yahoo!*, 433 F.3d at 1210.  And although Defendant glosses over its most significant intentional act, entering into a recruitment contract with UPI, this recruitment contract alone is a sufficient intentional act.

Plaintiffs therefore have sufficiently shown that Defendant committed intentional acts when they hired UPI and Silverman and when they sent the alleged communications.  Thus, Plaintiffs meet the first prong of the effects test.

1.2.1.2        *The Second Prong of the Effects Test: Expressly Aimed at California*

The second element of the effects test "requires that the defendant's conduct be expressly aimed at the forum." *Brayton*, 606 F.3d at 1129.  The Court looks at "all of a defendant's

contacts with the forum state, whether or not those contacts involve wrongful activity by the defendant." *Yahoo!*, 433 F.3d at 1207.

Plaintiffs argue that Defendant's acts were aimed at California because UPI is a California corporation and Silverman is a California attorney.  And Plaintiffs allege that Defendant knew these services would be performed in California.  (Opp'n at 5:15–18; FAC ¶¶ 9, 33, 78, 98, 175g.)  Plaintiffs also cite the same list of communication already discussed to support their argument that Defendant's actions were aimed at California.  (Opp'n at 5:18–7:7; FAC ¶¶ 185b, 187a–e, 205–225; Knoepp Decl. Exs. B–H, J.)

Defendant argues that even if all of the conduct is considered, there is no personal jurisdiction.  Defendant argues that all of its "contacts with California were incidental to the recruiting contract with . . . [UPI], a contract which called for services to be rendered in the Philippines." (*Id.* at 11:11–13.)  Defendant further argues that Plaintiffs "cannot show that [Defendant's] contacts with California were made for the purpose of furthering any interest of [Defendant] in California." (*Id.* at 11: 23–25.)

Defendant's argument that its contacts with California were incidental to its recruiting contract fails.  Defendant intentionally retained the California Defendants' recruiting services with the express purpose of recruiting teachers from the Philippines.  This contract is an intentional contact with California.  And as noted, even "[a] single forum state contact can support jurisdiction if the cause of action . . . arises out of that particular purposeful contact of the defendant with the forum state." *Yahoo!*, 433 F.3d at 1210.

Even if the other contacts are incidental to the recruiting contract, the contract and hiring UPI directly give rise to the negligent hiring claim and also forms the basis for Plaintiffs' TVPA claim.  Thus, Plaintiffs have shown that Defendant aimed its acts at California, and they meet the second prong of the effects test.

1.2.1.3      *The Third Prong of the Effects Test: Harm Suffered in the Forum State*

The final element of the effects test requires that a defendant's act caused harm that is suffered in the forum state that the defendant knows is likely to be suffered there.  *See Yahoo!*, 433 F.3d at 1206.   The Ninth Circuit has held that this element "is satisfied when defendant's intentional act has 'foreseeable effects' in the forum." *Brayton*, 606 F.3d at 1131.

Defendant argues that Plaintiffs have not shown foreseeable harm that took place in California.  First, it argues that Plaintiffs cannot show that any activity by Defendant caused harm to Plaintiffs in California.  Second, it argues that none of the alleged harm in California was foreseeable by Defendant.  (*Id.* at 11:27–12:1.)  Defendant argues that Plaintiffs cite "no communication which might have put [Defendant] on notice that any of the named Plaintiffs would ever be present in California, much less that they would suffer harm in that forum." (*Id.* at 12:10–13.)  Both arguments fail.

Plaintiffs have sufficiently alleged harm suffered in California due to the recruitment contract.  This harm includes allegedly forcing Plaintiffs to pay exorbitant fees to California corporation UPI, subjecting Plaintiffs to legal malpractice by California attorney Silverman, and compelling Plaintiffs to sign illegal contracts of adhesion with UPI while in California.  (Opp'n at 7:8–18; FAC ¶ 5, 9–10, 147–151, 166–169, 175–179, 182d, 185c, 187, 295–296.)

