Shelton Dennis Blunt (admitted *pro hac vice*)
bluntd@phelps.com
Susan W. Furr (admitted *pro hac vice*)
susie.furr@phelps.com
Paul Leblanc (admitted *pro hac vice*)
paul.leblanc@phelps.com
Brandi B. Cole (admitted *pro hac vice*)
brandi.cole@phelps.com
PHELPS DUNBAR LLP
II City Plaza
400 Convention Street • Suite 1100
Baton Rouge, Louisiana 70802-5618
P.O. Box 4412
Baton Rouge, Louisiana 70821-4412
Telephone: (225) 346-0285
Telecopier: (225) 381-9197

Jolee Land, Bar Roll No. 240940
jolee.land@phelps.com
PHELPS DUNBAR LLP
100 South Ashley Drive, Suite 1900
Tampa, Florida 33602-5311
Telephone:   813-472-7857
Facsimile:   813-472-7570

Julian A. Pollok (Bar No. 48484)
julianpollok@sbcglobal.net
Law Offices of Julian A. Pollok,
A Professional Corporation
505 N. Brand Blvd., Suite 1050
Glendale, California  91203
Telephone:   818-550-7795
Facsimile:   818-552-5080

*Attorneys for Defendants,*
 *the East Baton Rouge Parish School Board*
*and Elizabeth Duran Swinford*

-1-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

MAIRI NUNAG TANEDO, INGRID CRUZ, DONNABEL ESCUADRA, ROLANDO PASCUAL, TOMASA MARI,

Plaintiffs,

vs.

EAST BATON ROUGE PARISH SCHOOL BOARD, CHARLOTTE PLACIDE, MILLIE WILLIAMS, ELIZABETH DURAN SWINFORD, UNIVERSAL PLACEMENT INTERNATIONAL, INC., LOURDES LULU NAVARRO, HOTHELLO JACK NAVARRO, PARS INTERNATIOAL PLACEMENT AGENCY, EMILIO V. VILLARBA, ROBERT B. SILVERMAN, SILVERMA-N AND ASSOCIATES,+

Defendants.

Case No. 8:10-cv-01172-JAK-MLG

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD**

HEARING DATE: August 29, 2011
TIME: 10:00 a.m.
COURTROOM NO. 10D

HONORABLE JOHN A. KRONSTADT

MAGISTRATE JUDGE MARC L. GOLDMAN

-2-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.2

## TABLE OF CONTENTS

I. SUMMARY OF ARGUMENTS ..................................................................9

II. BACKGROUND..................................................................................9

    A.    Plaintiffs' Claims ..............................................................9

    B.    EBR's Hiring of EBR Plaintiffs And Filipino Teachers....................11

    C.    The Post-Hiring Contacts ....................................................16

    D.    The Plaintiffs And Their Agency Relationship With UPI/PARS .......20

III. LAW AND ARGUMENT ......................................................................21

    A.    Applicable Legal Precepts....................................................21

        1.    Plaintiffs Cite An Incorrect Standard, As 9th Circuit Decision in Dukes v. Wal-Mart has been overturned by Supreme Court..................................................21

        2.    Plaintiffs' Burden Under Rule 23 .........................................22

    B.    The Tardiness of the Negligent Hiring Claims Renders it Unfit For Class Certification ..................................................................23

        1.    The EBR Plaintiffs/EBR Class Claims Are Untimely ...........23

        2.    The Temporal Factor is Also Relevant to Issues of Liability on a "Negligent Hiring" Claim................................26

    C.    Determining Whether EBR Enjoys Tort Immunity Under Louisiana's Workers' Compensation Law Will Require Further Individualized Determinations as to Each Member of the EBR Class ............................................................................27

    D.    Liability, Causation, and Comparative Fault Will Require Individualized Determinations Inappropriate for a Class Action .......30

    E.    Plaintiffs Are Unable To Meet Requirements of Rule 23(a) ..............36

        1.    Numerosity Is Questionable ..................................................36

        2.    Plaintiffs And Purported Subclass Members Have Not Suffered Same Injury, And Therefore, Commonality Requirement Is Not Satisfied ..........................38

-3-

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.2

3.       Claims of Purported EBR Teacher Subclass Not Typical ...................................................................................40

4.       Adequacy of Representation ..................................................41

F.   Requirements of Rule 23(b)(3) not met .......................................43

1.       Plaintiffs' Claim for Negligence Ill-Suited For Class Action, as Common Claims Do Not Predominate Over Individualized Claims .....................................................43

2.       Class Adjudication Of Claims Against EBR Is Not Superior To Individual Actions .......................................45

G.     Certification Under 23(b)(2) is Clearly Not Available In Accordance With Supreme Court Precedent.........................................46

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.2

## TABLE OF AUTHORITIES

**FEDERAL CASES**

Amchem Products, Inc. v. Windsor,
   521 U.S. 591, 117 S.Ct. 2231 (1997)................................................23, 31, 42, 43

Arch v. American Tobacco Company,Inc.,
   175 F.R.D. 469 (E.D.Pa. 1997), aff'd. 161 F.3d 123 (3rd Cir. 1998, cert.
   denied, 526 U.S. 114, 119 S.Ct. 1760, 143 L.Ed.2d 791 (1999)...................... 42

Boughton v. Cotter Corp.,
   65 F.3d 823 (10th Cir. 1995) ...............................................................31

Desai v. Deutsche Bank Securities, Ltd.,
   573 F.3d 931 (9 Cir. 2009) ...............................................................35

Gartin v. S&M Nutec LLC,
   245 F.R.D. 429 (C.D.Cal. 2007)...............................................................31

General Tel. Co. v. EEOC,
   100 S.Ct. 1698 (1980)...............................................................22

General Telephone Co. of Southwest v. Falcon,
   457 U.S. 147, 102 S.Ct. 2364, 72 L. Ed. 2d 740 (1982) ............................22, 23

Gregurek v. United of Omaha Life Ins. Co.,
   2009 WL 4723137 (C.D.Cal. 11/10/09) ...............................................26

Ikonen v. Hartz Mountain Corp.,
   122 F.R.D. 258 (S.D.Cal. 1988) ...............................................................31

Quezada v. Loan Center of California, Inc.,
   2009 WL 5113506 (E.D.Cal. Dec. 18, 2009) ............................................25, 26

Paxil Litig.,
   212 F.R.D. 539 (C.D.Cal. 2003)...............................................................31

Jenkins v. Raymark Industries, Inc.,
   782 F.2d 468 (5th Cir. 1986) ...............................................................42

-5-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.2

Minvielle v. Kaiser Aluminum & Chemical Corp.,
    766 F.2d 189 (5th Cir. 1985) (applying Louisiana law).....................................28

O'Connor v. Boeing North American, Inc.,
    197 F.R.D. 404 (C.D.Cal. 2000).........................................................................26

Owner-Operator Independent Drivers Ass'n, Inc. v. New Prime, Inc.,
    339 F.3d 1001 (8th Cir. 2003) ...........................................................................31

Stephenson v. Bell Atlantic Corp.,
    177 F.R.D. 279 (D. N.J. 1997)............................................................................36

Thompson v. American Tobacco Co., Inc.,
    189 F.R.D. 544 (D. Minn. 1999) ........................................................................43

Thompson v. Jiffy Lube Intern., Inc.,
    250 F.R.D. 607 (D. Kan. 2008) ..........................................................................35

Unger v. Amedisys, Inc.,
    401 F.3d 316 (5th Cir. 2005) ..............................................................................45

United States Fidelity & Guaranty Co. v. Lee Investments, LLC,
    641 F.3d 1126 (9th Cir. 2011) ............................................................................28

Wal-Mart Stores, Inc. v. Dukes,
    ___ S.Ct. ___, 2011 WL 2437013 (2011) ................................. 21,22,23,30,39,46

Western States Wholesale, Inc. v. Synthetic Industries, Inc.,
    206 F.R.D. 271 (C.D.Cal. 2002).........................................................................26

**LOUISIANA CASES**

Bickham v. Orleans Parish School Board,
    488 So.2d 1248 (La. App. 4 Cir. 1986) ..............................................................29

Brown v. Wells Fargo Bank N.A.,
    168 Cal.App.4th 938, 958-59, 85 Cal. Rptr. 3d 817 (2008) ..............................35

Certified Cleaning & Restoration, Inc. v. Lafayette Insurance Co.,
    10-948 (La. App. 5 Cir. 6/14/11); 2011 WL 2328011 ................................26, 27

