Shelton Dennis Blunt (admitted *pro hac vice*)
bluntd@phelps.com
Susan W. Furr (admitted *pro hac vice*)
susie.furr@phelps.com
Paul Leblanc (admitted *pro hac vice*)
paul.leblanc@phelps.com
Brandi B. Cole (admitted *pro hac vice*)
brandi.cole@phelps.com
PHELPS DUNBAR LLP
II City Plaza
400 Convention Street • Suite 1100
Baton Rouge, Louisiana 70802-5618
P.O. Box 4412
Baton Rouge, Louisiana 70821-4412
Telephone: (225) 346-0285
Telecopier: (225) 381-9197

Jolee Land, Bar Roll No. 240940
jolee.land@phelps.com
PHELPS DUNBAR LLP
100 South Ashley Drive, Suite 1900
Tampa, Florida 33602-5311
Telephone:    813-472-7857
Facsimile:    813-472-7570

Julian A. Pollok (Bar No. 48484)
julianpollok@sbcglobal.net
Law Offices of Julian A. Pollok,
A Professional Corporation
505 N. Brand Blvd., Suite 1050
Glendale, California  91203
Telephone:    818-550-7795
Facsimile:    818-552-5080

*Attorneys for Defendants,*
*the East Baton Rouge Parish School Board*
*and Elizabeth Duran Swinford*

Case No. 8:10-cv-01172-JAK-MLG

AMENDED MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION  OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

MAIRI NUNAG TANEDO, INGRID CRUZ, DONNABEL ESCUADRA, ROLANDO PASCUAL, TOMASA MARI,

                        Plaintiffs,

    vs.

EAST BATON ROUGE PARISH SCHOOL BOARD, CHARLOTTE PLACIDE, MILLIE WILLIAMS, ELIZABETH DURAN SWINFORD, UNIVERSAL PLACEMENT INTERNATIONAL, INC., LOURDES LULU NAVARRO, HOTHELLO JACK NAVARRO, PARS INTERNATIOAL PLACEMENT AGENCY, EMILIO V. VILLARBA, ROBERT B. SILVERMAN, SILVERMAN AND ASSOCIATES,

                        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 8:10-cv-01172-JAK-MLG

**AMENDED MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION IN ACCORDANCE WITH COURT ORDER OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD**

HEARING DATE:  August 29, 2011
TIME:  10:00 a.m.
COURTROOM NO. 10D

HONORABLE JOHN A. KRONSTADT

MAGISTRATE JUDGE MARC L. GOLDMAN

-ii-

AMENDED MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.3

1

<u>TABLE OF CONTENTS</u>

2

3  I. SUMMARY OF ARGUMENTS ...................................................................1

4  II. BACKGROUND ...........................................................................................1

5      A.    Plaintiffs' Claims .........................................................................1

6      B.    EBR's Hiring of EBR Plaintiffs And Filipino Teachers.......................3

7      C.    The Post-Hiring Contacts ..................................................................7

8      D.    The Plaintiffs And Their Agency Relationship With UPI/PARS .......10

9  III. LAW AND ARGUMENT ..........................................................................12

10     A.    Applicable Legal Precepts ...............................................................12

11         1.    Plaintiffs Cite An Incorrect Standard, As 9th Circuit
12                     Decision in Dukes v. Wal-Mart has been overturned
                       by Supreme Court.........................................................12

13         2.    Plaintiffs' Burden Under Rule 23 ...............................12

14     B.    The Tardiness of the Negligent Hiring Claims Renders it Unfit For
15            Class Certification ....................................................................14

16     C.    Determining Whether EBR Enjoys Tort Immunity Under
              Louisiana's Workers' Compensation Law Will Require Further
17            Individualized Determinations as to Each Member of the EBR
18            Class ........................................................................................16

19     D.    Liability, Causation, and Comparative Fault Will Require
              Individualized Determinations Inappropriate for a Class Action .......18

20     E.    Plaintiffs Are Unable To Meet Requirements of Rule 23(a) .............23

21         1.    Numerosity Is Questionable...................................................23

22         2.    Plaintiffs And Purported Subclass Members Have
23                     Not Suffered Same Injury, And Therefore,
24                     Commonality Requirement Is Not Satisfied .........................24

25         3.    Claims of Purported EBR Teacher Subclass Not
                       Typical........................................................................26

26         4.    Adequacy of Representation ...............................................27

27

28   Case No. 8:10-cv-01172-JAK-MLG            AMENDED MEMORANDUM IN OPPOSITION TO
                                                     PLAINTIFFS' MOTION FOR CLASS
                                        CERTIFICATION  OF DEFENDANT THE EAST
                                        BATON ROUGE PARISH SCHOOL BOARD

F.  Requirements of Rule 23(b)(3) not met ...................................................28

    1.  Plaintiffs' Claim for Negligence Ill-Suited For Class Action, as Common Claims Do Not Predominate Over Individualized Claims ...................................................28

    2.  Class Adjudication Of Claims Against EBR Is Not Superior To Individual Actions.............................................30

Case No. 8:10-cv-01172-JAK-MLG

-iv-

AMENDED MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.3

## **TABLE OF AUTHORITIES**

**FEDERAL CASES**

Amchem Products, Inc. v. Windsor,
  521 U.S. 591, 117 S.Ct. 2231 (1997).................................................23, 31, 42, 43

Arch v. American Tobacco Company,Inc.,
  175 F.R.D. 469 (E.D.Pa. 1997), aff'd. 161 F.3d 123 (3rd Cir. 1998, cert.
  denied, 526 U.S. 114, 119 S.Ct. 1760, 143 L.Ed.2d 791 (1999)...................... 42

Boughton v. Cotter Corp.,
  65 F.3d 823 (10th Cir. 1995) ...........................................................................31

Desai v. Deutsche Bank Securities, Ltd.,
  573 F.3d 931 (9 Cir. 2009) ..............................................................................35

Gartin v. S&M Nutec LLC,
  245 F.R.D. 429 (C.D.Cal. 2007)......................................................................31

General Tel. Co. v. EEOC,
  100 S.Ct. 1698 (1980).....................................................................................22

General Telephone Co. of Southwest v. Falcon,
  457 U.S. 147, 102 S.Ct. 2364, 72 L. Ed. 2d 740 (1982) .............................22, 23

Gregurek v. United of Omaha Life Ins. Co.,
  2009 WL 4723137 (C.D.Cal. 11/10/09) ...........................................................26

Ikonen v. Hartz Mountain Corp.,
  122 F.R.D. 258 (S.D.Cal. 1988) ......................................................................31

Quezada v. Loan Center of California, Inc.,
  2009 WL 5113506 (E.D.Cal. Dec. 18, 2009)................................................25, 26

Paxil Litig.,
  212 F.R.D. 539 (C.D.Cal. 2003).......................................................................31

Jenkins v. Raymark Industries, Inc.,
  782 F.2d 468 (5th Cir. 1986) ...........................................................................42

-v-

Case No. 8:10-cv-01172-JAK-MLG            AMENDED MEMORANDUM IN OPPOSITION TO
                                         PLAINTIFFS' MOTION FOR CLASS
                                         CERTIFICATION OF DEFENDANT THE EAST
                                         BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.3

Minvielle v. Kaiser Aluminum & Chemical Corp.,
    766 F.2d 189 (5th Cir. 1985) (applying Louisiana law)......................................28

O'Connor v. Boeing North American, Inc.,
    197 F.R.D. 404 (C.D.Cal. 2000)........................................................................26

