James M. Knoepp (admitted *pro hac vice*)
Jim.Knoepp@splcenter.org
Daniel Werner (admitted *pro hac vice*)
Daniel.Werner@splcenter.org
IMMIGRANT JUSTICE PROJECT
SOUTHERN POVERTY LAW CENTER
233 Peachtree Street NE, Suite 2150
Atlanta, GA  30303
Telephone:  (404) 521-6700
Facsimile:  (404) 221-5857

*Attorneys for Plaintiffs*
*Additional Co-Counsel on Subsequent Pages*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| MAIRI NUNAG-TAÑEDO, et al., <br><br>　　Plaintiffs, <br><br>　　v. <br><br>EAST BATON ROUGE PARISH SCHOOL BOARD, et al., <br><br>　　Defendants. | Civ. No.: 10-01172-JAK-MLG <br><br> **PLAINTIFFS' SUPPLEMENTAL BRIEFING REGARDING H-1B REQUIRED WAGE** <br><br> Hearing Date: October 6, 2011 <br> Time: 9:00 a.m. <br> Courtroom:  750 <br><br> **HON. JOHN A. KRONSTADT** |

*(Attorney listing continued from first page)*

Mary C. Bauer (admitted *pro hac vice*)
Mary.Bauer@splcenter.org
Sam Brooke (admitted *pro hac vice*)
Sam.Brooke@splcenter.org
Morris S. Dees (admitted *pro hac vice*)
Judy.Bruno@splcenter.org
IMMIGRANT JUSTICE PROJECT
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, Alabama  36104
Telephone:  (334) 956-8200
Facsimile:   (334) 956-8481

Dennis B. Auerbach (admitted *pro hac vice*)
dauerbach@cov.com
Jillian Willis (admitted *pro hac vice*)
jwillis@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone:  (202) 662-6000
Facsimile:   (202) 662-6291

Candice N. Plotkin (admitted *pro hac vice*)
cplotkin@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, California 94111-5356
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

1  Susan Johnston (admitted *pro hac vice*)
2  sjohnston@cov.com
   Pamela A. Carter (admitted *pro hac vice*)
3  pcarter@cov.com
4  COVINGTON & BURLING LLP
   The New York Times Building
5  620 Eighth Avenue
6  New York, New York  10018
   Telephone:   (212) 841-1000
7  Facsimile:    (212) 841-1010

8
   Daniel J. McNeil (admitted *pro hac vice*)
9  dmcneil@aft.org
10 AMERICAN FEDERATION OF TEACHERS
   LEGAL DEPARTMENT
11 555 New Jersey Ave., N.W.
   Washington, DC  20001
12 Telephone:   (202) 393-6305
13 Facsimile:    (202) 393-6385

14
15 Lawrence Rosenzweig (SBN 72443)
   LRPCorp@aol.com
16 Brent Rosenzweig (SBN 219071)
17 Brent.Rosenzweig@gmail.com
   LAWRENCE ROSENZWEIG, PC
18 2730 Wilshire Boulevard, Suite 425
19 Santa Monica, California  90403
   Telephone:   (310) 453-0348
20 Facsimile:    (310) 453-3358

21 *Attorneys for Plaintiffs*

22

23

24

25

26

27

28

Plaintiffs submit this supplemental brief in further support of their claim that certain visa processing fees were illegally shifted to them and other class members in this case, and that Defendant Silverman is liable for malpractice and breach of fiduciary duty based on his joint representation of the school districts and the teachers in the visa process.

It is undisputed that Plaintiffs and other class members were required to pay: (1) a $500 fraud prevention fee required by the United States government, (2) a $320 visa filing fee, (3) $2,000 in attorney's fees, and (4) $1,000 in premium visa processing fees.  (ECF No. 134-6 at 12-26 (spreadsheet provided by Defendant UPI detailing fees paid by class members by category).)  As explained below, these are all employer expenses that may not legally be shifted to the H-1B employee.

As an initial matter, the $500 fraud prevention fee may *never* be shifted to the employee.  *See* 8 U.S.C. § 1184(c)(12)(A) ("In addition to any other fees authorized by law, the Secretary of Homeland Security shall impose a fraud prevention and detection fee on an *employer* . . . .) (emphasis added).  Indeed, a U.S. Department of Labor Fact Sheet regarding the H-1B program expressly states that "[a]n H-1B worker, whether through payroll deduction or otherwise, can never be required to pay . . . [a]ny part of the statutory $500 fraud protection and detection fee imposed by USCIS."  *See* U.S. Department of Labor Fact Sheet #62H (attached as Exh. A) (*available at* http://www.dol.gov/whd/regs/compliance/FactSheet62/whdfs62H.htm).  Notwithstanding this clear prohibition, each and every Plaintiff and other teacher was required to pay the $500 fee.

