James M. Knoepp (admitted *pro hac vice*)
Jim.Knoepp@splcenter.org
Daniel Werner (admitted *pro hac vice*)
Daniel.Werner@splcenter.org
IMMIGRANT JUSTICE PROJECT
SOUTHERN POVERTY LAW CENTER
233 Peachtree Street NE, Suite 2150
Atlanta, GA  30303
Telephone:  (404) 521-6700
Facsimile:  (404) 221-5857

*Attorneys for Plaintiffs*
*Additional Co-Counsel on Subsequent Pages*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| MAIRI NUNAG-TAÑEDO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> EAST BATON ROUGE PARISH SCHOOL BOARD, et al., <br><br> Defendants. | Civ. No.: 10-01172-JAK-MLG <br><br> **PLAINTIFFS' SUPPLEMENTAL BRIEFING REGARDING NUMEROSITY AND PREDOMINANCE OF COMMON ISSUES IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION** <br><br> Hearing Date: Oct. 6, 2011 <br> Time: 9:00 a.m. <br> Courtroom:  750 <br><br> **HON. JOHN A. KRONSTADT** |

*(Attorney listing continued from first page)*

Mary C. Bauer (admitted *pro hac vice*)
Mary.Bauer@splcenter.org
Sam Brooke (admitted *pro hac vice*)
Sam.Brooke@splcenter.org
Morris S. Dees (admitted *pro hac vice*)
Judy.Bruno@splcenter.org
IMMIGRANT JUSTICE PROJECT
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, Alabama  36104
Telephone:   (334) 956-8200
Facsimile:    (334) 956-8481

Dennis B. Auerbach (admitted *pro hac vice*)
dauerbach@cov.com
Jillian Willis (admitted *pro hac vice*)
jwillis@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone:   (202) 662-6000
Facsimile:    (202) 662-6291

Candice N. Plotkin (admitted *pro hac vice*)
cplotkin@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, California 94111-5356
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

PLAINTIFFS' SUPPLEMENTAL BRIEFING REGARDING
NUMEROSITY AND PREDOMINANCE OF COMMON
ISSUES IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION
Civ. No.: 10-01172-JAK-MLG

Susan Johnston (admitted *pro hac vice*)
sjohnston@cov.com
Pamela A. Carter (admitted *pro hac vice*)
pcarter@cov.com
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York  10018
Telephone:   (212) 841-1000
Facsimile:    (212) 841-1010

Daniel J. McNeil (admitted *pro hac vice*)
dmcneil@aft.org
AMERICAN FEDERATION OF TEACHERS
LEGAL DEPARTMENT
555 New Jersey Ave., N.W.
Washington, DC  20001
Telephone:   (202) 393-6305
Facsimile:    (202) 393-6385

Lawrence Rosenzweig (SBN 72443)
LRPCorp@aol.com
Brent Rosenzweig (SBN 219071)
Brent.Rosenzweig@gmail.com
LAWRENCE ROSENZWEIG, PC
2730 Wilshire Boulevard, Suite 425
Santa Monica, California  90403
Telephone:   (310) 453-0348
Facsimile:    (310) 453-3358

*Attorneys for Plaintiffs*

PLAINTIFFS' SUPPLEMENTAL BRIEFING REGARDING
NUMEROSITY AND PREDOMINANCE OF COMMON
ISSUES IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION
Civ. No.: 10-01172-JAK-MLG

As directed by the Court, Plaintiffs submit this supplemental brief in support of their motion for class certification related to the numerosity requirement of Rule 23(a), and Rule 23(b)(3)'s requirement that common issues predominate over individual issues.

## I. PLAINTIFFS SATISFY RULE 23(a)'s NUMEROSITY REQUIREMENT.

Plaintiffs seek to represent a "Louisiana Teacher Class" defined as:

> all Filipino nationals who obtained their initial H-1B visas through Recruiter Defendants and Legal Facilitator Defendants during the period January 1, 2007, through the present, where a Louisiana school district or Louisiana school system was the petitioner. (ECF No. 134 at 8.)

The class is precise, objective, and ascertainable, and it is administratively feasible for the Court to ascertain whether an individual is a class member. *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998); CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1760 (3d ed. 2005).

