1  Don A. Hernandez (SBN 125119)
   Agnes Markarian (SBN 240388)
2  Martin E. Sullivan (SBN 274279)
   HERNANDEZ, SCHAEDEL & ASSOCIATES, LLP
3  2 North Lake Avenue, Suite 930
   Pasadena, CA   91101
4  Telephone: 626.440.0022
   Facsimile: 626.628.1725
5  Email: dhernandez@hernlaw.com

6  Attorneys for Defendants,
   Universal Placement International, Inc., and
7  Lourdes "Lulu" Navarro

8

9                    UNITED STATES DISTRICT COURT

10       CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

11
   MAIRI NUNAG-TANEDO, INGRID          Case No. SA CV 10-01172-JAK (MLGx)
12 CRUZ, DONNABEL ESCUADRA,
   ROLANDO PASCUAL, and TOMASA         [Hon. John A. Kronstadt]
13 MARI, on behalf of themselves and other
   similarly situated individuals,
14                                     DEFENDANT LOURDES NAVARRO
                    Plaintiffs,        AND UNIVERSAL PLACEMENT
15                                     INTERNATIONAL'S
         vs.                           SUPPLEMENTAL BRIEF REGARDING
16                                     NUMEROSITY AND
   EAST BATON ROUGE PARISH             PREDOMINANCE ISSUES IN
17 SCHOOL BOARD, CHARLOTTE D.          OPPOSITION TO PLAINTIFFS'
   PLACIDE, MILLIE WILLIAMS,           MOTION FOR CLASS
18 ELIZABETH  DURAN SWINFORD,          CERTIFICATION
   UNIVERSAL PLACEMENT
19 INTERNATIONAL, INC., LOURDES        Hearing Date: October 6, 2011
   "LULU" NAVARRO, PARS                Time: 9:00 AM
20 INTERNATIONAL PLACEMENT             Courtroom: 750
   AGENCY, EMILIO V. VILLARBA,
21 ROBERT B. SILVERMAN, and
   SILVERMAN & ASSOCIATES,
22
                    Defendants.
23

24
   AND RELATED COUNTER-CLAIM
25

26

27

28

1
2

# **<u>TABLE OF CONTENTS</u>**

I.    INTRODUCTORY STATEMENT ...................................................................1

II.    Plaintiffs Can Satisfy Neither Rule 23(a)(2) Nor Rule 23(b)(3) Because All Of Their Claims Against Defendants UPI And Navarro Raise Issues That Can Only Be Answered On An Individual Basis ...................................................................2

   A.    Plaintiffs' Fraud-Based Claims All Raise Individual Questions That Cannot Be Answered On A Class-Wide Basis.......................................................2

   B.    Even Plaintiffs' TVPA Claim Requires Proof On An Individual Basis............3

III.    Plaintiffs Fail To Establish The Existence Of Any Credible Number of Plaintiffs Who Have TVPA Claims ...................................................................7

IV.    CONCLUSION ...................................................................10

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3
*Andrews v. Bechtel Power Corp.*, 780 F.2d 124 (1st Cir. 1985) ...................................9

4
*Block v. First Blood Ass'n,* 125 F.R.D. 39 (S.D.N.Y. 1989).........................................10

5
*Celano v. Marriott Int'l, Inc.,* 242 F.R.D. 544 (N.D. Cal. 2007) ..................................9

6
*Christiana Mortgage Corp. v. Delaware Mortgage Bankers Ass'n*,

7
136 F.R.D. 372 (D. Del. 1991) ......................................................................................9

8
*CL-Alexanders Laing & Cruickshank v. Goldfeld*,

9
127 F.R.D. 454 (S.D.N.Y. 1989) ...................................................................................9

10
*Dann,* 2011 U.S. App. LEXIS 15012 ...........................................................................6

11
*Ellis v. Costco Wholesale Corp.*,

12
2011 U.S. App. LEXIS 19060 (9th Cir. Sept. 16, 2011).............................................1, 2

