# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | SA CV10-01172 JAK (MLGx) | Date | November 15, 2011 |
| Title | Mairi Nunag Tanedo, et al. v. East Baton Rouge Parish School Board, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING DEFENDANT EAST BATON ROUGE PARISH SCHOOL BOARD'S MOTION FOR SUMMARY JUDGMENT (Dkt. 205)**

## I. Introduction

Plaintiffs, on behalf of themselves and others similarly situated, have brought various claims arising out of their recruitment in the Philippines to work as teachers in Louisiana. In the present motion, Defendant East Baton Rouge Parish School District ("EBR") moves for summary judgment as to the only presently pending claim in which it is named: negligent hiring. Following the hearing on this matter on November 7, 2011, the Court took the matter under submission. For the reasons stated in this Order, the Court GRANTS the motion for summary judgment.

## II. Factual Background

Plaintiffs are Filipino nationals who traveled to the United States to work as teachers in Louisiana public schools. Their work in the United States was undertaken through H-1B visas. Defendant Universal Placement International, Inc. ("UPI") is a California corporation, headed by Defendant Lourdes Navarro. UPI recruits teachers from the Philippines to teach in the United States. Defendant PARS International Placement Agency ("PARS") is a Philippine corporation, headed by Defendant Emilio Villarba, Navarro's brother. Like UPI, PARS recruits teachers from the Philippines to teach in the United States (UPI, Navarro, PARS, and Villarba are collectively referred to as the "Recruiter Defendants"). Defendant Robert Silverman is a California attorney who, with his law firm Silverman & Associates, represented the Louisiana school districts in the recruitment process (Silverman and the firm are collectively referred to as the "Attorney Defendants"). Defendant EBR and other Louisiana School districts contracted with the Recruiter Defendants and Attorney Defendants to recruit Filipino teachers to work in their districts. Defendant Swinford is the former Associate Superintendent for Human Resources for EBR (Swinford and EBR are collectively referred to as the "Employer Defendants").

In 2006, the Recruiter Defendants began advertising their teacher recruiting services to United States school districts. They also used parallel advertisements in the Philippines about these teaching opportunities to attract prospective applicants to these teaching positions. The Recruiter Defendants interviewed Plaintiffs and class members for teaching positions. Plaintiffs allege that the Recruiter

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01172 JAK (MLGx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | Mairi Nunag Tanedo, et al. v. East Baton Rouge Parish School Board, et al. | | |

Defendants, after extending them job offers, revealed to Plaintiffs only some of the steps in the recruitment process. At first, the Recruiter Defendants told Plaintiffs only of the need to submit certain documents in support of their visa applications and to pay a recruitment fee ("First Recruitment Fee") of approximately $5,000 per applicant. This First Recruitment Fee included fees that, according to regulations governing H-1B visas, the petitioning United States employers, and not the beneficiary teachers, were required to pay. This First Recruitment Fee was non-refundable. Many Plaintiffs took out substantial loans to pay the First Recruitment Fee and later fees.

Plaintiffs further contend that, after paying the First Recruitment Fee, Plaintiffs received job offers to teach in the United States. Plaintiffs interviewed at a United States embassy to obtain their H-1B visas. The Recruiter Defendants instructed Plaintiffs to have embassy officials ship Plaintiffs' passports and visas directly to the office of the Recruiter Defendants in the Philippines, rather than to Plaintiffs. Once the Recruiter Defendants had Plaintiffs' documents, they allegedly told Plaintiffs, for the first time, that Plaintiffs would have to pay a second larger recruitment fee ("Second Recruitment Fee") plus the cost of airfare from the Philippines to the United States. The Second Recruitment Fee was 20% of each Plaintiff's expected first year salary. Plaintiffs would then have to pay an additional 10% of their second year salary if they remained in the United States for a second year. Because Plaintiffs earned approximately $40,000 per year teaching in Louisiana, the First Recruitment Fee, Second Recruitment Fees, and second year salary fee totaled approximately $17,000. This figure does not include the aforementioned airfare.

