**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01172 JAK (MLGx) | | Date | December 12, 2011 |
|---|---|---|---|---|
| Title | Mairi Nunag Tanedo, et al. v. East Baton Rouge Parish School Board, et al. | | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE: PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (Dkt. 97, 133, 159)**

**I.   Introduction**

Plaintiffs, who are Filipino nationals, have brought various claims that arise out of their recruitment in the Philippines, and their resulting employment as teachers in Louisiana. In the present motion, Plaintiffs have moved pursuant to Federal Rule of Civil Procedure 23 to certify two classes, the "Louisiana Teacher Class" and the "EBR Teacher Subclass," with respect to certain of their claims. For the reasons set forth in this Order, the Court GRANTS Plaintiffs' motion to certify both classes with respect to all causes of action except wire fraud, mail fraud, state law fraud, and negligent hiring.[1]

**II.   Background**

**A.   Factual Background**

The following summary of the factual basis for the underlying claims is based on the allegations made by Plaintiffs in the course of this action along with certain evidentiary materials that have been submitted in the course of these proceedings.

---

[1] The parties stipulated to defer the hearing on Plaintiffs' motion for class certification with respect to claims against Defendant East Baton Rouge Parish School Board ("EBR"), pending the Court's decision on EBR's motion for summary judgment regarding Plaintiffs' negligent hiring claim. The Court granted EBR's motion on November 15, 2011. Dkt. 223. Accordingly, the class certification motion as to EBR with regard to the negligent hiring claim is moot. In addition, although both the Louisiana Teacher Class and EBR Teacher Subclass seek relief against Defendant Elizabeth Duran Swinford, Plaintiffs have not moved for class certification with respect to those claims because Swinford has a pending appeal concerning her claim of qualified immunity. Accordingly, this Order does not address Plaintiffs' motion for class certification against Swinford or EBR, but only against the other Defendants.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01172 JAK (MLGx) | Date | December 12, 2011 |
|---|---|---|---|
| Title | Mairi Nunag Tanedo, et al. v. East Baton Rouge Parish School Board, et al. | | |

  Plaintiffs are Filipino nationals who traveled to the United States to work as teachers in Louisiana public schools. In order to work in the United States, they received H-1B visas. Defendant Universal Placement International, Inc. ("UPI") is a California corporation, headed by Defendant Lourdes Navarro. UPI recruits teachers from the Philippines to teach in the United States. Defendant PARS International Placement Agency ("PARS") is a Philippine corporation, headed by Defendant Emilio Villarba. Like UPI, PARS recruits teachers from the Philippines to teach in the United States (UPI, Navarro, PARS, and Villarba are collectively the "Recruiter Defendants"). Defendant Robert Silverman is a California attorney who, with his law firm Silverman & Associates, represented the Louisiana school districts in the recruitment process (Silverman and the firm are collectively the "Attorney Defendants"). Defendant EBR and other Louisiana School districts contracted with the Recruiter Defendants and Attorney Defendants to recruit Filipino teachers to work in their districts. Defendant Elizabeth Duran Swinford is the former Associate Superintendent for Human Resources for EBR (Swinford and EBR are collectively the "Employer Defendants").

  In 2006, the Recruiter Defendants began advertising their teacher recruiting services to United States school districts. They also advertised teaching opportunities in the Philippines. The Recruiter Defendants interviewed Plaintiffs and class members for teaching positions. Plaintiffs allege that the Recruiter Defendants, after extending them job offers, revealed to Plaintiffs only some of the steps in the recruitment process. At first, the Recruiter Defendants told Plaintiffs only of the need to submit certain documents in support of their visa applications and to pay a recruitment fee ("First Recruitment Fee") of approximately $5,000 per applicant. This First Recruitment Fee included fees that, according to regulations governing H-1B visas, the petitioning United States employers, and not the beneficiary teachers, are required to pay. This First Recruitment Fee was non-refundable. Many Plaintiffs took out substantial loans to pay the First Recruitment Fee and later fees.