The crucial issue is whether Defendant could have foreseen that Plaintiffs would suffer this harm in California.  Looking specifically at Plaintiffs' negligent hiring claim, Plaintiffs allege that (1) Defendant had reason to know that California Defendants were unfit to be employment recruiters; (2) Defendant had duty to inquire into fitness and failed to do so; and (3) Defendant's failure caused the alleged harm to Plaintiffs.  (FAC ¶¶ 395–99.)

Thus, Plaintiffs sufficiently allege that Defendant could have reasonably foreseen that Plaintiffs would suffer harm in California.  Defendant apparently chose not to investigate the Navarro's criminal history and thus did not gain sufficient information about her business practices.  The Court further discusses the negligent hiring claim and the foreseeable effects of

Defendant's alleged negligence in Section 2.2.2.  Plaintiffs satisfy the third prong of the effects test.

1.2.1.4     *Effects Test Conclusion*

Plaintiffs have met all three elements of the effects test, and therefore have sufficiently shown that Defendant purposefully directed its activities towards California.  Plaintiffs have therefore established the first element of specific jurisdiction, and the Court now turns to the remaining two elements.

1.2.2   The Second Prong of the Specific Jurisdiction Test: Claims Arising out of California-related Activities

For the second prong of the specific jurisdiction test, the Ninth Circuit applies a "but-for" test in determining whether claims arise out of forum-related activities.  *Menken*, 503 F.3d at 1058.  A plaintiff "must show that he would not have suffered an injury 'but for' [defendant's] forum-related conduct."  *Id.*

Plaintiffs argue that they "would not have suffered their injuries but for [Defendant's] purposeful contacts with California."  (Opp'n at 8:15–16.)  Plaintiffs argue that had Defendant not hired UPI and Silverman, "the teachers could not have been trafficked to work in the East Baton Rouge Parish Public School System, and the [trafficking] scheme could not have succeeded."  (*Id.* at 8:18–20.)

Defendant argues that Plaintiffs cannot show that the claim arises out of Defendant's California-related activities because the claims depend on conduct in the Philippines and Louisiana.  (Reply at 13:14–14:1.)  Further, Defendant also contests Plaintiffs' argument that the trafficking scheme could not have succeeded without Defendant's participation, since other school districts in Louisiana and across the country were allegedly involved.  (*Id.* at 13, n.9.)

Plaintiffs satisfy the required "but-for" test for the forum-related activities.  The recruiting contract between Defendant and UPI is the starting point for the harm that Plaintiffs allege.  Later events in the Philippines and Louisiana that also contributed to the harm do not change this fact. If Defendant had not hired UPI and Silverman, Plaintiffs would not have been harmed by this allegedly fraudulent conduct.  Thus, Plaintiffs have established the second element of specific jurisdiction.

### 1.2.3   The Third Prong of the Specific Jurisdiction Test: Reasonableness of Jurisdiction

For the third prong of the specific jurisdiction test, the Ninth Circuit looks at seven factors to determine the reasonableness of exercising personal jurisdiction over a defendant:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Menken*, 503 F.3d at 1058.  As noted, if plaintiffs show the first two elements of specific jurisdiction, then reasonableness is presumed and the burden shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable."  *Schwarzenegger*, 374 F.3d at 802;  *see also Roth*, 942 F.2d at 625.  Here, Plaintiffs have shown that they have met the first two prongs, and therefore Defendant must present a compelling case that the exercise of jurisdiction is unreasonable.  Defendant fails to do so.

The Court now addresses that parties' arguments concerning the seven factors.

13

### 1.2.3.1    *Reasonableness: Purposeful Interjection*

Plaintiffs argue that Defendant purposefully interjected itself into California by retaining UPI and Silverman and derived significant benefits from this relationship.  (Opp'n at 9:17–22.)  Defendant argues that UPI and Silverman solicited Defendant's business in Louisiana.  Thus, Defendant argues, it did not purposefully interject itself in California.  (Reply at 14:9–17.)  As discussed above, Defendant intentionally entered into the California recruitment contract.  Throughout this contract, Defendant was able to hire numerous qualified teachers.  The fact that the California Defendants solicited Defendant's business does not greatly change the analysis.  Defendant could have chosen from numerous recruiters, but it chose one located in California.  This factor weighs in favor of exercising jurisdiction.