Gonzales v. Gonzales,
    2008-0258 (La. App. 4 Cir. 9/30/09); 20 So. 3d 557, 563; ...............................35

-6-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.2

Green v. Turner,
    437 So.2d 956 (La. App. 2 Cir. 1983) .................................................................29

Johnson v. Littleton,
    45,323 (La. App. 2 Cir. 5/19/10); 37 So. 3d 542................................................24

Libersat v. J&K Trucking, Inc.,
    2000-0192 (La. App. 3 Cir. 10/11/00),
    772 So.2d 173 .....................................................................................................32

Louviere v. Louviere,
    2001-0089 (La. App. 1 Cir. 6/5/02); 839 So.2d 57 ...........................................33

Mayes v. Deep South Chemical, Inc.,
    2011-91 (La. App. 3 Cir. 6/1/11); ___ So.3d ___, 2011 WL 2135562 .............29

Miller v. Entergy Services, Inc.,
    2004-1370 (La. App. 4 Cir. 7/13/05); 913 So.2d 143 ........................................32

Wakefield v. Kyle,
    44, 317 (La. App. 2 Cir. May 17, 2009); 12 So. 3d 468.....................................27

**OTHER STATUTES**

La. Civ. Code Articles 2323 , 2324 ........................................................................33

La. Civ.Code Article  3492.....................................................................................24

**RULES**

Fed.R.Civ.P. 23(b)(3)(A)–(D) ...............................................................................46

Fed. R. Civ. Proc. 23(a)(2)......................................................................................38

Rule 23 ...........................................................................................21,22,23,30,43

Rule 23(a) ....................................................................................21, 22, 23, 36

Rule 23(a) and (b) .....................................................................................................9

Rule 23(b)...............................................................................................................23

Rule 23(b)(2)....................................................................................................46, 47

-7-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.2

Rule 23(b)(3)..........................................................................................23, 43, 45, 46

Case No. 8:10-cv-01172-JAK-MLG

-8-

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

Defendant, the East Baton Rouge Parish School Board ("EBR") hereby opposes plaintiffs' motion for class certification, which seeks certification of a sub-class of teachers employed by EBR (the "EBR Class") represented by named plaintiffs Mairi Nunag Tanedo, Ingrid Cruz, and Donnabel Escuadra ("EBR Plaintiffs").

## I.  SUMMARY OF ARGUMENTS

EBR Plaintiffs' claims are untimely, and are therefore, clearly not subject to class certification.   Indeed, the required assessment of the timeliness of each plaintiff's claim alone renders the action unfit for class certification.

Even if the statue of limitations was not an issue, EBR plaintiffs are unable to satisfy the commonality, typicality, and predominance requirements of Rule 23(a) and (b) when liability, causation, comparative fault, and damages for the sort of negligence claim asserted, as well as the complete or partial defense of tort immunity under Louisiana's Workers' Compensation law, each require an individualized, case-by-case analysis of each class member's claim.  This is demonstrated by the varying facts proffered by each of the EBR Plaintiffs.   Therefore, this Court should deny plaintiffs' motion for class certification.

## II.  BACKGROUND

### A.    Plaintiffs' Claims

Plaintiffs present a dramatic opening, alleging that co-defendants, the

-9-

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.2

California labor contractor "and its confederates" "ensnared" plaintiffs in an illegal scheme wherein the teachers' labor was procured through "threats of serious financial harm and abuse of legal process."   In doing so, Plaintiffs ignore the fact that the claims of "trafficking" and "forced labor" against EBR have been dismissed, and the sole remaining claim against EBR is for the tort of negligent hiring.  (*See* Doc. 116)

Given this, it is perhaps unsurprising that Plaintiffs provide scant allegations and no evidence supporting their claims against EBR.  Notably missing is any attempt by Plaintiffs to distinguish the conduct of Universal Placement International ("UPI"), the entity which EBR supposedly "hired," from the other named defendants.

What plaintiffs do allege is that, at the invitation of UPI and Lulu Navarro ("Navarro"), an agent and employee of UPI, and at no cost to either UPI or EBR, in 2007 and 2008, EBR interviewed thousands of Filipino candidates seeking employment in the United States.  EBR ultimately selected approximately 239 of the proffered candidates, including the EBR Plaintiffs, for employment in the EBR school district.  (Doc. 134, p. 3).  These fortunate candidates signed employment contracts with EBR and began teaching, with the same salary and same benefits as their peers.

Plaintiffs' real complaint regarding this process is found by the allegations, set forth in their declarations, that they paid differing amounts in fees to their placement agency(s), including some amounts that they did not originally expect to pay.  They also assert that, in order to be able to come to the United States, they borrowed money

-10-

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

through different means.  Plaintiffs assert that they were misled, not only by UPI, but also by agents of a Filipino entity, with which they also contracted, called PARS. And to make matters more complicated, the ubiquitous Navarro appears to be an agent and employee of PARS as well as UPI.

In any case, none of the EBR Plaintiffs testified that EBR had any involvement in their dealings with Navarro, UPI, PARS, or anyone else they dealt with either in the Philippines or California.  If the Court is questioning what EBR did to find itself subject to a proposed class action, the answer is simple:  EBR accepted UPI's invitation to interview the teachers UPI made available to it, and then offered some of these candidates, including the EBR Plaintiffs, jobs.  These employment agreements were made at different times, and involved different assignments in different schools within EBR, but all at starting salaries ranging between $36,000 and $50,000 a year, amounts that would be termed "enormous" by plaintiffs' own definition.  (*See* Doc. 134, p. 3, referring to a $5,500 fee as enormous by Philippines standards and more than one-and-a-half times the average annual household income).

**B.    EBR's Hiring of EBR Plaintiffs And Filipino Teachers**

In 2006, UPI was one of the many companies that solicited EBR to hire international teachers represented by UPI.  UPI's proposal was that it would make qualified Filipino teacher candidates available to EBR at no cost to EBR, *i.e.*, UPI agreed to reimburse to EBR any expenses incurred in the employment process,

-11-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.2

including travel expenses, visa processing fees, and legal costs. (Donaldson Decl. ¶ 5; Exh. A)[1]

The terms offered by UPI were the same terms offered to EBR by a variety of other firms offering placement of their candidates in the school system. EBR has in the past hired foreign teachers under the H-1B visa system, and always under the same terms and conditions as offered by UPI. For example, EBR often fills its positions for French language teachers with the assistance of a group known as CODOFIL ("Council for the Development of French in Louisiana"), and CODOFIL, as UPI, always takes cares of the paperwork and expenses on behalf of the teachers, leaving to EBR the normal costs of employment.[2] (Donaldson Decl. ¶ 7)

The allegations of Plaintiffs are that EBR did not run a comprehensive background check on UPI. The reason for this is that EBR did not "hire" UPI; rather, it hired the teachers. UPI was, from EBR's perspective, acting as agent for the teachers in soliciting EBR's interest in employing their clients. EBR did not pay UPI anything for its "services," and there was no contract specifying any required

---

[1] The declaration of Daphne Donaldson and corresponding exhibits are attached to this opposition memorandum as Exhibit 1.

[2] Indeed, in this particular case the EBR Plaintiffs, after they ceased using UPI/PARS and/or the "Legal Facilitator Defendants" for their visa renewals, hired their own attorneys, but continued to pay their own costs. Thus, from EBR's perspective, nothing changed; someone acting on behalf of the EBR Plaintiffs submitted the completed paperwork, which was reviewed by EBR, signed by the appropriate official, and processed.

-12-

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

performance by either EBR or UPI. Rather, as Plaintiffs' own allegations reveal, the payment of consideration, and the execution of a contract specifying the performance of services for a fee was a transaction between Plaintiffs and UPI/PARS, not EBR and UPI.

In any case, at the time of UPI's solicitation, EBR was experiencing a critical teacher shortage in certain areas including math, science, and special education, and would start each school year with approximately 200 vacancies. (Swinford Decl. ¶ 3)[3] UPI represented that it could present to the School Board teachers who were considered "highly qualified" because of their education and credentials. (Swinford Decl. ¶ 3; Exh. A) EBR decided to interview UPI's teachers, as opposed to some of teachers being proffered by the other agencies soliciting EBR, in part because the State of Louisiana's Recovery School District had begun to use UPI to hire teachers from the Philippines and had not had any problems with these teachers. (Swinford Decl. ¶ 5)

EBR held its first round of interviews in July of 2007 via video-conference and hired approximately twenty-one teachers, including EBR plaintiff, Ingrid Cruz.[4] (Swinford Decl. ¶ 6; Donaldson Decl. ¶ 9) The EBR employees present for these

---

[3] The declaration of Dr. Elizabeth Duran Swinford and corresponding exhibits are attached to this opposition memorandum as Exhibit 2.