Owner-Operator Independent Drivers Ass'n, Inc. v. New Prime, Inc.,
    339 F.3d 1001 (8th Cir. 2003) ..........................................................................31

Stephenson v. Bell Atlantic Corp.,
    177 F.R.D. 279 (D. N.J. 1997)..........................................................................36

Thompson v. American Tobacco Co., Inc.,
    189 F.R.D. 544 (D. Minn. 1999) ......................................................................43

Thompson v. Jiffy Lube Intern., Inc.,
    250 F.R.D. 607 (D. Kan. 2008) ........................................................................35

Unger v. Amedisys, Inc.,
    401 F.3d 316 (5th Cir. 2005) ............................................................................45

United States Fidelity & Guaranty Co. v. Lee Investments, LLC,
    641 F.3d 1126 (9th Cir. 2011) ..........................................................................28

Wal-Mart Stores, Inc. v. Dukes,
    ___ S.Ct. ___, 2011 WL 2437013 (2011) ..............................21,22,23,30,39,46

Western States Wholesale, Inc. v. Synthetic Industries, Inc.,
    206 F.R.D. 271 (C.D.Cal. 2002)........................................................................26

**LOUISIANA CASES**

Bickham v. Orleans Parish School Board,
    488 So.2d 1248 (La. App. 4 Cir. 1986) ............................................................29

Brown v. Wells Fargo Bank N.A.,
    168 Cal.App.4th 938, 958-59, 85 Cal. Rptr. 3d 817 (2008) ............................35

Certified Cleaning & Restoration, Inc. v. Lafayette Insurance Co.,
    10-948 (La. App. 5 Cir. 6/14/11); 2011 WL 2328011 ................................26, 27

Gonzales v. Gonzales,
    2008-0258 (La. App. 4 Cir. 9/30/09); 20 So. 3d 557, 563; ............................35

-vi-

Case No. 8:10-cv-01172-JAK-MLG

AMENDED MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.3

Green v. Turner,
   437 So.2d 956 (La. App. 2 Cir. 1983) ................................................................29

Johnson v. Littleton,
   45,323 (La. App. 2 Cir. 5/19/10); 37 So. 3d 542....................................24

Libersat v. J&K Trucking, Inc.,
   2000-0192 (La. App. 3 Cir. 10/11/00),
   772 So.2d 173 ...................................................................32

Louviere v. Louviere,
   2001-0089 (La. App. 1 Cir. 6/5/02); 839 So.2d 57 ...........................................33

Mayes v. Deep South Chemical, Inc.,
   2011-91 (La. App. 3 Cir. 6/1/11); ___ So.3d ___, 2011 WL 2135562 ..............29

Miller v. Entergy Services, Inc.,
   2004-1370 (La. App. 4 Cir. 7/13/05); 913 So.2d 143 ...........................................32

Wakefield v. Kyle,
   44, 317 (La. App. 2 Cir. May 17, 2009); 12 So. 3d 468....................................27

**OTHER STATUTES**

La. Civ. Code Articles 2323 , 2324 ................................................................33

La. Civ.Code Article  3492 ................................................................24

**RULES**

Fed.R.Civ.P. 23(b)(3)(A)-(D) ................................................................46

Fed. R. Civ. Proc. 23(a)(2)................................................................38

Rule 23 ................................................................21,22,23,30,43

Rule 23(a)................................................................21, 22, 23, 36

Rule 23(a) and (b) ................................................................9

Rule 23(b)................................................................23

Rule 23(b)(2) ................................................................46, 47

-vii-

PD.4883407.3

Rule 23(b)(3) ...........................................................................................23, 43, 45, 46

-viii-

AMENDED MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.3

Defendant, the East Baton Rouge Parish School Board ("EBR") hereby opposes plaintiffs' motion for class certification, which seeks certification of a sub-class of teachers employed by EBR (the "EBR Class") represented by named plaintiffs Mairi Nunag Tanedo, Ingrid Cruz, and Donnabel Escuadra ("EBR Plaintiffs").

## I.  SUMMARY OF ARGUMENTS

EBR Plaintiffs' claims are untimely, and are therefore, clearly not subject to class certification.   Indeed, the required assessment of the timeliness of each plaintiff's claim alone renders the action unfit for class certification.

Even if the statue of limitations was not an issue, EBR plaintiffs are unable to satisfy the commonality, typicality, and predominance requirements of Rule 23(a) and (b), as this case involves determinations of liability, causation, comparative fault, and damages, as well as the applicability of tort immunity under Louisiana's Workers' Compensation law, which will need to be determined, as to each class member, on an individualized, case-by-case basis.   This is demonstrated by the varying facts proffered by each of the EBR Plaintiffs.  This Court should deny class certification.

## II.  BACKGROUND

### A.    Plaintiffs' Claims

Plaintiffs present a dramatic opening, alleging that a California labor contractor "and its confederates" "ensnared" plaintiffs in an illegal scheme wherein their labor was procured through "threats of serious financial harm and abuse of legal process."

1

Case No. 8:10-cv-01172-JAK-MLG

MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

In doing so, Plaintiffs ignore the fact that the claims of "trafficking" and "forced labor" against EBR have been dismissed, and the sole remaining claim against EBR is for the tort of negligent hiring. (*See* Doc. 116).

What plaintiffs do allege concerning the claim against EBR is that, at the invitation of Lulu Navarro ("Navarro"), a representative of Universal Placement International ("UPI"), EBR interviewed thousands of Filipino candidates seeking employment in the United States. EBR ultimately selected approximately 239 of the proffered candidates, including the EBR Plaintiffs, for employment in the EBR school district. (Doc. 134, p. 3). These fortunate candidates signed employment contracts with EBR and began teaching, with the same salary and same benefits as their peers.

Plaintiffs' only salient complaint regarding this process is that they paid differing amounts in fees for to their job placement agency(s), including some amounts that they did not originally expect to pay. In this regard, Plaintiffs assert that they were misled, not only by UPI, but also by agents of a Filipino entity, with which they also contracted, called PARS. And to make matters more complicated, the ubiquitous Navarro appears to be an agent and employee of both PARS and UPI.

In any case, none of the EBR Plaintiffs have testified that EBR had any involvement in their dealings with Navarro, UPI, PARS, or anyone else in either the Philippines or California, where they paid the monies they now seek to recover and signed the contracts they now disavow. If the Court is questioning what EBR did to

-2-

Case No. 8:10-cv-01172-JAK-MLG

AMENDED MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

find itself subject to a proposed class action, the answer is simple:  EBR accepted UPI's invitation to interview the teachers UPI made available to it, and then offered some of these candidates, including the EBR Plaintiffs, jobs.   These employment agreements were made at different times, and involved different assignments in different schools within EBR, but all at starting salaries between $36,000 and $50,000 a year, "enormous" amounts by plaintiffs' own definition.  (*See* Doc. 134, p. 3).

**B.      EBR's Hiring of EBR Plaintiffs And Filipino Teachers**

In 2006, UPI was one of the many companies that solicited EBR to hire international teachers.   UPI's proposal was that it would make qualified Filipino teacher candidates available to EBR at no cost to EBR, *i.e.*, UPI agreed to reimburse to EBR any expenses incurred in the employment process, including travel expenses, visa processing fees, and legal costs.  (Donaldson Decl. ¶ 5; Exh. A)[1]

The terms offered by UPI were the same terms offered to EBR by a variety of other firms offering placement of their candidates in the school system.  EBR has in the past hired foreign teachers under the H-1B visa system, and always under the same terms and conditions as offered by UPI.  For example, EBR often fills its positions for French language teachers with the assistance of a group known as CODOFIL ("Council for the Development of French in Louisiana"), and CODOFIL,

---

[1] The declaration of Daphne Donaldson and corresponding exhibits are attached to this opposition memorandum as Exhibit 1.