The other fees at issue also were illegally shifted because they constitute employer business expenses under the governing regulations.  *See* 20 C.F.R. § 655.731(c)(9) (attorney fees and other costs connected with petitioning for H-1B workers the responsibility of employer); *see also* U.S. Department of Labor Fact Sheet #62H  (attached as Exh. A) (attorney fees and premium processing fees considered business expenses of the employer).  Fee-shifting of an employer's

business expenses to an H-1B employee may only occur if such shifting does not result in the employee earning less than the "required wage" when due. 20 C.F.R. §§ 655.731(c)(1) & 655.731(c)(9). The statute authorizing the issuance of H-1B visas requires employers to pay H-1B visa holders "the actual wage level paid by the employer to all other individuals with similar experience and qualifications for the specific employment in question, or . . . the prevailing wage level for the occupational classification in the area of employment, *whichever is greater*." 8 U.S.C. § 1182(n)(1)(A)(i) (emphasis added). The "required wage rate" is the actual wage paid by the employer to its similarly situated employees, or the prevailing wage, whichever is *higher*. 20 C.F.R. § 655.730(d)(1); 20 C.F.R. § 655.731(a); 20 C.F.R. § 655.731(a)(3) ("Once the prevailing wage is established, the H-1B employer then shall compare this wage with the actual wage rate for the specific employment in question at the place of employment and must pay the H-1B nonimmigrant at least the higher of the two wages.").

To satisfy their obligation to pay the required wage rate, employers must pay the H-1B employee "cash in hand, free and clear, when due." 20 C.F.R. § 655.731(c)(1). An employer violates this regulation when it deducts from an employee's wages amounts that constitute a recoupment of "business expense(s) of the employer (including attorney fees and other costs connected to the performance of H-1B program functions which are required to be performed by the employer, e.g., preparation and filing of LCA and H-1B petition)." 20 C.F.R. §§ 655.731(c)(9)(ii) & 655.731(c)(9)(iii)(C); *see also In re: Lung Associates, P.A.*, 2011 DOL Ad. Rev. Bd. LEXIS 26, at *16-*19 (DOL Ad. Rev. Bd. Mar. 24, 2011). Unauthorized deductions from wages—whether actual deductions from paychecks or a requirement that the employee pay the expenses directly—are equivalent to non-payment, and thus violate the H-1B regulations. 20 C.F.R. §§ 655.731(c)(11) & (c)(12) ("Where the employer depresses the employee's wages below the required wage by imposing on the employee any of the employer's business expense(s), the

[U.S. Department of Labor] will consider the amount to be an unauthorized deduction from wages even if the matter is not shown in the employer's payroll records as a deduction."); *see also Arriaga v. Florida Pacific Farms, LLC*, 305 F.3d 1228, 1236-1244 (11th Cir. 2002) (violation of Fair Labor Standards Act to require H-2A workers to pay pre-employment expenses that were for the benefit of the employer); *Perez-Benites v. Candy Brand, LLC*, No. 1:07-CV-1048, 2011 U.S. Dist. LEXIS 55003, at *42-*44 (W.D. Ark. May 20, 2011) (violation of obligation to pay adverse effect wage rate to H-2A workers where employees required to pay pre-employment expenses for the benefit of the employer); *De Leon Granados v. Eller & Sons Trees, Inc.*, 581 F. Supp. 2d 1295, 1316-1320 (N.D. Ga. 2008) (failure to pay wages when due by requiring H-2B employees to pay pre-employment expenses where result was payment of less than H-2B prevailing wage).

In this case, the "required wage" of Plaintiffs and other class members was the actual wage they were paid on their school district's salary scale. Shifting these business expenses to them resulted in their earning less than the required wage when due. Each Louisiana Parish establishes salary schedules for teachers based on years of experience and degree(s) obtained, which form the basis for the "actual wage" paid, as that term is defined in 20 C.F.R. § 655.731(a)(1). *See* http://www.doe.state.la.us/topics/teacher_salary_schedules.aspx.[1] For example, teachers in the East Baton Rouge Parish School System ("EBR") such as Plaintiffs Mairi Nunag-Tanedo, Ingrid Cruz, and Donnabel Escuadra, are compensated based on established personnel policies, that require teachers to be paid in reference to

---

[1] Plaintiffs have not yet had discovery of the school districts where class members were employed and so the evidence in the record to date of the actual wages is not complete. Because Plaintiffs need only demonstrate that they have established a "minimal level of legal sufficiency and triability" to defeat the Anti-SLAPP motion, as discussed in Plaintiff's opposition to the motion (ECF No. 174 at 12), the lack of additional evidence does not prevent denial of the motion. In fact, the motion should be denied for the additional reason that Plaintiffs need discovery to refute Mr. Silverman's meritless arguments. (ECF No. 174 at 21-24.)