To be a member of the Louisiana Teacher Class, a person must satisfy several objective criteria. He or she must: (1) be a Filipino national, (2) who obtained his or her initial H-1B visa between January 1, 2007, and the present, (3) who obtained his or her visa through the Recruiter Defendants and the Legal Facilitator Defendants (as those terms are defined in Plaintiffs' Second Amended Complaint), and (4) who had a Louisiana school district as his or her sponsoring employer. Plaintiffs have already provided the Court with evidence—prepared by Defendant UPI—identifying each and every individual who satisfies these criteria. (ECF No. 134-6 at 3-10.) The class consists of more than 350 individuals, far exceeding Rule 23(a)'s numerosity requirement. *See Rannis v. Recchia*, 380 Fed. Appx. 646, 651 (9th Cir. 2010) (affirming grant of class certification involving 20 members).

Defendants do not dispute the evidence that more than 350 individuals satisfy the class definition. Rather, they take issue with the class definition itself. Defendants appear to argue that only those individuals who can establish valid claims can be included in the class for numerosity purposes. (ECF No. 160 at 4-5.) The Ninth Circuit, however, has expresssly rejected any such "fail-safe" requirement, wherein class membership is tied to a liability determination. *See, e.g., Kamar v. Radio Shack Corp.*, 375 Fed. Appx. 734, 735-36 (9th Cir. 2010) ("The fail-safe appellation is simply a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established."); *accord Velasquez v. HSBC Fin. Corp.*, No. 08-4592 SC, 2009 U.S. Dist. LEXIS 5428, at *11-*12 (N.D. Cal. Jan. 16, 2009); *Dodd-Owens v. Kyphon, Inc.*, No. C 06-3988 JF (HRL), 2007 U.S. Dist. LEXIS 11728, at *9-*10 (N.D. Cal. Feb. 5, 2007). The Ninth Circuit has repeatedly held that a full inquiry into the merits of putative class members' legal claims is inappropriate at the Rule 23 certification stage. *United Steel Workers v. ConocoPhillips Co.*, 593 F.3d 802, 808-09 (9th Cir. 2010) (citing cases). Class certification simply does not depend on whether each class member has meritorious claims or will ultimately prevail on the merits. *Friedman v. 24 Hours Fitness USA, Inc.*, No. CV 06-6282 AHM (CTx), 2009 U.S. Dist. LEXIS 81975, at *11 (C.D. Cal. Aug. 25, 2009); *see also Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1105 (5th Cir. 1993) ("These persons are linked by this common complaint, and the possibility that some may fail to prevail on their individual claims will not defeat class membership."). The numerosity determination is rather based on whether the class, *as defined*, is sufficiently numerous. *See, e.g., Brown v. Yellow Transp., Inc.*, No. 08 C 5908, 2011 U.S. Dist. LEXIS 52345, at *7-*11 (N.D. Ill. May 11, 2011); *Dal Ponte v. Am. Mortg. Express Corp.*, No. 04-2152 (JEI), 2006 U.S. Dist. LEXIS 57675, at *8-*9 (D.N.J. Aug. 17, 2006).

PLAINTIFFS' SUPPLEMENTAL BRIEFING REGARDING NUMEROSITY AND PREDOMINANCE OF COMMON ISSUES IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION
Civ. No.: 10-01172-JAK-MLG

2

Moreover, the Rule 23(a)(1) numerosity determination is not based solely on the number of potential class members. Courts also analyze, *inter alia*, the class members' degree of sophistication with the United States legal system, their reluctance to sue individually, and the judicial economy that will arise from avoiding multiple actions. *McCluskey v. Trs. Of Red DOT ESOP & Trust*, 268 F.R.D. 670, 67 (W.D. Wash. 2010) ("Courts have found that '[n]umerosity is . . . satisfied where joining all Class members would serve only to impose financial burdens and clog the court's docket.'") (citation omitted); *Leyva v. Buley*, 125 F.R.D. 512, 515 (E.D. Wash. 1989) (class certification appropriate where members have limited knowledge of American legal system and are reluctant to sue individually).

Here, Plaintiffs have already shown that the class consists of more than 350 members, satisfying the numerical threshold established by the courts. In addition, Plaintiffs have shown that class members — such as the six declarants presented by Defendant UPI — are relatively unfamiliar with their legal rights in the United States and Plaintiffs' allegations in this lawsuit. *See, e.g.*, *Gerardo v. Quong Hop & Co.*, No. C 08-3953 JF (PVT), 2009 U.S. Dist. LEXIS 60900, at *6 (N.D. Cal. July 7, 2009). For example, before their depositions none of the declarants presented by UPI was even aware of the fact that approximately $4,000 in fees they were required to pay were the legal responsibility of their petitioning school districts, and that those required payments form the basis for part of Plaintiffs' claims for relief. (ECF No. 180 at 4-5.)