13
*Garcia v. Gloor*, 618 F.2d 264 (5th Cir. 1980) .........................................................9, 10

14
*Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147 (1982) ............................................1, 8

15
*Green v. Borg-Warner Protective Servs. Corp.*,

16
1998 U.S. Dist. LEXIS 292 (S.D.N.Y. Jan. 15, 1998) ..................................................9

17
*Jeffries v. Pension Trust Fund,* 172 F. Supp. 2d 389 (S.D.N.Y. 2001).........................9

18
*McDonald v. Corrections Corp of America,*

19
2010 U.S. Dist. LEXIS 122674 (D. Az. 2010) ..............................................................9

20
*McLaughlin v. Am. Co.*, 522 F. 3d 215 (2d Cir. 2008).................................................2

21
*Poulos v. Caesar's World,* 379 F.3d 654 (9th Cir. 2004)..............................................2

22
*Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.,*

23
319 F.3d 205 (5th Cir. 2003) ..........................................................................................2

24
*Sikes v. Teleline, Inc.,* 281 F. 3d 1350 (11th Cir. 2002) .............................................2

25
*Thorn v. Jefferson-Pilot Life Ins. Co.,* 445 F.3d  311 (4th Cir. 2006)...........................7

26
*UFCW Local 1776, etc. v. Eli Lilly and Co.,* 620 F.3d 121 (2d Cir. 2010) ...................2

27
*United States v. Bradley,* 390 F.3d 145 (1st Cir. 2004)............................................5, 6

28

DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING NUMEROSITY AND PREDOMINANCE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*United States v. Dann*, 2011 U.S. App. LEXIS 15012 (11th Cir. July 22, 2011) ........... 4

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ......................................... 1, 7, 9

**Statutes**

18 U.S.C. § 1589 (a)(4) ............................................................................................ 4

18 U.S.C. §§ 1581 .................................................................................................... 3

18 U.S.C. §§ 1589, 1590, 1592, 1594(a), and 1594(b) ........................................ 3

Fed. R. Civ. P. 23(a)(1) ........................................................................................... 7

Fed. R. Civ. P. 23(b)(2) ......................................................................................... 11

Rule 23(a)(1) .......................................................................................................... 10

Rule 23(b)(3) ...................................................................................................... 1, 6

DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING NUMEROSITY AND PREDOMINANCE

## I.   <u>INTRODUCTORY STATEMENT</u>

In their recently-filed Supplemental Briefing, Plaintiffs contend that this Court should not and need not address the merits of their underlying claims against Defendants UPI and Navarro.  They cite two Ninth Circuit decisions, and one from Judge A. Howard Matz of this Court to support their contention.  However, the United States Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), specifically instructed the District Courts to conduct a "rigorous analysis" to determine whether the party seeking class certification has satisfied each of the four elements required by Fed. R. Civ. P. 23(a).  The Ninth Circuit Court of Appeal, in the very recent *Ellis v. Costco Wholesale Corp.* decision, expressly affirmed this responsibility:

> The United States Supreme Court [has] required district courts to engage in a "rigorous analysis" of each Rule 23(a) factor when determining whether plaintiffs seeking class certification have met the requirements of Rule 23. …When considering class certification under Rule 23, district courts are not only at liberty to, but must perform "a rigorous analysis [to ensure] that the prerequisites of Rule 23(a) have been satisfied." ... In many cases, "that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim."

*Ellis v. Costco Wholesale Corp.*, 2011 U.S. App. LEXIS 19060, *18-19 (9th Cir. Sept. 16, 2011)(citing *Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 161 (1982) and quoting *Wal-Mart,* 131 S. Ct. at 2551).

As set forth below, Plaintiffs have failed in this case to provide this Court with sufficient admissible evidence to meet their burden of proving the existence of *any* of the four elements required by Rule 23(a) – numerosity, commonality, adequacy of representation or typicality – or that the common questions raised by any of their claims predominate over individual questions, the showing required by Rule 23(b)(3). The Court must deny the Plaintiffs' motion for class certification.