Plaintiffs allege that, if they did not pay the additional fees, they would forfeit the First Recruitment Fee, lose their jobs in the United States, and lose their visas. Accordingly, Plaintiffs contend that they felt compelled to comply with Recruiter Defendants' demands because they needed to work in the United States to repay their debts in the Philippines. Thus, they felt compelled to teach in the United States and pay a large percentage of their salaries to UPI and PARS. Moreover, Plaintiffs contend that, once they were in the United States, the Recruiter Defendants threatened legal action, including deportation, against Plaintiffs and other class members if they protested the fee arrangement.

The Attorney Defendants allegedly participated in the scheme to compel Plaintiffs' labor by obtaining for Plaintiffs only one-year H-1B visas, instead of what Plaintiffs contend was the standard three-year visa. According to Plaintiffs, this allowed the Recruiter Defendants additional leverage and control over Plaintiffs—the ability to threaten their deportation after one year of work in the United States. Additionally, the Attorney Defendants allegedly participated in the scheme to have Plaintiffs pay visa fees that their employers were required to pay under the applicable federal regulations.

Plaintiffs claim that EBR was negligent in hiring UPI to recruit teachers on its behalf, in part based on the fact that Navarro was previously convicted and imprisoned for Medi-Cal fraud. They argue that EBR was negligent in hiring Navarro's company, UPI, because the business of recruiting foreign teachers would give Navarro a clear opportunity to defraud new victims. Plaintiffs also argue that EBR's exclusive contract with UPI, which required all recruited foreign teachers wishing to work at EBR to go through UPI, further allowed UPI to take advantage of the teachers. *See* Second Amended Complaint ("SAC") ¶¶ 407-415.

In September 2009, the American Federation of Teachers ("AFT") and Louisiana Federation of Teachers

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01172 JAK (MLGx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | Mairi Nunag Tanedo, et al. v. East Baton Rouge Parish School Board, et al. | | |

("LFT") filed a complaint with the Louisiana Workforce Commission ("LWC") regarding Plaintiffs' employment. It was then, according to Plaintiffs, that they learned "crucial facts" about EBR's relationship with UPI, facts that suggested that EBR might be liable for negligent hiring.

### III.  Procedural Background

Originally the "Employer Defendants" included Charlotte Placide, former superintendent at EBR; Millie Williams, Director of Personnel at EBR; and Elizabeth Duran Swinford, Associate Superintendent for Human Resources at EBR. Those three defendants moved to dismiss the claims against them. On May 12, 2011, Judge Guilford, to whom this matter was previously assigned, dismissed Placide and Williams for lack of personal jurisdiction. Dkt. 115. Swinford argued that she is entitled to qualified immunity, but the Court declined to consider that issue. Swinford has appealed the question of qualified immunity to the Ninth Circuit.

Defendant EBR also moved to dismiss. On May 12, 2011, Judge Guilford issued an order holding that the Court has specific jurisdiction over EBR, dismissing all claims against EBR except the negligent hiring claim, and holding that Louisiana law is the appropriate law under California's choice-of-law rules to apply to the negligent hiring cause of action. *See* Dkt. 116.

### IV.  Legal Analysis

#### A.  Prescription

The parties agree that Louisiana law applies to the determination of the issues presented in this motion. Louisiana law provides that claims may be "prescribed," or subject to "prescription," if brought too long after the date of injury. Because Plaintiffs' claim for negligent hiring is a "delictual action", i.e., one that sounds in tort, it is subject to a one-year "liberative" prescriptive period. La. Civ. Code art. 3492. The parties do not dispute this. "This prescription commences to run from the day injury or damage is sustained." *Id.*

#### B.  Exceptions to Prescription

Prescription under Louisiana law is subject to a number of exceptions, including the doctrine of *contra non valentem agere nulla currit praescriptio* ("*contra non valentem*"). Under that doctrine, "prescription does not run against a person who is unable to act." *Corsey v. State of Louisiana, Through Department of Corrections*, 375 So. 2d 1319, 1321 (La. 1979). *Contra non valentem* applies in four situations:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
> (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
> (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01172 JAK (MLGx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | Mairi Nunag Tanedo, et al. v. East Baton Rouge Parish School Board, et al. | | |

(4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.