  After paying the First Recruitment Fee, Plaintiffs received job offers to teach in the United States. Plaintiffs interviewed at a United States embassy to obtain their H-1B visas. The Recruiter Defendants instructed Plaintiffs to have embassy officials ship Plaintiffs' passports and visas -- when issued -- directly to the office of the Recruiter Defendants in the Philippines, rather than to Plaintiffs. Once the Recruiter Defendants had Plaintiffs' documents, they allegedly told Plaintiffs, for the first time, that Plaintiffs would have to pay a second larger recruitment fee ("Second Recruitment Fee") plus the cost of airfare from the Philippines to the United States. The Second Recruitment Fee was 20% of each Plaintiff's expected first year salary. Plaintiffs would then have to pay an additional 10% of their second year salary if they remained in the United States for a second year of employment. Because Plaintiffs earned approximately $40,000 per year teaching in Louisiana, the First Recruitment Fee, Second Recruitment Fee, and second year salary fee totaled approximately $17,000. This figure does not include the aforementioned airfare.

  Plaintiffs allege that, if they did not pay the additional fees, they would forfeit the First Recruitment Fee, lose their jobs in the United States, and lose their visas. Accordingly, Plaintiffs contend that they felt compelled to accede to the demands of the Recruiter Defendants because they needed to work in the United States to repay the debts they had incurred in the Philippines as part of the recruitment process. Thus, they felt compelled to teach in the United States and pay a large percentage of their salaries to UPI and PARS. Moreover, Plaintiffs contend that, once they were in the United States, the Recruiter Defendants threatened legal action against Plaintiffs and other class members, including deportation, if

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01172 JAK (MLGx) | Date | December 12, 2011 |
|---|---|---|---|
| Title | Mairi Nunag Tanedo, et al. v. East Baton Rouge Parish School Board, et al. | | |

they protested the fee arrangement.

The Attorney Defendants allegedly participated in the scheme to compel Plaintiffs' labor by obtaining for Plaintiffs only one-year H-1B visas, instead of what Plaintiffs contend was the standard three-year visa. According to Plaintiffs, this allowed the Recruiter Defendants to have additional leverage over Plaintiffs -- the ability to threaten their deportation after one year of work in the United States. Additionally, the Attorney Defendants allegedly participated in the scheme to have Plaintiffs pay visa fees that their employers were required to pay under the applicable federal regulations.

### B. The Proposed Classes

Plaintiffs move to certify a class ("Louisiana Teacher Class") of approximately 350 teachers, defined as:

> All Filipino nationals who obtained their initial H-1B visas through Recruiter Defendants and Attorney Defendants during the period January 1, 2007, through the present, where a Louisiana school district or Louisiana school system was the petitioner.

Plaintiffs also move to certify a subclass ("EBR Teacher Subclass") of approximately 250 teachers, defined as:

> All Filipino nationals (i) who have obtained H-1B visas through Recruiter Defendants and Attorney Defendants during the period January 1, 2007 through the present, and (ii) whose initial H-1B visa petition was executed by an agent of EBR for employment at EBR.

### C. Plaintiffs' Claims

Plaintiffs advance the following claims in their Second Amended Complaint:

1. Plaintiffs, on behalf of the Louisiana Teacher Class, have sued the Recruiter Defendants and Attorney Defendants under the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1595, for: forced labor, 18 U.S.C. § 1589; trafficking with respect to peonage, slavery, involuntary servitude, or forced labor, 18 U.S.C. § 1590; and unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced labor, 18 U.S.C. § 1592.

2. Plaintiffs, on behalf of the Louisiana Teacher Class, have sued the Recruiter Defendants and Attorney Defendants for violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C § 1972. Plaintiffs allege TVPA violations, mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343, as predicate acts for the RICO claim. Plaintiffs, on behalf of the EBR Teacher Subclass, have brought the same causes of action against the Recruiter Defendants, Attorney Defendants, and Swinford.

3. Plaintiffs, on behalf of the Louisiana Teacher Class, have sued the Recruiter Defendants for violations of the Employment Agency, Employment Counseling, and Job Listing Services Act, Cal. Civ. Code § 1812.508, and the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; as well as for fraud, Cal. Civ. Code § 1709, and negligent misrepresentation.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01172 JAK (MLGx) | Date | December 12, 2011 |
|---|---|---|---|
| Title | Mairi Nunag Tanedo, et al. v. East Baton Rouge Parish School Board, et al. | | |

    4. Plaintiffs, on behalf of the Louisiana Teacher Class, seek to void their contracts with PARS and UPI on grounds of undue influence and illegality, and seek reimbursement of the fees and airfare paid.