### 1.2.3.2    *Reasonableness: Burden on Defendant*

Plaintiffs argue that modern transportation has significantly lessened Defendant's burden of litigating in California, especially with Defendant's ability to travel to the Philippines to recruit teachers.  (Opp'n at 10:3–13.)  Defendant argues that since Plaintiffs and Defendant are both from Louisiana, they share the same burden of litigating in California, this should weigh against the exercise of personal jurisdiction.  (Reply at 14:22–28.)  Although at least a significant portion of the discovery will likely occur in California, since a greater number of wrongful acts are alleged against the California Defendants than the School Board, Defendant is correct that it will bear some burden if it must litigate in California.  This factors weighs slightly against exercising jurisdiction.

### 1.2.3.3    *Reasonableness: Louisiana's Sovereignty*

Plaintiffs argue that Louisiana's sovereignty is not implicated in this case, since Defendant does not enjoy Eleventh Amendment immunity according to *Minton v. Pernard Parish Sch. Bd.*,

803 F.2d 129, 132 (5th Cir. 1986). (Opp'n at 10:14–20.) Defendant counters that Louisiana's

sovereign interests extend beyond the Eleventh Amendment, that education is one of the basic

functions of the state, and that the Louisiana Workforce Commission has already made UPI and

Silverman's actions the object of regulatory scrutiny. (Reply at 15:1–13.) While the Louisiana

Workforce Commission might also have an interest in this case, this does not mean that

Louisiana's sovereignty is implicated to the point where the exercise of jurisdiction is

unreasonable. Thus, this factor does not weigh strongly against exercising jurisdiction.

### 1.2.3.4         *Reasonableness: California's Interest*

Plaintiffs argue that California has significant interests in this dispute due to the

involvement of UPI and Silverman. (Opp'n at 10:21–28.) Defendant's reply is that California's

interest ends with the relationship between Plaintiffs and UPI and Silverman. (Reply at

15:14–19.) The Court agrees with Plaintiffs. The actions by UPI and Silverman are of interest to

California and so are the actions of other entities aiding them in the alleged trafficking scheme.

California has a clear interest in monitoring the business practices of companies in its state.

Thus, this factor weighs in favor of exercising jurisdiction.

### 1.2.3.5         *Reasonableness: Efficiency*

Plaintiffs argue that if claims against Defendant are litigated in California, this will greatly

reduce inefficiency. (Opp'n at 11:1–9.) Specifically, Plaintiffs argue that its claims against

Navarro and UPI will be litigated in California since at least one contract in this matter states that

it shall be enforced in a California court. (FAC ¶ 5.) Therefore, Plaintiffs argue, allowing claims

against Defendant to proceed in Louisiana would needlessly duplicate litigation. (*Id.*) Further,

Plaintiffs argue that most of the relevant documents in this case are located in California. (Opp'n

at 11:1–9.)

Defendant argues that Plaintiffs minimize the fact that both Plaintiffs and Defendant are located in Louisiana, that other Louisiana school districts would be involved if class certification was granted, and that the bulk of discovery would take place in Louisiana.  (Reply at 15:20–16:8.)

Based on these considerations, inefficiencies will result regardless of the forum chosen, and efficiency does not weigh strongly in either direction.

### 1.2.3.6        *Reasonableness: Convenience*

Plaintiffs argue that "litigating this case in California is important given the central role California defendants played in the trafficking scheme."  (Opp'n at 11:10–12.)  Defendant argues that "relief would in fact be more convenient and just as effective in the alternate forum of Louisiana," since the majority of the parties are located there.  (Motion at 10:10–15.)  Like with efficiency, convenience does not weigh strongly in either direction at this time.

### 1.2.3.7        *Reasonableness: Alternate Forum*

Plaintiffs argue that the mere existence of Louisiana as an alternate forum is insufficient to establish reasonableness.  (Opp'n at 9:8–15.)  Since none of the factors weigh strongly against exercising jurisdiction, the existence of an alternate forum does not change the analysis.