[4] Although the numbers in this memorandum represent the number of offers made to Filipino teachers, not all offers were approved by the USCIS.

-13-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

videoconference interviews included Daphne Donaldson, Recruitment Manager, and various principals from EBR schools.  (Donaldson Decl. ¶ 9)  Plaintiff, Ingrid Cruz, was hired by EBR in 2007 to begin teaching in August of 2007 at a salary of more than $36,000 per year.  (Donaldson Decl. ¶ 9; Cruz at 39-40, 197)[5]

When this set of teachers arrived in Baton Rouge, Daphne Donaldson voluntarily assisted them by picking them up from the airport, taking them to the grocery store, and taking them to the bank to set up checking accounts.  Although this was not an obligation of EBR, Donaldson and other EBR officials wanted the teachers to feel welcome upon their arrival.  (Donaldson Decl. ¶ 16)  Later, when this became too burdensome, Donaldson contacted the local Filipino association, which assumed the role of welcoming and greeting newly arriving Filipino teachers.  (Donaldson Decl. ¶ 19)

EBR was happy with these teachers and most, if not all, were highly-qualified and certified by EBR as per the state of Louisiana's guidelines right away.  (Swinford Decl. ¶ 7)  Because of the success of the first round of hiring of teachers from the Philippines, EBR planned their first trip to the Philippines to interview teachers. Swinford and some EBR school principals made this trip in November of 2007 and made offers of employment to another set of Filipino teachers.  (Swinford Decl. ¶ 8)

---

[5] Excerpts from the deposition of Ingrid Cruz are attached to this opposition as Exhibit 3.

-14-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

This time, approximately eighty teachers were given offers of employment.

EBR representatives made a final trip to the Philippines for recruitment in March of 2008, which Swinford and various principals attended, and approximately 120 teachers were given job offers. (Swinford Decl. ¶ 9) Mairi Nunag-Tanedo was one of the teachers hired at this time. Tanedo was given an offer of employment on April 8, 2008, and arrived in the U.S. on July 24, 2008 to begin teaching during the 2008 fall semester at EBR at a salary of more than $40,000. (Tanedo at 29, 41, Donaldson Decl. ¶ 13)[6] Donnabel Escuadra was also hired as a result of this "third wave" of interviews, signing her offer of employment from EBR on April 15, 2008 and also began teaching in August 2008 at a salary of approximately $48,000. (Escuadra at 123-24, 289)[7]

Thus, the Filipino teachers hired by EBR received offers of employment as a result of three "waves" of interviews, the latter two occurring in the Philippines themselves. Thus, the EBR Class came to the U.S. at different times beginning in the fall of 2007 through 2008. (Swinford Decl. ¶ 10) One of the EBR Plaintiffs (Cruz) was hired as a result of this first "wave," which did not involve any EBR employees

---

[6] Excerpts from the deposition of Mairi Nunag-Tanedo are attached to this opposition as Exhibit 4.

[7] Excerpts from the deposition of Donnabel Escuadra are attached to this opposition as Exhibit 5. Although Escuadra's offer of employment was for less than this yearly salary, her salary was adjusted at some point during the 2008 school year.

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

traveling to the Philippines; the other two EBR Plaintiffs (Tanedo and Escuadra) were hired as part of the "third wave."  No proposed class representative was hired as part of the "second wave," *i.e.*, the first instance where EBR employees actually traveled to the Philippines.

## C.   The Post-Hiring Contacts

Although the instant claim is one of "negligent hiring," it is true that EBR, as the employer of the EBR Class, had continuing and frequent contact with those employees.  As discussed later herein, to the extent that EBR Plaintiffs would seek to base any of their "negligent hiring" claim, in particular the claim of economic injury, on these post-employment contacts, EBR maintains that such claim is barred by Louisiana's Workers' Compensation law.

Following their employment, EBR Plaintiffs admitted that they discussed certain individual problems with Swinford and other EBR officials, and that they were not retaliated against by EBR.  For instance, plaintiff Cruz met with Swinford because Cruz's visa was mistakenly only renewed for a six-month period, and Swinford made sure that this issue was taken care of and Cruz's visa was extended.  (Swinford Decl. ¶ 14; Cruz at 226-27, 267-68)  Cruz admitted that neither Swinford nor any other EBR official ever threatened her or said she wanted her to be fired.  (Cruz at 253)  Indeed, Cruz admits that Swinford offered her assistance in obtaining an extension of her visa. (Cruz at 254, 267-68)  According to Cruz, Swinford told Cruz that UPI could not get

-16-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.2

1   her fired, and Cruz believed this.  (Cruz at 272)

2       Indeed, when Swinford and other Human Resources employees had heard that

3   some teachers had complained that Navarro or other UPI representatives were

4

5   threatening to recommend the teachers' termination if they did not pay their

6   contracted fees, Swinford decided to hold a mandatory meeting for international

7   teachers in December of 2008 in order to ensure that the teachers were aware that UPI

8   had no influence over their employment with EBR.  (Swinford Decl. ¶ 12)  As is

9

10  reflected by the agenda for this meeting, Swinford made very clear at this meeting

11  that only EBR administrators could recommend the teachers' termination for

12  performance-related issues.   (Swinford Decl. ¶ 12; Exh. A; Tanedo at 241-42)

13

14  Further, after hearing that teachers were making various complaints regarding housing

15  and other issues, Swinford and other EBR administrators recommended that the

16  teachers join unions.  (Swinford Decl. ¶ 13)   Daphne Donaldson actually set the

17

18  teachers up with the Filipino Association.  Although she had tried to assist them with

19  any questions, Donaldson wanted to ensure that they had an adequate forum and

20  representation for any issues they experienced in the U.S.  (Donaldson Decl. ¶ 16, 19)

21

22      As for the EBR plaintiffs' direct complaints to EBR, Tanedo never complained

23  to anyone at EBR about the fees she paid the agency, and she testified that from what

24  she could gather from conversations with others, all of the teachers paid different fees.

25

26  (Tanedo at 292-94)  Escuadra, however, testified that she made general complaints to

27                                                    -17-

28  Case No. 8:10-cv-01172-JAK-MLG                          MEMORANDUM IN OPPOSITION TO
                                                            PLAINTIFFS' MOTION FOR CLASS
                                                            CERTIFICATION OF DEFENDANT THE EAST
                                                            BATON ROUGE PARISH SCHOOL BOARD

her principal, Lee Coleman that were not addressed - that her visa was not issued for three years and possibly about the fees - although Escuadra said he was a very nice man.  (Escuadra at 276-79)   Around the time this lawsuit was filed, EBR officials received a written manifesto from a number of EBR teachers expressing their discontent with the lawsuit, stating that they fully supported EBR and were not part of the class action.  (Donaldson Decl. ¶ 26; Exh. G; Swinford Decl. ¶ 16)

All three of the EBR plaintiffs still work for EBR.  Tanedo testified that she is satisfied with her employment at EBR, and that she came to work for EBR on her own volition.  (Tanedo at 245-46)  Cruz, on the other hand, claims that she is not really satisfied with her employment at EBR, because there is no way of knowing if she will be hired next year and there is no job security, although she is aware that all EBR teachers are hired on an annual basis, absent those who have reached tenured status.  (Cruz at 242-45)  Escuadra testified that she would choose to remain working in her current job even if she did not have any debts, but later made a reference to working against her will.  (Escuadra at 232, 307)  The EBR plaintiffs are attempting to represent a class of people including employees who may or may not be satisfied with their employment for reasons attributable to different parties, but also approximately 33 former employees who have been terminated for various reasons, and who may wish to link their termination claims to this case.  (Donaldson Decl. ¶ 15)