-3-

AMENDED MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.3

as UPI, always takes cares of the paperwork and expenses on behalf of the teachers, leaving to EBR the normal costs of employment.[2] (Donaldson Decl. ¶ 7)

At the time of UPI's solicitation, EBR was experiencing a critical teacher shortage in certain areas including math, science, and special education, and would start each school year with approximately 200 vacancies. (Swinford Decl. ¶ 3)[3] UPI represented that it could present to the School Board teachers who were considered "highly qualified" because of their education and credentials. (Swinford Decl. ¶ 3; Exh. A) EBR decided to interview UPI's teachers, as opposed to some teachers being proffered by the other agencies soliciting EBR, in part because the State of Louisiana's Recovery School District had begun to use UPI to hire teachers from the Philippines and had not had any problems with these teachers. (Swinford Decl. ¶ 5)

Plaintiffs have alleged that EBR did not run a comprehensive background check on UPI. The reason for this is that EBR did not "hire" UPI; rather, it hired the teachers. UPI was, from EBR's perspective, acting as agent for the teachers in soliciting EBR's interest in employing their clients. EBR did not pay UPI anything for its "services," and there was no contract specifying any required performance by

_____

[2] In this particular case the EBR Plaintiffs, after they ceased using UPI/PARS for their visa renewals, hired their own attorneys. From EBR's perspective, nothing changed; someone acting on behalf of the EBR Plaintiffs submitted the completed paperwork, which was reviewed by EBR, signed by the appropriate official, and processed.
[3] The declaration of Dr. Elizabeth Duran Swinford and corresponding exhibits are attached to this opposition memorandum as Exhibit 2.

-4-

Case No. 8:10-cv-01172-JAK-MLG

AMENDED MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.3

either EBR or UPI.  Rather, as Plaintiffs' own allegations reveal, the payment of consideration, and the execution of a contract specifying the performance of services for a fee, was a transaction between Plaintiffs and UPI/PARS, not EBR and UPI.

In regard to the actual hiring of teachers, EBR held its first round of interviews in July of 2007 via video-conference, and hired twenty-one teachers, including EBR plaintiff Ingrid Cruz.[4]  (Swinford Decl. ¶ 6; Donaldson Decl. ¶ 9)  EBR employees present for these videoconference interviews included the Recruitment Manager, Daphne Donaldson, and various principals from EBR schools.  (Donaldson Decl. ¶ 9)  Plaintiff, Ingrid Cruz, was hired by EBR in 2007 to begin teaching in August of 2007 at a salary of more than $36,000 per year.  (Donaldson Decl. ¶ 9; Cruz at 39-40, 197)[5]

When the first set of teachers arrived in Baton Rouge, Daphne Donaldson voluntarily assisted them by picking them up from the airport, taking them to the grocery store, and taking them to the bank to set up checking accounts.  Although this was not an obligation of EBR, Donaldson and other EBR officials wanted the teachers to feel welcome upon their arrival.  (Donaldson Decl. ¶ 16)  Later, when this became too burdensome, Donaldson contacted the local Filipino association, which assumed the role of welcoming newly arriving Filipino teachers.  (Donaldson Decl. ¶ 19)

EBR was happy with these teachers and most, if not all, were highly-qualified

---

[4]  Although the numbers in this memorandum represent the number of offers made to Filipino teachers, not all offers were approved by the USCIS.

Case No. 8:10-cv-01172-JAK-MLG

AMENDED MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.3

and certified by EBR as per the state of Louisiana's guidelines right away.  (Swinford Decl. ¶ 7)  Because of the success of the first round of hiring of teachers from the Philippines, EBR planned their first trip to the Philippines to interview teachers. Swinford and some EBR school principals made this trip in November of 2007 and made offers of employment to another set of Filipino teachers.  (Swinford Decl. ¶ 8) This time, approximately eighty teachers were given offers of employment.

EBR representatives made a final trip to the Philippines in March of 2008, which Swinford and various principals attended, and approximately 120 teachers were given job offers.  (Swinford Decl. ¶ 9)  Mairi Nunag-Tanedo was one of the teachers hired at this time.  Tanedo was given an offer of employment on April 8, 2008, and arrived in the U.S. on July 24, 2008 to begin teaching during the 2008 fall semester at EBR at a salary of more than $40,000.  (Tanedo at 29, 41, Donaldson Decl. ¶ 13)[6] Donnabel Escuadra was also hired as a result of this "third wave" of interviews, signing her offer of employment from EBR on April 15, 2008 and also began teaching in August 2008 at a salary of approximately $48,000.  (Escuadra at 123-24, 289)[7]

The Filipino teachers hired by EBR received offers of employment as a result of three "waves" of interviews, the latter two occurring in the Philippines themselves. Thus, the EBR Class came to the U.S. at different times beginning in the fall of 2007

---

[5] Excerpts from the deposition of Ingrid Cruz are attached as Exhibit 3.
[6] Excerpts from the deposition of Mairi Nunag-Tanedo are attached as Exhibit 4.

-6-

AMENDED MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

through 2008. (Swinford Decl. ¶ 10) One of the EBR Plaintiffs (Cruz) was hired as a result of this first "wave," which did not involve any EBR employees traveling to the Philippines; the other two EBR Plaintiffs (Tanedo and Escuadra) were hired as part of the "third wave." No proposed class representative was hired as part of the "second wave," *i.e.*, the first time EBR employees traveled to the Philippines.

### C.    The Post-Hiring Contacts

Although the instant claim is one of "negligent hiring," it is true that EBR, as the employer of the EBR Class, had continuing and frequent contact with putative class members. As discussed later herein, to the extent that EBR Plaintiffs would seek to base any of their "negligent hiring" claim on these post-employment contacts, EBR maintains that such claim is barred by Louisiana's Workers' Compensation law.

Following their employment, EBR Plaintiffs admitted that they discussed certain individual problems with Swinford and other EBR officials, and that they were not retaliated against by EBR. For instance, Cruz met with Swinford because Cruz's visa was mistakenly only renewed for a six-month period, and Swinford made sure that Cruz's visa was extended. (Swinford Decl. ¶ 14; Cruz at 226-27, 267-68) Cruz admitted that neither Swinford nor any EBR official ever threatened her or said she wanted her to be fired. (Cruz at 253) Indeed, Cruz admits that Swinford offered her assistance in extending her visa. (Cruz at 254, 267-68) According to Cruz, Swinford

---

[7] Excerpts from the deposition of Donnabel Escuadra are attached as Exhibit 5.