PLAINTIFFS' SUPPLEMENTAL BRIEFING REGARDING H-1B REQUIRED WAGE
Civ. No.: 10-01172-JAK-MLG

3

their years of experience and degree(s) obtained, as set forth in the EBR salary schedules adopted each year by the school board.  (*See* Exh. B (*available at* http://humanresources.ebrschools.org/eduWEB1/1000012/docs/gbaa compensation.pdf); Exh. C (salary scale for 2007-2008 school year)[2].)  Teachers are paid on a bi-monthly schedule over 10 months, for a total of 20 pay periods per year.  (*See* Exh. D (pay schedule for 2007-2008 school year)[3].)  Thus, class members with H-1B visas who were employed by EBR in 2007-2008 and who had 4 years of experience received an annual salary of $42,333, or a gross salary of $2,116.65 for each of their 20 pay periods.  However, in the pay period immediately after they incurred the $3,320 in employer expenses outlined above, they earned $3,320 less than the required wage for that pay period, and thus were not paid their full wages when due in violation of the H-1B statute and regulations.  8 U.S.C. § 1182(n)(1)(A)(i); 20 C.F.R. § 655.731(c)(1); *USDOL v. Wings Digital Corp.*, 2005 WL 774014, at *11 (DOL Off. Adm. App. Mar. 21, 2005) ("[I]t is well-settled that each pay period is viewed separately when determining whether an H-1B worker was paid the required wage."); *see also Arriaga,* 305 F.3d at 1237 (analyzing wages paid during first pay period following payment of pre-employment expenses to determine whether violation occurred); *Perez-Benites*, 2011 U.S. Dist. LEXIS 55003, at *38-*44 (same); *De Leon Granados*, 581 F. Supp. 2d at 1308 (same).

Defendant Silverman argues that there was no violation of the H-1B regulations because even if teachers were required to pay $3,820 in employer business expenses, they were paid at least $3,820 more than the prevailing wage on an annual basis.  This argument is wrong for at least two reasons.  First, it misstates the law, which requires payment of the prevailing wage or the actual wage,

---

[2]  *Available at* http://liveweb.archive.org/http://humanresources.ebrschools.org/eduWEB1/1000012/docs/salary_schedule_2007-2008.pdf.
[3]  *Available at* http://web.archive.org/web/20070817153236/http://businessaffairs.ebrschools.org/eduWEB1/1000142/docs/0708prcal.pdf.

*whichever is higher*. In this case, teachers were paid on the salary scale applicable to other teachers in their school districts with similar experience and qualifications, regardless of what the prevailing wage may have been listed on their Labor Condition Applications. Thus, they were *required* to receive a wage higher than the prevailing wage, and that higher wage is the "required wage" protected from improper deductions such as the recoupment of the school districts' business expenses listed above.

Second, the proper analysis to determine whether wages were paid "cash in hand, free and clear, *when due*" is based not on a comparison of *annual* wages paid versus improper expenses imposed, but on whether the required wages were paid in the pay period following the payment of the expenses. Here the business expenses were, in effect, deducted from the teachers' first paychecks. It is thus apparent that the teachers were not paid their actual, required wages due during that first pay period.

In sum, Plaintiffs and other class members were illegally required to pay $3,820 in employer expenses that should have been paid by the employer school districts. The regulations absolutely precluded fee-shifting with respect to the $500 fraud prevention fee, and likewise precluded fee shifting regarding the other amounts because such shifting caused the teachers to receive less than the required wage during the relevant pay period. Defendant Silverman, as counsel for the teachers, should have taken steps to prevent such illegal fee shifting. By failing to do so—thereby allowing his other clients to benefit at the teachers' expense—Mr. Silverman engaged in malpractice and breached his fiduciary duties.

Respectfully submitted this 13th day of September, 2011.

   /s/ James M. Knoepp
James M. Knoepp
IMMIGRANT JUSTICE PROJECT
SOUTHERN POVERTY LAW CENTER
233 Peachtree Street NE, Suite 2150
Atlanta, Georgia  30303
*On behalf of Attorneys for Plaintiffs*


# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this date electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification to all counsel of record.


/s/ James M. Knoepp

September 13, 2011.