Class members may also be reluctant to sue individually here. For instance, UPI has asserted counterclaims against all but one of the named Plaintiffs. (ECF No. 137.) That may well act further to deter class members from pursuing their claims individually.

PLAINTIFFS' SUPPLEMENTAL BRIEFING REGARDING
NUMEROSITY AND PREDOMINANCE OF COMMON
ISSUES IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION
Civ. No.: 10-01172-JAK-MLG

3

Perhaps most importantly, more than 125 individuals have signed retainers seeking representation by Plaintiffs' counsel, the Southern Poverty Law Center, to pursue the relief sought in this case. (Rosalinda Gross-Smith Decl. ¶ 2 (previously filed as ECF No. 180-9).) Because the Court expressed some concern at the September 6, 2011, hearing regarding the admissibility of Ms. Gross-Smith's declaration, Plaintiffs attach the 125 retainer agreements here.[1] (*See* Knoepp Decl. attached as Exhibit A.) The agreements are ordered in accordance with the list of putative class members identified earlier that was prepared by Defendant UPI and previously filed as ECF No. 134-6 at 3-10, and show that the individuals who signed the retainer agreements are members of the putative class Plaintiffs seek to certify. While joinder of these individuals would not be impossible, it would certainly be impracticable, less efficient, and more costly for all parties and the judicial system. *See Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) ("Impracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class.") (internal quotes and citation omitted).

For these reasons, as well as those stated in Plaintiffs' original memorandum and reply memorandum in support of their motion for class certification, Plaintiffs have satisfied Rule 23(a)'s numerosity requirement.

## II. PLAINTIFFS SATISFY RULE 23(b)(3)'s PREDOMINANCE REQUIREMENT.

As outlined in Plaintiffs reply memorandum, the evidence in this case demonstrates that Defendants engaged in a common course of conduct with respect to the class members, much of which is not in dispute. (ECF No. 180 at 9-

---

[1] After further research, the Plaintiffs do not consider that the retainer agreements are privileged documents and the disclosure of the agreements in no way amounts to a waiver of any attorney-client privilege by the Plaintiffs or putative class members.

PLAINTIFFS' SUPPLEMENTAL BRIEFING REGARDING NUMEROSITY AND PREDOMINANCE OF COMMON ISSUES IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION
Civ. No.: 10-01172-JAK-MLG

4

1  10.)  For example, there is no dispute that Plaintiffs and other class members all
2  were required to pay identical "processing fees," including $3,820 for visa and
3  attorneys' fees.  (ECF No. 134-6 at 12-26) (listing fees).)  The parties disagree
4  about whether those fees should have been paid by the petitioning employers
5  rather than the teachers, but that is a common issue that can and should be
6  resolved on a class-wide basis.  There also is no dispute that Plaintiffs and other
7  class members signed the same standard-form UPI contract, which stated that
8  teachers would have to pay UPI only $300 in placement fees before leaving the
9  Philippines, while each teacher in fact was required to pay UPI a placement fee of
10 significantly more than 10 times that amount before leaving the Philippines and
11 commencing employment in the United States.  (ECF No. 134-6 at 40-59 (copies
12 of contracts related to named Plaintiffs).)  The legal import of this is once again a
13 common question that can and should be addressed on a class-wide basis.  Finally,
14 there is no dispute that teachers were forced to take on substantial debt in the
15 Philippines because of the fees to which they were subjected — debt they could
16 only repay by coming to the United States and working for the school district that
17 sponsored their respective H-1B visas.  (ECF No. 180 at 10.)
18     While the parties do dispute when Plaintiffs and other class members were
19 first informed that they would be required to pay a full 30% in placement fees, that
20 does not establish a need for individualized inquiries that will predominate over
21 common ones.  Plaintiffs have already detailed and provided substantial evidence
22 from both the class representatives and the putative class members selected by
23 Defendant UPI that representations regarding fees, or the lack thereof, occurred
24 during large group meetings.  (ECF No. 180 at 11 & n.5.)   The evidence
25 establishes that hundreds of prospective teachers were present at such meetings.
26 (Nunag-Tanedo Decl. ¶¶ 6, 9-10 (ECF No. 134-1) (approximately 75 successful
27 applicants at Waterfront Hotel on March 28, 2008); Escuadra Decl. ¶¶ 5, 7-8 (ECF
28

PLAINTIFFS' SUPPLEMENTAL BRIEFING REGARDING
NUMEROSITY AND PREDOMINANCE OF COMMON
ISSUES IN FURTHER SUPPORT OF MOTION FOR CLASS
CERTIFICATION
Civ. No.: 10-01172-JAK-MLG