**II.** **Plaintiffs Can Satisfy Neither Rule 23(a)(2) Nor Rule 23(b)(3) Because All Of Their Claims Against Defendants UPI And Navarro Raise Issues That Can Only Be Answered On An Individual Basis**

In determining whether class certification is proper, this Court must consider not just whether common questions are raised, but whether the proposed class would generate common answers. *Ellis,* 2011 App. LEXIS 19060 at *22 (*quoting Wal-Mart,* 131 S. Ct. at 2551) ("what matters to class certification is not the raising of common 'questions' …but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation").

A.   Plaintiffs' Fraud-Based Claims All Raise Individual Questions That Cannot Be Answered On A Class-Wide Basis.

Plaintiffs initially sought to certify a class on all of their claims against Defendants Universal Placement International ("UPI") and Lourdes Navarro ("Navarro"). (ECF No. 134, at 16:2-5; 19, ¶ e).  Their motion was consistent with their Second Amended Complaint.  (ECF No. 126).  Plaintiffs now concede that a RICO class based upon predicate acts of extortion would be improper because of the predominance of individualized questions.  (ECF No. 214, at 9, footnote 2).

Individualized inquiries also predominate in Plaintiffs' fraud-based claims, however.  The Fifth, Second and Eleventh Circuits all have consistently held that certification of a RICO class based upon predicate acts of mail or wire fraud should be the exception, not the rule, because each putative class member must demonstrate that she or he relied upon the allegedly fraudulent statements.  *See, e.g., Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.,* 319 F.3d 205, 211 (5th Cir. 2003), *McLaughlin v. Am. Co.*, 522 F. 3d 215, 222 (2d Cir. 2008); *UFCW Local 1776, etc. v. Eli Lilly and Co.,* 620 F.3d 121, 131-133 (2d Cir. 2010); *Sikes v. Teleline, Inc.,* 281 F. 3d 1350, 1364 (11th Cir. 2002).  So, too, has the Ninth Circuit.  *Poulos v. Caesar's World,* 379 F.3d 654, 658 (9th Cir. 2004).  Where, as here, the admissible testimony of the six non-plaintiff teachers casts doubt upon whether Defendants UPI and Navarro

DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING NUMEROSITY AND PREDOMINANCE

1    even made any false or misleading statements, certification of a RICO class would

2    constitute an abuse of discretion.  *See, e.g., Poulos ,* 379 F. 3d at 658.

3           As reliance by Plaintiffs constitutes an element of each of Plaintiffs' fraud-based

4    claims against Defendants UPI and Navarro (Plaintiffs' Second through Sixth Claims

5    for Relief), class certification under any of those claims would be improper.

6    B.    Even Plaintiffs' TVPA Claim Requires Proof On An Individual Basis.

7           Accepting that they face an uphill battle on their other claims, Plaintiffs for their

8    proposed class now rely almost exclusively upon the Trafficking Victims Protection

9    Act, 18 U.S.C. §§ 1581, *et seq.* ("TVPA").  The TVPA forms the basis of Plaintiffs'

10   First Claim for Relief against Defendants UPI and Navarro.  Plaintiffs in their moving

11   papers contend that the TVPA gives rise to the following common question of fact:

12           Whether Recruiter Defendants and Legal Facilitator Defendants provided

13           the labor of Plaintiffs and other Louisiana Teacher Class members

14           through threats of serious financial harm and/or abuse of legal process,

15           and recruited, harbored, or transported them for that purpose.

16   …and the following question of law:

17           Whether Recruiter Defendants' and Legal Facilitator Defendants' conduct

18           violated the TVPA, specifically, 18 U.S.C. §§ 1589, 1590, 1592, 1594(a), and/or

19           1594(b).

20   (ECF No. 134, at 19).