*Carter v. Haygood*, 892 So. 2d 1261, 1268 (La. 2005). Plaintiffs invoke the fourth application of *contra non valentem* and concede that the other applications do not apply.

### C. *Contra Non Valentem* and the Discovery Rule

The fourth application of *contra non valentem* is commonly called the "discovery rule," *Babineaux v. State of Louisiana, Through Department of Transportation and Development*, 927 So. 2d 1121, 1124 (La. App. 2005) and is akin to the discovery rule in common law state jurisdictions, *Peak Performance Physical Therapy & Fitness, LLC v. Hibernia Corp.*, 992 So. 2d 527, 532 (La. App. 2008). The prescriptive period does not begin to run where a plaintiff could not have known that he had a cause of action against a defendant. However, the standard is one of constructive knowledge, not actual knowledge. Thus, when a plaintiff has constructive knowledge of a claim, the prescriptive period begins. *Ferrara v. Starmed Staffing, LP.*, 50 So. 3d 861, 866 (La. App. 2010). The Louisiana discovery rule is stricter than the discovery rule in common law jurisdictions in that a plaintiff has a very high burden to invoke it and claim that he lacked constructive knowledge of the potential cause of action. *See, e.g.*, *Ayo v. Johns-Manville Sales Corp.*, 771 F.2d 902, 909 n.4 (5th Cir. 1985) ("We also realize that other jurisdictions might find on similar facts that the applicable limitations period had been interrupted."). The Louisiana discovery rule is less forgiving to plaintiffs than the common law discovery rule in that it more liberally grants constructive notice to Plaintiffs that they should have sued in a more timely fashion.

Under the Louisiana discovery rule, "prescription runs from the date on which a plaintiff first suffered actual and appreciable damage, even though he may thereafter come to a more precise realization of the damages he has already incurred or incur further damage as a result of the completed tortious act." *Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 246 (La. 2010).

> It is well settled that the principle of contra non valentem will not exempt the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness, neglect, or unreasonableness. A plaintiff will be deemed to know what he could have learned through reasonable diligence. Generally, the prescriptive period commences when there is enough notice to *call for an inquiry* about a claim, not when an inquiry reveals the facts or evidence to sufficiently prove the claim.

*Babineaux*, 927 So. 2d at 1124-25 (emphasis added). It is "critical for the plaintiffs to establish that they did not possess information sufficient to incite curiosity, excite attention, or put a reasonable person on guard to call for inquiry more than one year before" their lawsuit is filed, or else they will be deemed to have constructive knowledge of the claim and cannot invoke *contra non valentem*. *Alexander v. Fulco*, 895 So. 2d 668, 674 (La. App. 2005).

"[P]rescription begins to run against a claimant when he obtains actual or constructive knowledge of facts indicating a *cause of action*." *Guillot v. Daimlerchrysler Corp.*, 50 So. 3d 173, 180 (La. App. 2010) (italics added). While a plaintiff's ignorance of facts may interrupt the prescriptive period, ignorance of law does not. *Lieber v. State Of Louisiana, Department of Transportation & Development*, 682 So. 2d 1257, 1261

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01172 JAK (MLGx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | Mairi Nunag Tanedo, et al. v. East Baton Rouge Parish School Board, et al. | | |

(La. App. 1996).

It is "plaintiff's burden to determine the proper party or parties against whom to file his lawsuit within the one year prescriptive period." *Saylor v. Villcar Realty, L.L.C.*, 999 So. 2d 61, 65 (La. App. 2008). Plaintiffs will be deemed to have constructive knowledge if litigation "discovery devices" available to them after filing suit would have revealed the possibility of claims against other parties. *Patin v. Stockstill*, 315 So. 2d 868, 873 (La. App. 1975). Thus, plaintiffs may be prescribed from bringing actions against parties they did not previously know of when they should have known either those parties' identities or that a cause of action could lie against them. *See, e.g.*, *Herman v. State Farm Mutual Automobile Insurance Co.*, 977 So. 2d 41 (La. App. 2007) (plaintiff should have discovered that the uninsured tortfeasor defendant was acting in the scope of employment, and thus had constructive knowledge that a suit against defendant's employer was possible; as a result plaintiff was prescribed from later suing the originally unknown employer defendant).