    5. Plaintiffs, on behalf of the Louisiana Teacher Class, have sued the Attorney Defendants for breach of fiduciary duty and legal malpractice.

    6. Plaintiffs, on behalf of the EBR Teacher Subclass, have sued the Employer Defendants for TVPA violations and negligent hiring. On May 12, 2011, the Court granted Defendant EBR's motion to dismiss the TVPA claim. Dkt. 116. As noted above, the Court granted EBR's motion for summary judgment regarding Plaintiffs' negligent hiring claim on November 15, 2011. Dkt. 223.

### III.  Legal Standards

####    A.    Class Action Standard

    "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes et al.*, 131 S. Ct. 2541, 2550 (2011). Under Rule 23 of the Federal Rules of Civil Procedure, a class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982). That "rigorous analysis" will "frequently" include "some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 131 S. Ct. at 2551.

    The plaintiff, in seeking class certification, must establish that its proposed class meets each of the prerequisites of Rule 23(a). *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). These are (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of representation. FED. R. CIV. P. 23(a). Further, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 131 S. Ct. at 2551 (emphasis in original). Once these four prerequisites are satisfied, a court must consider whether the proposed class can be maintained under the standards of Rule 23(b). *See, e.g.*, *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

####    B.    Rule 23(a) Prerequisites

#####       1.    Numerosity

    Rule 23(a)(1) requires that, in order to be certified, a class must be "so numerous that joinder of all members is impracticable." "Impracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-914 (9th Cir. 1964). No specific number of members is needed to maintain a class action. *Cypress v. Newport News Gen. & Nonsectarian Hospital Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01172 JAK (MLGx) | Date | December 12, 2011 |
|---|---|---|---|
| Title | Mairi Nunag Tanedo, et al. v. East Baton Rouge Parish School Board, et al. | | |

    2.    <u>Commonality</u>

Rule 23(a)(2) requires that the case involve "questions of law or fact common to the class." "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The commonality requirement is satisfied only by a common question "of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551. "Requiring there to be common questions of law or fact prior to certifying a class serves chiefly two purposes: (1) ensuring that absentee members are fairly and adequately represented; and (2) ensuring practical and efficient case management." *Walters v. Reno*, 145 F.3d 1032, 1045 (9th Cir. 1998).

    3.    <u>Typicality</u>

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon*, 976 F.2d at 508. "[T]he typicality requirement is permissive and requires only that the representative's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010).

    4.    <u>Adequacy of Representation</u>

The requirement of adequacy contained in Rule 23(a)(4) ensures that "the representative parties will fairly and adequately protect the interests of the class." The adequacy requirement protects the due process rights of all of the class members, all of whom will be bound by the judgment of a class action. *See Richards v. Jefferson County*, 517 U.S. 793 (1996). Adequacy hinges on whether the named plaintiffs and their counsel have any conflicts of interest with other class members and whether they will prosecute the action vigorously. *Hanlon*, 150 F.3d at 1020. "[T]he adequacy-of-representation requirement is satisfied as long as one of the class representatives is an adequate class representative." *Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).

    **C.**    **Rule 23(b)(3) Requirements**

Once the Rule 23(a) prerequisites are satisfied, a court must consider whether the proposed class can be maintained under at least one of the subparts of Rule 23(b). *See, e.g., Valentino*, 97 F.3d at 1234. Here, Plaintiffs seek certification under Rule 23(b)(3), which has two requirements: (1) that "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01172 JAK (MLGx) | Date | December 12, 2011 |
|---|---|---|---|
| Title | Mairi Nunag Tanedo, et al. v. East Baton Rouge Parish School Board, et al. | | |

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Determining whether common questions predominate requires the court to weigh the common questions in the case against the individualized questions, a more in-depth inquiry than the Rule 23(a)(2) question of whether common questions are at issue in the case. "It is clear that considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011).

In evaluating whether a class action is the superior mechanism for handling a case, a court must consider: (1) the interest of class members in individually controlling prosecution of separate actions; (2) the extent and nature of any pending litigation concerning the controversy; (3) the desirability of litigating the claims in the particular forum where the class action is filed; and (4) difficulties likely to be encountered in managing the class action. FED. R. CIV. P. 23(b)(3). A class action is superior "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino*, 97 F.3d at 1234.