### 1.2.3.8        *Reasonableness: Conclusion*

Defendant failed to present a compelling case that exercising jurisdiction over it would be unreasonable.  Thus, Plaintiffs have also established the third element of specific jurisdiction.

### 1.2.4   Specific Jurisdiction Conclusion

Plaintiffs have sufficiently established the first two elements of personal jurisdiction. Plaintiffs showed that Defendant purposefully directed its activity at California and that their claims arise out of Defendant's California-related conduct.  Further, Defendant was unable to show that exercising jurisdiction would be unreasonable in this case.  When Defendant entered into a recruitment contract with the California Defendants, Defendant should have "reasonably anticipate[d] being haled into court" in California, at the very least for Defendant's actions related to the recruiting activities.  *See Calder v. Jones*, 465 U.S. 783, 790 (1984); *World-Wide Volkswagen*, 444 U.S. at 297.   Thus, the Court has personal jurisdiction to hear Plaintiffs' claims against Defendant.

### 1.3    Plaintiffs' Agency Argument

Since the Court has found that personal jurisdiction exists over Defendant due to specific jurisdiction, the Court need not address Plaintiffs' alternative agency argument.

## 2.    DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

As noted, Defendant also brings this Motion to Dismiss for failure to state a claim as to two of Plaintiffs' claims: violations of the TVPA and negligent hiring.  The Court turns now turns to the merits of Defendant's Motion as to these claims.

### 2.1    Plaintiffs' TVPA Claims

The TVPA is "an Act to combat trafficking of persons, especially into the sex trade, slavery, and slavery-like conditions, in the United States and countries around the world through prevention, through prosecution and enforcement against traffickers, and through protection and

assistance to victims of trafficking."  H.R. Rep. No. 106-939, at 1 (2000).  The purpose of the Act is to "combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims."  *Id.* at 3.  Many of the victims "are trafficked into the international sex trade, often by force, fraud, or coercion.  *Id.*  But "trafficking also involves violations of other laws, including labor and immigration codes and laws against kidnaping, slavery, false imprisonment, assault, battery, pandering, fraud, and extortion."  *Id.* at 4.

"An individual who is a victim of a violation of the TVPA may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act . . ." that violates the TVPA.  18 U.S.C. § 1595.  Plaintiffs bring TVPA claims against Defendant for human trafficking and forced labor under 18 U.S.C. §§ 1589, 1590, 1592, and 1594(a),(b).  The Court now reviews whether Plaintiffs have stated valid claims against Defendant under these statutes.  The Court begins with whether Defendant, a governmental entity, is a proper defendant under § 1595.

Defendant argues that as a matter of law it can neither be "the perpetrator" nor a person that "knowingly benefits" from violations of the TVPA, and therefore it cannot be held civilly liable for TVPA violations.  The Court agrees.

As noted, § 1595 allows liability against "whoever knowingly benefits" from a TVPA violation.  Under the Dictionary Act, "the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals."  1 U.S.C. § 1.  Notably absent from this list is any form of a governmental entity.

Regarding this conspicuous absence, the Supreme Court has held that

"[i]n common usage [the term person] does not include the sovereign, and statutes employing it will ordinarily not be construed to do so.  Congress made express provision, R.S. s 1, 1 U.S.C. s 1, 1 U.S.C.A. s 1, for the term to extend to partnerships and corporations, and in s 13 of the Act itself for it to extend to associations.  The absence of any comparable provision extending the term to sovereign governments implies that Congress did not desire the term to extend to them.