-18-

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD

Plaintiffs' testimony as to their claims against EBR differs in a few significant respects.  Tanedo stated in her deposition that EBR had a "moral obligation . . . to know what will be the process that their future employees will be getting into;" and that although EBR had nothing to do with her signing contracts with UPI or PARS, that it should have looked more deeply into the process.   (Tanedo at 295-96) Escuadra testified that because EBR did not address her concerns about a three-year visa, which she never complained of to Swinford or Donaldson, this was a threat to her.  She also asserted that EBR had an obligation to provide her with a three-year visa because Villarba of PARS International (which plaintiffs' complaint does not even accuse EBR of having an affiliation with) said the visa would be for three years, and that she believed Villarba represented EBR at the time.   (Escuadra at 281-82) Escuadra also claimed that EBR was part of a scheme to traffic and defraud her because (1) EBR interviewed her; (2) EBR allegedly used UPI and/or PARs for processing and sending her job offer; (3) EBR made the job offer; and (4) the bondage of having to work to pay off her debts to other defendants.   (Escuadra at 304-09) Cruz, on the other hand claims that EBR, and specifically Swinford, was involved in the scheme to traffic or defraud her because when Cruz complained to Swinford that her visa had only been renewed for six months, Swinford called UPI and Robert Silverman and requested that it be renewed for one year.   (Cruz at 247-54) Essentially, Cruz is making claims against EBR because it kept communicating with

-19-

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.2

1    UPI, albeit for her benefit.  *Id.*

2    **D.     The Plaintiffs And Their Agency Relationship With UPI/PARS**

3
4        As referenced *ante*, EBR believes that UPI was the agent of Plaintiffs, not the

5    other way around.   At best, EBR can only have "hired" UPI, as it never received a

6    proposal or offer from PARS, or any individual for that matter.   However, plaintiffs

7
8    make many claims relating to PARS and PARS representatives, including Emilio

9    Villarba, *i.e.*, claims as to persons outside the scope of any "negligent hiring" claim.

10       More importantly, the EBR plaintiffs admittedly obtained the services of PARS

11   and/or UPI to interview with United States school districts before they even knew of

12
13   the existence of EBR.   The teachers admitted that they hired this agency **not for the**

14   **opportunity to work for EBR, but to be placed in a school, *any* school, in the**

15   **United States**. (*See* Tanedo at 75, Escuadra at 21, 24, Cruz at 82-83, 109)

16
17       Indeed,   it   is   ironic   (and   relevant   for   purposes   of   contributory

18   negligence/comparative fault) that, although plaintiffs allege that EBR was negligent

19   in "hiring" UPI, plaintiffs clearly did not engage in much research before contracting

20
21   with PARs and/or UPI.   Cruz, for instance, admits that she did not ask the total

22   amount of fees before getting on the plane to come to the U.S.  (Cruz at 184)  Further,

23   Tanedo admitted that although she could have looked into Navarro in the Philippines,

24
25   she did not.   (Tanedo at 305-307)   She admitted that although she knew she was

26   dealing with UPI, she only googled PARS.  (*Id.*)  EBR Plaintiffs also did not inquire

27                                            -20-

28   Case No. 8:10-cv-01172-JAK-MLG                    MEMORANDUM IN OPPOSITION TO
                                                        PLAINTIFFS' MOTION FOR CLASS
                                                   CERTIFICATION OF DEFENDANT THE EAST
                                                    BATON ROUGE PARISH SCHOOL BOARD

with other employment agencies as to their fees and operations.  (Tanedo at 198-199; Escuadra at 22-23, Cruz at 225-226)

In sum, the EBR Plaintiffs signed contracts with and paid fees to PARs and UPI for their services.  To the contrary, EBR did not make any payment for services to UPI; again, it hired the teachers, not UPI.  (Swinford Decl. ¶ 4)  EBR was simply a potential employer for the teachers UPI was paid to represent.

## III.  LAW AND ARGUMENT

### A.  Applicable Legal Precepts

**1.   Plaintiffs Cite An Incorrect Standard, As 9th Circuit Decision in Dukes v. Wal-Mart has been overturned by Supreme Court**

Plaintiffs' memorandum states that class certification should be favored and that the Court should not look at the merits of the lawsuit.  However, plaintiffs' filing of the motion took place before the Supreme Court issued its landmark decision in Wal-Mart Stores, Inc. v. Dukes, overturning the Ninth Circuit decision cited by plaintiffs and significantly limiting the availability of class actions.  Reversing the Ninth Circuit's certification of a class in an employment case, the United States Supreme Court stated the following:

> Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc . . . 'sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question' . . . and that certification is proper only if 'the trial court is satisfied, after a rigorous

-21-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.2

analysis, that the prerequisites of Rule 23(a) have been satisfied.' Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. '[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' Nor is there anything unusual about that consequence. The necessity of touching aspects of the merits in order to resolve preliminary matters, e.g., jurisdiction and venue, is a familiar feature of litigation.

Wal-Mart Stores, Inc. v. Dukes, ___ S.Ct. ___, 2011 WL 2437013, *7 (2011) [citations omitted]. Plaintiffs face a significant burden in proving their class claims, which EBR contends they are unable to meet.

**2.    Plaintiffs' Burden Under Rule 23**

A class action "may only be certified if the trial court is satisfied, after a **rigorous analysis**, that the prerequisites of Rule 23(a) have been satisfied. General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L. Ed. 2d 740 (1982). Specifically, to satisfy the Rule 23(a) requirements, a plaintiff must offer proof that (1) the purported class is so numerous that joinder of all members is impractical; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the named plaintiff will fairly and adequately protect the interests of the class. *See id.*, Fed.R.Civ.P. 23(a). "These requirements effectively 'limit the class claims to those fairly encompassed by the named plaintiff's claims.'" *Id.* at 2369-70 (1982), *quoting* General Tel. Co. v. EEOC, 100 S.Ct. 1698, 1706 (1980). In order to meet these requirements, the class representative must show that he possesses the

-22-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

same interest and has suffered the same injury as the purported class members. Falcon, 102 S.Ct. at 2370; Amchem Products, Inc. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231, 2245-46 (1997). Each case must be evaluated independently, based on the evidence in the case, to determine whether certification is appropriate. If plaintiffs are able to satisfy the requirements of Rule 23(a), the plaintiffs must also satisfy the categories of Rule 23(b). For plaintiffs seeking certification under Rule 23(b)(3), the additional and more rigorous factors are predominance and superiority. Only those proposed classes meeting all six (6) requirements of Rule 23 may be certified. Amchem, 117 S.Ct. at 2244-46. For the reasons that follow, plaintiffs simply cannot satisfy these requirements.

**B.    The Tardiness of the Negligent Hiring Claims Renders Case Unfit For Class Certification**

As stated by the Supreme Court in Wal-Mart Stores, Inc. v. Duke, the Court's rigorous analysis of whether class certification is appropriate may overlap with the merits of the case. In the case of plaintiffs' negligent hiring claim against EBR, this overlap cannot be avoided. Pursuant to the governing Louisiana law, plaintiffs' negligent hiring claim is untimely on the face of the pleadings and in fact, and further, the individualized issue of timeliness should defeat plaintiffs' motion.

**1.    The EBR Plaintiffs/EBR Class Claims Are Untimely**

As discussed above, plaintiff Cruz contracted with PARS and/or UPI and then began working for EBR in August 2007. Tanedo and Escuadra each individually

-23-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD

contracted with PARS and/or UPI and began working for EBR in August 2008. Plaintiffs' initial complaint in this matter was not filed until August 5, 2010, approximately two years after Tanedo and Escuadra began actively working for EBR. (*See* Doc. 1)

The parties have conceded in briefing and the Court has previously found through a conflict of laws analysis that Louisiana law should govern the claim of negligent hiring. (*See* Doc. 116)  Under Louisiana law, the applicable limitations or prescriptive period[8] is one year, and "commences to run from the day injury or damage is sustained."  La. Civ.Code art. 3492.[9]  In this case, plaintiffs have alleged that EBR "negligently hired" UPI to recruit plaintiffs, and although plaintiffs' testimony differs as to EBR's role, plaintiffs have made it clear that they allegedly suffered injury, which they partially attribute to EBR, when they paid purportedly "exorbitant" fees to PARS and UPI before commencing employment with EBR, at various times in 2007 and 2008.  Their "negligent hiring" claims against EBR thus

---

[8] Under Louisiana law, the term "prescriptive period" is synonymous with "statute of limitations."