-7-

Case No. 8:10-cv-01172-JAK-MLG

AMENDED MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.3

told Cruz that UPI could not get her fired, and Cruz believed this.  (Cruz at 272)

Indeed, when Swinford and other Human Resources employees heard that some teachers had complained that Navarro or other UPI representatives were threatening to recommend the teachers' termination if they did not pay their contracted fees, Swinford decided to hold a mandatory meeting for international teachers in December of 2008 in order to ensure that the teachers were aware that UPI had no influence over their employment with EBR.  (Swinford Decl. ¶ 12)  As is reflected by the agenda for this meeting, Swinford made very clear at this meeting that only EBR administrators could recommend the teachers' termination for performance-related issues.  (Swinford Decl. ¶ 12; Exh. A; Tanedo at 241-42)  Further, after hearing that teachers were making various complaints regarding housing and other issues, Swinford and other EBR administrators recommended that the teachers join unions.  (Swinford Decl. ¶ 13)  And, as aforementioned, Daphne Donaldson set the teachers up with the Filipino Association to ensure that they had an adequate forum and representation for any issues they experienced in the U.S.  (Donaldson Decl. ¶ 16, 19)

As for the EBR plaintiffs' direct complaints to EBR, Tanedo never complained to anyone at EBR about the fees she paid the agency, and she testified that from what she could gather from conversations with others, all of the teachers paid different fees.  (Tanedo at 292-94)  Escuadra, however, testified that she made general complaints to her principal, Lee Coleman that were not addressed - that her visa was not issued for

-8-

AMENDED MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.3

three years and possibly about the fees - although Escuadra said he was a very nice man.  (Escuadra at 276-79)   Around the time this lawsuit was filed, EBR officials received a written manifesto from a number of EBR teachers expressing their discontent with the lawsuit, stating that they fully supported EBR and were not part of the class action.  (Donaldson Decl. ¶ 26; Exh. G; Swinford Decl. ¶ 16)

All three of the EBR plaintiffs still work for EBR.  Tanedo testified that she is satisfied with her employment at EBR, and that she came to work for EBR on her own volition.  (Tanedo at 245-46)  Cruz, on the other hand, claims that she is not really satisfied with her employment at EBR, because there is no way of knowing if she will be hired next year and there is no job security, although she is aware that all EBR teachers are in the same situation as she is.  (Cruz at 242-45)  Escuadra testified that she would choose to remain working in her current job even if she did not have any debts, but later made a reference to working against her will.  (Escuadra at 232, 307)  In addition to attempting to represent a class of people that includes current employees whose feelings are probably just as mixed as those of the named plaintiffs, the proposed class also includes 33 former employees, terminated for various reasons, who may wish to link termination claims to this case.  (Donaldson Decl. ¶ 15)

Plaintiffs' testimony as to their claims against EBR differs in a few other significant respects.   Tanedo stated in her deposition that EBR had a "moral obligation . . . to know what will be the process that their future employees will be

-9-

AMENDED MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.3

getting into;" and that although EBR had nothing to do with her signing contracts with UPI or PARS, that it should have looked more deeply into the process. (Tanedo at 295-96) Escuadra on the other hand found EBR to be at fault because it not address her concerns about a three-year visa (despite the fact she admitted that she never expressed these concerns to EBR), and that EBR's unknowing inaction was somehow a "threat" to her. She also asserted that EBR had an obligation to provide her with a three-year visa because Villarba of PARS International (an entity which EBR had never heard of before this lawsuit) said the visa would be for three years. (Escuadra at 281-82) Escuadra also claimed that EBR was part of a scheme to traffic and defraud her because simply because UPI was able to arrange an interview with EBR, and because EBR ultimately hired her. (Escuadra at 304-09) Cruz, on the other hand, claimed that EBR, and specifically Swinford, was involved in a "scheme" to "traffic" her because when Cruz complained to Swinford that her visa had only been renewed for six months, Swinford called UPI and Robert Silverman and requested that it be renewed for one year. (Cruz at 247-54) Essentially, Cruz is making claims against EBR because it communicated with UPI **for her benefit**. *Id.*

### D.     The Plaintiffs And Their Agency Relationship With UPI/PARS

As referenced *ante*, the evidence shows that UPI was the agent of Plaintiffs, not the other way around. At best, EBR can only have "hired" UPI, as it never received a proposal or offer from PARS, or any other co-defenadnt. However, plaintiffs make

-10-

AMENDED MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

many claims relating to PARS and PARS representatives, including Emilio Villarba, *i.e.*, claims as to persons outside the scope of any "negligent hiring" claim.

More importantly, the EBR plaintiffs admittedly obtained the services of PARS and/or UPI to interview with United States school districts before they even knew of the existence of EBR. The teachers admitted that they hired this agency **not for the opportunity to work for EBR, but to be placed in a school, *any* school, in the United States**. (*See* Tanedo at 75, Escuadra at 21, 24, Cruz at 82-83, 109)

Indeed, it is ironic (and relevant for purposes of contributory negligence/comparative fault) that, although plaintiffs allege that EBR was negligent in "hiring" UPI, plaintiffs clearly did not engage in much research before contracting with PARs and/or UPI. Cruz, for instance, admits that she did not ask the total amount of fees before getting on the plane to come to the U.S. (Cruz at 184) Further, Tanedo admitted that although she could have looked into Navarro in the Philippines, she did not. (Tanedo at 305-307) She admitted that although she knew she was dealing with UPI, she only googled PARS. (*Id.*) EBR Plaintiffs also did not inquire with other employment agencies as to their fees and operations. (Tanedo at 198-199; Escuadra at 22-23, Cruz at 225-226)

In sum, the EBR Plaintiffs signed contracts with and paid fees to PARs and UPI for their services. EBR, on the other hand, dealt only with UPI, and did not make any payment for services; again, it hired the teachers, not UPI. (Swinford Decl. ¶ 4) EBR

-11-

AMENDED MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

was simply a potential employer for the teachers UPI was paid to represent.

## III.  LAW AND ARGUMENT

**A.**     **Applicable Legal Precepts**

    **1.**     **Plaintiffs Cite An Incorrect Standard, As the 9th Circuit Decision in <u>Dukes v. Wal-Mart</u> has been overturned by Supreme Court**

The Supreme Court in <u>Wal-Mart Stores, Inc. v. Dukes</u> overturned the Ninth Circuit decision relied upon by plaintiffs, and in doing so, clarified the limited availability of the class action:

> Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc . . . 'sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question' . . . and that certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.' Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped.  '[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' Nor is there anything unusual about that consequence.  The necessity of touching aspects of the merits in order to resolve preliminary matters, e.g., jurisdiction and venue, is a familiar feature of litigation.

<u>Wal-Mart Stores, Inc. v. Dukes</u>, ___   S.Ct. ___, 2011 WL 2437013, *7 (2011) [citations omitted].  Plaintiffs face a significant burden in proving their class claims.

    **2.**     **Plaintiffs' Burden Under Rule 23**

"To certify a class action, Plaintiffs must set forth *prima facie* facts that support the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality;

-12-

AMENDED MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

and (4) adequacy of representation." <u>Colapinto v. Esquire Deposition Services, LLC</u>, 2011 WL 913251, *2 (C.D. Cal. 3/8/11) (citation omitted).   A class representative must possess the same interest, and have suffered the same injury, as the purported class members.   <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591, 117 S.Ct. 2231, 2245-46, 138 L.Ed.2d 689 (1997).   "These requirements effectively limit the class claims to those fairly encompassed by the named plaintiff's claims."   <u>General Telephone Co. of Southwest v. Falcon</u>, 457 U.S. 147, 156, 102 S.Ct. 2364, 2369-70, 72 L. Ed. 2d 740 (1982) (internal quotation marks and citation omitted).   A class action "may only be certified if the trial court is satisfied, after a **rigorous analysis**, that the prerequisites of Rule 23(a) have been satisfied.   <u>Falcon</u>, 457 U.S. at 156.