5

No. 134-3) (group meeting of approximately 80 successful applicants at Waterfront Hotel on March 28, 2008); Pascual Decl. ¶ 9 (ECF No. 134-5) (approximately 300 people present at Manila Hotel in March, 2008); Gamit Dep. at 23, 25-26 (ECF No. 180-5) (numerous teachers at Manila Hotel on March 25, 2008); Rodriguez Dep. at 30-32 (ECF No. 180-6) (hundreds of teachers present at Manila Hotel on March 25, 2008).) Accordingly, whether and when appropriate disclosures occurred is likewise a common factual issue that can be determined by the jury based on common evidence.

That the claims here are subject to resolution on a class-wide basis is further supported by the fact that violations of the TVPA are determined based on an objective "reasonable person" standard. Analysis under the TVPA focuses on the conduct of the defendant, not the victim. *See United States v. Dann*, No. 10-10191, 2011 U.S. App. LEXIS 15012, at *29-*30 & n.4 (11th Cir. July 22, 2011) (noting that the "linchpin of this analysis" is the intent of the defendant and not the subjective mind of the victim). As the Ninth Circuit stated in *Dann*, whether an individual's labor was provided or obtained by means of "serious harm" is considered from the vantage point of a "reasonable person" of the same background as the victim. *Id.* at *24-*25. This objective standard essentially eliminates the need for individualized inquiries, leaving common questions to predominate in the context of a class action.

At the September 6 hearing the Court asked whether Plaintiffs are pursuing RICO claims based on mail and wire fraud, in addition to RICO claims based on the TVPA.[2] As Plaintiffs argued in their reply memorandum, because Defendants engaged in a common course of conduct involving similar misrepresentations to

---

[2] Plaintiffs agree with Defendants that the RICO predicate act of extortion requires individualized determinations that are not appropriate for class certification.

PLAINTIFFS' SUPPLEMENTAL BRIEFING REGARDING NUMEROSITY AND PREDOMINANCE OF COMMON ISSUES IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION
Civ. No.: 10-01172-JAK-MLG

6

1  all class members, the RICO mail and wire fraud claims are appropriate for class
2  treatment. (ECF No. 180 at 20-21.) The Ninth Circuit has held that claims based
3  on a common course of fraudulent conduct may proceed on a class-wide basis. *In*
4  *re First Alliance Mortgage Co.*, 471 F.3d 977, 990-991 (9th Cir. 2006); *Blackie v.*
5  *Barratt*, 524 F.2d 891, 902 (9th Cir. 1976) ("Confronted with a class of purchasers
6  allegedly defrauded over a period of time by similar misrepresentations, courts
7  have taken the common sense approach that the class is united by a common
8  interest in determining whether a defendant's course of conduct is in its broad
9  outlines actionable, which is not defeated by slight differences in class members'
10 positions."). As outlined above, a common course of fraudulent conduct does
11 exist in this case, making it appropriate for class treatment. However, should the
12 Court determine that class certification is not appropriate with respect to the RICO
13 mail and wire fraud predicate acts, then Plaintiffs will forego pursuit of those
14 claims and proceed only with the RICO predicate act involving TVPA violations.

## **CONCLUSION**

16  For the foregoing reasons, as well as those stated in Plaintiffs'
17 Memorandum in Support of Amended Motion for Class Certification and their
18 Reply Memorandum, the Court should grant Plaintiffs' Amended Motion for
19 Class Certification under Fed. R. Civ. P. 23(b)(3).

21 Respectfully submitted this 20th day of September, 2011.

   \_\_/s/ James M. Knoepp_____
23 James M. Knoepp
   IMMIGRANT JUSTICE PROJECT
24 SOUTHERN POVERTY LAW CENTER
25 233 Peachtree Street NE, Suite 2150
   Atlanta, Georgia 30303
26 *On behalf of Attorneys for Plaintiffs*

PLAINTIFFS' SUPPLEMENTAL BRIEFING REGARDING NUMEROSITY AND PREDOMINANCE OF COMMON ISSUES IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION
Civ. No.: 10-01172-JAK-MLG

7

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this date electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification to all counsel of record.

/s/ James M. Knoepp_____

September 20, 2011.

PLAINTIFFS' SUPPLEMENTAL BRIEFING REGARDING NUMEROSITY AND PREDOMINANCE OF COMMON ISSUES IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION
Civ. No.: 10-01172-JAK-MLG

8