21           Plaintiffs cannot demonstrate a systematic pattern of an abuse of legal process

22   by Defendants UPI and Navarro.  To the contrary, Plaintiffs' own deposition testimony

23   proves that Defendants' conduct towards the five Plaintiffs has varied substantially.

24   (ECF No. 160, at 18:19-19:9).  Plaintiff Donnabel Escaudra even testified that she

25   considered the invoices she received from UPI "useless" and did not even bother to

26

27

28

DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING NUMEROSITY AND PREDOMINANCE

1    open some of the envelopes she received from UPI. [1]   (Escuadra Deposition at 240:25-

2    241:13)  The six declarants deny receiving any threats at all from Navarro or anyone

3    else at UPI. (ECF No. 176, at 5:25-6:8).

4         Plaintiffs therefore are left with a single claim for their proposed class: their

5    contention that all of the putative class members were recruited, transported and forced

6    to work in the United States under the threat of "serious financial harm."  Relying

7    upon *United States v. Dann*, 2011 U.S. App. LEXIS 15012 (11th Cir. July 22, 2011),

8    they assert that liability should be measured upon an objective standard that focuses

9    upon the defendant's conduct rather than the victim's state of mind.  (ECF No. 214, at

10   p. 6).  Consequently, they assert, the Court may ignore the significant differences in

11   their own states of mind and establish the liability of Defendants UPI and Navarro on a

12   class-wide basis.

13        Plaintiffs, however, misread both the relevant statute and case authority.

14        The TVPA provides that whoever knowingly provides or obtains the labor "by

15   means of any scheme, plan, or pattern intended to cause the person to believe that, if

16   that person did not perform such labor or services, that person or another person would

17   suffer serious harm or physical restraint, shall be punished." 18 U.S.C. § 1589 (a)(4).

18   Leaving aside the claim of "physical restraint," which Plaintiffs have not asserted, the

19   liability of Defendants UPI and Navarro boils down to the question: did they engage in

20   a scheme, plan or pattern that was intended to cause a potential teacher applicant to

21   believe that she/he would suffer "serious harm" if she/he did not agree to teach in the

22   State of Louisiana?

23

24   _____

25   [1]     Escuadra's assertion that she found invoices from UPI "useless" underscores the
26   fact that Escuadra did not fear "serious [financial] harm" and is therefore not an
     adequate class representative, since she did not feel threatened or intimidated by
27   Navarro. Named Plaintiffs Ingrid Cruz and Mairi Nunag-Tanedo, who have filed
     claims against Navarro in multiple forms, are similarly inadequate representatives
28   because they do not fear "serious [legal] harm." (*See* ECF No. 160, 19:20-21:21).

1      To answer this question, the finder of fact must first look to the definition of

2 "serious harm" that is provided in subsection (c)(2) of the same statute:

3          The term "serious harm" means any harm, whether physical or

4          nonphysical, including psychological, financial, or reputational harm,

5          that is sufficiently serious, *under all the surrounding circumstances, to*

6          *compel a reasonable person of the same background and in the same*

7          *circumstances* to perform or to continue performing labor or services in

8          order to avoid incurring that harm. (emphasis added)

9 The statute thus commands the finder of fact to consider the alleged victim's

10 background and circumstances in determining whether the defendant has violated the

11 TVPA.  Indeed, the legislative history confirms that Section 1589 is, "intended to be

12 subjectively construed in determining whether a particular type or certain degree of

13 harm or coercion is sufficient to overcome a particular victim's will."  54 Cong. Rec.