### D. Burden of Proof

"Ordinarily, the party pleading prescription bears the burden of proving the claim has prescribed. However, when the face of the petition reveals that the plaintiff's claim has prescribed, the burden shifts to the plaintiff to demonstrate prescription was suspended or interrupted." *In re Medical Review Panel for Claim of Moses*, 788 So. 2d 1173, 1177 (La. 2001). To invoke an exception to prescription, such as *contra non valentem*, the burden is on Plaintiff to produce evidence that establishes that exception. *See Kling Realty Co. v. Chevron United States, Inc.*, 575 F.3d 510, 517 (5th Cir. 2009) (analyzing the burden of establishing a *contra non valentem* exception at the summary judgment stage).

Although generally "prescriptive statutes are to be interpreted broadly in favor of maintaining a party's claim," *Marin*, 48 So. 3d at 245, this canon of construction against prescription does not help a plaintiff in arguing that his claim falls into an exception to prescription. In such a case, in fact, the canon of construction is reversed and militates in favor of prescription: "the *contra non valentem* 'discovery rule' is only to be applied in extreme circumstances," and thus a plaintiff must overcome a high bar to invoke the exception. *Id.* Otherwise, a plaintiff's claim will be prescribed.

### E. Negligent Hiring

California choice-of-law principles apply to the negligent hiring cause of action brought in this case. Under those principles, Louisiana law governs the negligent hiring cause of action. *See* Order Granting in Part and Denying in Part Motion To Dismiss of Defendant East Baton Rouge Parish School Board 22-23, Dkt. 116.

A principal may be liable for failing to exercise reasonable care in hiring an employee or an independent contractor. *Hemphill v. State Farm Insurance Co.*, 472 So. 2d 320, 324 (La. App. 1985). Moreover, a principal may be liable for negligent hiring based on the later criminal actions of an employee or independent contractor where the employer failed to exercise reasonable care in hiring that employee or independent contractor, and where that employee or independent contractor "in the performance of his duties will have a unique opportunity to commit a crime against a third party." *Smith v. Orkin Exterminating Co.*, 540 So. 2d 363, 366 (La. App. 1989).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01172 JAK (MLGx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | Mairi Nunag Tanedo, et al. v. East Baton Rouge Parish School Board, et al. | | |

### V. Application

#### A. The Prescriptive Period

Plaintiffs filed their complaint on August 5, 2010. Thus, because the prescriptive period is one year, only tort claims for injuries suffered on or after August 5, 2009 can be pursued, absent some form of tolling. Plaintiffs complain of economic losses suffered in 2007 and 2008, when they paid their recruitment fees to PARS and UPI. Thus, the prescriptive period for those injuries began to run at the latest in July 2008, when Plaintiff Ingrid Cruz allegedly paid a recruitment fee, *see* Cruz Decl. ¶ 3, Dkt. 218-2, because "prescription commences to run from the day injury or damage is sustained," La. Civ. Code art. 3492. The prescriptive period thus closed in July 2009, and Plaintiffs had to sue before July 2009 for these economic injuries. This is well before Plaintiffs actually sued, on August 5, 2010. Plaintiffs have produced no evidence that they paid recruitment fees after August 5, 2009. It does not matter that Plaintiffs allegedly had to continue paying unreasonable interest rates on the loans they took out to pay the recruitment fees, because "[w]hen a defendant's damage-causing act is completed, the existence of continuing damages to the plaintiff, even progressively worsening damages, does not present successive causes of action accruing because of a continuing tort." *Terrebonne Parish School Board v. Mobil Oil Corp.*, 310 F.3d 870, 885 (5th Cir. 2002).

Thus, Plaintiffs must avail themselves of the "discovery rule" exception under *contra non valentem*, or else their claims will be prescribed, i.e., time-barred.