**IV.    Application of the Class Certification Standards**

    **A.    Rule 23(a) Prerequisites**

        1.    <u>Numerosity</u>

It is not disputed that the Louisiana Teacher Class has approximately 350 potential members and the EBR Teacher Subclass has approximately 250 potential members. *See* McNeil Decl., Exh. A, Dkt. 134-6. Plaintiffs have provided 125 retainer agreements from potential class members seeking representation regarding their recruitment by UPI and employment in Louisiana. Knoepp Decl., Exh. A, Dkt. 214-1. Joinder of this many class members is clearly impracticable.

Additionally, joinder may be impracticable if potential class members fear retaliation for suing independently. *See, e.g.*, *Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 625 (5th Cir. 1999); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006). Although the teachers in this case are not employed by UPI, there is evidence that at least some of the teachers believe that UPI holds influence over their employers -- the school districts -- and, as a result, may legitimately fear retaliation from the districts for suing UPI. Swinford Decl. ¶ 12, Dkt. 150-2.

Defendants contend that Plaintiffs cannot meet the numerosity requirement because some class members may not wish to participate in the class action. They offer the declarations of six potential class members who state that they do not share the named Plaintiffs' injuries. *See* Bayarong Decl., Dkt. 160-6; Cordero Decl., Dkt. 160-4; Dones Decl., Dkt. 160-3; Flores Decl., Dkt. 160-7; Gamit Decl., Dkt. 160-2; Rodriguez Decl., Dkt. 160-5. Defendants also argue that other teachers may not have been adversely affected by the Defendants' conduct. However, Defendants' argument fails. The numerosity requirement of Rule 23(a) is determined by considering the number of potential class members, not the number of class members that will ultimately choose to participate in the litigation. *See Immigrant Assistance Project*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01172 JAK (MLGx) | Date | December 12, 2011 |
|---|---|---|---|
| Title | Mairi Nunag Tanedo, et al. v. East Baton Rouge Parish School Board, et al. | | |

*of Los Angeles County Federation of Labor (AFL-CIO) v. I.N.S.*, 306 F.3d 842, 869 (9th Cir. 2002). In any event, class members who do not agree with the claims advanced in the litigation may opt out. *See* FED. R. CIV. P. 23(c)(2)(B)(v).

      2.    <u>Commonality</u>

The questions of law and fact common to the classes satisfy the requirements of Rule 23(a). Common questions of fact include: (1) whether Defendants utilized threats of serious financial harm to compel Plaintiffs to work; (2) whether the Recruiter Defendants and Attorney Defendants conspired to file fraudulent documents with the United States government and withhold crucial information from Plaintiffs; and (3) whether the Recruiter Defendants and Attorney Defendants engaged in a common enterprise. Common questions of law include: (1) whether Defendants' conduct violated the TVPA and RICO; (2) whether the class members' contracts are void for undue influence or illegality; and (3) whether the conduct of the Attorney Defendants constitute breach of fiduciary duty and legal malpractice. All of these questions are "capable of classwide resolution." *Wal-Mart*, 131 S. Ct. at 2551. The answers to these questions will determine, for example, if the Plaintiffs were threatened with serious financial harm, an issue central to the TVPA claims, or if the Defendants engaged in a common enterprise, an issue central to the RICO claims.[2]

      3.    <u>Typicality</u>

The claims of the class and subclass members arise from the same conduct and are based on the same legal theories as the claims of the named Plaintiffs. The class members were recruited in the same manner, paid the same fees, signed the same contracts, worked in the same state, and were subject to the same working conditions. Defendants argue that, as a result of the six declarations of potential class members who describe different experiences than those alleged by Plaintiffs, and do not wish to proceed as class members, the named Plaintiffs fail to meet the typicality requirement. This argument is parallel to that advanced and discussed above with respect to numerosity; it also fails for the same reasons discussed above.