1   *United States v. Mine Workers*, 330 U.S. 258, 275 (1947).  Shortly after *Mine Workers*,

2   "Congress appeared to ratify this position when it amended the Act by expanding the term

3   'person' to include numerous other legal entities but declining to include sovereign entities as

4   'persons.'  *United States v. Bly*, 510 F.3d 453, 464–65 (2007) (Motz, J. Concurring) (citing Act

5   of June 25, 1948, 80 Cong. ch. 645, sec. 6, 62 Stat. 859; *Ankenbrandt v. Richards*, 504 U.S. 689,

6   700-01 (1992) (presuming that, when Congress makes other substantive changes to a statute but

7   does not indicate 465 an intent to change a prior construction, Congress has adopted that

8   interpretation).)  Thus, "in common usage, the term 'person' [or whoever] does not include the

9   sovereign, and statutes employing the word are ordinarily construed to exclude it."  *Int'l Primate*

10  *Protection League v. Administrators of Tulane*, 500 U.S. 72, 82–83 (1991) (internal brackets

11  omitted).

12      Nevertheless,

13          there is no hard and fast rule of exclusion of the sovereign, *United*

14          *States v. Cooper Corp.*, 312 U.S. 600, 604–605 (1941), and our
            conventional reading of person may therefore be disregarded if the
            purpose, the subject matter, the context, the legislative history, or the

15          executive interpretation of the statute . . . indicate an intent, by the
            use of the term, to bring state or nation within the scope of the law.

16

17  *Id.* (internal brackets, quotations, and citations omitted).  In other words, the general rule that the

18  term "person" or "whoever" does not include the sovereign can be disregarded if Congress has

19  shown an intent to allow liability against it.

20      While *Mine Workers*, *Bly*, and *International Primate* all state that "person" generally does

21  not include the "sovereign," Congress has also applied this exclusionary rule to governmental

22  entities generally when crafting its numerous statutes.  For example, 31 U.S.C. § 5312, listing

23  definitions for certain statutes concerning reports and records, specifically states that " [i]n this

24  subchapter . . . 'person', *in addition to its meaning under section 1 of title 1*, includes . . . , when

25  the Secretary prescribes, *a governmental entity*." § 5312(a)(5) (emphasis added).  Thus, by

26  stating that "person" includes governmental entities for purposes of that subchapter, Congress

27  acknowledged that "person" generally does not include such an entity.  *See also*, *e.g.*, 49 U.S.C.

28

1    § 60101("'person,' *in addition to its meaning under section 1 of title 1* (except as to societies),

2    includes *a State [and] a municipality . . .*") (emphasis added).

3        Given Congress's omission of governmental entities when defining "person" and

4    "whoever" in 1 U.S.C. § 1, and given Congress's addition of governmental entities to its

5    definition of "person" in other statutes, Congress has shown that  governmental entities are

6    generally excluded from "persons" or "whoever."  *See* 1 U.S.C. § 1.  And since the TVPA

7    extends civil liability to "whoever knowingly benefits . . . ,"  liability against a governmental

8    entity is precluded under the TVPA unless Congress has shown an intent to allow such liability.

9        But here, no such intent is found.  Most notably, Congress provided no separate

10   definitions for "person," or "whoever" anywhere in the TVPA that shows an extension of

11   liability to governmental entities.  Plaintiffs attempt to show Congressional intent to extend

12   liability to these entities by citing a Congressional finding that human trafficking "is often aided

13   by official corruption in countries of origin, transit, and destination . . . ."  (Opp'n at 29:8–11

14   (citing 22 U.S.C. § 7101(b)(8)).)  But this finding alone does not show that Congress intended to

15   expand potential liability to governmental entities, especially when Congress could have clearly

16   stated any such intent.  Further, the statutes and legislative history of the TVPA appear to lack

17   any other persuasive evidence that Congress intended to extend liability to governmental

18   entities.  Thus, the term "whoever" in § 1595 does not include governmental entities.

19       Similarly, "perpetrator" liability under § 1595 does allow civil liability against

20   governmental entities.  Although neither the Dictionary Act nor the TVPA states who

21   "perpetrator" includes, a review of the TVPA makes it clear that "perpetrator" liability does not

22   extend to governmental entities.  Notably, the term "whoever" is consistently used in TVPA

23   statutes outside of § 1595 when explaining who may be liable for TVPA violations.  *E.g.*, § 1589

24   ("Whoever knowingly provides or obtains the labor or services of a person . . ."); § 1590

25   (Whoever knowingly recruits, harbors, transports, provides, or obtains . . ."); § 1591 (similar).