[9] In **Johnson v. Littleton, 45,323 (La. App. 2 Cir. 5/19/10); 37 So. 3d 542**, plaintiffs asserted that their claim for negligent hiring of an employee who poured hot grease on a patron was linked to a crime of violence, and was therefore, governed by a longer two year prescriptive period. *Id.* **at 545**. However, the Court found that the negligent hiring/supervision claim was separate and apart from the alleged act of violence, and therefore, the typical one-year prescriptive period applied. **Id.**  Similarly, plaintiffs may not validly allege in this case that the prescriptive period is extended because it is linked to claims against other defendants.

-24-

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

arise out of the purported "hiring" of UPI by EBR in 2006, and the subject "injuries" (which commenced the running of the limitations period) occurred at different times in 2007 and 2008, when they paid "exorbitant" fees of differing amounts to PARS (which EBR did not hire) in the Philippines.  (Tanedo at 224-25, Escuadra at 217, Docs. 134-1, 134-2, 134-3)  Because this lawsuit was not filed until late 2010, the EBR Plaintiffs' claims, and the claims of the EBR Class, are untimely.

While EBR of course anticipates that Plaintiffs will dispute the foregoing basic application of the law to the facts, the mere fact that this is a contested issue for the EBR Plaintiffs and the EBR Class demonstrates that the claim against EBR should not be certified in a class action.  In  Quezada v. Loan Center of California, Inc., 2009 WL 5113506, *7 (E.D.Cal. Dec. 18, 2009), the court noted the following:

> Other district courts have found that a putative class representative's claims fail to meet the typicality requirement when they are subject to a statute of limitations defense that differs from other class members and would become a significant focus of the litigation.  The class definition proposed by plaintiff is extremely broad, including anyone who received a loan from LCC beginning January 24, 2004.  This guarantees that some class members will have statute of limitations issues that will need to be resolved, while others will not.  While plaintiff will certainly be typical of part of the class in this regard, there may be a broad swath of the class that has no statute of limitations issues, but would be bound by an order of this court if the court finds plaintiff's UCL claim time-barred in defendants' upcoming summary judgment motion.  Without any subdivisions in the proposed class definition, this court is skeptical that the statute of limitations defense is reasonably coextensive with the defenses that would be levied against many of the class members.  Plaintiff's UCL claim has therefore also failed to meet the typicality requirement.

-25-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.2

*Id.*; *accord*, Gregurek v. United of Omaha Life Ins. Co., 2009 WL 4723137 (C.D.Cal. 11/10/09) (statute of limitations defense will require individual findings specific to each class member on breach of contract claim and it is not appropriate for class certification); Western States Wholesale, Inc. v. Synthetic Industries, Inc., 206 F.R.D. 271, 278-80 (C.D.Cal. 2002) (with individual inquiries into cause, injury, and the applicable statute of limitations, court could not hold that common issues of whether advertising was false or misleading, and whether defendant acted intentionally, predominated over the individual issues); O'Connor v. Boeing North American, Inc., 197 F.R.D. 404, 413-14 (C.D.Cal. 2000) (individual issues relating to statute of limitations predominated over common issues of nuisance, trespass and unfair business practices claims).  As set forth by the above case law, this case should not be certified as a class action.

### 2. The Temporal Factor is Also Relevant to Issues of Liability on a "Negligent Hiring" Claim

Additionally, under Louisiana law, the principal's knowledge at the time of injury is also relevant to liability.  *See* Certified Cleaning & Restoration, Inc. v. Lafayette Insurance Co., 10-948 (La. App. 5 Cir. 6/14/11); 2011 WL 2328011 (claim of negligent hiring failed when defendant had used contractor before on prior roofing jobs, and there were no problems or indications of mishaps).  Specifically, continued use of a contractor without any complaints or notice of problems is probative of the fact that no further background check or inquiry is needed to safely hire that

-26-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.2

contractor. *Id.* In this case, for example, by the time the "third wave" of teachers, including Tanedo and Escuadra, were interviewed and hired, EBR had hired several hundred teachers through UPI and (at that point in time) had heard no complaints. Obviously, this situation is different from those teachers who were hired as part of the "first wave" (like Cruz), when UPI had no track record with EBR.

This is a liability issue, and one that demonstrates further how the timeliness issues warrant against certification of the EBR Class. Again, the Court will have to make individualized determinations as to when each member became employed and EBR's knowledge at the time, which will require an evaluation of each teacher's offer of employment, acceptance, and date of actually commencing employment with EBR, and correlation of those specific dates to EBR's corporate knowledge at that time.

**C.     Determining Whether EBR Enjoys Tort Immunity Under Louisiana's Workers' Compensation Law Will Require Further Individualized Determinations as to Each Member of the EBR Class**

Furthermore, to the extent Plaintiffs attempt to assert claims against EBR for conduct that occurred after accepting employment and starting to teach at EBR, any such claim would be barred by the tort immunity conferred to all employers, including public employers, under Louisiana's Workers' Compensation law, and subject to dismissal. *See* Wakefield v. Kyle, 44, 317 (La. App. 2 Cir. May 17, 2009); 12 So. 3d 468, 473 (employee's claim against employer for negligent hiring of a coworker was properly dismissed for failure to state a cause of action).

-27-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.2

Indeed, the interjection of workers' compensation immunity adds an entirely new level of complexity, insofar as it may reach back to the conduct associated with the initial hiring and transportation of the EBR Class, and thus will require an entirely new set of individualized determinations. Under Louisiana's workers' compensation scheme, the exclusive remedy for harms arising from the employer-employee relationship is worker's compensation benefits, and administration of this remedy falls within the exclusive jurisdiction of Louisiana's Office of Workers' Compensation. Minvielle v. Kaiser Aluminum & Chemical Corp., 766 F.2d 189, 190 (5th Cir. 1985) (applying Louisiana law). Thus, a negligence claim like that asserted by the EBR Plaintiffs which falls within the ambit of this scheme cannot be maintained in a Louisiana state court, and also (because such exclusivity is a matter of substantive state law) cannot be maintained in a federal district court. Minvielle, 766 F.2d at 190 (applying Louisiana law); see United States Fidelity & Guaranty Co. v. Lee Investments, LLC, 641 F.3d 1126, 1133-34 (9th Cir. 2011) (observing that federal district court cannot hear claim falling within exclusive jurisdiction of California workers' compensation tribunal).

Under Louisiana law, a claim falls within the ambit of the workers' compensation scheme when the claim "arises out of" the employer-employee relationship, and a claim can be found to "arise out of" that relationship when the employer has in some way involved itself in the transportation of the employee as an

-28-

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD

incident of the employment agreement. <u>Mayes v. Deep South Chemical, Inc.,</u> 2011-91 (La. App. 3 Cir. 6/1/11); ___ So.3d ___, 2011 WL 2135562, *3. In the specific context of negligent hiring, Louisiana courts have found that an employee's claim "arises out of" the employment relationship when the employee's employment required her to be present at the place and time of injury. <u>Bickham v. Orleans Parish School Board,</u> 488 So.2d 1248, 1250 (La. App. 4 Cir. 1986), *writ denied,* 491 So.2d 24 (La. 1986). And, under the Louisiana's workers' compensation scheme, an employer is immune from claims that arise out of the intentional or negligent conduct of a "co-employee" of the plaintiff when acting pursuant to the trade or business of the employer. <u>Green v. Turner,</u> 437 So.2d 956, 958-59 (La. App. 2 Cir. 1983).

Thus, the Court will have to determine when the "employer-employee" relationship between EBR and each member of the class commenced, and whether each alleged injury "arose out of" the employer-employee relationship. In this vein, it is important to observe that Plaintiffs' (unsubstantiated) allegations are that EBR participated in the "trafficking" of Plaintiffs from the Philippines to Louisiana, and that EBR "benefitted" from this "scheme" by obtaining the employment of the Plaintiffs. Plaintiffs have also testified that their "bondage" continued after they commenced employment, and that they were "forced" to work, including under threat of being terminated. Thus, at least some of the conduct Plaintiffs challenge would be conduct that falls within the scope of the tort immunity afforded by the Workers'

-29-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.2

Compensation Law.[10]   In any case, resolution of this defense will require a series of case-by-case, fact-intensive determinations - the very sort of determinations that are ill-suited to a class action.

**D.      Liability, Causation, and Comparative Fault Will Require Individualized Determinations Inappropriate for a Class Action**

As stated by the United States Supreme Court, "Rule 23 does not set forth a mere pleading standard," and sometimes "it may be necessary for the court to probe behind the pleadings" on the certification question.  <u>Wal-Mart Stores, Inc. v. Dukes,</u> 2011 WL 2437013 at *7.   With only a slight probing in this case, it is clear that plaintiffs' negligent hiring claim is not appropriate for class certification.