"In addition to the Rule 23(a) requirements, the party seeking certification bears the burden of meeting at least one requirement of Rule 23(b).   <u>Colapinto</u>, 2011 WL 913251, *2 (citation omitted).   For plaintiffs seeking certification under Rule 23(b)(3),[8] the additional and more rigorous factors are predominance and superiority.   Only those proposed classes meeting all six (6) requirements of Rule 23 may be certified.   <u>Amchem</u>, 117 S.Ct. at 2244-46.   For the reasons that follow, plaintiffs

---

[8] While Plaintiffs also posit a claim for certification under Rule 23(b)(2), a class cannot be certified under this rule when the primary claim is not one for injunctive relief.   <u>Wal-Mart Stores, Inc. v. Dukes</u>, 2011 WL 2437013 at *12.   Plaintiffs do not seek an injunction against EBR, whose alleged wrongdoing took place in the past, and to the extent they may purport to do so, there is no legal precedent for an injunction for negligence.   Rule 23(b)(2) is inapplicable here.

-13-

Case No. 8:10-cv-01172-JAK-MLG

AMENDED MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.3

1    simply cannot satisfy these requirements.

2    **B.     Timeliness and Liability Issues, Including EBR's Changing Knowledge,**
3    **Render the Negligent Hiring Claim Unfit For Class Certification**

4          The Court has previously determined that Louisiana law governs the negligent

5
6    hiring claim. (*See* Doc. 116)  Under Louisiana law, the applicable prescriptive period[9]

7    is one year, and "commences to run from the day injury or damage is sustained."  La.

8    Civ.Code art. 3492.  Johnson v. Littleton, 45,323 (La. App. 2 Cir. 5/19/10); 37 So. 3d
9
10   542, 545.  In this case, plaintiffs' "negligent hiring" claims against EBR arise out of

11   the purported "hiring" of UPI by EBR in 2006, and their resulting "injuries" (which

12   commenced the running of the limitations period) occurred at different times in 2007

13
14   and 2008, when they paid "exorbitant" fees of differing amounts to PARS (which

15   EBR did not hire) in the Philippines.  (Tanedo at 224-25, Escuadra at 217, Docs. 134-

16   1, 134-2, 134-3)  Because this lawsuit was not filed until late 2010 (Doc. No. 1), the

17   negligent hiring claim (as to the entire class) is prescribed.

18
19         While EBR anticipates that Plaintiffs will dispute the foregoing basic

20   application of the law to the facts, the mere fact that this is a contested issue for the

21   EBR Plaintiffs and the EBR Class demonstrates that the claim against EBR should not

22
23   be certified in a class action.  The class definition proposed by plaintiff includes all

24   Filipino teachers hired through UPI by EBR, regardless of when they incurred their

25
26   ───────────────
     [9] In Louisiana, "prescriptive period" is synonymous with "statute of limitations."

27                                          -14-
28   Case No. 8:10-cv-01172-JAK-MLG            AMENDED MEMORANDUM IN OPPOSITION TO
                                              PLAINTIFFS' MOTION FOR CLASS
                                              CERTIFICATION OF DEFENDANT THE EAST
                                              BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.3

damages or became employed by EBR.  Because it is the timing of these events that triggers the running of the applicable prescriptive period under Louisiana law, the Court will have to examine each claimants' dealings with the defendants, and the terms and conditions of the debts they allegedly incurred (their "injuries"), to determine if that class member's claim is timely.  This Court and others have found that the mere fact such an examination is required may indicate a failure to meet the typicality requirement.   Quezada v. Loan Center of California, Inc., 2009 WL 5113506, *7 (E.D.Cal. 12/18/09) (class certification inappropriate because statute of limitations might bar the class representative's claim, and thus class representative's claims were "typical" only of those who took out loan at the same time, and under the same circumstances, as the class representative); Gregurek v. United of Omaha Life Ins. Co., 2009 WL 4723137 (C.D.Cal. 11/10/09) (limitations defense requires individual findings specific to each class member on breach of contract claim and is not appropriate for class certification); Western States Wholesale, Inc. v. Synthetic Industries, Inc., 206 F.R.D. 271, 278-80 (C.D.Cal. 2002) (individual inquiries into cause, injury, and the applicable statute of limitations, predominated over common issues of whether advertising was false or misleading, and whether defendant acted intentionally); O'Connor v. Boeing North American, Inc., 197 F.R.D. 404, 413-14 (C.D.Cal. 2000) (individual issues relating to statute of limitations predominated over common issues of nuisance, trespass and unfair business practices claims).

-15-

Case No. 8:10-cv-01172-JAK-MLG

AMENDED MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.3

The temporal distinctions among class Members bears further relevance insofar as, under Louisiana law, the fact that an existing contractor has worked for an employer for a length of time, without any complaint or notice of problems, indicates that it is reasonable to continue to use that contractor, without any need for further inquiry.  Certified Cleaning & Restoration, Inc. v. Lafayette Insurance Co., 10-948 (La. App. 5 Cir. 6/14/11); 2011 WL 2328011 (claim of negligent hiring failed when defendant had used contractor before on prior roofing jobs, with no problems).  In this case, by the time the second and third "waves" of hires were made (the latter of which includes Tanedo and Escuadra), EBR had hired scores of teachers through UPI and (at that point in time) had heard no complaints.  Obviously, this situation is different from those teachers who were hired  as part of the "first wave" (like Cruz), when UPI had no track record with EBR.  This is a liability issue, and one that demonstrates further how timeliness issues militate against certification of the EBR Class.

**C.      Determining Whether EBR Enjoys Tort Immunity Under Louisiana's Workers' Compensation Law Will Require Further Individualized Determinations as to Each Member of the EBR Class**

To the extent Plaintiffs attempt to assert claims against EBR for conduct that occurred after the EBR Class accepted employment with EBR, any such claim might be barred by the tort immunity conferred to all employers (including public employers) under Louisiana's Workers' Compensation law.  See Wakefield v. Kyle, 44, 317 (La. App. 2 Cir. May 17, 2009); 12 So. 3d 468, 473 (employee's claim

-16-

AMENDED MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

against employer for negligent hiring of a coworker barred by workers' compensation immunity).  Under Louisiana's workers' compensation scheme, the exclusive remedy for harms arising from the employer-employee relationship is worker's compensation benefits, and administration of this remedy falls within the exclusive jurisdiction of Louisiana's Office of Workers' Compensation.  <u>Minvielle v. Kaiser Aluminum & Chemical Corp.</u>, 766 F.2d 189, 190 (5th Cir. 1985).  Any claims of the EBR Class that fall within the ambit of the workers' compensation scheme cannot be heard by this Court.  <u>Minvielle</u>, 766 F.2d at 190; *see* <u>United States Fidelity & Guaranty Co. v. Lee Investments, LLC</u>, 641 F.3d 1126, 1133-34 (9th Cir. 2011).