14 H 10888, 10904.

15      For this reason, in a criminal case in which the defendants were accused of

16 violating the TVPA, the District Court in *United States v. Bradley,* 390 F.3d 145 (1st

17 Cir. 2004), *vacated on other grounds*, 545 U.S. 1101 (U.S. 2005), instructed the jury as

18 follows:

19          You may also consider [the Jamaican workers] special vulnerabilities, if

20          any.  In this regard you may consider whether or not all persons are of the

21          same courage or firmness.   You may consider, for example, [the

22          Jamaican workers'] background, physical and mental condition,

23          experience, education, socioeconomic status, and any inequalities

24          between [the Jamaican workers] and the defendants with respect to these

25          considerations, including their relative stations in life.  You may consider

26          and weigh whether or not [the Jamaican workers] were vulnerable in

27          some way so that the actions of the defendant, even if not sufficient to

28

1    compel another person to work, were enough to compel [the Jamaican
2    workers] to work.

3  390 F.3d at 153.  Reviewing the instructions, the First Circuit Court of Appeal
4  concluded that "we find no error at all, plain or otherwise." *Id.*

5       Even in *Dann*, the only case cited by Plaintiffs for their so-called "objective"
6  standard, the Ninth Circuit directed the lower courts to consider the alleged victim's
7  circumstances.  *Dann,* 2011 U.S. App. LEXIS 15012 at *24 ("[S]omeone is guilty of
8  forced labor if he intends to cause a person in his employ to believe that if she does not
9  continue to work, she will suffer the type of serious harm — physical or nonphysical,
10 including psychological, financial, reputation harm — that would compel someone *in*
11 *her circumstances* to continue working to avoid that harm") (emphasis added).

12      The evidence before this Court demonstrates that the backgrounds and
13 circumstances of the alleged TVPA victims varied wildly.  Some teachers had
14 advanced degrees.  (ECF No. 160, at 7: 8-10, 17-19).  Some had experience applying
15 to other employment agencies.  (ECF No. 160, at 12:26-27; ECF No. 160-3, at 2:6-10).
16 Some had pressing bills and needed more money.  (ECF No. 176, at 4:12-14).  Some
17 had enough family money to avoid borrowing from finance agencies.  (ECF No. 160-2,
18 at 3:11-4:4).  Some had relatives in the U.S. who they wanted to join.  (ECF No. 160,
19 at 17:24-25).  Some have paid off their debt; others have not.  (ECF No. 176, at 5: 3-9).

20      Whether or not Defendants UPI and Navarro bear any liability under the TVPA
21 therefore cannot – indeed, must not – be answered on a class-wide basis.  Because the
22 backgrounds of the putative class members varied so dramatically, it can and must be
23 answered on a case-by-case basis.

24      Plaintiffs therefore fail to demonstrate that certification under Rule 23(b)(3)
25 would be proper for *any* of their claims against Defendants UPI and Navarro, even the

26

27

28

DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING NUMEROSITY AND PREDOMINANCE

TVPA claim. [2]  And, since Plaintiffs admit that the relief they seek is predominantly monetary, certification under Rule 23(b)(2) would be improper.  *Wal-Mart,* 131 S. Ct. at 2557; *See also*, *Thorn v. Jefferson-Pilot Life Ins. Co.,* 445 F.3d  311, 331 (4th Cir. 2006)("certification under Rule 23(b)(2) is improper when predominant relief sought is not injunctive or declaratory, even if the relief is equitable in nature.")

### III.   Plaintiffs Fail To Establish The Existence Of Any Credible Number of Plaintiffs Who Have TVPA Claims

Stated succinctly, Plaintiffs cannot demonstrate how many teachers can even state TVPA claims against Defendants UPI and Navarro, much less prevail upon them. They fail to demonstrate any number at all, much less one that it is sufficiently large as to make joinder impracticable as required by Fed. R. Civ. P. 23(a)(1).  Their efforts have included the following:

*First*, Plaintiffs alleged that all 350 teachers recruited to work in Louisiana through UPI and PARS qualified as members of their putative class. (ECF No. 180, at 18, see footnote 5).  Yet, more teachers than not have testified before this Court that PARS and UPI disclosed the Processing and Placement Fees at the meetings that were attended by "hundreds of applicants."  (ECF No. 176, at 3: 9-26, 7:1-4).  More teachers than not have testified before this Court that they were not coerced, but instead were given sufficient time to review the form contracts.  (ECF No. 176, at 9: 16-24).  More teachers than not have testified before this Court that they signed the contracts and agreed to work in the United States because they wanted to grow professionally and make more money, not because they feared "serious harm" from Defendants UPI and Navarro.  (ECF No. 160, at 17:13-18:2; ECF No. 176, at 4:7-5:2). This Court therefore cannot rely upon 350 as the number of potential class members.