#### B. *Contra Non Valentem* and the Discovery Rule

Because Plaintiffs bear the burden to establish the discovery rule exception to *contra non valentem*, they must present some evidence that they could not reasonably have known they had a cause of action against EBR until after August 5, 2009. *See Guillot v. Daimlerchrysler Corp.*, 50 So. 3d 173, 180 (La. App. 2010). However, all Plaintiffs have presented in opposition to the instant motion is evidence that they did not actually know of the details of EBR's relationship with the Recruiter Defendants until the AFT and LFT complaint was brought to the LWC in September 2009. *See* Plaintiffs' Opposition, 3:10-25, Dkt. 218. Plaintiffs argue that, until they knew of the nature of the relationship between EBR and the Recruiter Defendants, they could not have known of potential negligent hiring.

Plaintiffs' argument focuses on the wrong question. The relevant inquiry is, given what Plaintiffs did know before July 2009, could they reasonably have known of the potential liability of EBR for negligent hiring? On this question, Plaintiffs present no evidence. And, the evidence that has been presented in connection with this motion shows that there is every indication that Plaintiffs could have discovered the information necessary to establish a negligent hiring cause of action prior to July 2009. Thus, Plaintiffs knew they were recruited by the Recruiter Defendants, the defendants who allegedly wronged Plaintiffs by coercing them into working and paying exorbitant fees that Plaintiffs felt they could not refuse, at the risk of suffering substantial economic injury. Further, Plaintiffs knew they were hired by EBR. The nexus between the recruiter and the employer is one that could have been reasonably inferred. Thus, recruiters are working for those looking to hire personnel. And, that is just what occurred here. Under these

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01172 JAK (MLGx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | Mairi Nunag Tanedo, et al. v. East Baton Rouge Parish School Board, et al. | | |

circumstances, Plaintiffs had a duty to use available "discovery devices" to investigate the Recruiter Defendants, which presumably would have revealed the "crucial facts" Plaintiffs claim alerted them to the troubling relationship between EBR and the Recruiter Defendants, and to the negligent hiring by EBR. In fact, Plaintiffs have made no showing why—if in September 2009 the AFT and LFT could file a complaint against the Recruiter Defendants that would ultimately reveal the relationship between EBR and the Recruiter Defendants—Plaintiffs themselves could have not discovered that relationship months (or years) earlier or have asked their unions to investigate the issue given that Plaintiffs were members of these unions.[1]

Plaintiffs assert that they "had *no* reason to know before September 2009 that parties other than Universal and the other Recruiter Defendants engaged in wrongful acts that contributed to their injuries." Opposition, 9:9-12, Dkt. 218. But, Plaintiffs have presented no evidence in support of this proposition. And regardless, the question is not whether Plaintiffs should have known that EBR had committed wrongdoing, but whether Plaintiffs, acting diligently and using the discovery devices available, could reasonably have discovered that EBR acted negligently in associating with the Recruiter Defendants. Plaintiffs clearly could have discovered the relationship that is the premise for the instant negligent hiring claim by investigating the wrongdoing the Recruiter Defendants had committed against them—wrongdoing Plaintiffs knew of as early as 2007. Because Plaintiffs knew that Recruiter Defendants wronged them in 2007 and 2008,[2] it is their burden to establish that a suit against those Defendants would not have brought to light facts indicating there would be a cause of action against EBR. Because Plaintiffs have not made this showing, their claim of *contra non valentem* fails.

Plaintiffs argue that

> [t]here is simply no evidence that Plaintiffs—Philippine nationals who had been in the United States for only a short period—were somehow unreasonable in failing, before September 2009, to sue EBR or to investigate whether EBR had taken steps to facilitate and/or turn a blind eye to Universal's fraudulent scheme.