      4.    <u>Adequacy of Representation</u>

There is no evidence of any conflict of interest between class members, and the shared experience of the class members with the named Plaintiffs indicates that the Plaintiffs will prosecute the action vigorously. Defendants offer various reasons why the named Plaintiffs cannot adequately represent the class. Thus, Defendants argue that Plaintiff Ingrid Cruz is inadequate as a representative because an earlier lawsuit, in which Navarro sued Cruz, resulted in an injunction that prevents UPI and Navarro from enforcing their contract against Cruz. Defendants argue that Cruz and Plaintiff Mairi Nunag Tanedo are inadequate class representatives because each has a vendetta against UPI. Defendants argue that Plaintiff Donnabel Escuadra is inadequate as a class representative because she is more sophisticated

---

[2] Defendants' core arguments with respect to the commonality issue are more properly directed to the predominance requirement of Rule 23(b)(3). The Court considers those arguments below.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01172 JAK (MLGx) | Date | December 12, 2011 |
|---|---|---|---|
| Title | Mairi Nunag Tanedo, et al. v. East Baton Rouge Parish School Board, et al. | | |

than other potential class members due to law classes she has taken. Defendants argue that Plaintiffs Tomasa Mari and Rolando Pascual are inadequate as representatives because each made several attempts to obtain employment in the United States before signing contracts with PARS and UPI.

Defendants' arguments are unpersuasive. The Plaintiffs' various motivations and levels of sophistication do not undermine their ability to represent the class and prosecute the action. Although Cruz, due to the earlier lawsuit, can no longer seek to void her contract with Defendants, her other causes of action survive. Even so, only one of the class representatives needs to be an adequate representative; accordingly, the limitation on Cruz as a result of her earlier lawsuit does not undermine a finding of an overall adequacy of representation.

    **B.**    **Rule 23(b)(3) Requirements**

        1.    <u>Predominance of Common Questions</u>

Defendants do not dispute that common questions will predominate with respect to the following claims: (1) the Employment Agency, Employment Counseling, and Job Listing Services Act; (2) the Unfair Competition Law; (3) negligent misrepresentation; and (4) contract invalidity due to undue influence and illegality. Accordingly, the Court finds that common questions will predominate with regard to those causes of action. The parties dispute the level of individualized inquiry necessary to resolve the TVPA and fraud claims. Additionally, the Attorney Defendants argue that the breach of fiduciary duty and malpractice claims require individualized inquiries that make class certification improper.

            a)    Trafficking Victims Protection Act

                (1)    Legal Standard

To establish a claim of forced labor, Plaintiffs must show that Defendants "knowingly provide[d] or obtain[ed]" Plaintiffs' labor "by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a). Serious harm is defined as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a *reasonable person* of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589(c) (emphasis added).

This language demonstrates that the statute first looks at the Defendants' intent in threatening harm. *See U.S. v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011) ("The linchpin of the serious harm analysis under § 1589 is not just that serious harm was threatened but that the employer intended the victim to believe that such harm would befall her."). To determine if the harm threatened were serious, the statute employs a reasonable person test: Was the threat sufficiently serious that a reasonable person of the same background and circumstances would feel compelled to continue working? *See id.* ("According to the statute, the threat, considered from the vantage point of a reasonable person in the place of the victim, must be 'sufficiently serious' to compel that person to remain.")

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01172 JAK (MLGx) | Date | December 12, 2011 |
|---|---|---|---|
| Title | Mairi Nunag Tanedo, et al. v. East Baton Rouge Parish School Board, et al. | | |

       (2)      Application

Because the analysis of claimed TVPA inquiry will focus on the Defendants' intent with respect to any threats made against Plaintiffs, and on a reasonable person's perception of those threats, the TVPA inquiry will not turn on, or require, individualized determinations. Thus, the inquiry will not look at how each Plaintiff perceived the Defendants' actions or whether he or she subjectively felt compelled to work. Instead, the inquiry will look at the Defendants' actions and assess how a reasonable person from the Plaintiffs' background would respond to those actions. In addition, because the class members share a large number of common attributes -- they are teachers, they are from the Philippines, they are new to the United States, they are educated, they work in Louisiana, they left their homes to work in a new country -- they share the "same background" and "same circumstances," allowing the fact-finder to use a common "reasonable person" standard for all class members.