26   And as stated, "whoever" does not include governmental entities under the TVPA.  Thus,

27   although § 1595 states that it allows liability against a "perpetrator," the various TVPA statutes

28   confirm that liability still does not extend to governmental entities.

It appears that Congress simply included the separate terms "perpetrator" and "whoever knowingly benefits" in § 1595 to make clear that civil liability extends to both active participants and passive beneficiaries of TVPA violations.  Specifically, as noted, § 1595 allows civil liability against a *perpetrator* of TVPA violations, and § 1595 also allows civil liability against whoever knowingly benefits from participation in a venture which that person *knew or should have known* has engaged in an act in violation of the TVPA.  This distinction mirrors the multiple TVPA statutes that consistently distinguish an actor's level of participation when violating the TVPA.  *Compare, e.g.*, § 1589(a) ("Whoever knowingly provides or obtains the labor . . .") *with* § 1589(b) ("Whoever knowingly benefits . . . from participation in a venture . . .").

In other words, just as statutes such as § 1589 allow for criminal liability against both active participants and passive beneficiaries of TVPA violations, § 1595 makes clear that it does the same for civil liability through the use of the separate terms "perpetrator" and "whoever knowingly benefits."  But nothing shows that Congress used the term "perpetrator" in § 1595 to extend liability to governmental entities, especially when Congress could have clearly stated its intent to do so.

In sum, neither the term "perpetrator" nor the term "whoever" extend to governmental entities under the TVPA, and therefore Defendant cannot be liable for violations of the TVPA.  Accordingly, Plaintiffs' claims against Defendant for violations of the TVPA must fail.

Defendant's Motion is GRANTED as to Plaintiffs' claims under the TVPA.

## 2.2    Plaintiffs' Negligent Hiring Claim

Plaintiffs also bring a negligent hiring claim against Defendant.  Plaintiffs allege that Defendant "knew or had reason to believe that Recruiter Defendants, and particularly Defendant Lourdes Navarro and Defendant [UPI], were unfit for the tasks for which they were hired." (FAC ¶ 395.)  To support their negligent hiring claim Plaintiffs primarily cite Navarro's previous

convictions for "defrauding the California Medi-Cal system of more than $1,000,000" and money laundering.  (FAC ¶ 9.)

Plaintiffs' negligent hiring claim is a state common-law claim.  To determine whether Plaintiffs' have sufficiently stated a claim for negligent hiring, the Court must first decide which state's laws govern this claim.

### 2.2.1   Choice of Law

"In a federal question action that involves supplemental jurisdiction over state law claims, we apply the choice of law rules of the forum state—here, California."  *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009) (citations omitted).  "Under California's choice of law rules, California will apply its own rule of decision unless a party invokes the law of a foreign state that 'will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply . . . .'"  *Id.* (citations omitted).  California courts employ a "governmental interest analysis" to assess whether California law or non-forum law should apply:

> To determine the correct choice of law, we apply a three-step analysis.  First, we determine whether the two concerned states have different laws.  Second, we consider whether each state has an interest in having its law applied to this case.  Finally, if the laws are different and each state has an interest in having its own law applied, we apply the law of the state whose interests would be more impaired if its policy were subordinated to the policy of the other state.

*Id.*  The parties do not dispute that California and Louisiana have different laws concerning negligent hiring, and therefore the Court turns to the remaining two steps in the analysis.

Here, despite this Court having personal jurisdiction over Defendant for Plaintiffs' negligent hiring claim, and both states having an interest in having their laws applied, Louisiana's interest for the negligent hiring claim is slightly greater.  All parties involved with this claim are located in Louisiana.  Further, Louisiana, not California, has a strong interest in determining when its own public entities may be liable.  Finally, both parties appear to agree that applying Louisiana law for Plaintiffs' negligent hiring claim is appropriate.  Accordingly, the

Court applies Louisiana law to determine whether Plaintiffs have stated a claim against

Defendant for negligent hiring.