The EBR Plaintiffs in this case have asserted a claim for negligent hiring against EBR, although each plaintiff has provided different testimony as to causation and damages.   Plaintiffs' memorandum focuses on their claims against other defendants and simply fails to address how individual causation issues could be properly adjudicated through class treatment.   "Because the proximate causation analysis involves individualized factual issues, **courts generally consider negligence claims ill-suited for class action**." <u>Gartin v. S&M Nutec LLC</u>, 245 F.R.D. 429, 439

---

[10] Indeed, it can be argued that all of Plaintiffs' claims arise from the employer-employee relationship, insofar as they persist in their absurd argument that the "negligent hiring" of UPI was for the purpose of "procuring" and "transporting" the EBR Class to Louisiana, so that they could be subjected to their "forced labor" (and its attendant "exorbitant" salary and benefits).

-30-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD

1   (C.D.Cal. 2007) [emphasis added].   *See* <u>In re: Paxil Litig.</u>, 212 F.R.D. 539, 551

2   (C.D.Cal. 2003) (denying class certification for negligence and product liability

3   claims against drug manufacturer partly because causation analysis would require

4   analysis of myriad of plaintiffs' individual medical histories); <u>Ikonen v. Hartz</u>

5   <u>Mountain Corp.</u>, 122 F.R.D. 258 (S.D.Cal. 1988).[11]

6

7   Furthermore, Plaintiffs fail to recognize that the nature of the negligent hiring

8   claim against EBR will require this Court to make a determination, as to each member

9   of the EBR Class, and separate from any conduct of EBR, that UPI breached a tort

10  duty owed under Louisiana law to such member.   This is because under Louisiana

11  law, a precondition to being held liable for "negligent hiring" is a determination that

12

13

14  _____

15  [11] *See also* **Boughton v. Cotter Corp., 65 F.3d 823, 826-28 (10th Cir. 1995)** (in action based on purported exposure of people and property to emissions of uranium mill, court did not abuse discretion in refusal to certify class based on finding that individual issues predominated, including whether purchasers were aware of contamination and extent and nature of injuries); **Owner-Operator Independent Drivers Ass'n, Inc. v. New Prime, Inc., 339 F.3d 1001, 1012 (8th Cir. 2003)** (holding that because applicable statute provided right to recover only to persons who sustained damages as result of carrier violation, recovery for any plaintiff would be based on individual, not common, questions of fact and therefore class certification was not appropriate); <u>Amchem</u>, 1175 S.Ct. at 2249-50 (finding that class certification was not appropriate in mass tort case, noting that the predominance criteria was not satisfied by the members' shared experience of asbestos exposure, given the greater number of questions peculiar to each category of the class member, the individuals, and the significance of the uncommon questions.   While a mass tort case could potentially satisfy the predominance requirement, the Court noted that the Advisory Committee for the 1966 **Rule 23** revision advised that these cases are not ordinarily appropriate for class treatment, and warned district courts to exercise caution when the individual stakes were high and the disparities among the class members great).

16

17

18

19

20

21

22

23

24

25

26

27

28  Case No. 8:10-cv-01172-JAK-MLG

-31-

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.2

the person hired also breached a legal duty owed to the plaintiff.  <u>Libersat v. J&K Trucking, Inc.</u>, 2000-0192 (La. App. 3 Cir. 10/11/00); 772 So.2d 173, 179 ("If Mitchell did not breach a duty to the Appellants then no degree of negligence on the part of Patterson in hiring Mitchell would make Patterson liable to the Appellants."), <i>writ denied</i>, 2001-0458 (La. 4/12/01); 789 So.2d 598.  Thus, to find EBR liable, the court will have to make determination of the fault of UPI as to each claimant.

This fact has further significance because the evidence shows that, at most, EBR "hired" UPI, not the other defendants.  While Plaintiffs may be entitled to approach the California and Filipino defendants as an undifferentiated mob for purposes of their "trafficking" and "forced labor" claims, the same is not true of the negligent hiring claim against EBR.  Stated another way, there is no principle of law that supports the imposition of liability in a "negligent hiring" claim when the tortious conduct was undertaken by someone other than the specific person "hired."  To the extent Plaintiffs desire to associate UPI to PARS, the "Legal Facilitator Defendants," or any other party or non-party, they will need to demonstrate the existence of a "single business enterprise," which involves a complicated, fact-intensive analysis of the business operations of all putative members of the "enterprise."  <i>See</i> <u>Miller v. Entergy Services, Inc.</u>, 2004-1370 (La. App. 4 Cir. 7/13/05); 913 So.2d 143, 147-48.[12]

---

[12] For example, Lulu Navarro is named as an individual defendant, but she is also apparently an employee or officer of both UPI and PARS.  Each of the class

-32-

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.2

This issue transcends liability, because one of EBR's primary defenses will be that even if EBR negligently hired UPI or Navarro, EBR was not solely or even partially at fault for plaintiffs' damages.    This defense arises out of Louisiana's adoption of comparative fault, which makes a defendant whose conduct contributes to a plaintiff's injury liable only for the percentage of fault allocated to that tortfeasor by the trier-of-fact.  La. Civ. Code arts. 2323, 2324.  This individualized comparison of fault is required for each party or non-party allegedly at fault, whether intentional or negligent.  <u>Louviere v. Louviere</u>, 2001-0089 (La. App. 1 Cir. 6/5/02); 839 So.2d 57. In other words, even if EBR is liable, the Court will have to assess the fault for each party and non-party involved as to each individual claimant.

The comparative fault inquiry will obviously be individualized and will vary for each member of the putative class depending on the circumstances, including what fees each member paid and to whom, who said what to each class member, and how

representatives has testified as to contacts with Ms. Navarro, at various times, both in the Philippines, California, and Louisiana, although those contacts are not consistent even for each of the three class representatives.  A trier-of-fact will have to determine which of these contacts constituted conduct of Navarro within the course and scope of her duties as an agent or employee of UPI, rather than PARS (or in an individual, non-fiduciary capacity).  If the trier-of-fact were to determine that Ms. Navarro's conduct in the Philippines was as an agent of PARS, but not of UPI, then none of that conduct could be attributed to EBR under the aegis of the "negligent hiring" claim, because there is no evidence EBR was aware of the existence of, much less hired, PARS. And, as discussed below, even if the trier-of-fact were to determine that Navarro was acting as agent of both PARS and UPI as to a particular Plaintiff (or even all Plaintiffs), then the trier-of-fact would have to compare the relative fault of these two

-33-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

each member claims he or she was injured.  In other words, because the fundamental injury claimed is that the teachers were fraudulently induced, by verbal misrepresentations and by duress, to pay money and sign contracts, fault will necessarily be imposed based upon the persons who actually misled, and who actually coerced, the EBR Plaintiffs.  And, given that EBR's liability is premised upon the liability of UPI, part of this fault allocation will include factual determinations as to agency and course and scope, *i.e.*, a determination as to whether the individual actors were acting on behalf of UPI such that EBR may also be found to be at fault.

To call such a collection of determinations "individualized" is a gross understatement:  the trier-of-fact will have to examine the conduct each defendant and non-party undertook as to each individual claimant in order to determine fault, and then examine the nature of that conduct in order to allocate percentages of fault. Which entity or individual does each class member allege made misrepresentations? Who were Emilio Villarba, Navarro, and the other individual actors working on behalf of at the times they took particular actions?  To whom did the claimants pay fees?  What actions caused each class member harm?  The answers to these questions will necessarily differ for each claimant.  Due to the complexity of this individualized comparative fault analysis, the Court should deny plaintiffs' motion.

Finally, and perhaps most tellingly, EBR plaintiffs are largely claiming that

defendants, as well as that of EBR.

-34-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.2

their injury caused by EBR's alleged negligent hiring was a result of fraud. Indeed, the onus of Plaintiffs' "negligent hiring" claim is that EBR failed to discover, and hired UPI, despite Navarro's past convictions for fraud-related claims. However, because plaintiffs are alleging that their injury is being defrauded by UPI or PARs, this requires a look at individualized reliance for each plaintiff and purported class member.