In this case, to adjudicate this defense, the Court will have to determine when the "employer-employee" relationship between EBR and each member of the class commenced, and whether any of the alleged injuries "arose out of" this relationship.[10] In this vein, it is important to observe that the purpose of the "trafficking scheme"

---

[10] A claim falls within the ambit of Louisiana's workers' compensation scheme when the claim "arises out of" the employer-employee relationship, and a claim can be found to "arise out of" that relationship when the employer has in some way involved itself in the transportation of the employee as an incident of the employment agreement.  <u>Mayes v. Deep South Chemical, Inc.</u>, 2011-91 (La. App. 3 Cir. 6/1/11); ___ So.3d ___, 2011 WL 2135562, *3.  In the specific context of negligent hiring, Louisiana courts have found that an employee's claim "arises out of" the employment relationship when the employee's employment requires her to be present at the place and time of injury.  <u>Bickham v. Orleans Parish School Board</u>, 488 So.2d 1248, 1250 (La. App. 4 Cir. 1986), *writ denied*, 491 So.2d 24 (La. 1986).  An employer is immune from claims that arise out of the misconduct of a "co-employee" of the plaintiff.  <u>Green v. Turner</u>, 437 So.2d 956, 958-59 (La. App. 2 Cir. 1983).

AMENDED MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.3

Plaintiffs allege took place was to obtain the employment of Plaintiffs. Plaintiffs have also testified that their "bondage" continued after they commenced employment, and that they were "forced" to work. Thus, at least some of the conduct Plaintiffs challenge would seem to be conduct that falls within the scope of the tort immunity afforded by the Workers' Compensation Law. In any case, resolution of this defense will require a series of case-by-case, fact-intensive determinations - the very sort of determinations that are ill-suited to a class action.

## D.   Liability, Causation, and Comparative Fault Will Require Individualized Determinations Inappropriate for a Class Action

As stated by the United States Supreme Court, "Rule 23 does not set forth a mere pleading standard," and sometimes "it may be necessary for the court to probe behind the pleadings" on the certification question. <u>Wal-Mart Stores, Inc. v. Dukes</u>, 2011 WL 2437013 at *7. With only a slight probing in this case, it is clear that plaintiffs' negligent hiring claim is not appropriate for class certification.

The EBR Plaintiffs in this case have asserted a claim for negligent hiring against EBR, although each plaintiff has provided different testimony as to causation and damages. Plaintiffs' memorandum focuses on their claims against other defendants and simply fails to address how individual causation issues could be properly adjudicated through class treatment. "Because the proximate causation analysis involves individualized factual issues, **courts generally consider negligence claims ill-suited for class action**." <u>Gartin v. S&M Nutec LLC</u>, 245 F.R.D. 429, 439

-18-

Case No. 8:10-cv-01172-JAK-MLG

AMENDED MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.3

(C.D.Cal. 2007) [emphasis added].[11]

Furthermore, Plaintiffs fail to recognize that the nature of the negligent hiring claim against EBR will require this Court to make a determination, as to each member of the EBR Class, and separate from any conduct of EBR, that UPI breached a tort duty owed under Louisiana law to such member.  This is because under Louisiana law, a precondition to being held liable for "negligent hiring" is a determination that the person hired also breached a legal duty owed to the plaintiff.  Libersat v. J&K Trucking, Inc., 2000-0192 (La. App. 3 Cir. 10/11/00); 772 So.2d 173, 179 ("If Mitchell did not breach a duty to the Appellants then no degree of negligence on the part of Patterson in hiring Mitchell would make Patterson liable to the Appellants."), writ denied, 2001-0458 (La. 4/12/01); 789 So.2d 598.

---

[11] *See* Amchem, 117 S.Ct. at 2249-50 (class certification inappropriate in mass tort case; the predominance criteria was not satisfied by the members' shared experience of asbestos exposure, given the greater number of questions peculiar to each class member, and the significance of the uncommon questions); Boughton v. Cotter Corp., 65 F.3d 823, 826-28 (10th Cir. 1995) (in action based on purported exposure of people and property to emissions of uranium mill, court did not abuse discretion in refusal to certify class based on finding that individual issues predominated, including whether purchasers were aware of contamination and extent and nature of injuries); Owner-Operator Independent Drivers Ass'n, Inc. v. New Prime, Inc., 339 F.3d 1001, 1012 (8th Cir. 2003) (holding that because applicable statute provided right to recover only to persons who sustained damages as result of carrier violation, recovery for any plaintiff would be based on individual, not common, questions of fact and therefore class certification was not appropriate); In re: Paxil Litig., 212 F.R.D. 539, 551 (C.D.Cal. 2003) (denying class certification for negligence and product liability claims against drug manufacturer partly because causation analysis would require analysis of myriad of plaintiffs' individual medical histories).

This fact has further significance because the evidence shows that, at most, EBR "hired" UPI, not the other defendants.   While Plaintiffs may be entitled to approach the California and Filipino defendants as an undifferentiated mob for purposes of their "trafficking" and "forced labor" claims, the same is not true of the negligent hiring claim against EBR.   There is no principle of law that supports the imposition of liability in a "negligent hiring" claim when the tortious conduct was undertaken by someone other than the specific person "hired."   To the extent Plaintiffs desire to associate UPI to PARS, the "Legal Facilitator Defendants," or any other party or non-party for purposes of this Louisiana cause of action, they will need to demonstrate the existence of a "single business enterprise," which involves a complicated, fact-intensive analysis of the business operations of all putative members of the "enterprise." *See* Miller v. Entergy Services, Inc., 2004-1370 (La. App. 4 Cir. 7/13/05); 913 So.2d 143, 147-48.[12]

---

[12] For example, Lulu Navarro is named as an individual defendant, but she is also apparently an employee or officer of both UPI and PARS.   Each of the class representatives has testified as to contacts with Ms. Navarro, at various times, both in the Philippines, California, and Louisiana, although those contacts are not consistent even for each of the three class representatives.   A trier-of-fact will have to determine which of these contacts constituted conduct of Navarro within the course and scope of her duties as an agent or employee of UPI, rather than PARS (or in an individual, non-fiduciary capacity).   If the trier-of-fact were to determine that Ms. Navarro's conduct in the Philippines was as an agent of PARS, but not of UPI, then none of that conduct could be attributed to EBR under the aegis of the "negligent hiring" claim, because there is no evidence EBR was aware of the existence of, much less hired, PARS. And, as discussed below, even if the trier-of-fact were to determine that Navarro was

-20-

AMENDED MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

This issue transcends liability, because one of EBR's primary defenses will be that even if EBR negligently hired UPI, EBR was not solely or even partially at fault for plaintiffs' damages. This defense arises out of Louisiana's adoption of comparative fault, which makes a defendant whose conduct contributes to a plaintiff's injury liable only for the percentage of fault allocated to that tortfeasor by the trier-of-fact. La. Civ. Code arts. 2323, 2324. This individualized comparison of fault is required for each party (including plaintiffs) or non-party allegedly at fault, regardless whether the conduct was intentional or negligent. Louviere v. Louviere, 2001-0089 (La. App. 1 Cir. 6/5/02); 839 So.2d 57.

The comparative fault inquiry will obviously be individualized and will vary for each member of the putative class depending on the circumstances, including what fees each member paid and to whom, who said what to each class member, and how each member claims he or she was injured. In other words, because the fundamental injury claimed is that the teachers were fraudulently induced, by verbal misrepresentations and by duress, to pay money and sign contracts, fault will necessarily be imposed based upon the persons who actually misled, and who actually coerced, the EBR Plaintiffs. And, given that EBR's liability is premised upon the liability of UPI, part of this fault allocation will include factual determinations as to

---

acting as agent of UPI as to a particular class member, then the trier-of-fact would have to compare the relative fault of these two defendants, as well as that of EBR.

-21-

AMENDED MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.3

agency and course and scope, *i.e.*, a determination as to whether the individual actors were acting on behalf of UPI such that EBR may also be found to be at fault.