---

[2]     The purported damages suffered by each teacher is also an inquiry that can only be answered on an individual basis, giving further emphasis to the predominance of

**Then,** recognizing the insufficiency of their original showing, Plaintiffs in their original Reply Memorandum attempted to submit the speculative testimony of a paralegal that, "20 to 25 teachers employed in the Avoyelles School District [. . .] are also interested in pursuing this case." (ECF No. 180-9, at 2).  This testimony was properly rejected as inadmissible by this Court at the September 6, 2011 hearing.

**Now**, in one final effort to demonstrate that such a sufficiently large number of teacher applicants believed that they were subjected to the threat of "serious harm" as to make impracticable their joinder as plaintiffs, Plaintiffs' counsel has submitted copies of Retention Agreements signed by the Southern Poverty Law Center and 125 members of the American Federation of Teachers.  (ECF No. 214-1 through 214-8, at 1-63; ECF No. 214-9, at 1-21).  However, Mr. Knoepp's declaration authenticating these documents simply refers to the signatories as "putative class members" (ECF No. 214-1, at 2-3).  It, however, fails to establish that *any of the signatories* feared "serious harm" from Defendants UPI and Navarro for refusing to work in Louisiana.  The mere fact that some union teacher has agreed to representation relating to "problems I experienced related to my recruitment by Universal International Placement, Inc. [*sic*] for employment in the Louisiana public school system" (ECF No. 214-1, at 4), does not mean that she/he has any claim against Defendants UPI and Navarro, or even qualifies as a member of the putative class.[3]

Plaintiffs contend that the Court should not go into the merits of the case at this stage.  Yet, this is precisely what the Supreme Court has commanded in its recent *Wal-Mart* decision: "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule - - that

---

individual questions of fact over common. *See Falcon,* 457 U.S. at 156.

[3]  Curiously, twenty of these retainer agreements were signed by SPLC in the past six weeks, although they were executed by individual teachers more than a year ago. (*See e.g.*, ECF No. 214-1, at 32-35).

1   is, he must be prepared to *prove* that there are *in fact* sufficiently numerous parties."

2   *Wal-Mart,* 131 S. Ct. at 2551(emphasis added).

3          In that regard, this case is virtually congruent with *Celano v. Marriott Int'l, Inc.,*

4   242 F.R.D. 544, 549 (N.D. Cal. 2007).  There, in an effort to establish that the

5   proposed class was sufficiently numerous as to make joinder impracticable, the

6   plaintiffs submitted the declarations of twenty-one disabled golfers who said that they

7   would play at Defendant's golf course if only they were accommodated.  The district

8   court found this evidence alone was too speculative to establish the size of the

9   proposed class.  *See also*, *McDonald v. Corrections Corp of America,* 2010 U.S. Dist.

10  LEXIS 122674, at *10 (D. Az. 2010) (rejecting plaintiffs' mathematical extrapolation

11  as a basis for identifying size of proposed class); *Jeffries v. Pension Trust Fund,* 172 F.

12  Supp. 2d 389, 394 (S.D.N.Y. 2001) (while plaintiff alleged that a large number of

13  union's members were unemployed, it failed to proffer evidence of how many laid-off

14  members suffered the alleged injury; noting that while the court may make "common

15  sense assumptions to support a finding of numerosity," it may not "do so on the basis

16  of pure speculation without any factual support.") (citations omitted); *Green v. Borg-*

17  *Warner Protective Servs. Corp.,* 1998 U.S. Dist. LEXIS 292, *11-13 (S.D.N.Y. Jan.