Opposition, 10:8-12, Dkt. 218. But, Plaintiffs' argument overlooks that they have the burden of proof. Thus, it is Plaintiffs' burden to show that they were *not* unreasonable in failing to investigate EBR before August 5, 2009. Plaintiffs have presented no evidence on this issue. Thus, there is no genuine issue of

---

[1] Indeed, Plaintiffs have produced evidence suggesting that they could have discovered the relationship between EBR and the Recruiter Defendants, and thereby could have known of a possible negligent hiring cause of action, long before August 2009, when they filed their complaint. Thus, Plaintiffs have produced evidence of an August 2008 public records request made by the Caddo Federation of Teachers to the Caddo Parish School Board regarding the relationship between the school board and the Recruiter Defendants. McNeil Decl., Exh. A, 31-32, Dkt. 218-5. The ready availability of such information to Caddo Parish teachers suggests that such information was also readily available to Plaintiffs before the prescriptive period expired. And, it supports the logical inference that a similar request could have been filed with respect to EBR. Plaintiffs have presented no evidence to the contrary on this issue on which they bear the burden of proof.

[2] Indeed, Plaintiffs concede that they "knew before September 2009 that they had paid substantial fees, and had suffered injuries due to Universal's misconduct." Opposition 6:2-4, Dkt. 218.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01172 JAK (MLGx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | Mairi Nunag Tanedo, et al. v. East Baton Rouge Parish School Board, et al. | | |

fact as to its resolution. Plaintiffs have presented no evidence, for example, that in 2008 they investigated UPI and found nothing that suggested that its relationship with EBR was problematic. Nor have they presented evidence, for example, that no reasonable inquiry in 2008 could have turned up such information.

### C. Navarro's Criminality

The fact that Plaintiffs contend that Navarro has a criminal history is particularly damaging to Plaintiffs' reliance on *contra non valentem*. Plaintiffs' negligent hiring claim against EBR relies heavily on the fact that Navarro was convicted of and imprisoned for fraud. Their complaint alleges that "Defendant [EBR] knew or had reason to believe that Recruiter Defendants, and particularly Defendant Lourdes Navarro and Defendant Universal, were unfit for the tasks for which they were hired." SAC ¶ 410, Dkt. 126. In his May 12, 2011 Order, which denied EBR's motion to dismiss the negligent hiring claim, Judge Guilford reasoned that the negligent hiring claim survived a motion to dismiss because a reasonable background check would have revealed Navarro's criminal history, and it could be negligent to hire such a person because of the opportunity it would provide for that person to defraud Plaintiffs. *See* Order Granting in Part and Denying in Part Motion To Dismiss of Defendant East Baton Rouge Parish School Board 22:7-23:2, Dkt. 116.

Surely, a diligent inquiry into the Recruiter Defendants—which Plaintiffs had a duty to do well before July 2009, as Plaintiffs admit, because they knew as early as 2007 that the Recruiter Defendants had harmed them—would have revealed Navarro's criminal past. Given that a cause of action for negligent hiring may lie where the employment gives the employee or independent contractor a "unique opportunity to commit a crime against a third party," and given that ignorance of the law is no excuse under *contra non valentem*, the possibility of a negligent hiring claim should have been readily apparent to Plaintiffs. Human trafficking, of which Plaintiffs accuse Navarro, is a crime.

Because Navarro's criminality alone would have put Plaintiffs on constructive notice that a negligent hiring claim might lie against EBR, the argument that Plaintiffs only later, in September 2009, discovered the allegedly "crucial facts" about EBR does not support Plaintiffs' argument. Plaintiffs had constructive notice of the negligent hiring claim long before those crucial facts came to light. Consequently, the prescriptive period began to run in July 2008, when Plaintiffs made their last payment to UPI.