Defendants argue that Plaintiffs' backgrounds vary significantly. For example, some had advanced degrees, some had relatives in the United States, and some incurred more debt than others. As a result, Defendants argue that the reasonable person test will require individualized inquiries. However, these differences are not sufficiently substantial to alter the landscape as to predominance. Thus, they are far less significant than the aforementioned common characteristics shared by the class members. Defendants also argue that Defendants' conduct toward the class members varied substantially with regard to how, where, and when Defendants communicated with Plaintiffs, and that this will require individualized inquiries. However, the gravamen of Plaintiffs' TVPA claim is that it was the scheme of hidden fees and contracts that ultimately compelled them to work; this issue predominates over the details of how Defendants communicated with Plaintiffs.

      b)      Fraud

Plaintiffs claim that Defendants committed federal wire and mail fraud, as well as California state law fraud. Once again, a consideration of the predominance issue begins with a consideration of the elements of each of these causes of action.

       (1)      Reliance

In order to establish a claim of civil RICO wire or mail fraud, Plaintiffs must establish reliance on Defendants' misrepresentations. *See Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 658 (2008) (holding that, although a plaintiff need not be the party who relied on the fraudulent statement to have standing to sue for a RICO violation, reliance must nevertheless be established). The same applies to the state law fraud action. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (Cal. 2009).

       (2)      Application

In this case, determining whether Plaintiffs relied on Defendants' misrepresentations would require individualized inquiries into the reasons class members signed up with the Recruiter Defendants

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01172 JAK (MLGx) | Date | December 12, 2011 |
|---|---|---|---|
| Title | Mairi Nunag Tanedo, et al. v. East Baton Rouge Parish School Board, et al. | | |

and paid the First Recruitment Fee. Some class members may have relied on representations that there would be no more fees, and would not have paid the first fee had they known another fee would also be charged. Other class members may have been willing to pay even more for a chance to teach in the United States, to reunite with family members in the United States, or to leave the Philippines.

This case is similar to *Poulos v. Cesars World, Inc.*, 379 F.3d 654 (9th Cir. 2004). There, the Ninth Circuit affirmed a denial of class certification as to a civil RICO mail fraud claim based on alleged misrepresentations regarding the odds of winning at video poker and electronic slot machines. The court held that a showing of individualized reliance was required to make out the fraud claim because gamblers have disparate motives in gambling and may not rely on the alleged misrepresentations regarding the odds of winning at the machines. As the court explained:

> Gamblers do not share a common universe of knowledge and expectations—one motivation does not "fit all." Some players may be unconcerned with the odds of winning, instead engaging in casual gambling as entertainment or a social activity. Others may have played with absolutely no knowledge or information regarding the odds of winning such that the appearance and labeling of the machines is irrelevant and did nothing to influence their perceptions. Still others, in the spirit of taking a calculated risk, may have played fully aware of how the machines operate.

*Id.* at 665-666. As in *Poulos*, Plaintiffs here cannot assume that one motivation for paying the First Recruitment Fee will "fit all." Class members may have varied significantly in their reliance on Defendants' misrepresentations.

The cases on which Plaintiffs rely in arguing for a different outcome are not persuasive. In *Blackie v. Barrack* 524 F.2d 891, 902 (9th Cir. 1976), for example, the court found that common questions would predominate, and individualized inquiries would not be necessary, to establish a claim under section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10(b)-5. *Blackie* is distinguishable, however, because reliance is not an element of a 10b-5 claim, whereas reliance is an element of the instant fraud claims. 524 F.2d at 905. Similarly, the court in *In re First Alliance Mortgage Co.* 471 F.3d 977, 990 (9th Cir. 2006) found that common questions predominated where potential class members relied on a "standardized sales pitch" used to market subprime loans to borrowers; in that case, the borrowers all relied on the sales pitch in substantially the same way, *i.e.,* by taking out loans from defendant believing that the favorable rates and terms, which defendant represented would apply, would in fact apply. In this case, however, as in *Poulos*, individual class members may have had very different motivations for using Defendants' services. Indeed, some or all may not have relied at all on Defendants' representations.