2.2.2   The Negligent Hiring Claim

Under Louisiana law, "[a] principal generally is not liable for the offenses committed by

an independent contractor while performing its contractual duties." *Ledent v. Guaranty Nat. Ins.*

*Co.*, 723 So.2d 531, 537 (La. App. 2d Cir. 1998).  "Two exceptions to this general rule exist: (1)

where the work is ultra hazardous; and (2) if the principal reserves the right to supervise or

control the work of the independent contractor." *Id.*  But despite this general rule against

vicarious liability, "Louisiana law imposes a separate duty on principals to exercise reasonable

care in selecting or hiring an independent contractor." *Bourg v. BT Operating Co.*, Case No. 09-

0596, 2009 U.S. Dist. LEXIS 29574 at *30 (citing *Hemphill v. State Farm Ins. Co.*, 472 So.2d

320, 324 (La. Ct. App. 3d Cir. 1985) ("One who hires an irresponsible independent contractor

may be independently liable.")).

In other words, a plaintiff may have difficulty establishing vicarious liability against a

principal if the principal took due care in hiring an independent contractor that commits a tort.

But if a principal negligently hired the contractor, a principal may be liable for the contractor's

torts due to the principal's negligence in hiring the contractor.  The court must therefore analyze

whether Plaintiffs have sufficiently alleged that Defendant breached this duty of care in hiring

Navarro and UPI.

Here, Plaintiffs have sufficiently alleged that Navarro and UPI were at the very least the

independent contractors of Defendant.  Therefore Defendant had a duty to exercise reasonable

care to ensure that UPI and Navarro were responsible, and Defendant breached this duty if it

knew or should have known that UPI and Navarro were irresponsible. *Cf. Bourg*, 2009 U.S. Dist

LEXIS 29574 at *30.

As noted, Plaintiffs allege that "the School Districts selected Ms. Navarro despite her

prior conviction and imprisonment for defrauding that California Medi-Cal system of more than

1    $1,000,000, and despite the fact that she had also pled guilty to money laundering in New

2    Jersey." (FAC ¶ 9.)  These allegations sufficiently allege that UPI and Navarro were

3    irresponsible and that Defendant should have known that they were irresponsible after a

4    reasonable background check.  Further, Plaintiffs have also sufficiently alleged causation and

5    damages with their allegations concerning Navarro's scheme to defraud Plaintiffs, including the

6    large amounts of fees paid to Navarro and UPI. (*E.g*, *id.* ¶ 105; *see also* the UPI Order.)  Thus,

7    Plaintiffs have sufficiently stated a claim for negligent hiring against Defendant.

8         Defendant argues that "Plaintiffs do not allege that there existed an employment

9    relationship between the School Board and the California Defendants." (Motion at 21:25–22:1.)

10   Therefore, Defendant argues, Plaintiffs have failed to state a claim for negligent hiring.  (*Id.* at

11   22:15–17.)  But this argument fails.  As noted, a principal may be liable for the negligent hiring

12   of an independent contractor—an employer-employee relationship need not exist.  Thus, even if

13   Navarro and UPI were only agents of Defendant, as Plaintiffs have sufficiently alleged, liability

14   is still possible.

15        Defendant next argues that Plaintiffs negligent hiring claim fails because "there was no

16   contract for hire between the School Board and UPI.  The School Board did not hire or

17   compensate UPI in any way for services.  No money changed hands." (Reply at 22:15–19.)  Not

18   so.  Plaintiffs specifically allege that "[t]he Louisiana School Districts chose and retained [UPI]

19   and [Navarro] to recruit teachers from the Philippines." (FAC ¶ 9.)  Perhaps if Defendant

20   eventually produces evidence showing a lack of any principal-agent relationship, this will bolster

21   its chances at summary judgment.  But for this motion to dismiss, Plaintiffs have sufficiently

22   alleged that a principal-agent relationship existed between the parties.  (*Id.* ¶¶ 9, 114–16.)

23        Finally, Defendant argues that Louisiana recognizes only a limited claim for negligent

24   hiring, and that it had no duty to protect Plaintiffs from the alleged criminal activities of Navarro

25   and UPI.  (Reply at 23:1–5 (citing *Smith v. Orkin Exterminating Co.*, 540 So.2d 363, 366 (La.