As the Ninth Circuit has observed, fraud claims are notoriously bad claims for class action treatment because, absent some class-wide presumption (like the "fraud on the market" presumption in securities fraud cases), individual reliance is required to be proven for each claimant. Desai v. Deutsche Bank Securities, Ltd., 573 F.3d 931, 940 (9th Cir. 2009). Under both Louisiana and California law, reliance is an essential element of a tort claim grounded in fraud. Gonzales v. Gonzales, 2008-0258 (La. App. 4 Cir. 9/30/09); 20 So. 3d 557, 563; Brown v. Wells Fargo Bank N.A., 168 Cal.App.4th 938, 958-59, 85 Cal. Rptr. 3d 817 (2008). And, in addition to reliance, there are other individual issues already alluded to *ante*, including the nature of the oral representations made, and the false nature of each such representation, that militate against class treatment. Thompson v. Jiffy Lube Intern., Inc., 250 F.R.D. 607, 629 (D. Kan. 2008) ("On the consumer protection claims, for example, individual issues would likely include what oral representations were made to class members, whether such representations were false or misleading, whether the

-35-

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

individuals involved relied on such representations, and what damages were caused by or resulted from the representation.") (listing cases).

In this particular case, the "individual reliance" issue is whether each member of the class, if she had known the "truth" about the cost she was contractually required to pay PARS/UPI, would have nonetheless decided to go through the process in order to obtain her current employment. *See* <u>Stephenson v. Bell Atlantic Corp.</u>, 177 F.R.D. 279, 293-94 (D. N.J. 1997) (listing cases). In this case, there is not even consensus among the three putative class representatives regarding this issue. The fact that more than 50 putative class members have affirmed that they are very happy with the circumstances of their employment with EBR and are not part of any class, suggests that the results of this "individualized determination" will be quite varied.

The above stated issues would properly be addressed by the Court when analyzing "commonality" and "predominance" in the following inquiry, and should clearly demonstrate to the Court that this action, which involves different time periods, different employment decisions, different comparative fault issues, and of course, differing statute of limitations calculations, is not appropriate for class certification.

## E.  Plaintiffs Are Unable To Meet Requirements of Rule 23(a)

### 1.  Numerosity Is Questionable

Plaintiffs have alleged that there are approximately 239 putative class members

-36-

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.2

in the EBR subclass, which would satisfy the numerosity requirement. However, the 239 teachers allegedly within this subclass do not share the claims of plaintiffs and further, many have expressed that they do not intend to assert claims similar to that of plaintiffs. (*See* Donaldson Decl. ¶ 26; Exh. G) Indeed, Tanedo admitted under oath that some teachers do not want to sue EBR and do not claim that UPI did not disclose fees, and that her claims are not the same as those teachers. (Tanedo at 311-13) The number of such teachers exceeds 50. (*See* Donaldson Decl., Exh. G)

Further, plaintiffs assert that joinder is impracticable because most class members are not familiar with the U.S. legal system, stating that "[a]lthough the teachers are educated and fluent in English, they are, by definition, foreign nationals who only recently arrived in the United States." (Doc. 134, p. 11) This is simply a misstatement. Those plaintiffs who wish to sue EBR have lived in the United States for a few years now and many were involved in the proceedings against UPI at the Louisiana Workforce Commission. The purported class members are not uneducated immigrants who cannot speak English. These are educators of students in Louisiana schools with college and advanced degrees, who certainly have the requisite knowledge to file individual suits if so desired. Further, many of the purported class members, like Tanedo and other plaintiffs, have already consulted lawyers for this suit and for renewing their visas. (*See* Tanedo at 218-21)

**2.     Plaintiffs And Purported Subclass Members Have Not Suffered Same Injury, And Therefore, <u>Commonality</u> Requirement Is Not**

-37-

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

**Satisfied**

In support of their amended motion for class certification, plaintiffs provide a lengthy list in an attempt to show that there are common questions of law or fact for plaintiffs' claims against the **other defendants** in this action.  (Doc. 134, p. 12-13) However, with respect with EBR, plaintiffs make this sole assertion:

> [a]dditional issues of fact and law are common to the EBR Teacher Subclass, including whether Defendant EBR's conduct in selecting Defendants Universal and Navarro as their exclusive recruiting agents for purposes of hiring H-1B teachers from the Philippines constituted negligent hiring.

(Doc. 134, p. 13)   This assertion hardly satisfies plaintiffs' burden to show that common questions of law and fact abound for class certification purposes.

In order to certify a class, plaintiffs must show that "there are questions of law or fact common to the class."  Fed. R. Civ. Proc. 23(a)(2).  The Supreme Court has recently stated the following on the existence of common questions:

> That language is easy to misread, since '[a]ny competently crafted class complaint literally raises common 'questions.'  For example:  Do all of us plaintiffs indeed work for [the same employer]?  Do our managers have discretion over pay?  Is that an unlawful employment practice? What remedies should we get?  Reciting these questions is not sufficient to obtain class certification.  **Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.' This does not mean merely that they have all suffered a violation of the same provision of law . . . their claims must depend upon a common contention**—for example, the assertion of discriminatory bias on the part of the same supervisor.  That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

-38-

Case No. 8:10-cv-01172-JAK-MLG

PD.4883407.2

Wal-Mart Stores, Inc. v. Dukes, 2011 WL 2437013 at *7 [citations omitted] [emphasis added].

Plaintiffs have failed to offer evidence that other teachers hired by EBR have the same or similar claims as those asserted by plaintiffs, or that they have suffered the same injury from EBR's purported negligence. As discussed in parts (B) and (C), this negligence claim necessarily involves complex issues of determinations of comparative fault which must be made on an individualized basis, which include persons and entities that are not parties to this lawsuit, timeliness of plaintiffs' and class members' claims, and elements of knowledge which differ due to the dates of hire for each individual teacher. Indeed, there is no common contention here, as plaintiffs and purported class representatives undoubtedly attribute their damages to different entities and persons, and all in different degrees. These issues all demonstrate that the questions involved in this case are not sufficiently common.

Here, the purported class consists of teachers hired from different parts of the Philippines from 2007 to the present to teach at a number of different schools in East Baton Rouge Parish starting at different salaries and paying different placement fees to other defendants and non-defendants. The named EBR Plaintiffs and proposed EBR Class representatives have admitted under oath that they are not sure how many teachers within EBR have the same claims, that they are aware that many teachers within EBR disagree with their suit against EBR, and that some teachers do not claim

-39-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.2

that the fees charged by PARS or UPI were undisclosed.  (Tanedo at 260-62, 311-313, Escuadra at 318-321)  Indeed, the claimed injuries of the named plaintiffs differ.  For instance, Cruz admits that she knew there would be more fees after the initial $5,000 payment because she reviewed the documents with her mother, although other plaintiffs claim they were not aware of this.  (Cruz at 160-62, Escuadra at 136-37)  Further, Cruz admitted under oath that the second part of the placement fee, 10% of the second-year salary payment, was discussed with PARS before she got on the plane to leave the Philippines and travel to the U.S., while the other EBR Plaintiffs contend that they were blind-sided by UPI with this news upon their arrival in Los Angeles or did not even know about the second year fee until later.  (Cruz at 185-86, Tanedo at 222-23, Escuadra at 241-43)  Therefore, Cruz's claims relating to causation and damages for its claims against EBR are completely different from those as the other EBR Class representatives.  While these teachers all arrived at EBR through the use of a placement agency(s), even the EBR Class representatives have not experienced the "same injury" as required by the United States Supreme Court.

### 3.    Claims of Purported EBR Teacher Subclass Not Typical

In their memorandum, plaintiffs spend a fair amount of time outlining the typicality of the claims of the Louisiana Teacher Class, a proposed class which does not involve EBR. (Doc. 134, p. 14-15)  Yet again, however, there is but one sentence dedicated to the EBR Teacher Subclass, stating that "like the named EBR Plaintiffs,

-40-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

other subclass members were recruited to work in EBR public schools pursuant to a fraudulent trafficking scheme and suffered virtually identical injuries." Again, plaintiffs' allegations with regard to EBR's purported involvement in a trafficking scheme are irrelevant to the one remaining claim against EBR- negligent hiring.