Finally, and perhaps most tellingly, EBR plaintiffs are largely claiming that their injury caused by EBR's alleged negligent hiring was a result of fraud. Indeed, the onus of Plaintiffs' "negligent hiring" claim is that EBR failed to discover, and hired UPI, despite Navarro's past convictions for fraud-related claims. As the Ninth Circuit has observed, however, fraud claims are notoriously bad claims for class action treatment because, absent some class-wide presumption (like the "fraud on the market" presumption in securities fraud cases), individual reliance is required to be proven for each claimant. Desai v. Deutsche Bank Securities, Ltd., 573 F.3d 931, 940 (9th Cir. 2009).[13] And, in addition to reliance, there are other individual issues already alluded to *ante*, including the nature of the oral representations made, and the false nature of each such representation, that militate against class treatment. Thompson v. Jiffy Lube Intern., Inc., 250 F.R.D. 607, 629 (D. Kan. 2008) ("On the consumer protection claims, for example, individual issues would likely include what oral

---

[13] Under both Louisiana and California law, reliance is an essential element of a tort claim grounded in fraud. Gonzales v. Gonzales, 2008-0258 (La. App. 4 Cir. 9/30/09); 20 So. 3d 557, 563; Brown v. Wells Fargo Bank N.A., 168 Cal.App.4th 938, 958-59, 85 Cal. Rptr. 3d 817 (2008). In this particular case, the "individual reliance" issue is whether each member of the class, if she had known the "truth" about the cost she was contractually required to pay PARS/UPI, would have nonetheless decided to go through the process in order to obtain her current employment. *See* Stephenson v. Bell Atlantic Corp., 177 F.R.D. 279, 293-94 (D. N.J. 1997) (listing cases). There is

-22-

Case No. 8:10-cv-01172-JAK-MLG

AMENDED MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.3

representations were made to class members, whether such representations were false or misleading, whether the individuals involved relied on such representations, and what damages were caused by or resulted from the representation.") (listing cases).

The above stated issues would properly be addressed by the Court when analyzing "commonality" and "predominance" in the following inquiry, and clearly demonstrate that this action, which involves different time periods, different employment decisions, different comparative fault issues, and of course, differing statute of limitations calculations, is not appropriate for class certification.

**E.      Plaintiffs Are Unable To Meet Requirements of Rule 23(a)**

**1.      Numerosity Is Questionable**

Plaintiffs have alleged that there are approximately 239 putative class members in the EBR subclass, which would satisfy the numerosity requirement.  However, the 239 teachers allegedly within this subclass do not share the claims of plaintiffs and further, many have expressed that they do not intend to assert claims similar to that of plaintiffs.  (*See* Donaldson Decl. ¶ 26; Exh. G)  Indeed, Tanedo admitted under oath that some teachers do not want to sue EBR and do not claim that UPI did not disclose fees, and that her claims are not the same as those teachers.  (Tanedo at 311-13)  The number of such teachers exceeds 50.  (*See* Donaldson Decl., Exh. G)

Further, plaintiffs assert that joinder is impracticable because most class

_____

not even consensus among the three putative class representatives regarding this issue.

-23-

Case No. 8:10-cv-01172-JAK-MLG                    AMENDED MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.3

members are not familiar with the U.S. legal system, stating that "[a]lthough the teachers are educated and fluent in English, they are, by definition, foreign nationals who only recently arrived in the United States." (Doc. 134, p. 11)  This is simply a misstatement.  All class members have lived in the United States since at least 2008.  They are not uneducated immigrants who cannot speak English, but educators of English-speaking students in Louisiana schools with college and advanced degrees, who certainly have the requisite knowledge to file individual suits if so desired.  Further, many of the purported class members, like Tanedo and other plaintiffs, have already consulted lawyers.  (*See* Tanedo at 218-21)

### 2.   Plaintiffs And Purported Subclass Members Have Not Suffered The Same Injury, And Therefore The <u>Commonality</u> Requirement Is Not Satisfied

The Supreme Court has recently stated the following regarding Rule 23(a)(2)'s requirement of common questions of law or fact:

> That language is easy to misread, since '[a]ny competently crafted class complaint literally raises common 'questions.'  For example:  Do all of us plaintiffs indeed work for [the same employer]?  Do our managers have discretion over pay?  Is that an unlawful employment practice?  What remedies should we get?  Reciting these questions is not sufficient to obtain class certification.  **Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.' This does not mean merely that they have all suffered a violation of the same provision of law . . . their claims must depend upon a common contention**—for example, the assertion of discriminatory bias on the part of the same supervisor.  That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

-24-

AMENDED MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD

<u>Wal-Mart Stores, Inc. v. Dukes</u>, 2011 WL 2437013 at *7 [citations omitted]
[emphasis added].

In support of their amended motion for class certification, while plaintiffs
provide a lengthy list of supposedly common questions in regard to the claims against
the **other defendants** (Doc. 134, p. 12-13), with respect with EBR they say only this:

> [a]dditional issues of fact and law are common to the EBR Teacher
> Subclass, including whether Defendant EBR's conduct in selecting
> Defendants Universal and Navarro as their exclusive recruiting agents for
> purposes of hiring H-1B teachers from the Philippines constituted
> negligent hiring.

(Doc. 134, p. 13)   This assertion hardly satisfies plaintiffs' burden to show that
common questions of law and fact exist.   In fact, it does nothing more than state the
fact that they have asserted a negligent hiring claim on behalf of the putative class.
Plaintiffs have failed to make even a *prima facie* case that Rule 23(a)(2) is satisfied.[14]

Here, the purported class consists of teachers hired from different parts of the

---

[14] In fact, Plaintiffs' submission evidences an **absence** of common questions.  Cruz
admits that she knew there would be more fees after the initial $5,000 payment
because she reviewed the documents with her mother, although other plaintiffs claim
they were not aware of this.  (Cruz at 160-62, Escuadra at 136-37)  Further, Cruz
admitted under oath that the second part of the placement fee, 10% of the second-year
salary payment, was discussed with PARS before she got on the plane to leave the
Philippines and travel to the U.S., while the other EBR Plaintiffs contend that they
were blind-sided by UPI with this news upon their arrival in Los Angeles or did not
even know about the second year fee until later.  (Cruz at 185-86, Tanedo at 222-23,
Escuadra at 241-43)  Therefore, the issues of causation and damages presented by
Cruz's claims are completely different from those of Tanedo and Escuadra.

Case No. 8:10-cv-01172-JAK-MLG

PD.4883407.3

Philippines in 2007 and 2008 to teach at different schools in East Baton Rouge Parish. Each of these teachers starting times, salaries, and placement fees to UPI or other entities were different.  The named EBR Plaintiffs have admitted under oath that they are not sure how many teachers within EBR have the same claims, that they are aware that many teachers within EBR disagree with their suit against EBR, and that some teachers do not claim that the fees charged by PARS or UPI were undisclosed. (Tanedo at 260-62, 311-313, Escuadra at 318-321)

### 3.   Claims of Purported EBR Teacher Subclass Not Typical

In their memorandum, plaintiffs spend a fair amount of time outlining the typicality of the claims of the Louisiana Teacher Class, a proposed class which does not involve EBR. (Doc. 134, p. 14-15)  Yet again, however, there is but one sentence dedicated to the EBR Teacher Subclass, stating that "like the named EBR Plaintiffs, other subclass members were recruited to work in EBR public schools pursuant to a fraudulent trafficking scheme and suffered virtually identical injuries."   Again, plaintiffs' allegations with regard to EBR's purported involvement in a trafficking scheme are irrelevant to the one remaining claim against EBR- negligent hiring. Again, Plaintiffs have failed to make a *prima facie* case of this Rule 23(a) element.