18  15, 1998) (finding that four thousand single adult men and women reside in shelters on

19  any given day, along with some reports of assault and misconduct at shelters, did not

20  provide sufficient evidence of numerosity).

21         Moreover, the relative proximity of each of the putative class members in this

22  action serves as another disincentive.  The First, Second, Third and Fifth Circuits have

23  all held that a lack of geographic dispersion may defeat numerosity.  *Andrews v.*

24  *Bechtel Power Corp.*, 780 F.2d 124 (1st Cir. 1985); *CL-Alexanders Laing &*

25  *Cruickshank v. Goldfeld*, 127 F.R.D. 454 (S.D.N.Y. 1989); *Christiana Mortgage Corp.*

26  *v. Delaware Mortgage Bankers Ass'n*, 136 F.R.D. 372 (D. Del. 1991); *Garcia v. Gloor*,

27  618 F.2d 264 (5th Cir. 1980).  Plaintiffs have not demonstrated that putative class

28

9

1   members live anywhere beyond the immediate vicinity of several school districts in

2   Louisiana.

3         The fact that several teachers have signed Retention Agreements, if anything,

4   makes joinder more practicable because the Southern Poverty Law Center and AFT

5   already have the identities and addresses of the putative class members.  (ECF No.

6   214-1, at 4)("I agree to promptly inform SPLC of any change in my address or

7   telephone number").  *See e.g. Block v. First Blood Ass'n,* 125 F.R.D. 39, 42 (S.D.N.Y.

8   1989)(numerosity requirement not met because class members were easily identifiable

9   and had considerable financial stake in litigation); *Garcia v. Gloor* 618 F.2d 264, 267

10   (5th Cir. 1980)(joinder was practicable because class was readily identifiable and lived

11   in compact geographic area).

12         In short, the Plaintiffs cannot withstand the "rigorous analysis" that this Court

13   must make of the evidence they have submitted in support of their claim that they have

14   satisfied Rule 23(a)(1) pertaining to numerosity.  The Plaintiffs' class certification

15   motion should be denied on this additional ground as well.

16

17                          IV.   **CONCLUSION**

18         Through their filings with this Court, including the original Opposition, the

19   Supplemental Opposition and this Supplemental Brief, Defendants UPI and Navarro

20   have submitted admissible evidence and argument that the Plaintiffs' class certification

21   motion should be rejected for each of the following reasons:

22         1.   Plaintiffs have failed to establish through admissible evidence that the

23              number of putative class members is so large as to make joinder

24              impracticable;

25         2.   Plaintiffs have failed to establish through admissible evidence the

26              existence of common issues of fact or law arising from their claims;

27         3.   Plaintiffs have failed to prove that their claims are typical of the class they

28              propose to represent;

10

4.  Plaintiffs have failed to prove that they can adequately represent the interests of the proposed class;

5.  Plaintiffs have failed to demonstrate that common questions of fact or law predominate over individual questions; and

6.  Because they have predominantly monetary relief, class-wide injunctive relief under Fed. R. Civ. P. 23(b)(2) would not be proper.

Plaintiffs' motion to certify the proposed class should therefore be denied in its entirety, as to all claims.

Dated:   September 28, 2011                    HERNANDEZ, SCHAEDEL & ASSOCIATES, LLP


                                       By:   /s/ Don A. Hernandez
                                             Don A. Hernandez,
                                             Attorneys for Defendants,
                                             Universal Placement International, Inc., and
                                             Lourdes "Lulu" Navarro

DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING NUMEROSITY AND PREDOMINANCE

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel of record herein via the Court's electronic notification system on September 28, 2011.

_____/s/ Don A. Hernandez_____
Don A. Hernandez

DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING NUMEROSITY AND PREDOMINANCE