### D. *Rihner v. Chevalier*

Plaintiffs rely on *Rihner v. Chevalier* to argue that their claims are not prescribed. 731 So. 2d 429 (La. App. 1999). In *Rihner*, the defendant contractor constructed a home for plaintiffs, which manifested foundation damage soon after construction. Although plaintiffs quickly sought to repair the damage and take action against the party responsible, they did not discover until three years after construction, when an engineer investigated the foundation damage, that the city may have been negligent in approving the defendant contractor's plans. After that discovery, plaintiffs sued the city as well. The court of appeal held that, despite a one-year prescriptive period, the claims against the city were not prescribed, because the plaintiffs "could not have known that the problems with the house were in any way attributable to the negligence of the [city] until they received the report of the engineer hired to determine the cause of the damages to the residence." *Id.* at 432.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01172 JAK (MLGx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | Mairi Nunag Tanedo, et al. v. East Baton Rouge Parish School Board, et al. | | |

*Rihner* is distinguishable. In *Rihner*, the plaintiffs had no reason to suspect that the city was culpable in the foundation damage until the engineer's report issued. In the present case, however, Plaintiffs had every reason to suspect that EBR had a relationship with the Recruiter Defendants and was negligent in contracting with them, and Plaintiffs could have discovered this as early as their first payments to the Recruiters. Plaintiffs knew they were travelling to the United States to teach for EBR, and that the Recruiter Defendants had positioned them in those teaching jobs. Indeed, EBR even interviewed Plaintiffs while they were still in the Philippines, in person or by telephonic or video conference, before Plaintiffs even received job offers. This manifest relationship between EBR and the Recruiters, unlike the relationship between the defendant contractor and the city in *Rihner*, was more than "sufficient to incite curiosity, excite attention," or put Plaintiffs "on guard to call for inquiry" as to EBR's potential liability. *See Alexander*, 895 So.2d at 674.

### E. The Reasonableness Standard and Summary Judgment

Plaintiffs argue that the Court cannot decide on summary judgment whether *contra non valentem* applies to their negligent hiring claim, because *contra non valentem* depends on the reasonableness of Plaintiffs' actions, and reasonableness is a question for the jury as fact-finder. Indeed, Louisiana trial courts, when considering whether to "sustain" a defendant's "exception of prescription,"[3] which is akin to an affirmative defense raised in an answer, do make findings of fact regarding a plaintiff's reasonableness. *See, e.g.*, *Babineaux*, 927 So. 2d. at 1123 ("When evidence is introduced at the hearing on a peremptory exception of prescription, the trial court's findings of fact are reviewed under the manifest error-clearly wrong standard of review."). And Plaintiffs are correct that reasonableness is generally a jury question. *See, e.g.*, *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009) ("[S]ummary judgment is generally an inappropriate way to decide questions of reasonableness because the jury's unique competence in applying the 'reasonable man' standard is thought ordinarily to preclude summary judgment.")

Despite this, Plaintiffs' argument fails. If there were a genuine issue of material fact regarding the reasonableness of their actions, then Plaintiffs' claim would survive summary judgment. *See, e.g.*, *Gorman*, 584 F.3d at 1157 ("However, summary judgment is not precluded altogether on questions of reasonableness. It is appropriate when only one conclusion about the conduct's reasonableness is possible."). Here, EBR has met its burden on summary judgment by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). It then became Plaintiffs' burden to set forth "specific facts showing that there is a genuine issue for trial," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986), but Plaintiffs did not do so. Under these circumstances, the Court can—and upon a proper motion is required to—resolve the question of reasonableness as a matter of law. *See, e.g.*, *Kling Realty*, 575 F.3d at 518 ("We conclude that *contra non valentem* is inapplicable to [plaintiffs'] suit. There is no evidence in the record showing that [plaintiffs acted reasonably.]").

---

[3] NB: this analog to an affirmative defense is called an exception *of* prescription, not an exception *to* prescription (such as *contra non valentem*).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01172 JAK (MLGx) | Date | November 15, 2011 |
|---|---|---|---|
| Title | Mairi Nunag Tanedo, et al. v. East Baton Rouge Parish School Board, et al. | | |

## VI. Conclusion

Because Plaintiffs' negligent hiring claim against EBR is prescribed by the one-year prescriptive period, and because Plaintiffs cannot avail themselves of the *contra non valentem* exception, Plaintiffs' claim is prescribed. Accordingly, the Court GRANTS Defendant East Baton Rouge Parish School Board's motion for summary judgment.

**IT IS SO ORDERED.**

                                                                                                                      :

Initials of Preparer   ak