With regard to the fraud claims, individualized questions of reliance will predominate over common questions of law and fact. Unlike the inquiry in the TVPA claims, which focuses on the Defendants' intent and the reliance of a reasonable person -- issues that predominate in the TVPA inquiry -- with respect to the fraud-based claims there is no reasonable person standard, but an individualized one. As a result, individual questions will predominate. Consequently, the wire fraud, mail fraud, and state law fraud claims are unsuitable for class resolution. They do not meet the predominance requirement of

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01172 JAK (MLGx) | Date | December 12, 2011 |
|---|---|---|---|
| Title | Mairi Nunag Tanedo, et al. v. East Baton Rouge Parish School Board, et al. | | |

Rule 23(b)(3).

   c)  Claims Against the Attorney Defendants

  The Attorney Defendants separately oppose Plaintiffs' motion for class certification, arguing that individualized inquiries will predominate over common questions in the malpractice and breach of fiduciary duty claims against them. The Court disagrees. The TVPA claims against the Attorney Defendants will depend primarily on the determination of a fact question: Whether the Attorney Defendants participated in the Recruiter Defendants' scheme to compel class members' labor through threats of serious harm. This does not require an individualized inquiry. Thus, the predominance requirement of Rule 23(b)(3) is met. The legal malpractice and breach of fiduciary duty claims against the Attorney Defendants depend on the following question of fact: Whether an attorney-client relationship existed between the Attorney Defendants and class members. In large part, this will require determining whether Silverman's signature on the G-28 Notice of Entry of Appearance forms accompanying the H-1B visa petitions of Plaintiffs Tanedo, Cruz, and Escuadra, on which Silverman indicated that he represented those Plaintiffs, is sufficient to establish an attorney-client relationship. *See* Knoepp Decl., Exh. J, Dkt. 70-1. The malpractice and breach of fiduciary duty claims will then turn on the fees Plaintiffs and class members paid and whether conflicts of interest arose from the simultaneous representation of EBR and the class members by the Attorney Defendants. For instance, Silverman claims that he had no contact with any class members. Silverman Decl. ¶ 3, Dkt. 157. If true, this is a fact common to all class members that supports their claim of malpractice, because Silverman would have represented the class members without ever interacting with them. Accordingly, common questions will predominate over individualized inquiries.

  The Court reaches a different conclusion with respect to the RICO wire fraud and mail fraud claims against the Attorney Defendants. Each will require individualized inquiries for the same reasons that these claims will require such inquiries as to the Recruiter Defendants. As a result, the RICO wire fraud and mail fraud claims are not suitable for class treatment.

   2.  <u>Superiority of Class Action</u>

  A class action is the superior device for litigating Plaintiffs' claims. The potential class members are foreign nationals unfamiliar with the American legal system. To be sure, the monetary amounts at stake are large relative to Plaintiffs' average annual incomes -- many Plaintiffs earn around $40,000 annually as teachers in Louisiana -- but the expenses and legal fees associated with litigating the claims make individual lawsuits too costly to pursue. Moreover, joinder of the many Plaintiffs in the proposed class is impracticable both because the potential class members are numerous and because many class members may fear retaliation. Finally, because so many common questions of fact exist with regard to UPI's conduct, discovery in individual cases would be highly duplicative.

**V.**  <u>Conclusion</u>

  For the foregoing reasons, the Court GRANTS Plaintiffs' motion to certify the Louisiana Teacher Class with regard to all causes of action except state law fraud and the RICO claims with wire fraud and

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-01172 JAK (MLGx) | Date | December 12, 2011 |
|---|---|---|---|
| Title | Mairi Nunag Tanedo, et al. v. East Baton Rouge Parish School Board, et al. | | |

mail fraud as predicate acts.

The Louisiana Teacher Class can proceed as a class in its TVPA claims against Recruiter Defendants and Attorney Defendants; in its RICO claim, with TVPA violations as the requisite predicate act, against Recruiter Defendants and Attorney Defendants; in its Employment Agency, Employment Counseling, Job Listing Services Act and Unfair Competition Law claims against Recruiter Defendants; in its negligent misrepresentation claim against Recruiter Defendants; and its breach of fiduciary duty and legal malpractice claims against the Attorney Defendants.

The EBR Teacher Subclass can proceed as a class in its RICO claim, with TVPA violations as the requisite predicate acts, against the Recruiter Defendants and Attorney Defendants.

The Court DENIES Plaintiffs' motion to certify the Louisiana Teacher Class with regard to state law fraud and the RICO claims with wire fraud and mail fraud as predicate acts.

**IT IS SO ORDERED.**

:

Initials of Preparer   ak