26   App. 1st Cir. 1989.)))  Therefore, Defendant argues, it had no duty to protect Plaintiffs from

27   Navarro's allegedly fraudulent actions.  This argument fails.

28

"Duty is a question of law.  Generally there is no duty to protect others from the criminal activity of third persons. . . .  [But] when an employer hires an employee who in the performance of his duties will have a unique opportunity to commit a crime against a third party, he has a duty to exercise reasonable care in the selection of that employee."  *Orkin*, 540 So. 2d at 366 (citations omitted).

In *Orkin*, a pest control company employee, while exterminating a home, unlocked a window to ensure that he would later have access to the home.  *Id.* at 365.  Two days later, the employee returned and sexually assaulted the homeowner.  *Id.*  The *Orkin* Court held that "[u]nder the unique circumstances of Orkin's business, we [ ] believe that there is a continuing duty to exercise reasonable care in the retention of its employees."  *Id.* at 366.  And since the court held that the company negligently administered a polygraph examination that would have led to termination of the employee if properly administered, the company could be liable for negligent hiring.  *Id.*

Similarly, Plaintiffs here sufficiently allege that UPI and Navarro were presented a unique opportunity to harm Plaintiffs.  They worked directly and exclusively with Plaintiffs during the recruiting process.  Plaintiffs had to rely on UPI and Navarro's representations throughout the recruiting process concerning program terms and costs.  And due to this reliance, UPI and Navarro had a clear opportunity to fraudulently take Plaintiffs' money.

Further, this alleged harm was certainly foreseeable.  Plaintiffs allege that Navarro has been convicted of no less than two separate fraudulent financial schemes.  (FAC ¶ 9.)  In one of these schemes, Plaintiffs allege that Navarro defrauded the California Medi-Cal system of more than $1,000,000.  (*Id.*)  Defendant therefore had clear constructive notice of Navarro's alleged dishonesty and possibility of committing acts highly similar to the fraudulent acts alleged here.

Defendant cites two cases to support its argument that the alleged harm caused by Navarro was not foreseeable.  In the first case, a court held that even if an employer had discovered a janitor's previous conviction record of stealing welfare checks over five years before the date of employment, it did not follow that arson was reasonably foreseeable.  *Lou-Con, Inc. v. Gulf Building Services, Inc.*, 287 So.2d 192 (La. App. 4th Cir. 1973).  In the other

case, a court held that it was unforeseeable that a man with a past history of property-related crimes would commit a rape. *Mays v. Pico Finance Co., Inc.*, 229 So.2d 381, 385 (La. App. 2nd Cir. 1997). But these cases are easily distinguished. In both of these cases, crimes related to finances and property were followed crimes of destruction and violence, respectively—a clear difference in the nature of the crimes committed. By contrast, Navarro's alleged past and present acts all involve financial fraud for her own personal gain. Unlike in *Lou-Con* and *Mays*, the high degree of similarity between Navarro's past and present acts shows the foreseeability of Navarro's alleged fraud and Defendant's duty to prevent it.

In sum, given the unique opportunity presented to Navarro and UPI to financially defraud Plaintiffs, and given the high degree of similarity between this opportunity and Navarro's previous fraudulent financial schemes for which Navarro was allegedly convicted, Defendant had a duty to exercise reasonable care in selecting recruiters. Plaintiffs have sufficiently alleged that Defendant breached that duty.

   2.2.3   Conclusion

Under Louisiana law, Plaintiffs have sufficiently stated a claim for negligent hiring, and therefore Defendant's Motions as to Plaintiffs' negligent hiring claim is DENIED.

**DISPOSITION**


The Motion is GRANTED in part and DENIED in part, with leave to amend.  Plaintiffs may file an amended complaint within 21 days of this order, if they so choose, preferably in red-line format.


IT IS SO ORDERED.


DATED: May 12, 2011

_____

Andrew J. Guilford

United States District Judge