Outside of broad representations in their memorandum, plaintiffs have provided no evidence that the claims or defenses of the representative parties are typical of the claims or defenses of the class. The only declarations filed in support of the motion are those provided by plaintiffs themselves. Although plaintiffs assert that close to 250 Filipino teachers belong in the subclass, they have failed to establish that these plaintiffs have the same claims and injuries from negligent hiring. Plaintiffs fail to address the fact that all of the Filipino teachers paid different placement fees, ended up in different schools within EBR, and have completely different views on whether EBR hired Recruiter Defendants and were negligent in doing so. There are 83 different schools in EBR; the teachers all paid different amounts in fees to defendants and non-defendants; and the teachers are paid different salaries working for EBR, depending on their level of experience and qualifications. Further, a number of these teachers have been terminated and likely could have claims related to wrongful termination. Plaintiffs fail to satisfy their burden of showing typicality.

### 4.    Adequacy of Representation

Adequate representation and due process require that the interests of class

-41-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.2

representatives and members be aligned, without conflict. <u>Amchem</u>, 117 S.Ct. at 2250. A class representative must be part of the class and possess the same interest and suffer the same injury as the putative class members. *Id.* at 2250-51. Differences between representatives and members render the representatives inadequate when those differences create conflicts between the representatives' interests and those of the class. <u>Jenkins v. Raymark Industries, Inc.</u>, 782 F.2d 468, 472 (5th Cir.), <u>reh'g denied</u>, 782 F.3d 1034 (5th Cir. 1986); <u>Arch v. American Tobacco Company, Inc.</u>, 175 F.R.D. 469, 478 (E.D.Pa. 1997), <u>aff'd</u>, 161 F.3d 123 (3rd Cir. 1998), <u>cert. denied</u>, 526 U.S. 114, 119 S.Ct. 1760, 143 L.Ed.2d 791 (1999).

In addition to the great number of prospective members of the proposed class who want nothing to do with this lawsuit, there is also a significant number (in excess of 30) of potential class members who have previously been terminated by EBR. To the extent these potential class members may have other employment-related claims against EBR arising out of their termination, including them within this class, and the attendant *res judicata* implications of a final judgment in this case, certification would imperil their rights to assert such claims at a later date. Courts have found such a risk of the loss of other claims held by certain class members renders class representation inadequate. *See* <u>Thompson v. American Tobacco Co., Inc.</u>, 189 F.R.D. 544, 550-51 (D. Minn. 1999).

For all of the reasons discussed above, EBR plaintiffs are not adequate

-42-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.2

representatives of the EBR Class.   Further, the timeliness issue is relevant here, because the EBR Plaintiffs' claims are untimely, and with their claims subject to dismissal, they are not proper representatives of the proposed class.

## F. Requirements of Rule 23(b)(3) not met

EBR Plaintiffs seek to certify this class action under Federal Rule of Civil Procedure 23(b)(3).   However, as set forth below, the common questions of law or fact do not predominate over the questions affecting individuals, and therefore, a class action is not superior to individual adjudications.

### 1.   Plaintiffs' Claim for Negligence Ill-Suited For Class Action, as Common Claims Do Not Predominate Over Individualized Claims

The predominance requirement is similar to, but **"far more demanding"** than, the commonality requirement of Rule 23(a).   <u>Amchem Prods., Inc. v. Windsor,</u> 521 U.S. 591, 623-24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) [emphasis added].   The predominance inquiry of Rule 23 requires a comparison of common issues to issues individual to each member, "testing whether the proposed claims are sufficiently cohesive to warrant adjudication by representation." <u>Amchem</u>, 117 S.Ct. at 2249.   To predominate, common issues must constitute a significant part of each individual case. <u>Id.</u> at 2243, 2250.

Many of the issues discussed in section (III)(B)-(D) of this memorandum are properly analyzed on the "predominance" prong of the class action inquiry, and show that common issues do NOT predominate over individualized issues.   In this case, like

-43-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.2

most cases involving claims of negligence, the common issues simply do not predominate over the countless individual determinations a Court would be forced to make. The comparative fault of each actor allegedly at fault, whether a party or non-party, must be evaluated for each class member's claims. The EBR Plaintiffs attribute fault to different defendants and entities that are not parties to the lawsuit, including PARS and Villarba. Depending on each class member's personal experience with the placement companies, lawyer, and EBR, the percentage of fault for each party, if plaintiffs' claims were successful, would differ for each plaintiff. For instance, as set forth above, the EBR Plaintiffs and putative class representatives each allege that she paid a different placement fee to PARS or UPI. (*See* Docs. 134-1, ¶ 13, 134-2, ¶ 12, 134-3, ¶ 12) As discussed above, the EBR Plaintiffs have also proffered different testimony as to when and whether they knew about certain fees in their arrangement, whether they knew about these before coming to the U.S. to begin their employment with EBR, and what actions by which they claim defendants really caused them harm. The EBR Plaintiffs all admitted that they are aware that many of the teachers at the EBR schools do not support any claim against EBR, and further, that many of the teachers do not claim they had to pay undisclosed fees to UPI. Escuadra admitted that although fifty purported teachers met with the lawyers in this case regarding the institution of a lawsuit, she was not sure how many teachers viewed their situation as that of "bondage" caused by EBR, as she classified it. (Escuadra at 318) The EBR

-44-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.2

Plaintiffs' testimony also all differ as to EBR's alleged role on the negligent hiring claim and in allegedly causing them injury.

As further noted above, plaintiffs' claims of injuries are that because EBR allegedly "hired" UPI, they were ensnared into a fraudulent scheme.  However, in both Louisiana and California, individual reliance is a necessary element of a claim for fraud.  "If the circumstances surrounding each plaintiff's alleged reliance on fraudulent representations differ, then reliance is an issue that will have to be proven by each plaintiff, and the proposed class fails Rule 23(b)(3)'s predominance requirement."  Unger v. Amedisys, Inc., 401 F.3d 316, 322 (5th Cir. 2005).  The testimony of the EBR Plaintiffs differs as to what representations were purportedly made by UPI and PARS, and what representations they relied on.  This is but another individual question that outweighs the commonality of these claims.

Moreover, as set forth above, the statute of limitations issue alone renders this case inappropriate for class treatment because of the individual analysis required.  Because the claims of EBR Plaintiffs and most class members are prescribed on their face, the Court will be forced to look at each individual's claims for a continuing tort theory (which EBR contends is in no way viable under the law).

### 2. Class Adjudication Of Claims Against EBR Is Not Superior To Individual Actions

Rule 23(b)(3) also requires that the Court find "a class action is superior to other available methods for the fair and efficient adjudication of the controversy"

-45-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.2

before certifying a class.  The four factors considered on this prong include : (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.  Fed.R.Civ.P. 23(b)(3)(A)-(D).

Because the only claim remaining against EBR is "negligent hiring," a claim governed by Louisiana law, it is not desirable to litigate in the California forum. More importantly, practical issues related to causation, fault, loss and other defenses, including timeliness, would very much complicate the resolution of this action.

**G.     Certification Under 23(b)(2) is Clearly Not Available In Accordance With Supreme Court Precedent**

A class cannot be certified under Rule 23(b)(2) when the primary claim is not one for injunctive relief.  <u>Wal-Mart Stores, Inc. v. Dukes</u>, 2011 WL 2437013 at *12. Plaintiffs do not seek an injunction against EBR, whose alleged wrongdoing took place in the past, and to the extent they may purport to do so, there is no legal precedent for an injunction for negligence.

Because plaintiffs admit in their memorandum in support of motion for class certification that the request for monetary relief outweighs that for injunctive relief, the class clearly may not be certified under Federal Rule of Civil Procedure 23(b)(2).

-46-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

CONCLUSION

In conclusion, plaintiffs' motion for class certification as to the claims of the EBR subclass against the East Baton Rouge Parish School Board should be denied.

RESPECTFULLY SUBMITTED,

**PHELPS DUNBAR LLP**

By   /s/ Brandi B. Cole
          Brandi B. Cole (admitted *pro hac vice*)
          II City Plaza
          400 Convention Street • Suite 1100
          Baton Rouge, Louisiana 70802-5618
          P.O. Box 4412
          Baton Rouge, Louisiana 70821-4412
          Telephone: (225) 346-0285
          Telecopier: (225) 381-9197
          Email:  brandi.cole@phelps.com

ATTORNEY FOR THE EAST BATON ROUGE PARISH SCHOOL BOARD AND ELIZABETH DURAN SWINFORD

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on all counsel of record herein via the Court's electronic notification system on this 25th day of July, 2011.

          /s/ Brandi B. Cole

-47-

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.2