There is no evidence that the claims or defenses of the representative parties are typical of the claims or defenses of the class.  Nor is there any showing made of what exactly comprises the "virtually identical injuries" that each class member suffered.

-26-

AMENDED MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.3

To the extent Plaintiffs propose that a class can be certified solely based upon allegations that (1) all class members worked for the same employer, and (2) all class members suffered some form of economic loss, the Supreme has rejected this proposition. *See, generally*, Dukes, *supra*.

Finally, as discussed *ante* the existence of limitations and immunity defenses, and the individual issues of comparative fault, causation, reliance, and damages, make the showing of typicality particularly difficult where the underlying claim is one for negligence.  Plaintiffs fail to satisfy their burden of showing typicality.

### 4.    Adequacy of Representation

Adequate representation and due process require that the interests of class representatives and members be aligned, without conflict.   Amchem, 117 S.Ct. at 2250.  A class representative must be part of the class and possess the same interest and suffer the same injury as the putative class members.  *Id.* at 2250-51.  Differences between representatives and members render the representatives inadequate when those differences create conflicts between the representatives' interests and those of the class.  Jenkins v. Raymark Industries, Inc., 782 F.2d 468, 472 (5th Cir.), reh'g denied, 782 F.3d 1034 (5th Cir. 1986); Arch v. American Tobacco Company, Inc., 175 F.R.D. 469, 478 (E.D.Pa. 1997), aff'd, 161 F.3d 123 (3rd Cir. 1998), cert. denied, 526 U.S. 114, 119 S.Ct. 1760, 143 L.Ed.2d 791 (1999).

In addition to the great number of prospective members of the proposed class

Case No. 8:10-cv-01172-JAK-MLG

AMENDED MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.3

who want nothing to do with this lawsuit, there is also a significant number (in excess of 30) of potential class members who have previously been terminated by EBR. To the extent these potential class members may have other employment-related claims against EBR arising out of their termination, including them within this class (with the *res judicata* effect of a final judgment in this case) imperils their rights to assert such claims at a later date. Courts have found such a risk of the loss of other claims held by certain class members renders class representation inadequate. *See* <u>Thompson v. American Tobacco Co., Inc.</u>, 189 F.R.D. 544, 550-51 (D. Minn. 1999).

**F. Requirements of Rule 23(b)(3) not met**

EBR Plaintiffs seek to certify this class action under Federal Rule of Civil Procedure 23(b)(3). However, as set forth below, the common questions of law or fact do not predominate over the questions affecting individuals, and therefore, a class action is not superior to individual adjudications.

**1. Plaintiffs' Claim for Negligence Ill-Suited For Class Action, as Common Claims Do Not Predominate Over Individualized Claims**

The predominance requirement is similar to, but **"far more demanding"** than, the commonality requirement of Rule 23(a). <u>Amchem</u>, 521 U.S. at 623-24 [emphasis added]. The predominance inquiry compares class-wide issues to individual issues, "testing whether the proposed claims are sufficiently cohesive to warrant adjudication by representation." <u>Amchem</u>, 117 S.Ct. at 2249. To predominate, common issues must constitute a significant part of each individual case. *Id.* at 2243, 2250.

-28-

Case No. 8:10-cv-01172-JAK-MLG
AMENDED MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.3

The issues discussed in section (III)(B)-(D) of this memorandum show that common issues do NOT predominate over individual issues.   The timeliness issue alone renders this case inappropriate for class treatment:  because the claims of EBR Plaintiffs and most class members are prescribed on their face, the Court will have to consider each individual's claim to determine whether it is timely asserted, and will also have to engage in analyze of a workers' compensation defense.   The Court will also have to grapple with comparative fault on an individualized basis, because each class member's personal experience will determine the percentage of fault allocated to each defendant and non-party.   And to all this must be added the necessity of proving the individual reliance of each class member upon the statements that supposedly misled them regarding the fees they would owe to PARS or UPI.   *See* Unger v. Amedisys, Inc., 401 F.3d 316, 322 (5th Cir. 2005) ("If the circumstances surrounding each plaintiff's alleged reliance on fraudulent representations differ, then reliance is an issue that will have to be proven by each plaintiff, and the proposed class fails Rule 23(b)(3)'s predominance requirement.").[15]   Plaintiffs have not, and cannot,

---

[15] Indeed, leaving aside these issues, common questions do not predominate even among the EBR Plaintiffs.  Each of the EBR Plaintiffs alleges paying a different placement fee, under different circumstances involving different people.  (*See* Docs. 134-1, ¶ 13, 134-2, ¶ 12, 134-3, ¶ 12)  As discussed *ante*, the EBR Plaintiffs have proffered different testimony as to when and whether they knew about certain fees in their arrangement; whether they knew about these fees before coming to the U.S.; and what actions each defendant (and non-party) took that caused them harm.  Furthermore, the EBR Plaintiffs all admit that they are aware many putative class

-29-

Case No. 8:10-cv-01172-JAK-MLG

AMENDED MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF DEFENDANT THE EAST BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.3

demonstrate predominance under Rule 23(b)(3).

2.     **Class Adjudication Of Claims Against EBR Is Not Superior To Individual Actions**

Rule 23(b)(3) also requires that the Court find "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The factors to be considered include:  (A) the interest of class members in controlling the prosecution of separate actions;  (B) any litigation concerning the controversy already commenced by members of the class;  (C) the desirability of concentrating the litigation in the particular forum; and (D) the difficulties likely to be encountered in management of the action.   Fed.R.Civ.P. 23(b)(3)(A)-(D).   Because the only claim remaining against EBR is "negligent hiring," a claim governed by Louisiana law, it is not desirable to litigate in the California forum.   More importantly, practical issues related to causation, fault, loss and other defenses, including timeliness, would very much complicate the resolution of this action.

## CONCLUSION

In conclusion, plaintiffs' motion for class certification as to the claims of the EBR subclass against the East Baton Rouge Parish School Board should be denied.

---

members do not support any claim against EBR, and do not claim they had to pay undisclosed fees to UPI.   For example, Escuadra admitted that although fifty purported teachers met with the lawyers in this case regarding the institution of a lawsuit, she was not sure how many teachers viewed their situation as that of "bondage" caused by EBR, as she classified it. (Escuadra at 318)

-30-

Case No. 8:10-cv-01172-JAK-MLG

AMENDED MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

RESPECTFULLY SUBMITTED,

**PHELPS DUNBAR LLP**


By ___/s/ Brandi B. Cole_____
Brandi B. Cole (admitted *pro hac vice*)
II City Plaza
400 Convention Street • Suite 1100
Baton Rouge, Louisiana 70802-5618
P.O. Box 4412
Baton Rouge, Louisiana 70821-4412
Telephone: (225) 346-0285
Telecopier: (225) 381-9197
Email: brandi.cole@phelps.com


ATTORNEY FOR THE EAST BATON
ROUGE PARISH SCHOOL BOARD AND
ELIZABETH DURAN SWINFORD


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel of record

herein via the Court's electronic notification system on this 2nd day of August, 2011.

_____/s/ Brandi B. Cole_____


-31-

Case No. 8:10-cv-01172-JAK-MLG                    AMENDED MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF DEFENDANT THE EAST
BATON ROUGE PARISH SCHOOL BOARD

PD.4883407.3